IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENERGY NORTHWEST,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 04-0010C<br><br>Chief Judge Damich |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to the Rules of the United States Court of Federal Claims, Appendix A, plaintiff, Energy Northwest, and defendant, the United States, respectfully submit their Joint Preliminary Status Report. Where necessary, the parties set forth separate views regarding issues on which they do not agree.

This action is based upon the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (the "Standard Contract") executed between Energy Northwest, formerly known as Washington Public Power Supply System, and the United States, acting through the Department of Energy ("DOE"). A copy of the Standard Contract is attached as Exhibit A. Approximately sixty cases involving the Government's actions in connection with spent nuclear fuel and/or high level waste are currently pending in the Court of Federal Claims. These cases are sometimes referred to by the parties as spent nuclear fuel ("SNF") cases.

**Proposed Dates For A Status Conference**

**Plaintiff's Position**

Energy Northwest is available on the following dates and times for a status conference with the Court: (1) December 10, 2004 at anytime; (2) December 16, 2004 at anytime; and (3) December 17, 2004 at anytime.

**Defendant's Position**

Because the Court has stayed the proceedings through December 31, 2004, Defendant suggests that the Court not schedule a status conference until after the stay has been lifted. However, the Government believes that the stay of proceedings in this case should be extended beyond December 31, 2004, in light of the pending appeal in Indiana Michigan Power Co. v. United States, No. 04-5122 (Fed. Cir.).

**(a) Does the court have jurisdiction over the action?**

**Energy Northwest's Position**

Energy Northwest asserts that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491(a)(1) because Energy Northwest's claim is based upon a breach of the Standard Contract between Energy Northwest and Defendant.

Energy Northwest respectfully submits that Judge Sypolt's order in Florida Power & Light v. United States No. 98-483C (October 14, 2004), which tentatively reaches a conclusion contrary to several opinions and orders from the Courts of Appeal, incorrectly analyzes the relevant statutory authority and caselaw.

**Defendant's Position**

Defendant is currently reviewing this Court's recent order in Florida Power & Light Co. v. United States, No. 98-483C (Fed. Cl. ) (Sypolt, J.), dated October 14, 2004, to determine whether this Court possesses jurisdiction to entertain this action.

**(b) Should the case be consolidated with any other cases and the reasons therefor?**

**Energy Northwest's Position**

Energy Northwest does not believe that this case should be consolidated with any other SNF case. The issue of consolidation has been raised by the Government on three separate

occasions, extensively briefed, and rejected by this Court. Most recently, on January 30, 2004, this Court denied the Government's July 30, 2004 Second Motion To Renew Its Motion To Consolidate, explaining, in part:

> consolidation – even as to the particular issues of rate acceptance and schedule of acceptance – would not effectuate any greater efficient administration of justice than that of letting the six lead cases proceed with their dispositive motions and/or trial on damages.

Yankee Atomic Electric Co. v. United States, Case No. 98-126C, filed January 30, 2004.

**Defendant's Position**

Defendant has previously requested that the Court reassign all of the spent nuclear fuel cases to a single judge, followed by consolidation for the limited purpose of resolving issues surrounding the spent nuclear fuel acceptance schedule terms of the Standard Contract. The Court has not granted the Government's request. Nevertheless, defendant continues to believe that reassignment and consolidation of the spent nuclear fuel cases, which would permit resolution of issues surrounding the schedule terms that appear in every Standard Contract, is appropriate. Beyond that request for reassignment, defendant has not identified any other case pending before this Court that involves the specific nuclear power plant at issue in this case and, therefore, has not identified any additional reasons for seeking consolidation of this case with any others.

**(c) Should trial of liability and damages be bifurcated and the reasons therefor?**

**Energy Northwest's Position**

Energy Northwest does not believe that trial of liability and trial of damages should be bifurcated in this action. As to liability, the Federal Circuit has already determined that, as a matter of law, the Government breached the Standard Contract by failing to begin accepting SNF by the January 31, 1998 contractual deadline. Maine Yankee Atomic Power Co. v. United

States, 225 F.3d 1336 (Fed. Cir. 2000); see also Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000).

