**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ENERGY NORTHWEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-0010C |
| v. | ) | |
| | ) | Chief Judge Damich |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION TO SET SCHEDULE FOR**
**DISCOVERY AND TRIAL ON DAMAGES**
**OR, IN THE ALTERNATIVE, FOR A STATUS CONFERENCE**

Plaintiff Energy Northwest, by its attorneys, hereby respectfully moves this Court for the entry of a scheduling order setting a discovery, pretrial and trial schedule for Energy Northwest's damages case or, in the alternative, for a status conference for the purpose of setting a schedule. Energy Northwest proposes a schedule, which would result in readiness for trial in September 2007, in paragraph 5 of this Motion. In support of this motion, Energy Northwest states:

1. On March 30, 2005, after a status conference regarding scheduling issues, the Court entered an order deferring discovery in this case pending a determination of the Government's liability for breach of contract. *See* March 30, 2005 Order. In the March 30 Order, Your Honor contemplated that the liability issue could be swiftly resolved following the Court's then-forthcoming decision in another case before Your Honor for breach of the Government's obligations under the Standard Contract for the removal of spent nuclear fuel ("SNF"), *Consumers Energy v. United States*, Case No. 02-1894. Your Honor contemplated summary briefing on an order to show cause why the same holding should not apply in this case. *Id.* Your Honor further indicated that the Court would hold a status conference following resolution of the liability issue to set a schedule for discovery. *Id.*

2. On April 29, 2005, the Court entered summary judgment against the Government on liability in *Consumers Energy v. United States*, 65 Fed.Cl. 364 (2005) and on May 9, 2005, Your Honor issued an Order To Show Cause ("OSC") in this case why the Court's decision in *Consumers Energy* should not apply here. *See* May 9, 2005 Order To Show Cause. On June 17, 2005, the Government filed a response to the OSC and a full-fledged affirmative motion for summary judgment, which required full briefing. After briefing, on January 30, 2006, the Court issued a published opinion denying the Government's summary judgment motion and finding the Government liable for breach of contract. *Energy Northwest v. United States*, 69 Fed.Cl. 500 (2006).

3. As counsel for Energy Northwest stated during the March 30, 2005 status conference, Energy Northwest's preferred approach for moving this case forward following a liability finding is to set a reasonable discovery schedule covering all remaining issues in the case – primarily the measure of Energy Northwest's damages – followed by a trial on all remaining issues in the case. In fact, counsel is aware that Your Honor has recently set just such a schedule in the *Dairyland Power Cooperative* SNF case**.** We continue to believe that this proposed framework presents the most efficient schedule for resolution of the case.

4. At the March 30, 2005 hearing, Your Honor raised the possibility of scheduling a separate trial to address the issue of the overall rate of acceptance of SNF required of the Government under the Standard Contract. Energy Northwest respectfully believes singling out the acceptance rate, one of many disputed fact issues bearing on Energy Northwest's damages claim, would not be productive for a number of important reasons:

a. *First*, there is no realistic possibility that resolving the acceptance rate issue would eliminate the need for a full-fledged damages trial. As Your Honor is aware from reading

the summary judgment briefs, the principal damage element incurred by Energy Northwest is the expense Energy Northwest has incurred in response to the Government breach to design and build an Independent Spent Fuel Storage Facility ("ISFSI"), purchase storage casks and transfer SNF to the ISFSI. As we demonstrated in response to the Court's order to show cause, Energy Northwest is entitled to recover those mitigation damages resulting from the Government's breach *even if* the Court were to use the Government's proffered rate of 900 metric tons of SNF per year. (Pl.s' Resp. at 6-9, 13-20; Larkin Decl. ¶¶ 19-20, Pl.'s Resp. App. at 359-360.) As stated in David Larkin's declaration, Energy Northwest could have avoided building the ISFSI – even if the Government had removed SNF at the artificially low 900 ton acceptance rate the Government claims would apply for the first ten years of the program under the Standard Contract – by adopting less expensive measures to expand and conserve pool capacity. (Larkin Decl. ¶ 19, Pl.'s Resp. App. at 359-360.) As a result, irrespective of the outcome of a separate "rate trial," the parties will still be litigating issues regarding the costs associated with the ISFSI at a damages trial.

