**(Chief Judge Damich)**
**No. 04-10C**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**ENERGY NORTHWEST,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO SET SCHEDULE FOR DISCOVERY AND TRIAL ON DAMAGES OR, IN THE ALTERNATIVE, FOR A STATUS CONFERENCE

---


**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**HAROLD D. LESTER, JR.**
**Assistant Director**

**SHARON A. SNYDER**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor**
**1100 L Street N.W.**
**Washington, DC 20530**
**Tele: (202) 616-0347**
**Fax: (202) 514-8624**

**Attorneys for Defendant**

**OF COUNSEL:**

**JANE TAYLOR**
**Office of General Counsel**
**U.S. Department of Energy**
**1000 Independence Ave., S.W.**
**Washington, D.C. 20585**


**June 9, 2006**

TABLE OF CONTENTS

PAGE

BACKGROUND . . . . . 1

SUMMARY OF DISCUSSION . . . . . 4

DISCUSSION . . . . . 6

I. THE ISSUES TO BE DETERMINED BY THE COURT . . . . . 6

1. Causation . . . . . 6

2. Rate Of Acceptance . . . . . 7

II. THE COURT SHOULD DECIDE THE SNF ACCEPTANCE RATE THAT IT WILL APPLY TO ANALYZE CAUSATION BEFORE IT CONSIDERS CAUSATION ISSUES . . . . . 10

III. ENERGY NORTHWEST SHOULD BE REQUIRED TO PROVIDE THE GOVERNMENT WITH DAMAGES SCHEDULES AT THE OUTSET OF DISCOVERY, AS THE COURT HAS REQUIRED IN SEVERAL OTHER CASES . . . . . 12

IV. THE GOVERNMENT SHOULD BE ALLOWED TO AUDIT ENERGY NORTHWEST'S DAMAGES CLAIMS . . . . . 13

V. THE SCHEDULE FOR PROCEEDINGS . . . . . 15

CONCLUSION . . . . . 17

# TABLE OF AUTHORITIES


CASES — PAGE(S)

Bluebonnet Savings Bank, FSB v. United States,
67 Fed. Cl. 231 (2005) . . . . . . . . . . 7

Bluebonnet Savings Bank, F.S.B. v. United States,
339 F.3d 1341 (Fed. Cir. 2003) . . . . . . . . . . 7

Bowsher v. Merck & Co.,
460 U.S. 824 (1983) . . . . . . . . . . 14

Coast Federal Bank, FSB v. United States,
48 Fed. Cl. 402 (2000) . . . . . . . . . . 7

Coastal Industries, Inc. v. United States,
32 Fed. Cl. 368 (1994) . . . . . . . . . . 14

Glendale Federal Bank, FSB v. United States,
239 F.3d 1374 (Fed. Cir. 2001) . . . . . . . . . . 7

Hydrothermal Energy Corp. v. United States,
26 Cl. Ct. 1091 (1992) . . . . . . . . . . 14

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . 12

J.D. Hedin Construction Co. v. United States,
197 Ct. Cl. 782, 456 F.2d 1315 (1972) . . . . . . . . . . 7

L. Rosenman Co. v. United States,
203 Ct. Cl. 727 (1973) . . . . . . . . . . 12

Neal & Co. v. United States,
17 Cl. Ct. 511 (1989) . . . . . . . . . . 14

North Slope Technical Ltd., Inc. v. United States,
14 Cl. Ct. 242, 264-68 (1988) . . . . . . . . . . 14

Pacific Gas & Electric Co. v. United States,
No. 04-0074C, 2006 WL 950207 (Fed. Cl. March 30, 2006) . . . . . . . . . . 12

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Sacramento Municipal Utility District v. United States,
70 Fed. Cl. 332 (2006) . . . . . . . . . 9

Skip Kirchdorfer, Inc. v. United States,
14 Cl. Ct. 594, 609 (1988) . . . . . . . . . 15

Southern Pacific Co. v. Darnell-Taenzer Lumber Co.,
245 U.S. 531 (1918) . . . . . . . . . 7

Tennessee Valley Authority v. United States,
69 Fed. Cl. 515 (2006) . . . . . . . . . 9

Wells Fargo Bank v. United States,
88 F.3d 1012 (Fed. Cir. 1996) . . . . . . . . . 7

Youngdale & Sons Construction Co. v. United States,
27 Fed. Cl. 516 (1993) . . . . . . . . . 14

REGULATIONS AND RULES

10 C.F.R. § 961.11, Arts. IV.B.5(a) & VI.B.1(a) . . . . . . . . . 3, 8

RCFC 34 . . . . . . . . . 15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENERGY NORTHWEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-10C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO SET SCHEDULE FOR DISCOVERY AND TRIAL ON DAMAGES OR, IN THE ALTERNATIVE, FOR A STATUS CONFERENCE

Defendant, the United States, respectfully submits this response to "Plaintiff's Motion To Set Schedule For Discovery And Trial On Damages Or, In The Alternative, For A Status Conference," which plaintiff, Energy Northwest, filed on May 9, 2006. For the reasons set forth below, the Government opposes Energy Northwest's proposed schedule for discovery and trial, but concurs in Energy Northwest's request for a status conference to discuss the issues that Energy Northwest's motion raises.

