**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ENERGY NORTHWEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-0010C |
| v. | ) | |
| | ) | Chief Judge Damich |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION TO SET SCHEDULE FOR DISCOVERY AND TRIAL**
**ON DAMAGES OR, IN THE ALTERNATIVE, FOR A STATUS CONFERENCE**

Plaintiff Energy Northwest, respectfully submits its reply to Defendant's Response To Plaintiff's Motion To Set Schedule For Discovery And Trial On Damages Or, In The Alternative, For A Status Conference.

Energy Northwest's motion for a discovery schedule proposes a straightforward and traditional way to resolve the only issue left in this case: the magnitude of Energy Northwest's damages resulting from the Department of Energy's ("DOE") *adjudicated* breach of the Standard Contract. Energy Northwest's approach – initial disclosures, fact discovery, expert disclosures, expert discovery and trial – is the way the Rules of this Court authorize for determining Energy Northwest's non-Contract Disputes Act claim. As importantly, Energy Northwest's suggestion is the simplest, quickest and most efficient way to resolve Energy Northwest's individual damages claim for breach of the Standard Contract. It has also been successfully employed by a number of the Judges of this Court to handle SNF cases resulting in either trials or settlements.

Instead of negotiating the particulars of a schedule authorized by the Rules to obtain the discovery it thinks necessary, the Government proposes a variety of cumbersome, lengthy and expensive procedures it proposes to take the place of those authorized by the Rules and proposed by Energy Northwest. The only thing these procedures have in common is that they are *certain*

to delay ultimate resolution of this case and increase the expense of its resolution, and could well result in this Court's determination of issues it would otherwise not need to reach. Energy Northwest was and is prepared to negotiate the length of any phase in its proposed schedule to attempt to accommodate the trial schedules of Government lawyers and to acknowledge that, at this point, the Government needs more information from Energy Northwest than vice versa. However, as set forth below, the Government has not provided any good reason to adopt the procedures it requests.

## I. The Discovery That The Government Has Already Provided In Other SNF Cases Is No Reason To Vary The Procedures In This Court's Rules.

The Government spends considerable time (at 2-3, 5-6) explaining the amount of discovery it has provided in other SNF cases and describing the discovery that it needs from Energy Northwest. The Government's assertion that Energy Northwest needs less discovery from the Government than vice versa is not a reason to order one of the alternative procedures suggested by the Government. Moreover, one of the principal reasons that Energy Northwest has moved to set a schedule in this case is to establish the framework provided by the Court's rules so that the Government can indeed begin the discovery that it asserts is necessary here. And Energy Northwest's proposed schedule certainly contemplates that its attorneys already have access to and will be able to use discovery, including documents and depositions from other SNF cases, as if the discovery had occurred in this case. We believe that the length of the schedule we propose is appropriate because Energy Northwest's damages claims (principally the costs of building an ISFSI and purchasing and loading casks) are focused and will not require complicated discovery. However, if the Government believes it needs more time to complete discovery, Energy Northwest is willing to discuss any reasonable modification of the schedule. However, that is no reason to adopt the other structures proposed by the Government.

## II. Bifurcation Of The Acceptance Rate Issue Here Fails To Provide Any Benefit And Will Only Delay Resolution Of The Case.

The Government's suggestion (at 7-10) that the Court schedule a wholly separate period of discovery and trial to determine "the acceptance rate" fails to address the points we made on this issue in our Motion. As we demonstrated (Mot. ¶ 4a-c), a special, extra, bifurcated proceeding on "the acceptance rate" is a bad idea because (i) there is no realistic possibility of eliminating the need for a full-fledged trial, (ii) attempting to resolve the acceptance rate in the abstract could result in the issuance of an advisory opinion, and (iii) a special "acceptance rate" proceeding will by definition increase the length and expense of these proceedings. The Government says nothing in its brief to address these points, and we will not repeat them here. By themselves, these points warrant rejection of the Government's suggested approach.

