# Exhibit 1

# UNITED STATES
# COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| COMMONWEALTH EDISON CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No.: 98-621C |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Pages: 1 through 63

Place: Washington, D.C.

Date: July 21, 2003

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

COMMONWEALTH EDISON CO., )
)
Plaintiff, )
)
v. ) Docket No.: 98-621C
)
UNITED STATES, )
)
Defendant. )

Courtroom 7, Room 508
National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Monday,
July 21, 2003

The parties met, pursuant to notice of the Court, at 1:58 p.m.

BEFORE: HONORABLE EMILY C. HEWITT
Judge

APPEARANCES:

For the Plaintiff:

NORMAN M. HIRSCH, Esquire
DAVID JIMENEZ-EKMAN, Esquire
DAVID HANDZO, Esquire
Jenner & Block, LLC
601 - 13th Street, N.W.
Suite 1200 South
Washington, D.C.
(202) 639-6000

One IBM Plaza
Chicago, Illinois 60611-7603
(312) 222-9350

APPEARANCES (continued):

For the Defendant:

MARIAN E. SULLIVAN, Esquire
SHARON A. SNYDER, Esquire
HAROLD D. LESTER, JR., Esquire
JOHN C. EKMAN, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., Room 10150
Washington, D.C. 20530
(202) 307-6288

how to determine their allocations themselves.

That's all I have, unless Your Honor has any questions.

THE COURT: I do have a couple of questions.

MS. SULLIVAN: Okay.

THE COURT: What do you understand the state of play on the audit debate to be?

MS. SULLIVAN: Actually, Your Honor, Ms. Snyder was prepared to discuss that. I know that she has some particular points that she would like to make to the Court.

THE COURT: Okay. Since you're there, I just wanted to clear up one thing, from the point of view of the Court, so that the parties don't waste time on it.

There is a colloquy for a couple of pages between the government and itself in its opening papers in which, based on the fact that there wasn't a cross-motion for summary judgment on the issue, it appeared that the Court had not finally determined that the acceptance-rate term is actually missing. Instead, the parties should be entitled to present evidence at the trial proceeding on this issue.

Actually, that's a contract law matter, and what the Court decided there, just so we're real

clear, is the following. The Court's analysis begins with the question of whether the standard contract, on its face, contains an acceptance rate. It does not. That's over, just so we understand.

Now, we need evidence on what the rate is, a different question.

There is one other point that I want to indicate. There is a colloquy in the paper work in which, and you've said that the Court agrees that until the MTU rate is known, the Court cannot begin to consider the damages owed to ComEd. The Court disagrees with that. We are in a damages case. We are considering the damages now. That's what we're here for, and the goal of the Court is to find the most efficient way to get to the end of that, but we are considering damages, and one feature of damages is this rate. So I want the parties to understand that that's the Court's viewpoint. That's where we've come to our conclusion.

I'm trying to learn here and develop a view about what the right answer is on the scheduling of proceedings to learn different pieces and whether these things stack in a particular way, but I don't believe that we can't determine damages. It may be that these things should be decided together. I don't

agree with the a priori view that we can't consider damages. We are now considering damages. We have found liability sometime past.

So I just want to be sure that the parties are clear that that's the Court's view.

I would like to learn more about the audit. Thank you very much, Ms. Sullivan.

MS. SULLIVAN: Thank you, Your Honor.

MS. SNYDER: May I, Your Honor?

THE COURT: Please, Ms. Snyder.

MS. SNYDER: Your Honor, Sharon Snyder. Regardless of how Your Honor decides to proceed, whether it's sequentially with the acceptance rate and the damages, I think we believe that the first thing that ComEd needs to do is give us a damages claim that we can then take discovery against.

We have very vague, very preliminary information from ComEd. They have given us, as they say, categories of costs. We could already have determined those ourselves. We know what those categories are. What we need is actual numbers so that we can take a look at what the support for those numbers are and how those numbers are linked to the causation and how ComEd believes the government has caused those particular damages.

appear to be ready to go, and we're puzzled as to why they can't provide us final damages numbers.

Another area of concern is whether or not there should be an audit on what ComEd will provide us as estimates of their damages. They have --

THE COURT: I'm sorry. I'm not sure I heard the concept right. I think I heard the words. Just say it again.

MS. SNYDER: Estimates of their damages, damage estimates.

THE COURT: Back one more sentence. What point do you want me to hear?

MS. SNYDER: Well, we're concerned about whether or not there will be an audit of ComEd's estimates of their damages. They have not started building their ISFSIs. They have only started building one of their ISFSIs and are apparently going to provide proposed future damages, and they argue in their paper that there can be no audit of future damages.

Well, apparently, over two-thirds of the damages that they are going to present in the trial are going to be these future proposed damages, and we think we need certainly complete discovery on those, and we want those costs audited. We don't think that

it's impossible to do that, especially when you're talking about the amount of damage that we think is going to be at stake here.

There shouldn't be any limitations on the audit. Generally, courts permit auditors to come in and say, "This is what we need, this is what we want to look at, and this is what we're going to do," independently of, many times, either side and on an informal basis.

THE COURT: I'm sorry, but I'm not sure I understood the import of your last -- do you mean outside of formal fact discovery?

MS. SNYDER: Exactly, exactly.

THE COURT: I can't imagine how inappropriate that would be in this case. Everyone is looking over our shoulders, as you know, Ms. Snyder, at all moments, and the idea that part of this case would be determined -- we've offered the parties, afforded the parties, multiple opportunities to get together, settle, and have these kinds of conversations, and the reason we actually have so much information from the Plaintiffs is because the Plaintiffs and Defendants have been discussing this, but they have been discussing it under Rule 408, which says, quite specifically, that the materials can't be

relied on in a public forum, and that's appropriate.

