**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ENERGY NORTHWEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-0010C |
| v. | ) | |
| | ) | Chief Judge Damich |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED AND SUPPLEMENTAL COMPLAINT**

Plaintiff, Energy Northwest, through its undersigned counsel, files this Complaint against defendant, the United States, and states as follows:

**NATURE OF THIS ACTION**

1. This is an action for breach of contract. On June 13, 1983, Energy Northwest, formerly known as Washington Public Power Supply System, entered into a written contract with the United States, known as the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (the "Standard Contract") pursuant to which the Government agreed to accept and dispose of spent nuclear fuel and high-level radioactive waste (collectively "SNF") beginning not later than January 31, 1998, in exchange for agreed payments fixed in the Standard Contract at particular amounts. Energy Northwest has honored all of its contractual obligations that have become due under the Standard Contract. The Government breached the Standard Contract by failing to remove and dispose of SNF by the contractual deadline. In fact, the Government recently declared that it will not begin to dispose of SNF until 2017, at the earliest – nineteen years after the deadline specified in the Standard Contract. On January 30, 2006, this Court issued a published opinion finding the Government liable for breach of the Energy Northwest's Standard Contract. *Energy Northwest v. United States*, 69 Fed.Cl. 500 (2006).

## JURISDICTION

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1491(a)(1).

3. DOE's failure to comply with its essential contractual obligation to begin disposing of SNF by January 31, 1998 constitutes a material partial breach of its Standard Contract with Energy Northwest, for which Energy Northwest may seek recovery of its damages without seeking administrative remedies. In companion decisions entered on August 31, 2000, the Federal Circuit conclusively rejected the Government's exhaustion of remedies jurisdictional defense. *See Northern States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000); *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000).

## PARTIES

4. Plaintiff Energy Northwest is a joint operating agency and municipal corporation of the State of Washington. Energy Northwest owns and operates the Columbia Generating Station ("CGS"), a nuclear electricity generating facility located near Richland, Washington. CGS is also known as Washington Nuclear Project No. 2 (WNP-2). CGS has generated and continues to generate SNF, which is stored at the plant site.

5. Defendant is the United States acting by and through its Department of Energy ("DOE").

6. DOE is a cabinet-level department in the Executive Branch authorized to make contracts to accept and dispose of SNF generated by utilities including Energy Northwest.

## STATEMENT OF FACTS

### Nature of the Government's Obligations Under the Contract Involved Here

7. SNF is composed in significant part of uranium and byproducts such as plutonium and other highly radioactive substances. SNF remains radioactive after it is removed from a nuclear reactor and must be isolated in safe disposal facilities for an indefinite period.

8. It has been the policy of Congress for many years, and remains so today, that the obligation to protect future generations from the hazards of SNF is better discharged by final disposal in Government-owned and controlled-sites than by storage in utility-controlled sites, such as power generating facilities.

9. In 1982, Congress enacted the Nuclear Waste Policy Act ("NWPA"), codifying the Federal Government's long-standing commitment to accept responsibility and provide for the timely disposition of SNF produced by utilities. *See* 42 U.S.C. § 10101 *et seq.* Pursuant to Section 302(a)(5)(B) of the NWPA, the DOE was required to begin accepting and disposing of commercially-generated SNF no later than January 31, 1998, in return for the payment of fees by utilities that generated or held title to SNF.

10. Pursuant to Section 302 of the NWPA (42 U.S.C. § 10222), the Government developed the Standard Contract. The Standard Contract prescribes the payment of fees into the Nuclear Waste Fund and the acceptance and disposition of SNF by the Government. *See* 10 C.F.R. § 961.11.

11. The Standard Contract provides that the Government shall begin to accept and dispose of SNF no later than January 31, 1998, and shall continue "until such time as all SNF and/or HLW [high level radioactive waste] from the civilian nuclear power reactors. . . has been disposed of." (Standard Contract Art. II).

**Specific Terms of Energy Northwest's Contract With the Government**

12. Energy Northwest entered into the Standard Contract at issue here on June 13, 1983, pursuant to which Energy Northwest undertook to pay fees to the Government for the acceptance and disposal of SNF. A true and accurate copy of the Standard Contract is attached as Exhibit A. Under the Standard Contract, Energy Northwest pays a 1.0 mill per kilowatt-hour fee for electricity generated by CGS. The obligation to pay the fee commenced with commercial operation of CGS in 1984. The fee has been and is being paid quarterly. (Standard Contract Art. VIII.A). As of June 30, 2006, Energy Northwest has made payments of over $136 million into the Nuclear Waste Fund and continues to pay fees in excess of $8 million per year.

13. The Standard Contract obligated the Government to begin to accept and dispose of SNF by January 31, 1998. (Standard Contract Art. II).