**Defendant's Position**

Liability for partial breach of contract by the Government of its standard contract with Energy Northwest has not been established. Defendant believes that liability for partial breach of contract cannot be established until a determination is made regarding the minimum mandatory schedule for acceptance of SNF and/or HLW by which the Government was contractually obligated to accept contract holders' SNF and/or HLW. The Court should resolve issues involving the acceptance schedule under which the Government is obligated, pursuant to the Standard Contract, to accept plaintiff's spent nuclear fuel (including the rate at which the Government is obligated, under the contract, to accept spent nuclear fuel from all of the contract holders). Once the Court resolves those issues, any further trial proceedings regarding liability and damages should be resolved in a single proceeding.

**(d) Should further proceedings in this case be deferred pending consideration of another case before this Court or any other tribunal and the reasons therefore? Is there any basis for transferring or remanding the case to another tribunal?**

**Energy Northwest's Position**

On May 12, 2004, this Court ordered that discovery in this case on the rate of acceptance or damages issues, and/or any discovery duplicative of information from previous coordinated discovery in SNF cases, be stayed through December 31, 2004. Energy Northwest previously opposed a general stay of this case.

The Government has agreed that Energy Northwest will be able to use the Government's previous document production in other SNF cases in this action. With respect to other discovery, Energy Northwest believes that such discovery can begin in January 2005. In that connection,

Energy Northwest opposes the Government's renewed request for a general stay until April 2005 discussed below. As discussed more fully in Energy Northwest's opposition to the Government's original motion for a stay, the Government's renewed request does not meet the rigorous requirements for entry of a stay applicable under the case the Government cited in its original motion, Landis v. North American Company, 299 U.S.. 248 1936). In addition, the effect of a stay will be to postpone discovery that Energy Northwest believes will have to occur regardless of the outcome of the Indiana Michigan appeal and the Yankee and Sacramento Municipal Utility District cases described below.

Energy Northwest does not object, in principle, to a coordinated process for depositions of Government witnesses, provided that the coordinated discovery is conducted in an efficient manner. Furthermore, assuming the Government will stipulate to Energy Northwest's use of previous depositions of DOE and former DOE employees and contractors on the schedule and rate issues taken in other SNF cases as if they were taken in this case, Energy Northwest believes that the need for such depositions can be substantially reduced.

However, Energy Northwest objects to the procedure proposed by the Government which would require Energy Northwest to obtain approval from the Court prior to taking any additional discovery by identifying for the Court the additional discovery needed and the reasons the discovery already taken does not satisfy those requirements. That proposal is contrary to the Rules of this Court.

Energy Northwest does not believe there is any basis for transferring or remanding this case to another tribunal.

**Defendant's Position**

In response to the Court's inquiry as to whether there is any basis for transferring or remanding the case, the Government is currently reviewing Judge Sypolt's decision in Florida Power & Light v. United States, No. 98-483C (October 14, 2004), to determine if that decision provides any basis for a transfer or remand to another tribunal.

If a transfer or remand is not appropriate, as previously explained in the Government's motion to stay, a stay of proceedings is necessary in this and the other newly filed cases to allow for the resolution of legal and factual issues that are common to the cases. These issues include the jurisdictional issues raised in Florida Power & Light Co. v. United States, No. 98-483C (Fed. Cl.); the minimum mandatory schedule for the acceptance of SNF and/or HLW by which the Government was contractually obligated to accept contract holders' SNF and/or HLW; the Government's obligation to accept Greater-Than-Class-C ("GTCC") radioactive waste; and the ability of contract holders to recover damages incurred prior to the actual partial breach of the "Standard Contract for Disposal of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," 10 C.F.R. § 961.11, or to recover damages, under a partial breach of contract theory, that contract holders allege might be incurred sometime in the future. These issues have previously been presented in trials, or will be squarely presented in the trials that are currently scheduled to occur between now and April 2005.