b. *Second*, attempting to resolve the acceptance rate issue in the abstract could easily lead to the Court issuing an advisory opinion. Without looking at the facts related to each individual utility, it is not possible for the Court to know *what* it must decide about the overall acceptance rate outside of the context of a specific damages claim. That point is well illustrated by Judge Lettow's decision in the *Tennessee Valley Authority*, 69 Fed.Cl. 515 (2006). In that decision, Judge Lettow was able to fix a substantial damages award associated with the building of an ISFSI without deciding a comprehensive overall acceptance rate schedule. Similarly, in Judge Braden's recent decision on damages in the SNF case filed by Sacramento Municipal Utility District, Judge Braden was able to resolve relevant damage issues, again, like Energy

Northwest's claim, associated with expenses of building an ISFSI, without deciding the acceptance rate issue. *Sacramento Municipal Utility District v. United States*, No. 98-488C, 2006 WL 950218 (slip op. March 31, 2006).

c. *Third*, a special proceeding to address the acceptance rate issue has no realistic prospect of shortening the proceedings or reducing expense. Instead, we respectfully believe that two discovery periods, and two evidentiary proceedings, will by definition be substantially more costly for our client – and the Government – to litigate. Moreover, in both prior Standard Contract cases handled by the undersigned, we prepared for an omnibus trial, and the process of submitting alternative damages calculations based on different acceptance rate scenarios was quite manageable, and the expense was minor – especially compared to the possibility of two individual proceedings.

5. Accordingly, Energy Northwest respectfully proposes the following schedule – which is based on the discovery schedule we previously submitted to this Court, after accounting for the passage of time – for the remaining proceedings in this case:

| **Event** | **Date** |
|---|---|
| RCFC 26(a) Initial Disclosures | June 16, 2006 |
| Serve Initial Written Discovery & Document Requests | June 26, 2006 |
| Complete Fact Discovery | November 17, 2006 |
| Plaintiff's Expert Report(s) | December 22, 2006 |
| Responsive Expert Report(s) | February 16, 2007 |
| Rebuttal Expert Report(s) | March 16, 2007 |
| Complete Expert Discovery | April 13, 2007 |
| Commence RCFC Appendix A Pre-Trial Schedule | April 27, 2007 |

| **Event** | **Date** |
|---|---|
| Parties Ready For Trial | September 2007 |

6. Following earlier discussions and correspondence regarding a proposed schedule after this Court's January 30, 2006 Opinion, Energy Northwest proposed a slightly modified version of this schedule to the Government on April 27, 2006. (Ex. A.) On May 8, 2006, Counsel spoke to counsel for the Government who repeated the Government's previous objection to Energy Northwest's proposed schedule because it did not require Energy Northwest to provide the Government with a detailed "claim" (beyond that required by the Rules), which would then be "audited" by the Government prior to fact discovery.[1]

7. Energy Northwest remains unable to agree to the "claim" and "audit" procedure demanded by the Government before fact discovery. Energy Northwest has no intention of making its damages claims difficult to understand: Energy Northwest is prepared to make detailed Rule 26(a)(1) disclosures of its damages (including providing existing relevant accounting documents and summaries), prior to fact discovery. We are prepared to address whether our disclosures are adequate under the Rule when they are made, and we commit to working with the Government in good faith to provide the Government with any reasonable and justified requests for additional information or detail. However, we respectfully believe that the Government's request in this case for a "claim" and "audit" procedure, all before fact discovery, should be rejected for three reasons.

[1] Counsel to the Government also stated that, because of other SNF cases, the Government would prefer to start discovery in this case considerably later than Energy Northwest proposes in its schedule, although Counsel did not propose a specific alternative schedule. Presumably the Government will elaborate in its response to this Motion. Energy Northwest believes that the schedule it is proposing is entirely appropriate for a damages trial in a case filed over two years ago.

a. *First*, the Government's proposal to require a "claim" before discovery puts the proverbial cart before the horse. Rule 26(a)(2)(B) of this Court's Rules, like its counterpart in the Federal Rules of Civil Procedure, contemplates report(s) prepared by the parties' expert(s) which include "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions. . ." RCFC 26(a)(2)(B). In order to reach an opinion about the matters in this case, each of the parties' experts should have the benefit of full and complete discovery of the underlying facts rather than being forced to make assumptions about what the facts will ultimately prove to be after discovery. A period of fact discovery prior to expert disclosures is also implicit in RCFC 26(a)(2)(C), which provides that absent a schedule provided by the Court, expert disclosures should be made 70 days prior to the close of the discovery period. The implication of this provision is that expert disclosures should be made toward the end of the period set for discovery – not at the beginning.