BACKGROUND

Energy Northwest requests that the Court set a schedule for discovery and trial in the above-referenced case that provides for a mere four months of fact discovery, followed by only four months of expert discovery. It provides that its expert reports will be produced on December 22, 2006, only after fact discovery and, presumably, any opportunity for the Government to take discovery upon the costs that Energy Northwest will be claiming in this litigation, and the defendant's expert reports will be exchanged on February 16, 2007. Energy Northwest states that it will not submit its claim before fact discovery and that it will not permit the Government to conduct an audit of its alleged costs. Energy Northwest further states that

there is no need to bifurcate the decision as to the rate to be applied here as the rate is not relevant.

The Government and Energy Northwest could not agree upon a proposed discovery schedule because the parties have fundamental disagreements regarding the manner in which this case should proceed and the equity of the parties' current positions with regard to information exchanges. As the Court is aware, there were 66 cases filed in this Court alleging breaches of the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," 58 of which remain pending either here or in the United States Court of Appeals for the Federal Circuit. Early in the spent nuclear fuel ("SNF") litigation, and throughout the development of several of those cases, the Government has produced an extensive database of documents responsive to SNF plaintiffs' discovery requests – with more than one million images produced to date on the Government's document production website – and has produced for deposition dozens of witnesses whose deposition testimony was transcribed. In fact, several Government witnesses, such as David Zabransky and Thomas Pollog, have individually sat for more 10 days of deposition each. In addition, many Government witnesses have testified in various SNF trials that other judges of this Court have conducted. All of these materials, with limited exceptions for materials that a particular judge has ordered restricted for distribution only in a particular SNF case, have long been available to Energy Northwest for its use in developing its case against the United States.

Conversely, the Government has nothing from Energy Northwest about the history of the performance of its Standard Contract, the damages that it intends to claim in this litigation, or the documents that either support or contradict those purported damages or any defenses that the

Government might have in this case. We do not have any documents from Energy Northwest's files relating to the development of the Standard Contract or of Energy Northwest's understanding of the parties' obligations under that contract during the course of performance. We do not have any documents relating to Energy Northwest's decision to construct a dry storage facility, also known as an Independent Spent Fuel Storage Facility ("ISFSI"), which Energy Northwest identifies in its motion as a damage that it will seek to claim here. See Motion, at 3 (May 9, 2006). Given that, based upon the order in which the Standard Contract requires the Department of Energy ("DOE") to accept SNF from among the various nuclear utility contract holders (on an "oldest-fuel-first" basis), see 10 C.F.R. § 961.11, Arts. IV.B.5(a) & VI.B.1(a), and given that Energy Northwest owns a comparatively new nuclear reactor when viewed against the other commercial nuclear reactors in the United States, Energy Northwest does not have any SNF acceptance allocations for many years after the start of the SNF acceptance program. If Energy Northwest already needs an ISFSI for excess SNF, it seems highly likely that, even if DOE had timely begun accepting SNF from the nuclear utility contract holders, Energy Northwest, in light of its place in the SNF acceptance queue, would still have needed its dry storage facility. Yet, we have no documents from Energy Northwest analyzing these needs, the costs associated with these needs, the support for any of these costs, or the necessity of these costs. In terms of information sharing and exchanges, the parties are in no way in a similar position. Energy Northwest has had extensive discovery available to it since soon after its case was filed more than two years ago, while the Government, when formal discovery commences in this case, will only be starting to obtain and digest information.

SUMMARY OF DISCUSSION

During a prior status conference in this case, the Court raised the idea of bifurcating this case into two stages: first, the parties would take discovery upon and the Court would resolve through a trial the issue surrounding the rate of SNF acceptance that the Court will apply in the "but for" world in assessing whether costs that Energy Northwest seeks as damages were actually "caused" by DOE's delay or whether, instead, Energy Northwest would necessarily have to have incurred those costs regardless of DOE's delay, and, second, applying that rate of SNF acceptance, the parties would take discovery upon and the Court would resolve the causation issues, along with any other damages issues. After considering this issue, we agree that resolution of the rate issue here first, prior to any proceedings on the causation and damages issue, is the preferable approach.[1] As discussed below, Energy Northwest has the burden of establishing that any claimed costs were caused by DOE's delay in beginning SNF acceptance. To meet that burden, Energy Northwest must establish the costs that it would have incurred in the "but for"world and compare them against the costs that it actually has been required to incur following DOE's delay. To the extent that Energy Northwest has not actually incurred any costs that it would not otherwise have incurred in the "but for" world, it has not incurred any incremental damages as a result of DOE's delay, precluding an award of damages. Because Energy Northwest cannot create a "but for" world without determining the rate at which DOE was obligated to accept its SNF, it would be inherently more efficient to evaluate one damages

[1] In prior submissions to the Court, we have discussed the reasons that a continued stay of proceedings in this case is appropriate, given the more advanced nature of the proceedings in some of the SNF cases. We continue to believe that a continued stay is appropriate here. Nevertheless, we address the issue of further proceedings in this case in this response, assuming that the Court does not agree that a continued stay is appropriate.

scenario, based upon an established "but for" world, rather than calculating a multitude of possible causation analyses based upon a multitude of potential "but for" worlds.