Instead of addressing these points, the Government (at 6-10) focuses on the issue of causation and the purported role of the acceptance rate in causation. Energy Northwest does not dispute that causation will be an issue for trial (although we disagree with the standard for causation articulated by the Government, and will make a detailed demonstration on that issue at the appropriate time[1]). Similarly, Energy Northwest does not dispute the acceptance rate may play a role in the causation analysis in this case. But it does *not* follow from that fact that the acceptance rate issue should receive an expensive and outcome-delaying bifurcated discovery and trial period. To the extent it is relevant, the acceptance rate issue is no more or less

---

[1] Energy Northwest disagrees with the Government's suggestion (at 6) that Energy Northwest must prove causation by constructing an elaborate "but for" model, which will depend upon the hypothetical operation of the spent fuel program for decades after 1998. Instead, as the Federal Circuit articulated in a spent fuel case, the causation issue here is whether DOE's adjudicated breach here was a *substantial factor* in establishing the damages. *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005) (citing *Energy Capital Corp. v. United States,* 302 F.3d 1314 (Fed. Cir. 2002)); *Tennessee Valley Authority v. United States*, 69 Fed.Cl. 515, 523 (2006) ("*TVA*").

important than any of the other issues that will have to be resolved at a damages trial. Most importantly, the acceptance rate issue is fundamentally different than the issue on which bifurcation is most commonly considered – liability – because there is *no realistic prospect that this case could be terminated* after a proceeding on the acceptance rate alone. The fact that an issue may have to be considered at the damages trial simply does not justify bifurcation on that issue absent a showing of a potential (indeed, a likely) gain in efficiency.

The Government, without citing any supporting authority, speculates that an acceptance rate finding in the Government's favor "may provide the basis for summary judgment upon remaining causation issues in the case." (Resp. at 10.) But this argument simply rehashes the Government's previous summary judgment argument that Energy Northwest might not be able to establish damages at a 900 metric ton acceptance rate. (*See, e.g.,* Def. Resp. Order to Show Cause and Mot. Summary Judgment at 3-4.) In its response to the Government's motion, Energy Northwest refuted that argument by providing evidence that Energy Northwest could have avoided building dry cask storage, even at the artificially low acceptance rate advocated by the Government by employing less expensive alternatives to building an ISFSI. (Pl.'s Resp. to Order to Show Cause at 6-9, 13-20; Larkin Decl. ¶¶ 19-20, Pl.'s Resp. App. at 359-360.)

Moreover, even if this Court were to determine the but-for acceptance rate, the parties would *still* need to engage in discovery and present evidence regarding all the other causation issues associated with Energy Northwest's damage case to allow for ultimate resolution of the case. Those causation issues, some of which the Government itself asserts are relevant, include: (1) the capacity of Energy Northwest's spent fuel pool; (2) Energy Northwest's SNF discharge projections; (3) the various SNF storage options that were available to Energy Northwest including the options if the Government had performed at any rate; and (4) the reasons that

Energy Northwest chose to build the ISFSI. The Government response does not explain, nor could it, how it could be more efficient to bifurcate discovery and trial by picking out a single non-dispositive causation issue – the acceptance rate – from all of the other causation and other damage issues, as opposed to conducting discovery and trial regarding all relevant damage issues.[2] Energy Northwest respectfully submits that it is not necessary to delay discovery into these other matters pending a trial on a single, non-dispositive issue.

And the Government's suggestion (at 9-11) that the Court should decide the acceptance rate issue first because "the parties cannot analyze the damages accruing to Energy Northwest" until that issue is resolved is simply incorrect. The undersigned counsel managed to do so in two prior Standard Contract cases, *Commonwealth Edison Company v. United States* and *South Carolina Electric & Gas Co., et al. v. United States*. With one exception that counsel is aware of, where the court granted summary judgment on the acceptance rate to the plaintiff, every other Judge of this Court that has set a schedule in a case for breach of the Standard Contract has taken the acceptance rate issue *with* the damages trial, and many of those have already proceeded to trial successfully.[3] And as we pointed out in our Motion (¶ 4b), in two cases, very substantial

---

[2] As Judge Hewitt recognized in the *Commonwealth Edison* case, "There is one other point that I want to indicate. There is a colloqy in the paper work in which, and you've said that the Court agrees that until the MTU rate is known, the Court cannot begin to consider the damages owed to ComEd. The Court disagrees with that. We are in a damages case. We are considering damages now. That's what we're here for, and the goal of the Court is to find the most efficient way to get to the end of that, but we are considering damages, and one feature of damages is the rate." (Tr. of July 21, 2003 Hearing in *Commonwealth Edison Company v. United States*, No. 98-621, at 22, Ex. 1.)