But I will say that whatever you are able to do in structuring the audit, I would think that the opportunities that are afforded for clarity in the record by formal depositions, interrogatories, requests for admission, you know, the standard documents and procedures people use in discovery, I would be very wary in this setting of having informal methods, unless you're moving in a 408 context.

MS. SNYDER: I don't disagree with you. I think that a good portion of the damages discovery will be on the record, will be formal discovery with depositions and interrogatories and document requests. You know, we envisioned a less-formal audit procedure because that is typically how audits are done.

THE COURT: Well, typically -- I'm sure that the people in the room have never until today heard of Dynex Engineering, and I actually was picking through my brain to try to remember it as you spoke. But this case and cases in this area, because of the significance of the dispute within the industry, are not matters that people spend a lot of time trying to call to mind what it was about. And everyone who is interested in this subject is almost invariably interested in getting whatever is done on the record.

# Exhibit 2

98-626C

# In the United States Court of Federal Claims

No. 98-126 C
(Filed: January 30, 2004 )

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC CO., Plaintiff, | * |
| v. | * |
| THE UNITED STATES, Defendant. | * |

## ORDER

On July 30, 2003, Defendant filed a Second Motion to Renew its Motion to Consolidate in the set of cases before the Court informally referred to as Spent Nuclear Fuel (SNF) cases. Although the motion was officially docketed in this case, the first-filed of the SNF cases, it was captioned in the name of all of the 21 then-pending SNF cases and addressed to the Chief Judge for determination.

In the motion, the Government requests renewed consideration of its previous motions to consolidate these cases, although its instant motion seeks consolidation in particular "for the purposes of deciding schedule issues."

A brief recitation of the history of this motion is in order. Defendant first raised the issue of consolidation before a single judge by motion in January 2001. In May 2001, then-Chief Judge Baskir assigned the matter to Judge Wiese as managing judge for consideration. The parties ultimately agreed to a plan of consolidated discovery. In August 2001, Judge Wiese in turn assigned Judge Sypolt (then Weinstein) to preside over the consolidated discovery. Subsequent to the conclusion of consolidated discovery in the fall of 2002 , Defendant – in February 2003 – renewed its motion for consolidation before a single judge. Upon review of a court-requested joint status report from the parties and discussion among the judges of the court presiding over the then-21 SNF cases, the Chief Judge issued an order on April 16, 2003, identifying six of the cases as "lead" or "accelerated" cases for the resolution of certain

dispositive motions and directing that the remaining cases be stayed, although such stays could be lifted at the discretion of any of the presiding judges. The Order of April 16, 2003, stayed any decision on the renewed motion to consolidate before a single judge. In the meantime, opinions on dispositive motions in five of the six lead cases have been issued by the respective presiding judges. These five cases have also been scheduled for trial on damages.

Consolidation of all the SNF cases would be an extraordinary action The Chief Judge's authority to order consolidation would only be pursuant to Rule 40.1(c) ("Assignment and Transfer of Cases") of the Rules of the Court of Federal Claims (RCFC), as circumscribed by the prescriptions of RCFC 40.2 ("Related Cases), 42 ("Consolidation; Separate Trials"), and 42.1 ("Motions to Consolidate").

As of this date, the Court now has before approximately 55 SNF cases. Given the posture of the six "lead" cases designated ~~in the Court's Order entered on~~ April 16, 2003, and the grant of summary judgment in favor of the plaintiff on acceptance rate, entered June 27, 2003, in the lead case of *Indiana Michigan Power Co. v. United States*, # 98-486 C, the Court determines that consolidation – even as to the particular issues of rate of acceptance and schedule of acceptance – would not effectuate any greater efficient administration of justice than that of letting the six lead cases proceed with their dispositive motions and/or trial on damages. The Court hereby **DENIES** Defendant's motion to renew its motion to consolidate as well as its previous motions relating to consolidation. The Court further **LIFTS THE STAY** of the remainder of the cases to which the Order of April 16, 2003, applied.

The Clerk of the Court is directed to docket this Order in this case with an entry noting the same on the dockets of the remaining SNF cases captioned in Defendant's instant motion, with a courtesy copy to *all* SNF parties and presiding SNF judges of the Court.

Edward J. Damich

EDWARD J. DAMICH
Chief Judge

# Exhibit 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 04-101-C

(Filed: September 9, 2004)

SOUTH CAROLINA ELECTRIC & GAS CO.,

Plaintiff,

v.

UNITED STATES,

Defendant,

SCHEDULING ORDER

Pending before the court is Plaintiffs' Motion for Leave to File Proposed Scheduling Order, filed on September 8, 2004. Good cause having been established, plaintiffs' Motion for Leave to File is GRANTED. The Clerk's Office shall file the Plaintiffs' Proposed Scheduling Order as of this date.

Pursuant to RCFC 16(b) and (c) and RCFC Appendix A, and in light of the parties' Joint Preliminary Status Report, filed on July 16, 2004, Plaintiffs' Proposed Scheduling Order, filed on September 8, 2004, Defendant's Proposed Scheduling Order, filed on September 8, 2004, and for good cause shown, discovery and other preparatory steps for trial shall proceed in accord with the following schedule:

| **Event** | **Date** |
|---|---|
| RCFC 26(a) Initial Disclosures | October 1, 2004 |
| Service of Initial Written Discovery & Document Requests | October 15, 2004 |
| Commencement of Depositions | January 4, 2005 |
| Completion of Fact Discovery | April 8, 2005 |
| Submission of Plaintiffs' Expert Report(s) | June 3, 2005 |

| | |
|---|---|
| Submission of Responsive Expert Report(s) | July 22, 2005 |
| Submission of Rebuttal Expert Report(s) | September 1, 2005 |
| Completion of Expert Discovery | September 22, 2005 |
| Commencement of RCFC Appendix A Pre-Trial Schedule | September 22, 2005 |
| Pre-Trial Conference | January 12, 2006 |
| Commencement of Trial | January 23, 2006 |