14. The Government deposited the fees it received from utilities, including Energy Northwest, into the Nuclear Waste Fund, which was to be the source of funds to cover the Government's costs for disposing of SNF. (42 U.S.C. §§ 10131(b)(4) and 10222). According to the Fiscal Year 2002 Year-End Report prepared by the Office of Civilian Radioactive Waste Management, the balance in the Nuclear Waste Fund at the end of fiscal year 2002 was $13.413 billion.

15. By performing all of its obligations to date under the Standard Contract, Energy Northwest's contractual rights became vested, and the Government's contractual obligations expressed in the Standard Contract became wholly unconditional.

**THE GOVERNMENT'S BREACH OF ITS OBLIGATIONS**

16. During the late 1980's and early 1990's, many utilities, including Energy Northwest, became concerned about the Government's ability to meet its obligations to utilities and third parties under the Standard Contracts and otherwise.

17. In response to utility inquiries, on April 28, 1995, DOE issued a Final Interpretation of Nuclear Waste Acceptance Issues, 60 Fed. Reg. 21793-02 (1995) ("Final Interpretation"), asserting that it did not have a statutory or contractual obligation to accept SNF beginning January 31, 1998, in the absence of a repository or interim storage facility constructed under the NWPA.

18. Certain states and utilities petitioned for review of DOE's Final Interpretation in the United States Court of Appeals for the District of Columbia Circuit, pursuant to the NWPA (42 U.S.C. § 10139(a)(1)).

19. On July 23, 1996, in *Indiana Michigan Power Co. v. Department of Energy*, 88 F.3d 1272 (D.C. Cir. 1996), the U.S. Court of Appeals for the District of Columbia Circuit held that the NWPA imposed on the Government an obligation to begin disposing of SNF by January 31, 1998, conditioned only on the payment of fees by the utilities into the Nuclear Waste Fund, and remanded the matter to the Government for proceedings consistent with the opinion.

20. In December, 1996, the Government, acting through DOE, announced that it would not begin to dispose of SNF by the statutory deadline, and suggested that its delay was "unavoidable" and thus excusable under Article IX of the Standard Contract.

21. On January 31, 1997, Northern States Power Company and other utilities filed a petition with the D.C. Circuit for a writ of mandamus to compel the Government to

comply with the mandate in *Indiana Michigan* and to honor the Government's unconditional obligations under the NWPA and Standard Contract.

22. On June 3, 1997, while the mandamus proceeding was pending, the Government issued a document titled "Contracting Officer's Preliminary Determination that the Department of Energy's Delay in Beginning Spent Fuel Disposal Was Unavoidable." This document described the Government's difficulties in preparing a permanent deep geologic disposal site in which to store SNF, and asserted that the Government's failure to construct a deep geologic disposal site excused it from any obligation to utility Standard Contract parties because the delay was allegedly "unavoidable."

23. In *Northern States Power Co. v. United States*, 128 F.3d 754 (D.C. Cir. 1997), the D.C. Circuit on November 14, 1997 rejected the Government's assertions in the June 3 Preliminary Determination, and reaffirmed its ruling in *Indiana Michigan* that the NWPA required the Government to undertake, through the Standard Contract, acceptance and disposal of utilities' SNF by January 31, 1998. The Court of Appeals held that "[t]he contractual obligations created consistently with the statutory contemplation leave no room for [the Government] to argue that it does not have a clear duty to take the SNF from the owners and generators by the deadline imposed by Congress." *Id.* at 758-59. The Court issued a writ of mandamus "to correct [the Government's] misapprehension of [*Indiana Michigan*]," stating that "we preclude [the Government] from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim." *Id.* at 760.

24. The ruling of the D.C. Circuit in *Northern States Power* precludes the Government from arguing here that its breach of Energy Northwest's Standard Contract is

excused on the grounds that it was unavoidable or that the Government's performance of Energy Northwest's Standard Contract was impossible or in any way excused.

25. The D.C. Circuit reaffirmed its November 1997 ruling in an order issued May 5, 1998, stating that "[o]ur decision in *Northern States* barred the DOE from interpreting the [Standard] Contract as imposing only a contingent disposal obligation." *Northern States Power Co. v. United States,* 1998 WL 276581, *1 (D.C. Cir. May 5, 1998).

26. The declaratory and mandatory relief sought by the petitioning utilities in *Northern States* was separate and apart from any and all rights of such utilities, including Energy Northwest, to monetary damages or other relief for the Government's breach of its obligations pursuant to its Standard Contracts.