A decision not to stay the newly filed cases will vitiate the "lead" cases process that the Court instituted in response to the Government's previous motion to consolidate the SNF cases. Specifically, this Court selected six cases that it identified as "lead" or "accelerated" cases for the purpose of resolving the legal and factual issues that the Government had presented in various partially-dispositive motions filed in all of the cases existing at that time. One of those cases has

already completed a trial, the plaintiff's damages decided, and is on appeal to the United States Court of Appeals for the Federal Circuit, Indiana Michigan Power Co. v United States, No. 98-486C (Fed. Cl.); three other consolidated cases completed a seven-and-a-half week trial on August 31, 2004, Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl.), & Maine Yankee Atomic Power Co. v United States, No. 98-474C (Fed. Cl.); and another case is scheduled for a two-week trial beginning March 21, 2005, Sacramento Municipal Utility District v. United States, No. 98-488C (Fed. Cl.).[1] Given the significance of the issues in these cases, we anticipate that the United States Court of Appeals for the Federal Circuit will review the decisions in those cases and that the Federal Circuit's rulings will provide dispositive guidance regarding the threshold issues in all of the SNF cases pending before this Court.[2] Briefing in the Indiana Michigan case currently on appeal should be completed by January 2005, with oral argument scheduled soon thereafter.

The Government requests that the stay be entered until at least April 15, 2005. By this date, all of the currently scheduled trials will be concluded and decisions may be issued in at least some of the cases. At that time, the Court should convene a status conference to determine

---

[1] The Court in Florida Power & Light Co. v. United States, No. 98-483C (Fed. Cl.), the sixth "lead" or "accelerated" case, recently issued an order directing the parties to provide further briefing on a jurisdictional issue. Moreover, trials have been scheduled in the following SNF cases: Tennessee Valley Authority v. United States, No. 01-249C (Fed. Cl.), to begin in June 2005; in Southern Nuclear Operating Co. v. United States, No. 98-614C (Fed. Cl.), to begin in August 2005; and in South Carolina Electric & Gas v. United States, No. 04-101C (Fed. Cl.), to begin in January 2006. In addition, trials are being scheduled in Northern States Power Co. v. United States, No. 98-484C (Fed. Cl.) and Wisconsin Electric Power Co. v. United States, No. 00-697C (Fed. Cl.).

[2] Several of the more recently filed SNF cases have been stayed. See, e.g., Order in Constellation Generation Group, LLC v. United States, No. 04-68C (Fed. Cl. June 30, 2004); Order in Niagara Mohawk Power Corp. v. United States, No. 04-124C (Fed. Cl. June 8, 2004); Order in Arizona Public Serv. Co. v. United States, No. 03-2832C (Fed. Cl. June 4, 2004).

what further discovery, if any, will be allowed against the Government in a coordinated proceeding and establish an order in which the cases will proceed to trial.

A stay in the instant matter need not preclude all discovery. The plaintiff may access the discovery previously obtained under the coordinated discovery in the earlier-filed SNF cases subject to the protective order of the coordinated discovery proceedings. This procedure has been recommended by this Court.

To the extent that the Court does not stay this case, the Government requests that the Court direct that any discovery sought by Energy Northwest be conducted on a coordinated basis with the other utility plaintiffs. Without coordination, which would limit the number of hours that any potential deponent would have to sit for deposition and the number of times that the deponent would have to appear, particular witnesses would likely be in repetitive and time-consuming depositions in numerous cases over a course of months or years. The coordinated proceedings would require also that the plaintiffs join together to formulate and serve written discovery requests upon the Government and that counsel for plaintiffs join together to take only one deposition of any Government witness. Absent coordination, the Government will be subject to written discovery requests and Government witnesses will have to sit for deposition in each of these new cases. Proceeding in such a manner will place burdens on the same individuals who are charged with developing and opening a repository so that DOE can meet its obligations pursuant to the Standard Contract at issue.