b. *Second,* the Government is simply incorrect when it contends that it needs Energy Northwest to produce a "claim" in order to conduct reasonably focused discovery. Energy Northwest will make Rule 26(a)(1) damages disclosures which will include existing relevant accounting documents and summaries and, to the extent the Government cannot understand our damages claims based on those disclosures, the Government should follow the mechanisms provided in the RCFC and submit an interrogatory pursuant to RCFC 33. Indeed, the purpose of discovery, whether documentary, written, or oral, is to discover the exact contours of the other side's position – including its damages claims. The Government's assertion that it need not engage in any discovery until Energy Northwest's exact damages claims are precisely explicated for the Government is simply contrary to the letter, spirit, and nature of the discovery rules. In

that connection we note that the recent scheduling order entered by Your Honor in the *Dairyland* case did not require the plaintiff to submit a "claim," as the Government apparently requested in that case. Similarly, counsel is aware that in the *South Carolina Electric & Gas* case, in which counsel also represented the plaintiff, Judge Lettow also declined the Government's request to require the plaintiff to submit a "claim" before discovery and the parties were able to complete fact and expert discovery in a timely and orderly fashion.

c. *Third*, while the Government's request for a "claim" is really a premature dispute about whether our Rule 26(a)(1) damages disclosures will be adequate, the "audit" procedure requested by the Government is simply not authorized or prudent. The Rules of the United States Court of Federal Claims do not authorize discovery through "audit," or informal communications like those suggested by the Government. Rule 26(a) provides that in discovery, there will be initial disclosures, and then "methods to discover additional matter." Those methods are "depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property under RCFC 34 or 45(a)(1)(C), for inspection and other purposes; physical and mental examinations; and requests for admission." RCFC 26(a)(5). Neither an "audit" nor informal access to a party's agents is one of those methods. There is no other "catch-all" authority for ordering other methods of discovery. The Rules simply do not authorize the relief the Government seeks.

8. Consequently, Energy Northwest respectfully requests that the Court enter a schedule based on the schedule in paragraph 5 or, in the alternative, set a status conference at which a schedule will be discussed and entered.

Dated: May 9, 2006

Respectfully submitted,

s/ Norman M. Hirsch
NORMAN M. HIRSCH
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 923-2782 telephone
(312) 840-7782 facsimile

OF COUNSEL:

David A. Handzo
Jenner & Block LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 639-6000

William D. Heinz
David Jiménez-Ekman
Christopher Tompkins
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

*Attorneys for Plaintiff*

**CERTIFICATE OF FILING AND CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of May, 2006, a copy of the foregoing Plaintiff's Motion To Set Schedule For Discovery & Pre-Trial Proceedings. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Norman M. Hirsch

# **Exhibit A**

**From:** Hirsch, Norman M
**Sent:** Thursday, April 27, 2006 9:35 AM
**To:** Sharon.Snyder@usdoj.gov
**Cc:** Jimenez-Ekman, David; Tompkins, Christopher
**Subject:** Energy Northwest Case
**Attachments:** @

Sharon: As we discussed, I have attached a revised draft proposed schedule for the damages portion of the Energy Northwest case. Please let me know what comments or suggestions you have. Thanks. Norm

**Norman M. Hirsch**
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611-7603
Tel (312) 923-2782
Fax (312) 840-7782
NHirsch@jenner.com
www.jenner.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

<<

CHICAGO-#1397875-v1-proposed_schedule.DOC¤ (39.0KB)

(39.0KB)

>>

Proposed schedule for Energy Northwest Case

| **Event** | **Date** |
|---|---|
| RCFC 26(a) Initial Disclosures | June 2, 2006 |
| Serve Initial Written Discovery & Document Requests | June 12, 2006 |
| Complete Fact Discovery | November 17, 2006 |
| Three Alternative Dates For Status Conference | |
| Plaintiffs' Expert Report(s) | December 22, 2006 |
| Responsive Expert Report(s) | February 16, 2007 |
| Rebuttal Expert Report(s) | March 16, 2007 |
| Complete Expert Discovery | April 13, 2007 |
| Commence RCFC Appendix A Pre-Trial Schedule | April 27, 2007 |
| Parties Ready For Trial | September 2007 |