In any event, the schedule for discovery that Energy Northwest has proposed is inherently unfair, particularly in light of the fact that Energy Northwest has already had approximately two years to review the massive discovery that has already been produced by and obtained from the Government and that the Government has had no discovery from Energy Northwest. Under Energy Northwest's proposal, the Government will have only four months of fact discovery upon the entirety of Energy Northwest's damages claims. Further, under Energy Northwest's proposal, the Government would have extremely limited specific information regarding the costs associated with Energy Northwest's claims until after fact discovery is complete: it wants to defer production of any detailed cost disclosures to the Government until after the Government's fact discovery is finished. In earlier litigation with counsel for Energy Northwest, we saw the extreme inefficiencies that resulted from the discovery structure that Energy Northwest is now proposing. In Commonwealth Edison Co. v. United States, No. 98-621C (Fed. Cl.), we received only vague and ever-changing cost numbers and claims in initial disclosures that were amended on several occasions during discovery – amended in such a manner to render all of our work attempting to analyze claimed costs worthless and requiring us to start anew on analysis of the amended initial disclosures. We also had to attempt to speculate as to the specific cost claims that the plaintiff in Commonwealth Edison would articulate in its post-fact discovery expert reports, in which the plaintiff there, for the first time, identified all of its claimed damages. Because we did not obtain a detailed statement of claimed costs at the outset of the litigation, but, instead, only obtained ever-changing generalities about damages and

cost claims, we were required to expend significant time, cost, and energy investigating cost claims that we had to speculate the plaintiff there might make. We request that the Court eliminate the need for us to engage in that type of necessarily overly broad effort. By requiring Energy Northwest to identify, at the outset of discovery, the specific costs that it will be claiming – without repeated amendments changing the entire nature of its cost claims and the manner in which they are reviewed for proper support and causation – the Court would allow us to engage in discovery that is inherently more focused and cost-effective. In any event, the schedule that Energy Northwest has proposed would ensure that the Government has an insufficient amount of time for discovery. To the extent that the Court decides that discovery should proceed on all aspects of Energy Northwest's damages at this time, the Court should require Energy Northwest to provide the Government with detailed information about its proposed damages claims, at which point the Government can review it and then report as to the amount of time that will be necessary to take discovery upon those claims.

## DISCUSSION

## I. THE ISSUES TO BE DETERMINED BY THE COURT

### 1. Causation

Energy Northwest makes a number of assumptions in its motion that are simply incorrect. First, plaintiff claims that the only issue to be determined here is what damages are owed to it. Energy Northwest ignores a fundamental issue that must be decided before any damages award is made: whether DOE's delay in beginning SNF acceptance by January 31, 1998, caused any damage to Energy Northwest. Based on the discovery that we have seen to date in other SNF cases, we believe the Court's inquiry will end there because it appears causation does not exist in

this SNF case. To establish causation, Energy Northwest must establish that, in the "but for" world that DOE was obligated to satisfy under its contract, Energy Northwest would not have incurred the same costs that it has incurred. The well-established contract law test for causation in contract cases before this Court is whether the claimed damages were "attributable solely to," J.D. Hedin Constr. Co. v. United States, 197 Ct. Cl. 782, 808, 456 F.2d 1315, 1330 (1972), and, thus, "directly related" to, the breach. Wells Fargo Bank v. United States, 88 F.3d 1012, 1022 (Fed. Cir. 1996); see Southern Pac. Co. v. Darnell-Taenzer Lumber Co., 245 U.S. 531, 533-34 (1918). A plaintiff cannot recover as damages from the Government any costs that it would have incurred regardless of the breach of contract. See Bluebonnet Sav. Bank, F.S.B. v. United States, 339 F.3d 1341, 1345 (Fed. Cir. 2003) ("[t]o derive the proper amount for the damages award the costs resulting from the breach must be reduced by the costs, if any that the plaintiffs would have experienced absent a breach"). Generally, a plaintiff must establish a plausible "but-for world" as part of its causation analysis. See Bluebonnet Sav. Bank, FSB v. United States, 67 Fed. Cl. 231, 238-39 (2005) (plaintiffs must establish plausible "but-for world" as part of causation analysis); see Coast Fed. Bank, FSB v. United States, 48 Fed. Cl. 402, 403 n.25 (2000) (plaintiffs bear burden of propounding realistic "but for" scenario); Glendale Fed. Bank, FSB v. United States, 239 F.3d 1374, 1380 (Fed. Cir. 2001) (plaintiffs bear burden of demonstrating "what might have been . . . .").

2. Rate of Acceptance

To establish an appropriate "but for" world, Energy Northwest will have to establish the rate at which DOE was obligated to accept its SNF under the Standard Contract in the "but for" world. As the Court is aware, the Government was obligated to begin acceptance of SNF on

January 31, 1998, pursuant to the terms of the Standard Contract. The NWPA and the Standard Contract clearly indicate that the utilities are to bear the costs of such storage until the Government accepts their waste for disposal. 42 U.S.C. § 10131(b)(4); 10 C.F.R. § 961.11. Moreover, the contract clearly contemplated that the acceptance of waste would be based upon the age of the fuel, across all of the contract holders, with oldest fuel receiving priority. 10 C.F.R. § 961.11, Arts. IV.B.5(a) & VI.B.1(a). To determine damages, the Court will have to determine the scope of what the Government's obligation to accept SNF (that is, establish a minimum mandatory schedule of SNF acceptance mandated by the Standard Contract) so that it may identify those activities in which Energy Northwest has engaged and costs that Energy Northwest has incurred that, absent the delay, it would not have needed to engage or incur. Absent creation of that "but for" world, the Court cannot make any reasoned measure of which of Energy Northwest's activities and costs are incremental to any delay or which activities and costs, absent any delay, would still necessarily have been incurred.