[3] Indeed, the most recently tried SNF case in *Pacific Gas & Electric Co.*, was based on just such a schedule and resulted in a two-week trial that addressed all issues in that case. (*Pacific Gas & Electric Co. v. United States,* Nos. 04-74 and 04-75 (1/19/05).) Scheduling orders setting discovery and trial schedules in numerous other SNF cases have imposed a "unitary" schedule which contemplates all remaining issues in those cases will be addressed in a single proceeding. *See, e.g., Sacramento Municipal Utility District v. United States*, 98-488 (10/8/04); *Southern*

damages awards were made by Judges of this Court *without* any findings on the "acceptance rate." The Government does not (and cannot) dispute our explanation of the outcome in those cases, and only contends (at 9-10) that we have not shown the same will happen here. But the fact that it is possible and has happened in two other cases demonstrates the lack of merit of the Government's suggestion – a separate discovery period and trial on an issue that did not have to be decided in two other similar cases.[4]

## III. The Government's Proposed "Claim" and "Audit" Procedure Is Contrary To The Rules of the Court, Inefficient And Unnecessary.

The "claim and audit" procedure suggested by the Government (at 11-15) is unauthorized by the Rules of the Court, and unnecessary. As we demonstrated in our Motion (¶ 7a-c), (i) the proposal for a "claim" amounts to a request to have expert disclosures precede fact discovery in contravention of the Rules, (ii) a "claim" or "damages schedules" are not necessary for the Government to conduct meaningful discovery, and (iii) an "audit" that involves something other

---

*Nuclear Operating Co. et al. v. United States,* 98-614 (6/21/04); *Commonwealth Edison Co. v. United States*, 98-621 (7/22/03); *Wisconsin Electric Power Co. v. United States*, No. 00-679 (10/8/04) (12/20/05); *Tennessee Valley Authority v. United States*, 01-249 (7/9/04); *Entergy Nuclear Indian Point 2, LLC v. United States,* No. 02-3622 (1/30/06); *Systems Fuels, Inc. et. al. v. United States*, No. 03-2623 (6/28/05); *Systems Fuels, Inc. et. al. v. United States,*No. 03-2624 (2/27/06); *Consolidated Edison Company of New York, Inc. v. United States*, No. 04-33 (3/9/06); *Carolina Power & Light Co. et al. v. United States*, No. 04-37 (3/23/06); *South Carolina Electric & Gas Co. et al. v. United States*, No. 04-101 (9/9/04); and *Southern California Edison Co. v. United States*, No. 04-109 (6/5/06); *Northern States Power Co.,* 98-00484 (9/14/05).

[4] On three separate occasions, the Government moved for consolidation of all SNF cases, and twice moved for a consolidated determination of the rate of acceptance issues in some kind of consolidated, omnibus proceeding. In each instance, the Court rejected the Government's motion, including as recently as Your Honor's January 30, 2004 order. (*See* 1/30/04 Order in *Yankee Atomic Electric Co. v. United States*, No. 98-126 at 1-2, Ex 2.) As Your Honor noted in January 2004, bifurcation of the "acceptance rate" issue in a consolidated proceeding would "not effectuate any greater efficient administration of justice." (*Id.* at 2.) Similarly, determination of the acceptance rate in a stand-alone proceeding would not result in a more efficient resolution of this case.

than examination of documents and deposition testimony under oath is not permitted by the Rules. Again, the Government fails to address any of these points in its response, which alone warrants rejection of the Government's request.

Moreover, the points the Government does make are meritless. As to the "claim" or "detailed damages schedules," simply put, the Government's arguments are premature. Energy Northwest is required to make a Rule 26(a)(1)(C) disclosure of "a computation of any category of damages claimed" and we have already indicated (Mot. ¶ 7b) our intent to disclose existing "accounting documents and summaries." Indeed, we will disclose a computation of damages along with supporting documentation from Energy Northwest's accounting system of the amounts spent to date on dry cask storage. With the exception of some payments for cask purchases which Energy Northwest is obligated to make later this year, all of the damages Energy Northwest seeks are reflected in accounting records Energy Northwest will produce. While those disclosures may differ from the Government's demand (at 11-12) for "damages schedules and summaries, supported by the items and figures from books of account or other records," they should be more than sufficient for the Government to begin discovery in this matter. In any event, the Government should wait and see whether there is even any dispute before pressing this point.[5] But if there is a dispute, as Energy Northwest pointed out, the Rules

---

[5] The Government's argument based upon its supposed experience in the *Commonwealth Edison* case (at 5) (which lacks any supporting declaration or documentation whatsoever) to support its argument for submission of a "claim" is misguided for two reasons. *First*, suffice to say that Energy Northwest's counsel, who was also counsel for Commonwealth Edison, strongly disputes the Government's account of discovery in that case. Indeed, in that case Judge Hewitt specifically commended the parties on their cooperation during discovery (Tr. of 5/14/04 proceedings in *Commonwealth Edison Company v. United States*, No. 98-621C at 64, Ex. 4), and the Government did not bring a single motion to compel during fact discovery in that case. *Second,* the damage issues in *Commonwealth Edison* were fundamentally different from the issues in this case. Because *Commonwealth Edison* was litigated prior to the Federal Circuit's

provide the Government with numerous avenues to obtain more information about our damages claims if the Government believes our initial disclosure is insufficient (Mot ¶ 7b), and those methods – *not* a method that is unmentioned in the Rules and is therefore unauthorized – are the Government's remedy.[6]