It is so **ORDERED**.

s/Charles F. Lettow
Charles F. Lettow
Judge

ORIGINAL

# In the United States Court of Federal Claims

No. 98-488C

Filed: October 8, 2004

FILED
OCT 8 2004
U.S. COURT OF FEDERAL CLAIMS

SACRAMENTO MUNICIPAL UTILITY DISTRICT,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## SECOND AMENDED SCHEDULING ORDER

Pursuant to the status conference held on October 5, 2004, the court amends the scheduling order entered on July 28, 2004 and the Supplemental Scheduling Order entered on September 23, 2004:

1. Answer to Amended Complaint. The Government will file an Answer to the Amended Complaint **on or before October 15, 2004**, however, no answer is required regarding the allegations in the takings claim set forth in Counts IV and V of the Amended Complaint.

2. Supplemental Brief. The Government will file a supplemental brief, as requested, regarding the issue of contract liability **on or before October 15, 2004**. Plaintiff will file any response to the Government's brief **on or before October 29, 2004**.

3. Fact Discovery. All fact discovery, including all depositions, shall conclude **on or before November 10, 2004.** In order to achieve this deadline, the parties will make witnesses available at reasonably convenient locations and times. The parties are reminded that the rules of the court contemplate the use of depositions at trial for testimonial purposes in certain circumstances "as though the witnesses were then present and testifying[.]" *See* RCFC 32(a).

4. Dispositive Motions. Any other motion for summary judgment or any supplemental briefing on the pending motions for summary judgment regarding the contract claims shall be filed **on or before November 30, 2004**. A status conference will be held at **4:00 p.m. EST on December 7, 2004** to discuss the need and schedule for further briefing on such motions.

5. Expert Discovery. All expert discovery will conclude **on or before January 18, 2005.** For each of its experts, defendant will provide plaintiff with a written description of the areas on which the expert will opine and a synopsis of the expert's opinions **on or before November 12, 2004.** Defendant's expert report(s) will be submitted on or before November 22, 2004, and plaintiff's rebuttal expert report(s) will be submitted on or before December 23, 2004. To facilitate expert discovery, each expert report will be accompanied by all data and other information considered by the expert in forming his or her opinion.

6. Meeting of Counsel. The parties shall meet to satisfy the requirements of RCFC Appendix A ¶ 13, including the exchange of exhibit and witness lists, **on or before January 25, 2005.**

7. Memorandum of Contentions of Fact and Law. In accordance with RCFC Appendix A ¶ 14, plaintiff will file its Memorandum of Contentions of Law and Fact ("Memorandum") **on or before February 15, 2005.** Defendant will file its responsive Memorandum **on or before February 25, 2005.** Each Memorandum will be accompanied by witness lists, exhibit lists, and any motions contemplated by Appendix A ¶¶ 14-16. Any objection to a witness or exhibit not made in the Memorandum or a separate motion filed on the same date will, if the objection is of a type that could reasonably have been identified at the time of such filing, be deemed waived absent a showing of a compelling reason for the failure. Defendant will file its responses to any motions filed by plaintiff with its Memorandum **on or before February 25, 2005.** Plaintiff will file its responses to any motions filed by defendant **on or before March 7, 2005.**

8. Pretrial Conference. The pretrial conference will be held **on March 11, 2005 at 10:00 a.m.** at the National Courts Building, 717 Madison Place N.W., Washington, D.C. 20005. The parties will bring to the pretrial conference at least three copies of any exhibit as to which an objection remains outstanding. The parties will prepare and deliver at the pretrial conference a joint preliminary trial schedule or, if they cannot agree, separate trial schedules.

9. Trial. Trial will be held **beginning March 21, 2005 through April 1, 2005.** Trial will begin at 10:00 a.m. on each day. Trial will be held at the National Courts Building, 717 Madison Place N.W., Washington, D.C. 20005. The trial will concern solely the contract claims asserted by the Plaintiff in Counts I and II of the Amended Complaint.

10. The court will issue a scheduling order for resolving the takings claims asserted by the Plaintiff in Counts IV and V of the Amended Complaint after the trial of the contract claims, if necessary.

**IT IS SO ORDERED.**

**SUSAN G. BRADEN**
**Judge**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 03-2623-C

(Filed: June 28, 2005)

SYSTEM FUELS, INC., and
ENTERGY ARKANSAS, INC.

Plaintiffs,

v.

UNITED STATES,

Defendant.

SCHEDULING ORDER

The court acknowledges receipt of the parties' Joint Status Report, filed on June 17, 2005. The parties largely concur in a proposed schedule for discovery and other pre-trial steps in this case. However, the government requests that the court require plaintiffs to provide a detailed identification of all of the damages that they will seek in this litigation. In the alternative, the government requests that the court modify the schedule proffered by the plaintiffs to provide the government with adequate time to audit plaintiffs' damages claim. Plaintiffs oppose any requirement that they be obliged to submit a detailed identification of damages at this stage of the proceedings.

Rule 26(a)(1) of the Rules of the Court of Federal Claims ("RCFC") requires plaintiffs, as part of their mandatory initial disclosures, to provide "a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under RCFC 34 the documents or other evidentiary material . . . on which such computation is based . . . ." The rules thus require plaintiffs to produce a computation of damages, but not necessarily a detailed analysis, at this point. Accordingly, the court has rejected the government's request for an order requiring plaintiffs to provide a detailed calculation, but it has adopted the government's proposed deadline for service of its expert reports.