27. Despite the D.C. Circuit's second unequivocal ruling in *Northern States* that the Government had an unconditional obligation to commence acceptance of SNF by January 31, 1998, the Government failed to begin accepting SNF by the contractual and statutory deadline. The Government has recently announced that it will not begin to accept and dispose of SNF until 2017, at the very earliest.

28. On August 31, 2000, the Federal Circuit, in a decision involving another utility that had sued for breach of the Standard Contract, concluded that DOE's failure to begin accepting spent nuclear fuel by the January 31, 1998 contractual deadline constituted a breach of the Standard Contract. *Maine Yankee*, 225 F.3d 1336 (Fed. Cir. 2000). In the companion *Northern States* case, the Federal Circuit held that the unavoidable delays provision of the contract "does not bar a suit seeking damages for the Government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998." *Northern States*, 224 F.3d at 1367. In summary, the Federal Circuit has determined as a matter of law that DOE breached

the Standard Contract and that Energy Northwest and other similarly situated utilities that are parties to the Standard Contract can bring an action for breach of contract in this Court. On January 30, 2006, this Court issued a published opinion specifically finding the Government liable for breach of Energy Northwest's Standard Contract. *Energy Northwest v. United States*, 69 Fed.Cl. 500 (2006).

29. As a consequence of the Government's breach of contract, Energy Northwest has incurred and will incur very substantial costs, including, but not limited to, the costs of studying various options for expanding SNF storage as a result of the Government's breach and to investigate, design, license and construct alternative storage facilities and to purchase and load casks to store SNF at those facilities.

30. Energy Northwest's claims in this action are for damages resulting from the Government's existing breach of its obligation to dispose of Energy Northwest's SNF. Energy Northwest insists that the Government eventually meet its obligation to dispose of Energy Northwest's SNF.

## CLAIMS FOR RELIEF

### Count I: Breach of Contract: Damages

31. Paragraphs 1 through 31 are incorporated herein by reference as if set forth in full.

32. Energy Northwest has complied and continues to comply with all of its obligations under the Standard Contract, including the payment of all required fees into the Nuclear Waste Fund.

33. The Government's failure to begin to dispose of SNF beginning on January 31, 1998 constitutes a material partial breach of the Government's obligations under the

Standard Contract. In fact, the Government has declared that it will not begin to dispose of SNF until 2017, at the earliest – nineteen years after the deadline specified in the Standard Contract.

34. As a direct and proximate result of the Government's breach of its Standard Contract with Energy Northwest, Energy Northwest has suffered damages in an amount to be determined at trial.

**Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing**

35. Paragraphs 1 through 31 are incorporated herein by reference as if set forth in full.

36. The Standard Contract contains an implied covenant of good faith and fair dealing, pursuant to which DOE has a duty to perform its obligations under the contract in good faith and not to take actions detrimental to Energy Northwest's contractual rights.

37. DOE has breached the covenant of good faith and fair dealing by failing and refusing to make any effort to meet the contractual deadline for beginning to dispose of SNF; by steadfastly attempting to avoid its obligations under the contract as defined by the D.C. Circuit; by failing to make any effort to dispose of Energy Northwest's SNF or even to provide Energy Northwest with a firm date on which DOE will begin to do so; by attempting to limit its own obligations under the Standard Contract; by issuing documents with a proposed acceptance rate inconsistent with the parties' expectations and based on unlawful assumptions; and by insisting on Energy Northwest's continued performance of its reciprocal obligation to pay fees into the Nuclear Waste Fund despite DOE's refusal to perform.

38. In contrast to DOE's failure to take any action to meet its contractual commitments, DOE has taken action to receive, transport, and store SNF from other entities. For example, DOE has accepted and continues to store SNF from foreign research reactors.

39. As a direct and proximate result of DOE's breach of the implied covenant of good faith and fair dealing, Energy Northwest has suffered damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Energy Northwest respectfully requests that the Court enter judgment in its favor and against defendant granting Energy Northwest the following relief:

(a) damages for breach of contract through August 31, 2006;

(b) damages for breach of the implied covenant of good faith and fair dealing through August 31, 2006;

(c) interest and such costs, expenses, and attorneys' fees as are available under applicable law; and

(d) such other relief as the Court deems just and proper.

Dated: October 25, 2006

Respectfully submitted,

s/ Norman M. Hirsch
NORMAN M. HIRSCH
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 923-2782 telephone
(312) 840-7782 facsimile

COUNSEL FOR PLAINTIFF
ENERGY NORTHWEST

OF COUNSEL:

David A. Handzo
Jenner & Block LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 639-6000

William D. Heinz
David Jiménez-Ekman
Lisa M. Eddington
Christopher Tompkins
Nada Djordjevic
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of October, 2006, a copy of the foregoing *Amended And Supplemental Complaint* was filed electronically with the Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Norman M. Hirsch