Further, in light of the extensive discovery that numerous plaintiffs have already obtained from the Government — including written discovery, the production of hundreds of thousands of pages of documents, and numerous extensive depositions — the Court, before Energy Northwest or any other plaintiff is allowed to take additional discovery (including new depositions), should

require Energy Northwest and the other plaintiffs to identify with specificity the discreet discovery that they need and the reasons that the discovery which has already occurred does not satisfy those requirements. To date, the Government has produced approximately 833,000 pages of documents in the coordinated discovery proceedings and in response to discovery requests served in the three Yankee cases, Indiana Michigan, Commonwealth Edison, and Sacramento Municipal Utility District v. United States. Eighty-nine depositions of 58 Government witnesses have been taken in coordinated discovery and in Yankee Atomic, Commonwealth Edison, Sacramento Municipal Utility District, and Indiana Michigan. In addition, the Government has provided access to a records database maintained by the Office of Civilian Radioactive Waste Management, the office charged with implementing the terms of the NWPA and the Standard Contracts. These documents and depositions have covered "schedule" issues as well as the Government's expected defenses to the plaintiff's known damages claims and have been produced and conducted as recently as June of this year. The Government is prepared to provide these same documents, deposition transcripts, and access to counsel for Energy Northwest and impose no conditions upon the use of this material outside of the requirements and limitations imposed by the Court's rules and the rules of evidence, once the necessary protective orders have been entered.

**(e) In cases other than tax refund actions, will a remand or suspension be sought and the reasons therefore and the proposed duration?**

Energy Northwest does not intend to seek a remand or suspension. Defendant states that it does not seek a remand of this case at this time, but that the Court should suspend the case for the reasons discussed in the prior section of this report.

**(f) Will additional parties be joined and, if so, a statement describing such parties, their relationship to the case, and the efforts to effect joinder and the schedule proposed to effect joinder?**

The parties do not believe that additional parties will be joined.

**(g) Does either party intend to file a motion pursuant to RCFC 12(b) or 56 and, if so, a schedule for the intended filing?**

**Energy Northwest's Position**

At this time, Energy Northwest does not intend to file any motions pursuant to RCFC 12(b) or 56.

**Defendant's Position**

As noted above, the Government desires this case to be stayed and, therefore, desires to defer setting a schedule for the filing of any motions pursuant to RCFC 12(b), 12(c) or 56. The Government believes that the requested stay will help to inform its decision regarding its intent to file such motions, and that it is premature at this time to commit to filing such motions. If the Court declines to stay this case, the Government anticipates that it will file a RCFC 56 motion relating to liability; further, if Energy Northwest's RCFC 26(a)(1)(c) disclosures contain future damages, the Government will file a RCFC 56 motion regarding plaintiff's recovery of future or prospective damages. The Government also anticipates that it may file RCFC 56 motions regarding DOE's rate-of-acceptance of SNF and, if appropriate, the Government's obligation to accept GTCC. Further, depending upon the outcome of the Government's review of the Court's October 14, 2004 order in Florida Power, additional dispositive motions may be appropriate.

**(h) What are the relevant factual and legal issues?**

**Energy Northwest's Position**

The material issues of fact and law in this case include, but not are limited to, the following:

1. Whether the Government's failure to begin removing SNF in January 1998, as required by the Standard Contract, and its acknowledged inability to begin performance until at least 2010, constitute a partial breach of the Standard Contract. (As stated above, Energy Northwest believes that the Federal Circuit has already determined that, as a matter of law, the Government breached the Standard Contract by failing to begin accepting SNF by the January 31, 1998 contractual deadline. Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000); see also Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000).)

2. Whether the Government breached its duty of good faith and fair dealing under the Standard Contract.

3. The costs Energy Northwest has incurred and will incur in connection with the storage of SNF as a result of the Government's breach of the Standard Contract.