To establish this schedule, the Court needs to determine the acceptance rate and then apply it against the priority ranking, the queue of utility fuel discharge. For example, if the Court were to determine that the annual rate of acceptance is 900 Metric Tons Uranium ("MTU"), after a specific ramp-up period, applied to damages claims in these cases, the Court would need to identify the specific SNF acceptance allocations that Energy Northwest would obtain based upon that rate and the "oldest fuel first" requirement for allocating acceptance positions. Based upon this schedule, the Court and the parties will know the total amount that the Government was obligated to have accepted from Energy Northwest within a specific time

period. Until the scope of this obligation is determined, the parties cannot analyze the damages accruing to Energy Northwest.

Energy Northwest seems to suggest that the Government is responsible for all of its costs of additional storage requirements. Motion, at 2-3. First, there is no proof of such an obligation. Second, Energy Northwest completely ignores the importance of the rate of acceptance to a determination of the obligations of DOE here. The effect of the Government's delay in beginning SNF acceptance beginning in 1998 cannot be assessed against Energy Northwest's alleged storage requirements until the size and scope of the Government's obligation is determined. Until the Court determines the rate of acceptance, it cannot determine what the parties' obligations are and what, if any, damages have been incurred by Energy Northwest as a result of DOE's delay.

Energy Northwest further seems to suggest that the actual rate may not matter to a final determination of the amount of damages that it has incurred and that, even if the Court applies a rate of 900 metric tons of uranium ("MTUs"), Energy Northwest has incurred damages. However, the Court cannot decide the scope of recoverable damages unless it compares the costs in the "but for" world against those in the "actual" world. To the extent that Energy Northwest relies upon this Court's decisions in Sacramento Municipal Utility District v. United States, 70 Fed. Cl. 332 (2006), and Tennessee Valley Authority v. United States, 69 Fed. Cl. 515 (2006), to assert that no acceptance rate determination will be necessary in this litigation, those decisions do not and cannot alter the requirement, as previously discussed, that the plaintiff prove the "but for" world and prove that, compared with that "but for" world, the costs that it seeks to recover are incremental to the Government's brief. Energy Northwest has not identified how this Court,

in this case, could avoid identifying an appropriate "but for" world in evaluating causation here. The acceptance rate issue is plainly at issue and necessary to any judgment in Energy Northwest's favor in this case.

## II. THE COURT SHOULD DECIDE THE SNF ACCEPTANCE RATE THAT IT WILL APPLY TO ANALYZE CAUSATION BEFORE IT CONSIDERS CAUSATION ISSUES

As discussed above, the rate of SNF acceptance is one of the key factors that the Court will have to consider in determining causation for any damages that Energy Northwest claims in this litigation. In accordance with the Court's suggestion that the parties consider whether it would be beneficial to decide that issue here before evaluating causation issue, we believe that it should be resolved first in this case. In fact, the Court will have to resolve that issue before it resolves the causation issue. The Court cannot logically rule upon causation until it has first identified the baseline "but for" world against which it will evaluate causation. Further, any trial on the rate of acceptance issue would likely be relatively short, presumably no more than a total of three or, at most, four days. By deciding the rate issue first, the parties can then focus their causation analysis upon a specific "but for" world, rather than having to speculate upon causation analyses under a variety of possible "but for" worlds. Further, depending upon the Court's resolution of the rate of acceptance issue, that finding may provide the basis for summary judgment upon remaining causation issues in the case. For example, if, in the "but for" world, Energy Northwest's storage pool would have run out of space before DOE began SNF acceptance from Energy Northwest, Energy Northwest would clearly have to have built the ISFSI the costs of which it now states that it will seek to recover in this litigation. Resolution of that issue could potentially render the causation issue ripe for summary adjudication if, by

comparing Energy Northwest's acceptance allocations under that rate against the space available in Energy Northwest's existing wet storage pool and its SNF output projections and plans, Energy Northwest would clearly have run out of wet pool storage space in the "but for" world before DOE began accepting Energy Northwest's SNF. To promote this efficiency, the Court should proceed with the rate issue, followed by any causation and damages issues. To the extent that the Court agrees that this approach to case proceedings is appropriate, we are more than willing to discuss an appropriate schedule for discovery upon this issue at any status conference that the Court convenes.

## III. ENERGY NORTHWEST SHOULD BE REQUIRED TO PROVIDE THE GOVERNMENT WITH DAMAGES SCHEDULES AT THE OUTSET OF DISCOVERY, AS THE COURT HAS REQUIRED IN SEVERAL OTHER CASES

Rather than provide its actual claim of damages to the Government so that the Government can proceed with fact discovery based upon an analysis of that claim, Energy Northwest proposes instead that it submit initial disclosures to the Government. Although Energy Northwest claims that "it has no intention of making its damages claims difficult to understand," Motion, at 5, Energy Northwest's insistence that we serve detailed discovery requests and engage in extensive depositions simply to learn the basis and scope of the damages that Energy Northwest will be claiming in this litigation is inefficient and is not cost-effective, particularly in this case where the plaintiff apparently expects to charge the Government for the entirety of the construction costs of a presumably costly dry storage facility.