The Government's request for an "audit" (at 13-15) is even farther off the mark. The Government's assertion (at 14) that an audit is "absolutely necessary" to determine whether Energy Northwest's "costs are reasonable," "have actually been expended," and "actually tied to the project" ignores that the discovery methods authorized by Rule 26, 30, 33 and 34 are the tools adversaries use in every lawsuit in every federal court to determine those very things every day. They certainly will suffice for the Government here.

And we continue to be in the dark about exactly what the Government means by its request for an "audit." By our reckoning, an "audit" can involve the examination of papers and potentially asking questions of company personnel. The first activity presents no issue. As

---

decision in *Indiana Michigan*, it involved a much more complex damages case claiming millions of dollars in damages stretching many years into the future – damages not reflected in accounting records because they had yet to be incurred. As stated, here Energy Northwest's damages consist almost exclusively of costs it has already incurred. A more appropriate analogy here would be the *South Carolina Electric & Gas* SNF case, which Energy Northwest's counsel also litigated. In that case, counsel provided a RCFC 26(a)(1)(C) disclosure much like the one it intends to provide in this case, and the Government had no difficulty taking extensive discovery on SCE&G's damages.

[6] Energy Northwest further notes that in *Dairyland,* despite a similar Government proposal for submission of a "claim" (1/20/06 Corrected Joint Preliminary Status Report at 18-19), Your Honor entered a schedule which did not provide for submission of a "claim." (5/1/06 Order in *Dairlyand Power Cooperative v. United States*, No. 04-106). Other Judges on this court have entered schedules which do not impose the proposed "claim" and "audit" procedure. *See, e.g., Pacific Gas & Electric Co. v. United States*, No. 00-74 and 00-75 (1/19/05); *Systems Fuels, Inc. et. al. v. United States*, No. 03-2623 (6/28/2005); *South Carolina Electric & Gas Co. et. al. v. United States*, No. 04-101 (9/9/04); *Sacramento Municipal Utility District v. United States*, No. 98-488 (10/8/04); *Commonwealth Edison Co. v. United States*, No. 98-621 (7/22/03); collectively attached as Ex. 3.

authority for an "audit," the Government cites its ability to obtain documents from Energy Northwest under Rule 34 – something which we concede the Government can do, and we even concede that the Government is free to have "a third party, such as outside accounting experts," review those records. And the second activity also is authorized by the Rules: Energy Northwest personnel can be asked questions, too – at a deposition and under oath. However, to the extent that the Government contemplates some kind of *informal* audit, where auditors range freely through whatever records they orally request and ask questions of company personnel with no official record, Energy Northwest strongly objects.[7] That is totally contrary to the provisions in the Rules and Energy Northwest's basic due process rights.

---

[7]As Judge Hewitt noted when the Government made a similar proposal in *Commonwealth Edison*, "Mischief is what the Court thinks [informal access to company records and personnel] would be productive of. The Court thinks that would be productive of mischief." (Tr. of 5/14/04 proceedings in *Commonwealth Edison Co. v. United States*, No. 98-621 at 60, Ex. 4; *see also,* Tr. of 7/21/03 proceedings in *Commonwealth Edison Co. v. United States,* No. 98-621 at 33, Ex. 1.)

* * *

For these reasons, the Court should order a discovery schedule and trial on Energy Northwest's damages claims as authorized by the Rules. To the extent the Government desires more time than suggested by Energy Northwest to complete discovery, we are amenable to accommodating that request. However, the alternative processes suggested by the Government should be rejected. Energy Northwest respectfully requests that the Court enter a schedule based on the schedule proposed in paragraph 5 of its May 9 motion.

Dated: June 28, 2006

Respectfully submitted,

/s Norman M. Hirsch
NORMAN M. HIRSCH
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 923-2782 telephone
(312) 840-7782 facsimile

OF COUNSEL:

David A. Handzo
Jenner & Block LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 639-6000

William D. Heinz
David Jiménez-Ekman
Christopher Tompkins
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June, 2006, a copy of the foregoing *Plaintiff's Reply In Support Of Motion To Set Schedule For Discovery And Trial On Damages Or, In The Alternative, For A Status Conference* was filed electronically with the Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Norman M. Hirsch