For good cause shown, it is hereby ORDERED that further proceedings in this case shall take place as follows:

| Activity | Deadline |
|---|---|
| RCFC 26(a)(1) initial disclosures | September 1, 2005 |
| Service of plaintiffs' expert reports | December 9, 2005 |
| Service of defendant's expert reports | May 10, 2006 |
| Exchange of any expert rebuttal reports | June 12, 2006 |
| Completion of fact discovery and expert discovery | September 1, 2006 |
| Satisfaction of requirements in RCFC Appendix A ¶ 13 | December 1, 2006 |
| Filing of Plaintiffs' Memorandum of Contentions of Fact and Law and any evidentiary motions by plaintiffs | December 18, 2006 |
| Filing of Defendant's Memorandum of Contentions of Fact and Law, response to any evidentiary motions by plaintiffs, and any evidentiary motions by defendant | January 16, 2007 |
| Filing of plaintiffs' response to any evidentiary motions by defendant | January 29, 2007 |
| Pre-Trial Conference (commencing at 10:00 a.m. at the National Courts Building, Washington, D.C.) | February 5, 2007 |
| Commencement of two-week damages trial (commencing at 9:30 a.m. at the National Courts Building, Washington, D.C.) | February 12, 2007 |

s/ Charles F. Lettow
Charles F. Lettow
Judge

# In the United States Court of Federal Claims

No. 98-621 C
(Filed: July 22, 2003)

FILED
JUL 2 2 2003
U.S. COURT OF FEDERAL CLAIMS

COMMONWEALTH EDISON CO.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## ORDER

Pursuant to United States Court of Federal Claims Rule (RCFC) 16(b), the court held a status conference on the record with the parties on Monday, July 21, 2003 to set a schedule for discovery, pretrial and trial and to address any outstanding issues with the parties. Further to the conference and to the suggestions made by the parties in their proposals for future proceedings,[1] the court schedules the following:

1. Initial Disclosures. Initial disclosures, pursuant to Rule 26(b)(1) of the RCFC, shall be completed on or before Friday, August 15, 2003.

2. Fact Discovery. Except as provided in paragraph 4 below, all fact discovery, including all depositions, shall conclude on or before Friday, February 27, 2004. In order to achieve this deadline, the parties shall make witnesses available at reasonably convenient locations and times. The parties are reminded that the rules of the court contemplate the

[1]The court has before it Defendant's Proposal for Further Proceedings Pursuant to the Court's June 10, 2003 Order, ComEd's Response to the Court's June 10, 2003 Order, Defendant's Response to ComEd's Proposed Pre-Trial Schedule, and ComEd's Response to Defendant's July 3, 2003 Scheduling Submission.

use of depositions at trial for testimonial purposes in certain circumstances "as though the witness were then present and testifying . . . ." See RCFC 32(a).

3. Expert Discovery. All expert discovery, including the exchange of expert reports and the completion of expert depositions, shall be completed on or before Friday, August 13, 2004. Plaintiff's expert report(s) shall be submitted on or before Friday, March 26, 2004 and defendant's responsive expert report(s) shall be submitted on or before Friday, June 11, 2004. Plaintiff's rebuttal expert report(s) shall be submitted on or before Friday, July 30, 2004.

4. Supplemental Fact Discovery Motions Regarding Expert Reports. Defendant shall file any motions regarding supplemental fact discovery on or before Monday, April 5, 2004. Plaintiff's response shall be filed on or before Monday, April 12, 2004 and defendant's reply shall be filed on or before Friday, April 16, 2004. Plaintiff shall file any motions regarding supplemental fact discovery on or before Monday, June 21, 2004. Defendant's response shall be filed on or before Monday, June 28, 2004 and plaintiff's reply shall be filed on or before Friday, July 2, 2004. Motions for supplemental fact discovery will be allowed only if justice shall so require and because the discovery sought is of a nature that could not reasonably have been obtained prior to the close of fact discovery on Friday, February 27, 2004.

5. Meeting of Counsel. The parties shall meet to satisfy the requirements of RCFC Appendix A ¶ 13, including the exchange of exhibit and witness lists, on or before Tuesday, September 14, 2004.

6. Memorandum of Contentions of Fact and Law. In accordance with RCFC Appendix A ¶ 14, plaintiff shall file its Memorandum of Contentions of Fact and Law (Memorandum) on or before Tuesday, September 28, 2004. Defendant shall file its responsive Memorandum on or before Tuesday, October 19, 2004. Each Memorandum shall be accompanied by witness lists and exhibit lists and any motions contemplated by Appendix A ¶¶ 14, 15 and 16. Any objection to a witness or exhibit not made in the Memorandum or a separate motion filed on the same date shall, if the objection is of a type that could reasonably have been identified at the time of such filing, be deemed waived absent a showing of a compelling reason for the failure. Defendant shall file its responses to any motions filed by plaintiff with its Memorandum on or before Tuesday, October 19, 2004. Plaintiff shall file its responses to any motions filed by defendant on or before Tuesday, November 2, 2004.

7. Pretrial Conference. The pretrial conference will be held on Tuesday, November 16, 2004 at the National Courts Building, 717 Madison Place, N.W., Washington, DC 20005.

The parties shall bring to the pretrial conference at least three copies of any exhibit as to which an objection remains outstanding. The parties shall prepare and deliver at the pretrial conference a joint preliminary trial schedule or, if they cannot agree, separate trial schedules, using the template attached, a copy of which will be, at the request of a party, provided to the party in electronic form by the court.

8. Trial. Trial will be held on Tuesday, November 30, 2004 through Friday, December 3, 2004 and on Tuesday, December 7, 2004 through Friday, December 10, 2004. Trial will begin at 9:00 a.m. on each day. Trial will be held at the National Courts Building, 717 Madison Place N.W., Washington, DC 20005.