**Defendant's Position**

The relevant legal and factual issues in this case include, but may not be limited to, the following:

1. The Court's jurisdiction to entertain this action;

2. Whether the Government is liable for a partial breach of plaintiff's Standard Contract;

3. The basis and scope of any liability for the partial breach of the Standard Contract;

4. The contractually required schedule for the Department of Energy's acceptance of spent nuclear fuel and/or high-level radioactive waste;

5. The appropriate measure of the plaintiff's damages, if any, arising from any partial breach of the Standard Contract;

6. Whether the Government breached its duty of good faith and fair dealing;

7. Whether the Government is obligated to accept Greater-Than-Class-C low-level radioactive waste pursuant to the Standard Contract; and

8. Whether the Government is liable for future or prospective damages.

**(i) What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

The parties are open to the possibility of settlement and are willing to engage in settlement discussions and negotiations at an appropriate time. Energy Northwest believes that the following methods of ADR are viable: third-party neutrals and mediation. The Government is currently not in a position to determine if the ADR methods proposed by Energy Northwest are appropriate, but we continue to evaluate settlement possibilities in this case, as it and other SNF cases progress.

**(j) Joint Proposed Scheduling Plan?**

As discussed above, on May 12, 2004, this Court ordered that discovery in this case on the rate of acceptance or damages issues, and/or any discovery duplicative of information from previous coordinated discovery in SNF cases, be stayed through December 31, 2004. Energy Northwest believes that discovery can begin in January 2005, after the end of the stay. The Government, however, requests that the case be stayed until at least April 15, 2005. Given their positions, the parties have not been able to agree upon a proposed scheduling plan. The parties, therefore, set forth their own proposed scheduling plans.

Energy Northwest's Proposed Scheduling Plan

(i) Dates for joinder of additional parties: Energy Northwest does not believe that additional parties will be joined.

(ii) Discovery plan

| **Event** | **Date** |
|---|---|
| RCFC 26(a) Initial Disclosures | January 15, 2005 |
| Serve Initial Written Discovery & Document Requests | January 30, 2005 |
| Begin Depositions | April 15, 2005 |
| Complete Fact Discovery | August 29, 2005 |
| Three Alternative Dates For Status Conference | September 7, 2005 at 10:00 a.m.<br>September 8, 2005 at 10:00 a.m.<br>September 9, 2005 at 10:00 a.m. |
| Plaintiffs' Expert Report(s) | October 31, 2005 |
| Responsive Expert Report(s) | January 6, 2006 |
| Rebuttal Expert Report(s) | February 10, 2006 |
| Complete Expert Discovery | March 3, 2006 |
| Commence RCFC Appendix A Pre-Trial Schedule | March 3, 2006 |

(iii) Additional information

1. Energy Northwest does not presently intend to file any dispositive motions at this time.

2. Energy Northwest does not believe that discovery should be conducted in phases.

3. Energy Northwest believes that the presumptive limit of 25 interrogatories per individual party is adequate. However, Energy Northwest believes that the parties should be

permitted to negotiate a variance from the presumptive limit on the number of depositions if they deem it appropriate.

4. Energy Northwest does not anticipate any physical or mental examination of any parties pursuant to RCFC 35.

5. The earliest date by which the case reasonably should be expected to be ready for trial is July 2006.

6. The length of time expected to try this case to judgment is approximately three weeks.

7. Energy Northwest requests that the trial take place in the Court of Federal Claims in Washington, D.C.

Energy Northwest objects to Defendant's request below that Energy Northwest provide Defendant with "a detailed and definitive identification of the damages numbers that the plaintiff will claim and identification of the specific support in audit workpapers or company accounting records for those claimed dollars" at this stage of the case. Because this case is not governed by the Contract Disputes Act, Energy Northwest is not required to provide a detailed damages claim at the outset of discovery. Instead, initial disclosures in this matter are governed by the Court's RCFC 26(a)(1), which like its counterpart in the Federal Rules of Civil Procedure, only requires that Energy Northwest provide a "computation of any category of damages." These disclosures are not supposed to be a definitive, or final, statement of damages suffered by the plaintiff. *See* Fed. R. Civ. Proc. 26(a); *Pine Ridge Recycling v. Butts County*, 889 F. Supp. 1526, 1527 (M.D. Ga. 1995) (disputes over level of detail regarding amount and method of calculation of damages in initial damage disclosure premature in light of fact that exact method of calculation will be the subject of expert testimony). Energy Northwest believes that the information it will submit in its

initial disclosures will be more than sufficient for Defendant to pursue factual discovery in this case, and that the Government's speculation to the contrary is premature and unfounded.