Rather than require the Government to speculate as to the costs that the plaintiff will seek to recover and to attempt to locate through time-consuming discovery all documentary support for the costs that might be claimed, the Court in several other SNF cases has required the

plaintiff to begin the discovery process by providing the Government with damages schedules and summaries, supported by the items and figures from books of account or other records that the plaintiff expects to introduce as evidence in the case, as well as any related estimates or calculations. See, e.g., Attachment 1 (Pretrial Order, Carolina Power & Light Co. v. United States, No. 04-0037C (Fed. Cl.)); Attachment 2 (two orders, Wisconsin Electric Power Co. v. United States, No. 00-697C (Fed. Cl.)). This procedure was utilized by this Court's predecessor, the Court of Claims, repeatedly to ensure that the Government had adequate notice of the plaintiff's claims and could take efficient discovery upon those claims in a cost-effective manner. See, e.g., L. Rosenman Co. v. United States, 203 Ct. Cl. 727, 728 (1973) (describing pretrial procedure utilized in Court of Claims).

Here, there is no reason why Energy Northwest cannot prepare and provide us with appropriate damages schedules and summaries, as well as identification of supporting documentation, ready to provide at the outset of discovery. Energy Northwest filed its complaint on January 7, 2004. Energy Northwest has had ample time and opportunity to determine what its claim is and the documents that support the claim. Further, as the United States Court of Appeals for the Federal Circuit recognized in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), damages in these partial breaches only run through the date upon which the plaintiff filed its complaint. Id. at 1366-67; see Pacific Gas & Elec. Co. v. United States, No. 04-0074C, 2006 WL 950207 (Fed. Cl. March 30, 2006) ("court interprets these directives to mean that plaintiff may seek damages only through the date of an amended complaint"). Energy Northwest provides no good reason regarding why it should not be required to provide the Government with detailed damages summaries and schedules, identifying

its damages being claimed through the date upon which it filed its complaint in 2004, so that we may conduct an appropriate audit analysis to determine whether all of the costs included are reasonable and supportable. Energy Northwest's assertion that it simply does not want to conduct discovery in that manner provides no basis for the increased costs and time that the Government will have to incur to extract the same information from Energy Northwest through affirmative discovery.

Our experiences in other SNF cases in which damages schedules and summaries were not required early in discovery informs our request here. In cases in which plaintiffs have provided us only with initial disclosures, the initial disclosures have been created by the plaintiff and have been routinely updated with new numbers and even new categories of damages throughout fact discovery. When the expert then produces his report, following the close of fact discovery, the numbers and even the categories of costs are almost always different. The "claim," thus, becomes a moving target, and much of the discovery that is conducted relating to the initial disclosures becomes irrelevant. When the expert report is then produced, the Government is left to scramble to determine what fact discovery has not been completed because the expert reports often do not correspond with the initial disclosures. At that point, it is often too late to rectify the problem because the time remaining for expert discovery does not allow sufficient time for adequate additional discovery. The schedule that Energy Northwest has proposed is fundamentally prejudicial to the Government and an inefficient way of proceeding.

## IV. THE GOVERNMENT SHOULD BE ALLOWED TO AUDIT ENERGY NORTHWEST'S DAMAGES CLAIMS

Energy Northwest states that it will not permit any audit of its costs by the Government and that no audit is permitted by the Court's rules. Motion, at 6-7. However, an audit of the

costs that Energy Northwest asserts are absolutely necessary so that we can determine whether the costs are reasonable under the circumstances, whether the costs have actually been expended, and whether the costs are actually tied to the project at issue in the case.

As the Court is aware, and indeed acknowledged in the status conference on March 30, 2005, the Government must conduct an audit of costs to ensure that any payment to a plaintiff is correct. The United States Supreme Court has recognized that, with regard to a claim against the public fisc, the public interest is served by an audit. Bowsher v. Merck & Co., 460 U.S. 824, 841 & n.17 (1983); see Neal & Co. v. United States, 17 Cl. Ct. 511, 514 (1989) ("an audit is a useful tool at trial in gauging the sufficiency of a claimant's proof."); Coastal Indus., Inc. v. United States, 32 Fed. Cl. 368, 377 (1994) ("[t]he court places significant weight on the detailed audits of the DCAA"); Youngdale & Sons Constr. Co. v. United States, 27 Fed. Cl. 516, 554-60 (1993); North Slope Technical Ltd., Inc. v. United States, 14 Cl. Ct. 242, 264-68 (1988). This Court has noted on numerous occasions that trial testimony provided by an auditor was persuasive and helpful. See, e.g., Hydrothermal Energy Corp. v. United States, 26 Cl. Ct. 1091, 1096 (1992) (Court rejected testimony by plaintiff's expert because it "was disputed by the government auditor"); id. at 1098 n.9 (Court rejected auditor's position, but noted that the auditor was "generally a highly credible witness who worked conscientiously and diligently in a difficult situation"); Neal, 17 Cl. Ct. at 518 (trial testimony demonstrated DCAA auditor was "thorough, conscientious, and exact"); Skip Kirchdorfer, Inc. v. United States, 14 Cl. Ct. 594, 609 (1988) (Court accorded "great weight" to testimony by DCAA auditor); North Slope Technical Limited, Inc. v. United States, 14 Cl. Ct. 242, 265 (1988) ("the court gives [the DCAA auditor] high marks for competence and credibility").