Due to the continuing problems with Washington, DC mail, the parties are directed to fax courtesy copies of any time-sensitive documents to the court and opposing counsel throughout the proceedings. The parties are also urged to contact the court at any time when they believe the involvement of the court will help to secure the just, speedy and inexpensive determination of this action. See RCFC 1.

IT IS SO ORDERED.

Emily Hewitt
EMILY C. HEWITT
Judge

07/22/03 15:33 FAX 202 639 6066 JENNER BLOCK JUDGE HEWITT ☑006
PAGE 05

Commonwealth Edison Co. v. The United States (98-621C)
Trial Dates: November 30, 200 - December 3, 2004, December 7, 2004 - December 10, 2004
United States Court of Federal Claims

| Time | Sun. 11/28 | Monday 11/29 | Tuesday 11/30 | Wednesday 12/1 | Thursday 12/2 | Friday 12/3 | Sat. 12/4 |
|---|---|---|---|---|---|---|---|
| 9:00 | | | | | | | |
| 9:30 | | | | | | | |
| 10:00 | | | | | | | |
| 10:30 | | | | | | | |
| 11:00 | | | | | | | |
| 11:30 | | | | | | | |
| 12:00 | | | | | | | |
| 12:30 | | | | | | | |
| 1:00 | | | | | | | |
| 1:30 | | | | | | | |
| 2:00 | | | | | | | |
| 2:30 | | | | | | | |
| 3:00 | | | | | | | |
| 3:30 | | | | | | | |
| 4:00 | | | | | | | |
| 4:30 | | | | | | | |
| 5:00 | | | | | | | |
| 5:30 | | | | | | | |
| 6:00 | | | | | | | |

Commonwealth Edison Co. v. The United States (98-621C)
Trial Dates: November 30, 200 - December 3, 2004, December 7, 2004 - December 10, 2004
United States Court of Federal Claims

| Time | Sun. 12/5 | Monday 12/6 | Tuesday 12/7 | Wednesday 12/8 | Thursday 12/9 | Friday 12/10 | Sat. 12/11 |
|---|---|---|---|---|---|---|---|
| 9:00 | | | | | | | |
| 9:30 | | | | | | | |
| 10:00 | | | | | | | |
| 10:30 | | | | | | | |
| 11:00 | | | | | | | |
| 11:30 | | | | | | | |
| 12:00 | | | | | | | |
| 12:30 | | | | | | | |
| 1:00 | | | | | | | |
| 1:30 | | | | | | | |
| 2:00 | | | | | | | |
| 2:30 | | | | | | | |
| 3:00 | | | | | | | |
| 3:30 | | | | | | | |
| 4:00 | | | | | | | |
| 4:30 | | | | | | | |
| 5:00 | | | | | | | |
| 5:30 | | | | | | | |
| 6:00 | | | | | | | |

# In the United States Court of Federal Claims

No. 04-74C

(E-Filed: January 19, 2005)

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

ORDER

The court has before it Plaintiff's Status Report, Motion to Enter Pretrial Schedule and Request for Status Conference to Set Trial Date and Defendant's Status Report Requesting Continuance of Stay, both filed January 3, 2005. Further to these motions and reports and to discussion at a January 13, 2005 status/scheduling conference on the record held concurrently with a status/scheduling conference in case No. 04-75C, the court DENIES defendant's motion to continue the stay in this case and GRANTS plaintiff's motion to schedule trial proceedings.

Pursuant to United States Court of Federal Claims Rule (RCFC) 16(b) and further to discussion with the parties, the court schedules the following:

1. Initial Disclosures. Initial disclosures, pursuant to Rule 26(a)(1) of the RCFC, shall be completed on or before Friday, April 1, 2005.

2. Fact Discovery. All fact discovery, including all depositions, shall conclude on or before Friday, September 23, 2005. In order to achieve this deadline, the parties shall make witnesses available at reasonably convenient locations and times. The parties are reminded that the rules of the court contemplate the use of depositions at trial for

testimonial purposes in certain circumstances "as though the witness were then present and testifying . . . ." See RCFC 32(a).

3. Expert Discovery. All expert discovery, including the exchange of expert reports and the completion of expert depositions, shall be completed on or before Friday, February 17, 2006. Plaintiff's expert report(s) shall be submitted on or before Friday, October 21, 2005 and defendant's responsive expert report(s) shall be submitted on or before Friday, December 30, 2005. Plaintiff's rebuttal expert report(s) shall be submitted on or before Friday, February 3, 2006.

4. Meeting of Counsel. The parties shall meet to satisfy the requirements of RCFC Appendix A ¶ 13, including the exchange of exhibit and witness lists, on or before Friday, March 3, 2006.

5. Memorandum of Contentions of Fact and Law. In accordance with RCFC Appendix A ¶ 14, plaintiff shall file its Memorandum of Contentions of Fact and Law (Memorandum) on or before Friday, March 24, 2006. Defendant shall file its responsive Memorandum on or before Friday, April 14, 2006. Each Memorandum shall be accompanied by witness lists and exhibit lists and any motions contemplated by Appendix A ¶¶ 14, 15 and 16. Any objection to a witness or exhibit not made in the Memorandum or a separate motion filed on the same date shall, if the objection is of a type that could reasonably have been identified at the time of such filing, be deemed waived absent a showing of a compelling reason for the failure. Defendant shall file its responses to any motions filed by plaintiff on or before Monday, April 3, 2006. Plaintiff shall file its responses to any motions filed by defendant on or before Monday, April 24, 2006.