If the Court would like the parties to further brief this issue, Energy Northwest will do so.

**Defendant's Position**

Energy Northwest has provided its proposed schedule for pre-trial activities in this case, in the event that the Court lifts the stay after December 31, 2004. However, the Government is not in a position based on the available information to agree with Energy Northwest's proposed schedule.

First and importantly, Energy Northwest has not made any provision in its schedule for the production of its claim. The schedule proposed by Energy Northwest appears to indicate that it will not provide its damages claim to the Government until September 1, 2005, when it will produce its expert reports. Then, Energy Northwest schedules a scant two months, until October 27, 2005, for the Government to conduct discovery on the damages claim, including conducting any audit that might be necessary, deposing Energy Northwest's experts, and producing responsive expert reports. Energy Northwest then proposes that it would provide rebuttal expert reports on December 1, 2005, and that the pre-trial schedule would commence on December 22, 2005. This schedule does not permit the Government the time it needs to efficiently and adequately investigate the potential damages claim that will ultimately be submitted by Energy Northwest.

The parties appear to disagree on the basic issue of the scope of the type of damages information that is necessary at the outset of discovery to allow the Government efficiently and effectively to conduct discovery, including any accounting-type audit that may be appropriate. Energy Northwest has ostensibly not provided for the exchange of any damages information at

the outset of discovery. This completely precludes the Government from conducting any evaluation of Energy Northwest's case and does not provide for efficient discovery. Without a detailed and definitive identification of the damages numbers that the plaintiff will claim and identification of the specific support in audit workpapers or company accounting records for those claimed dollars, we will be unable to conduct a focused audit of the plaintiff's claim. If we do not obtain such information at the outset of discovery, we will have no choice but to conduct a broad and expensive financial analysis and audit, much of which likely will become unnecessary when the actual detailed claim (through expert reports) is produced. The Government believes that until Energy Northwest provides the appropriate damages claim, determining a schedule is premature. Thus, in the event that the Court lifts the stay after December 31, 2004, the Government suggests that the Court then schedule a status conference at which time the parties may propose a schedule for the exchange of plaintiff's damages claim. The Government requests that, if the Court lifts the stay of proceedings in this case, the Court require Energy Northwest to produce its damages claim, which we can provide to our damages experts for assistance in identifying, based upon the amount and scope of information provided and the scope of the damages claim, the amount of discovery time that will be necessary to develop a response to it. Until the Government receives the necessary damages information from Energy Northwest, any schedule that it proposes would be based upon speculation as to the amount of time needed to adequately conduct discovery.

**(k) Are there any special issues regarding electronic case management needs?**

There are no special issues regarding electronic case management needs at this time.

**(l) Is there other information of which the court should be aware at this time?**

The parties have had discussions regarding the matters set forth in Appendix A ¶ 3. In light of the parties' different positions as to how this case should proceed (as set forth more fully in Section (d) above) and the Court's May 12, 2004 order, however, the parties have not exchanged the lists and other disclosures set out in RCFC 26(a)(1) and Appendix A ¶ 3. The parties do not believe there is any other information of which the Court should be aware at this time.

Respectfully submitted,

s/ Norman M. Hirsch
NORMAN M. HIRSCH
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 923-2782 telephone
(312) 840-7782 facsimile

COUNSEL FOR PLAINTIFF

Of counsel:

David A. Handzo
Jenner & Block LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 639-6000

William D. Heinz
David Jiménez-Ekman
Lisa M. Eddington
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Sharon A. Snyder
SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
(202) 616-0347 telephone
(202) 307-2503 facsimile

Of Counsel:
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

Dated: December 6, 2004