Rule 34, "Production of Documents and Things And Entry Upon Land for Inspection and Other Purposes," provides that a party must permit the opposing party access to its property for the purposes of inspection of the property "or any designated object or operation thereon" and, further, must produce and permit the party making the request, "or someone acting on the requestor's behalf, to inspect and copy" designated documents, including "writings" and "other data compilations:"

> Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on such party's behalf, to inspect and copy, any designated documents (including writings . . . and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form) . . . which are in the possession, custody, or control of the party upon whom the request is served; or (2) to permit entry upn designated land or other property in the possession of control of the other party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of RCFC 26(b).

RCFC 34(a). Thus, Rule 34 provides the Government with the right to gain access to Energy Northwest's financial records and the right to use a third party, such as outside accounting experts, to perform the inspection of the plaintiff's records. We are obliged to ensure that any damages claimed against the Government are adequately reviewed to ensure that they are fair and accurate.

V. <u>THE SCHEDULE FOR PROCEEDINGS</u>

The schedule that Energy Northwest has proposed is too ambitious and does not provide the Government with the time needed to accomplish fact and expert discovery in a measured and orderly fashion. Given the number of other SNF cases before the Court, and the scarce resources

of the Court and the Government, trying to shoehorn fact discovery into only four months[2] and expert discovery into four months is neither judicious or fair.[3] The facility at issue here is in Washington state. If depositions are taken there, travel back and forth must be factored into the discovery schedule. Further, these SNF cases can be complex. They involve technical, economic, and accounting issues that can take time to analyze and consider. A schedule that builds in sufficient time to accomplish these tasks should not prejudice this plaintiff.

However, before the Court can set a schedule, it must first determine how it will proceed. The Government requests that the Court schedule a status conference so that we may discuss the manner in which this case should proceed, including the possible bifurcation of the rate issue from subsequent causation analyses and the submission by Energy Northwest of damages schedules and summaries, with supporting documentation, at the outset of discovery. As another possibility, the Court in Duke Power Co. v. United States, No. 98-485C (Fed. Cl.), required the plaintiff to provide the Government with its damages schedules and summaries before creating a schedule for further proceedings. See Attachment 3 (Duke Power Co. v. United States, No. 98-485C, slip op. at 1 (Fed. Cl. March 7, 2005)). Specifically, after the plaintiff submitted these schedules and summaries, the Government, having reviewed them, would have a better understanding of the scope of the damages to be claimed in the case; having seen the scope of

---

[2] The plaintiff's initial production of documents in response to a document production request served on the first day of discovery can take two to three months. With the schedule that Energy Northwest proposes here, the Government would have barely enough time to review documents before fact discovery closes. Further, additional time must be built into this schedule because most of the depositions will likely be taken in Washington state, where none of the counsel for the parties is located.

[3] Energy Northwest proposes that it submit its expert report on December 22, 2006, with the Government's expert reports due on February 16, 2007.

documentation provided with the schedules and summaries, would have a better idea of the amount of additional documentation likely to be necessary for a thorough analysis of those damages submissions; and would be in a better position to identify a schedule for the remainder of discovery. In discussing these issues, and after the Court decides the best manner in which to proceed in this case, it may be most efficient to require that type of detail from Energy Northwest before scheduling further proceedings. In any event, we believe it most appropriate to discuss these issues with the Court during the status conference.

## CONCLUSION

For the foregoing reasons, the Government opposes Energy Northwest's proposed schedule for discovery and trial on damages, but concurs in the appropriateness of a status conference with the Court.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Sharon A. Snyder
SHARON A. SNYDER
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
ATTN: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: 202-616-0347
Fax: 202-307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

June 9, 2006

# ATTACHMENT 1

# In the United States Court of Federal Claims

No. 04-0037C

(Filed: March 23, 2006)

```
****************************************** *
                                           *
CAROLINA POWER & LIGHT COMPANY,            *
FLORIDA POWER CORPORATION,                 *
                                           *
                    Plaintiffs,            *
                                           *
      v.                                   *
                                           *
THE UNITED STATES,                         *
                                           *
                    Defendant.             *
                                           *
*****************************************  *
```

PRETRIAL ORDER ON DAMAGES

For the damages disclosure required by RCFC 26(a)(1)(C), and, subsequently, for exhibits proposed in accordance with RCFC Appendix A, paragraph 13(a), the parties shall adhere to the following procedures:

(a) On or before August 21, 2006, any party with a claim for damages shall provide to the other party any and all items and figures from books of account or other records which are to be introduced into evidence in this matter, and any calculations or estimates derived therefrom. The items and figures shall be set forth on separate schedules or summaries, as further described in paragraph (b) below.