6. Pretrial Conference. The pretrial conference will be held on Friday, April 28, 2006 at the National Courts Building, 717 Madison Place, N.W., Washington, DC 20005. The parties shall bring to the pretrial conference at least three copies of any exhibit as to which an objection remains outstanding. The parties shall prepare and deliver at the pretrial conference a joint preliminary trial schedule or, if they cannot agree, separate trial schedules, using the template attached.

7. Trial. Trial will be held on Monday, May 8, 2006 through Friday, May 12, 2006 and on Monday, May 15, 2006 through Friday, May 19, 2006. Trial will begin at 9:00 a.m. on each day. Trial will be held at the National Courts Building, 717 Madison Place N.W., Washington, DC 20005.

Concurrent Proceedings

All of the foregoing proceedings will be conducted concurrently with proceedings in case No. 04-75C.

The parties are urged to contact the court at any time when they believe the involvement of the court will help to secure the just, speedy and inexpensive determination of this action. See RCFC 1.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

Pacific Gas and Electric Co. v. The United States (04-74C)
Trial Dates: May 8, 2006 - May 12, 2006, May 15, 2006 - May 19, 2006
United States Court of Federal Claims

| Time | Sun. 5/7 | Monday 5/8 | Tuesday 5/9 | Wednesday 5/10 | Thursday 5/11 | Friday 5/12 | Sat. 5/13 |
|---|---|---|---|---|---|---|---|
| 9:00 | | | | | | | |
| 9:30 | | | | | | | |
| 10:00 | | | | | | | |
| 10:30 | | | | | | | |
| 11:00 | | | | | | | |
| 11:30 | | | | | | | |
| 12:00 | | | | | | | |
| 12:30 | | Break | Break | Break | Break | Break | |
| 1:00 | | | | | | | |
| 1:30 | | | | | | | |
| 2:00 | | | | | | | |
| 2:30 | | | | | | | |
| 3:00 | | | | | | | |
| 3:30 | | | | | | | |
| 4:00 | | | | | | | |
| 4:30 | | | | | | | |
| 5:00 | | | | | | | |
| 5:30 | | | | | | | |
| 6:00 | | | | | | | |

Pacific Gas and Electric Co. v. The United States (04-74C)
Trial Dates: May 8, 2006 - May 12, 2006, May 15, 2006 - May 19, 2006
United States Court of Federal Claims

| Time | Sun. 5/14 | Monday 5/15 | Tuesday 5/16 | Wednesday 5/17 | Thursday 5/18 | Friday 5/19 | Sat. 5/20 |
|---|---|---|---|---|---|---|---|
| 9:00 | | | | | | | |
| 9:30 | | | | | | | |
| 10:00 | | | | | | | |
| 10:30 | | | | | | | |
| 11:00 | | | | | | | |
| 11:30 | | | | | | | |
| 12:00 | | | | | | | |
| 12:30 | | Break | Break | Break | Break | Break | |
| 1:00 | | | | | | | |
| 1:30 | | | | | | | |
| 2:00 | | | | | | | |
| 2:30 | | | | | | | |
| 3:00 | | | | | | | |
| 3:30 | | | | | | | |
| 4:00 | | | | | | | |
| 4:30 | | | | | | | |
| 5:00 | | | | | | | |
| 5:30 | | | | | | | |
| 6:00 | | | | | | | |

# Exhibit 4

**Commonwealth Edison v. U.S. No.: 98-621C May 14, 2004**

**Heritage Reporting Corporation**

**Page 1 to Page 69**

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

*HERITAGE REPORTING CORPORATION*
*1220 L Street, N.W.*
*Suite 600*
*Washington, DC 20005*
*Phone: 202-628-4888*
*FAX: 202-371-0935*

Page 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

COMMONWEALTH EDISON CO., )
Plaintiff, )
v. ) Docket No. 98-621C
THE UNITED STATES, )
Defendant. )

Courtroom 5, Room 505
National Courts Building
717 Madison Place, N.W.
Washington, D.C.
Friday,
May 14, 2004

The parties met, pursuant to the notice of the Court, at 10:00 a.m.

BEFORE: HON. EMILY C. HEWITT
Judge

APPEARANCES:
For the Plaintiff:
NORMAN M. HIRSCH, Esquire
DAVID JIMENEZ-EKMAN, Esquire
Jenner & Block
One IBM Plaza
Chicago, Illinois 60611-7603
(312) 923-2782
FRANCIS P. MANERI, Esquire (via phone)
Dilworth Paxson LLP
Liberty View, Suite 700
457 Haddonfield Road
P.O. Box 2570
Cherry Hill, New Jersey 08034
(856) 663-8877

Page 2

APPEARANCES (CONT'D)
For the Defendant:
HAROLD LESTER, Esquire
STEPHEN FINN, Esquire
SHARON SNYDER, Esquire
SONIA M. ORFIELD, Esquire
U.S. Department of Justice
Civil Division
1100 L Street, N.W.
Room 12144
Washington, D.C. 20530
(202) 616-0466

Page 3

P R O C E E D I N G S

(10:00 a.m.)

THE CLERK: All rise. The United States Court of Federal Claims, the Honorable Judge Emily C. Hewitt, presiding.

THE COURT: Good morning. Please be seated. We're on the record to deal with the post-expert report, request for discovery, and, as well, a motion to compel, with respect to Holtec International. Mr. Maneri?

MR. MANERI: Frank Maneri on the line. Your Honor. Good morning. I'm having difficulty hearing you. You were kind of fading in and out.

THE COURT: I'll come a little closer to the microphone and --

MR. MANERI: Okay.

THE COURT: -- feel free to comment, if you have difficulty hearing me or anyone else at any time.

MR. MANERI: Okay, thank you, Your Honor. I can hear you now.

THE COURT: Thank you. Our agenda is to start with the motion to compel production of documents from Holtec International and then to move to other discovery matters and other housekeeping matters, if there are any. Let me just ask if there's

Page 4

anything else to add to the agenda, at this time. Good morning, Mr. Hirsch?