(b) Any schedule or summary provided pursuant to paragraph (a) above shall be accompanied by a statement describing the source(s) for the items or figures listed (*e.g.,* ledgers, journals, payrolls, invoices, checks, time cards, etc.), the location(s) of the source(s), the time during the discovery period when the source(s) may be examined or audited by the opposing party, the name and address of the person(s) who prepared each schedule or summary and who

shall be made available to the opposing party during an examination or audit of the source material to provide information and explanations required for verification of the listed items or figures.

(c) On or before May 22, 2007, a party who receives schedules or summaries pursuant to paragraph (a) shall arrange for a complete examination or audit as desired of the source material, preferably by person(s) available to provide testimony in any ensuing evidentiary proceedings. By the specified date above, the receiving party shall provide opposing counsel with a statement admitting or denying the accuracy or admissibility of each schedule or summary (or portion thereof) submitted pursuant to paragraph (a). The statement shall address each item and figure submitted, and shall set forth the results of the examination or audit of the source material. The statement shall include the reason(s) for any denial of accuracy as to specified items or figures, citing generally accepted accounting principles or regulations where applicable, and the reason(s) for any denial of admissibility as to specific items or figures, keyed to the applicable Federal Rule(s) of Evidence. Any item or figure not denied as to accuracy or admissibility by the date specified above shall be deemed not contested.

(d) Proposed trial exhibits exchanged pursuant to RCFC Appendix A, paragraph 13(a), and listed pursuant to RCFC Appendix A, paragraph 16, shall include schedules setting forth all items and figures from books of account or other records, and calculations or estimates derived therefrom, which a party proposes be introduced into evidence with appropriate identification of those specific scheduled items, figures, calculations and estimates thereon which, on the basis of pretrial examination or audit and exchanges are contested as to accuracy or admissibility, so that evidentiary proceedings as to items and figures shall thereafter be limited only to those identified as contested.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge

# ATTACHMENT 2

# In the United States Court of Federal Claims

No. 00-697 C
(Filed November 24, 2004)

******************************
WISCONSIN ELECTRIC *
POWER COMPANY, *
*
Plaintiff, *
*
v. *
*
THE UNITED STATES, *
*
Defendant. *
******************************

**ORDER**

The proposed pretrial schedules submitted by the parties have been considered and the differences noted. One difference involves expert discovery in relation to any opinions which may form the basis for, or computation of, specific damage amounts claimed by plaintiff.

Based on past experience it is assumed that the development and presentation of damage evidence requires the services of experts. These can be employees or officers of the plaintiff or outside experts such as accountants, economists or experts in various other fields. For example, were estimated insurance costs to be claimed, the underlying support might involve expert opinion obtained from an insurance broker. The damage schedules to be provided are to include references to source material required for verification activity. If the source includes expert opinion, this opinion must be disclosed. This is not intended to require complete "expert reports" from persons, not intended to be called as witnesses, as a part of fact discovery. Of course, such reports may be submitted. However, to follow the insurance cost example, in any event, a broker's opinion, on which an insurance cost claim is based, would be disclosed as comprising a part of the source supporting the scheduled cost item. Defendant may determine to interview or depose the broker as a part of its

verification activity. The same approach would apply to "in-house" experts whose opinions provide source support for damage items.

Obviating unnecessary time and expense devoted to pretrial activity benefits all concerned, and the cooperation of the parties in damage schedule presentation and verification activity during pretrial will produce substantial benefits in this respect. During verification activity, questions will undoubtedly arise which can best be resolved by informal communications between the parties. This approach is encouraged. However, any impasse which requires court participation for resolution should be promptly presented, by telephone conference call, requested status conference, or otherwise, so that pretrial proceedings can efficiently proceed to a conclusion.

Accordingly, consistent with the above discussion and the parties' helpful reports, it is **ORDERED** that the following schedule shall govern pretrial proceedings in this litigation:

(1) February 14, 2005

(a) Completion of initial disclosures.

(b) Commencement of fact discovery.

(c) Disclosure of plaintiff's damage schedules, including source support items.

(d) Commencement of defendant's verification activity upon receipt of plaintiff's damage schedules.

(2) August 15, 2005

(a) Defendant's submissions responding to plaintiff's damage schedules.

(3) October 17, 2005

(a) Completion of fact discovery.

(4) November 14, 2005

(a) Plaintiff's expert reports, including the information specified in RCFC 26, with the reports prepared in a format which will enable their use as direct testimony should it be determined to so proceed with any or all expert witnesses.

(5) December 15, 2005

(a) Defendant's expert reports, including the information specified in RCFC 26, with the reports prepared in a format which will enable their use as direct testimony should it be determined to so proceed with any or all expert witnesses.

(6) February 15, 2006

(a) Completion of expert discovery.

(7) March 15, 2006

Exchange of Appendix A, ¶¶ 13(a) and (b) information.

(8) April 14, 2006

(a) Plaintiff's Appendix A, ¶ 14(a) submission.

(9) May 12, 2006

(a) Defendant's Appendix A, ¶ 14(b) submission.

(10) June 16, 2006

(a) Pretrial conference – time to be set by further order.

(11) July 14, 2006

(a) Trial to commence – time and duration to be set by further order.

s/ James F. Merow
James F. Merow
Senior Judge

Lester # Crawford, K

RECEIVED 2002 NOV 12 P 1:27 CASE PROCESSING UNIT CIVIL DIVISION/OM!