MR. HIRSCH: Good morning, Judge. We filed a motion yesterday afternoon to add two documents to the record, to supplement the record, on the government's motion with two documents that were letters that were exchanged. And I don't know if the government has an opposition to that, but that's probably the only housekeeping thing that I'm aware of.

THE COURT: Okay. Thanks very much. Anything from the government? Good morning, Ms. Snyder, Mr. Lester.

MR. LESTER: Good morning, Your Honor. If I could just for the record introduce some people appearing here?

THE COURT: Certainly.

MR. LESTER: I'm Harold Lester for the Department of Justice, and at the table with me are Stephen Finn, Sharon Snyder, and Sonia Orfield, all from the Department of Justice. We do not have any opposition to the motion that Com Ed filed yesterday --

THE COURT: Thanks.

MR. LESTER: -- to supplement the record.

Page 57

the ordinary course, which is a way of responding on some things. But –

MR. FINN: Yes. But, all the same, the ability for the accountant to have that little scrutiny for us is important. I mean, we can't get too far removed from the ability to see those documents is key for us.

MR. HIRSCH: Can I address some of these issues?

THE COURT: You have not had an hour to tend to this subject, but I was hoping to make as much headway as possible on Mr. Finn's watch. Thank you, Mr. Finn.

MR. HIRSCH: Good morning, Your Honor, Norman Hirsch.

THE COURT: Good morning, Mr. Hirsch.

MR. HIRSCH: Judge, I want to emphasize a few things that Mr. Finn discussed. I mean, to some extent, I heard that discussion and I thought, well, we did a lot of this in fact discovery. And part of the reasons that we gave you those letters that we filed a motion about was to make the point – I mean, Mr. Finn talked about Mr. Emmert relied on the Quad Cities budget, which was the budget for the ISFSI that went up to Exelon corporate chain of command for

Page 58

approval. He relied on these detailed spreadsheets about the costs that were incurred at D2 and D3, Dresdon two and three and Quad Cities. They relied on the Zion budget. And in November, we wrote a letter to the government that said, go look at the Quad Cities budget. We didn't have to do that, but it's important. We said, go look at these spreadsheets. We gave them the numbers. The spreadsheets, Mr. Tomkins is pretty familiar with, are like 500 pages long. They're item-by-item accounts. And we told them about them in November.

And they deposed the director of accounting at Exelon Generation, who, essentially, was the person responsible for those sheets. They deposed the people, who put together the Quad Cities budget. They had the opportunities to do discovery and they did do the discovery about those issues, at the level of detail that they wanted. And so, when we – and there was a lot of discovery. They deposed the person, who put together the Zion budget. So, when we hear that, well, you know, we want to get into the details, we got into the details. We provided the details. And so, we're a little wary of some of these issues that are being raised at this point.

Having said that, I said last July, we said

Page 59

it in our response, I'll say it again, to the extent that their experts come back and say, well, we don't think we have X, give us X or we'd like to see X, to the extent that we can put together that information and get it to them quickly, or that we wouldn't wait 30 days, we'll try to get it to them as quickly as possible. And, hopefully, that would be like a week or 10 days or something like that, depending on what it is.

I do draw a distinction, Judge, between sort of the things that you were mentioning, gee, do you have some backup for this accounting entry, and some of the causation issues that Mr. Finn talked about. I mean, the government is not going to be able to look at an invoice and say, oh, this is caused by the breach or not caused by the breach. I mean, we're happy to the extent that we have it, to provide the backup. But to the extent they're talking about restarting discovery about causation, that's what we did, Judge. We had a lot of extensive discovery about causation.

And one other thing I wanted to mention, these depositions of the accounting people and the budget people, the government had experts at the deps. I got to be on a first-name basis with those people,

Page 60

because they were there a lot. I don't know if they're their experts at trial, but they, at least, had what I think was a consulting expert, maybe the expert there. So, there was somebody often at the shoulder of the attorney to ask follow-up questions or to request follow-up questions, and they did that. So, there was a lot of, again, opportunity for discovery.

Your Honor correctly perceives that we – what we really fundamentally disagree with is the government's request that in this audit, they have what amounts to informal, off-the-record communications with Exelon employees and accountants and those types –

THE COURT: The Court thinks that will be hopelessly productive of something that's not helpful, whichever direction it goes.

MR. HIRSCH: And so, you know, in light of that –

THE COURT: Mischief is what the Court thinks that would be productive of. The Court thinks that would be productive of mischief.

MR. HIRSCH: Okay. We agree, Your Honor. So, you know, we're willing to sit down and work with them to the extent that they're asking for specific

Page 61

backup cost documentation for materials we've already provided, to the extent those materials exist. Like I said, if we're getting into some broader issues about causation and things like that –

THE COURT: Late.

MR. HIRSCH: – we're going to object.

THE COURT: Yes, late.

MR. HIRSCH: And that's pretty much what I have to say about this.

THE COURT: It sounds to me that the parties could work out their own mechanism on this and I urge you to do so, which is to find, at the earliest practicable, but no later than 10 days, that type of thing. If the request is burdensome in a way that indicates, among other things, that it's served back to the beginning of theory of discovery, your causation term, I think you should just call the Court and we'll try to sort it out. One of the results of today is to give me a little background, so that you're not starting from square one on talking about the issues. I'll have the background. And I'd be glad to enter something as an order. I'd be glad for you to try. If you're getting to the point where you can't agree between five days and 10 days, I'm glad to divide that into seven-and-a-

Page 62

half, if that's necessary. So, it's a type of draft that's got two alternatives, you can certainly send that in and we'll issue an order that smooths out the rough – harmonizes the differences.