# In the United States Court of Federal Claims

No. 00-697C

(Filed November 8, 2002)

FILED NOV 8 2002 U.S. COURT OF FEDERAL CLAIMS

*******************************
WISCONSIN ELECTRIC POWER COMPANY, Plaintiff,

v.

THE UNITED STATES, Defendant.
*******************************

## ORDER

Plaintiff's motion filed November 1, 2002, seeks a scheduling conference for the purpose of scheduling all remaining proceedings in the case.

By Order, filed November 8, 2002, completion of briefing on defendant's partial summary judgment motions filed November - December, 2001 was scheduled. Rulings on these motions could have an impact on the nature and extent of future proceedings. Accordingly, it may be more efficient if pretrial activity, in whole or in part is deferred to await rulings on pending dispositive motions or keyed to commence after these rulings.

Whether, in the discovery undertaken to date, the initial disclosures required by RCFC 26(a) have occurred is within the knowledge of counsel, but, if not, these disclosures should now occur.

For the damages disclosure required by RCFC 26(a)(1)(C) and, subsequently, for exhibits proposed in accord with ¶ 13(a) Appendix A, the following procedures shall be followed:

(a) Any and all items and figures from books of account or other records, which are to be introduced in evidence in this matter, and any calculations or estimates derived therefrom, shall be set forth on separate schedules or summaries and so provided and disclosed to opposing counsel pursuant to RCFC 26(a)(1)(C) or during the damages discovery period;

(b) Any schedule or summary provided pursuant to (a) shall be accompanied by a statement describing the source(s) for the items or figures listed (ledgers, journals, payrolls, invoices, checks, time cards, etc.), the location(s) of the source(s), the time, during the damages discovery period, when the source(s) may be examined or audited by the opposing party, the name and address of the person(s) who prepared each schedule or summary and who shall be made available to the opposing party during an examination or audit of the source material to provide information and explanations required for verification of the listed items or figures;

(c) Upon receipt of a schedule or summary pursuant to (a) receiving counsel shall provide for a complete examination or audit of the source material, preferably by a person or persons available to provide testimony in any ensuing evidentiary proceedings, and thereafter receiving counsel shall provide opposing counsel with a statement, during the damages discovery period, admitting or denying the accuracy or admissibility of each schedule or summary (or portion thereof) submitted by opposing counsel, which statement shall address each item and figure submitted and reflect and set forth the results of the examination or audit of the source material from which the submissions were derived and shall set forth the reason(s) for any denial of accuracy as to specific items or figures, citing generally accepted accounting principles or regulations where applicable, and the reason(s) for any denial of admissibility as to specific items or figures, keyed to the applicable Federal Rule(s) of Evidence;

(d) Proposed trial exhibits exchanged pursuant to ¶ 13(a), Appendix A and listed pursuant to ¶ 16, Appendix A, shall include schedules setting forth all items and figures from books of account or other records, and calculations and estimates derived therefrom, which a party proposes be introduced in evidence with appropriate

identification of those specific scheduled items, figures, calculations and estimates thereon which, on the basis of pretrial examinations or audit and exchanges are contested as to accuracy or admissibility, so that evidentiary proceedings as to items and figures shall thereafter be limited to those identified as contested.

Prior to the court scheduling a conference or issuing an order pursuant to RCFC 16(b) and ¶ 7, Appendix A, counsel are expected to meet to formulate, and then submit a proposed plan(s) for accomplishing the disclosures, exchanges and pretrial submissions contemplated by RCFC 26 and Appendix A.

Accordingly, it is **ORDERED**:

(1) Counsel shall confer for the purpose of formulating a proposed plan(s) to accomplish the disclosures, exchanges and submissions required by RCFC 26 and Appendix A;

(2) On or before January 10, 2003, counsel shall file a Joint Preliminary Status Report, pursuant to Appendix A, ¶ 4, which shall include the proposed plan(s) formulated pursuant to (1);

(3) "Items" and "figures" evidence shall be disclosed, scheduled, verified and set forth as detailed above;

(4) Except as herein **GRANTED**, plaintiff's motion for a scheduling conference at this time is, otherwise, **DENIED**.

James F. Merow
Senior Judge

# ATTACHMENT 3

# In the United States Court of Federal Claims

No. 98-485C

Filed: March 7, 2005

| | |
|---|---|
| DUKE POWER, A Division of DUKE ENERGY CORP., | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

---

ORDER

REGARDING INITIAL PRETRIAL PROCEDURES

---

As agreed to by the parties during the telephone conference held on March 3, 2005, on or before July 1, 2005, plaintiff shall provide defendant with a claim letter identifying all costs that plaintiff is seeking to recover in this action. The letter shall be detailed and accompanied by sufficient documentation to assist defendant in the conduct of an audit.

A telephone conference is scheduled for 2:30 p.m. on Thursday, July 21, 2005. The court will initiate the call.

s/John P. Wiese
John P. Wiese
Judge

CERTIFICATE OF FILING

I hereby certify that on June 9, 2006, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO SET SCHEDULE FOR DISCOVERY AND TRIAL ON DAMAGES OR, IN THE ALTERNATIVE, FOR A STATUS CONFERENCE" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Sharon A. Snyder