MR. HIRSCH: And we're willing to sit down and talk to them about that. I did want to circle back for a minute –

THE COURT: Sure.

MR. HIRSCH: – because I forgot to mention it, basically. The government's motion referred to some other specific documents they were seeking, like property tax records. And as we've indicated, we don't object to those requests; but, we, also, indicated, and I think they've identified that we have produced a lot of that material already. It's a question of locating them. So, I'm not sure that the Court needs to enter an order about that kind of document production, in this context.

THE COURT: The reason, as I understood it, that for the request for an order was that we are working with discovery. There's kind of a sandwich here with no discovery during the period of reports and then opening discovery again, something that you may want to avail yourself of later in the summer, if that were actually to occur, that the Plaintiff has

Page 63

such an interest. But since discovery would not be going on – let me see if I understand this – discovery would not otherwise be going on and production, not that you can't agree to do it, but that to regularize that; that I enter an order, which acknowledges that the cost of capital, property tax assessment, and the cost of the casks matters be regarded as discovery that's allowed to be ongoing. Is there a problem with that?

MR. HIRSCH: Judge, I don't know that you need to enter an order, but we're certainly willing to have you enter an order on those things. I think, as I mentioned, I think we've produced, as I told the government, everything we've had about those things.

THE COURT: Nothing more is expected to be produced at that time; that's done, is that what I understand?

MR. HIRSCH: I don't think that we have any – I mean, we've identified the property tax records that we have previously produced. I haven't heard any follow-up requests from the government with respect to the cost of casks. I told Ms. Snyder that I think we've produced all of our cask costs documents. With respect to the cost of capital, I think that the government was thinking that Mr. Emmert had relied on

Page 64

our cost of capital information. What he relied on was information he received from third parties on what Exelon's cost of capital was.

MR. FINN: I think, also, Your Honor, that it does, in part, depend on our depositions with Mr. Emmert, in determining what, in fact, his bases were. And I believe in the pleadings – our final pleadings before the Court, we addressed that issue.

MR. HIRSCH: I think that to our credit, we've been able to work pretty well together, in terms of discovery and responding –

THE COURT: I completely agree. This has been very low decibel compared to what the possibilities were.

MR. HIRSCH: And we're willing to continue to cooperate –

THE COURT: Congratulations. I completely agree with you. Congratulations to both parties on that. I mean, this is really a low decibel level.

MS. SNYDER: Can I add just two things? This sort of reflects on the whole audit issue and I think we mentioned this in our pleading, that is that we – Comm. Ed. has provided the government with more than one damages estimates over the course of the discovery period. And part of our frustration is that

Page 65

we've been given a lot of paper and we've been given a lot of material to review and we've had taken depositions, but we've never really managed to match numbers that we've been given with the actual damages estimate. And so when Mr. Hirsch suggests that we've got everything we need, we haven't, as I said, been able to match up numbers, and that's part of what our due diligence has to be, in trying to decide what's reasonable and what's not. That's why we thought that maybe an audit was one way to go and one way to get sort of to the bottom of the numbers. So, that's part of our frustration here.

Another issue that I wanted to raise with the Court, and this is going to come with our motion for enlargement of time, which, I think, we're filing today, and that is that you mentioned right off the start that the expert must disclose everything the expert relied upon. Well, it's our feeling that it's possible that Mr. Emmert has not done that and you will see that reflected in our motion for enlargement of time, that there may be –

THE COURT: Which deadline does the enlargement go to?

MS. SNYDER: The end of expert discovery. Now, I realize that I'm getting a bit of a jump on

Page 66

this and we just hand-delivered the motion to Mr. Hirsch, although we have talked about it, I don't want to get ahead of myself here, but I do want to say that – to give the Court a heads up that that is one issue that we're still discussing with the Plaintiff, with respect to Mr. Emmert's report and the basis for that report.

MR. HIRSCH: Judge, Mr. Emmert's report included these two binders. We have, also, produced to the government 13 notebooks of backup information that Mr. Emmert considered in putting together his report. I want to talk about the motion, which you'll see I'm holding up here. I haven't opened the envelope. We did talk to – or I did talk to Ms. Snyder, I think it was over a week ago, about a motion the government indicated it might file to extend their date for expert submissions by a – and I don't know what the final version ended up, by an amount sufficient to change the trial date. And I indicated to Ms. Snyder that we were going to oppose that motion, if that was the impact of it. But, we're going to have to read it and we'll see what they say.

THE COURT: You realize my entire life is scheduled around this trial, as are all of our –

(Laughter.)

Page 67

THE COURT: Thank you.

MR. HIRSCH: I don't have anything further.

THE COURT: I think there are two possible approaches to this situation. One of them is to sort of tell you to open the envelope, send someone to get me my envelope, and try to bash this out now while we're here, and the other is to leave it to either read the paper and just write the order or have a telephonic status conference. Does anyone have any preferences?

MR. HIRSCH: Judge, even though we came out here for this hearing on the motion, we want to read the motion and we'll -

THE COURT: It's a fair –

MR. HIRSCH: – and we're going to file a response. And if we need to have another hearing telephonically or otherwise, we can do that.

MR. LESTER: And, Your Honor, I just want to make a clarification. It wasn't our intention to even really bring this up today, because we didn't want to surprise Plaintiff or not provide them an opportunity to do that. So, we're in full agreement on that.

MR. HIRSCH: And the other thing I should point out, Judge, is if the motion is what I think it's going to be, we're probably not going to need two

Page 68

weeks to respond to it.

THE COURT: Okay. Anything else, any other housekeeping?

MR. HIRSCH: No, Your Honor.

THE COURT: Very good. I wish you a pleasant weekend.

(Whereupon, at 11:30 a.m., the hearing was concluded.)

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//