No. 04-10C
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

ENERGY NORTHWEST,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington D.C. 205230
Tele: (202) 616-0347
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington D.C. 20585

SCOTT DAMELIN
SONIA ORFIELD
RUSSELL SHULTIS
Trial Attorneys
Department of Justice
Washington, D.C. 20530

August 6, 2007

Attorneys for Defendant

TABLE OF CONTENTS

INDEX TO THE APPENDIX . . . iii

TABLE OF AUTHORITIES . . . iv

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE . . . 1

BACKGROUND . . . 1

I. DOCUMENTS AT ISSUE IN ENERGY NORTHWEST'S MOTION . . . 1

II. PRIOR CHALLENGES TO THE GOVERNMENT'S ASSERTION OF DELIBERATIVE PROCESS PRIVILEGE . . . 4

III. MOTION TO COMPEL FILED BY PG&E . . . 5

A. Initial Ruling . . . 5

B. The Government's Motion For Reconsideration . . . 6

C. The Court's Order On Reconsideration . . . 7

D. PG&E's Renewed Motion To Compel . . . 9

IV. MOTION TO COMPEL FILED BY DAIRYLAND . . . 11

SUMMARY OF THE ARGUMENT . . . 12

ARGUMENT . . . 13

I. ENERGY NORTHWEST HAS NOT SHOWN A COMPELLING NEED FOR THE DOCUMENTS AT ISSUE . . . 13

A. Energy Northwest Has Not Made Its Own Showing For The Documents That The Court Ordered The Government To Produce In *Pacific Gas* And *Dairyland* . . . 13

B. Energy Northwest Has Not Made A Showing Of Compelling Need For The Documents That The Court Did *Not* Order The Government To Produce In *Pacific Gas,* But That Were Produced In *Dairyland* . . . 18

C. If The Court Determines That Energy Northwest Has Shown A Compelling Need For Any Of The Documents At Issue In Its Motion, The Court Should Order Those Documents Produced For Use In This Case Only . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

II. ENERGY NORTHWEST'S CHALLENGE TO THE GOVERNMENT'S ASSERTION OF ATTORNEY-CLIENT PRIVILEGE IS WITHOUT MERIT 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

APPENDIX

## INDEX TO THE APPENDIX


Document | Page

Table of Challenges, Prepared by the Government to Identify the Documents Remaining at Issue in Energy Northwest's Motion to Compel . . . . . 1

Declaration of Ronald L. Milner, Chief Operating Officer, Office of Civilian Radioactive Waste Management, executed March 31, 2006 . . . . . 18

Declaration of Gregory H. Friedman, Inspector General, Department of Energy, executed April 10, 2006 . . . . . 95

Excerpt of Pacific Gas & Electric's Second Motion To Compel The Production Of Documents Withheld Under The Deliberative Process Privilege, filed May 11, 2006 . . . . . 103

Department of Energy Delegation Order No. 00-002.00E To Under Secretary for Energy, Science, And Environment, dated November 23, 2005 . . . . . 105

Memorandum and Amendment to Delegation Order No. 00-002.00 from Secretary of Energy to Under Secretary for Energy, Science, and Environment Authorizing the Assertion of the Deliberative Process Privilege, dated May 13, 2002 . . . . . 117

Amendment to Redelegation Order No. 00-002.06 from Under Secretary of Energy, Science, and Environment to Director of OCRWM Authorizing the Assertion of the Deliberative Process Privilege, dated May 13, 2002 . . . . . 119

Delegation of Authority from Director of OCRWM to Ronald Milner Authorizing the Assertion of the Deliberative Process Privilege, dated May 13, 2002 . . . . . 121

Energy Northwest's First Set of Requests For Production of Documents, Jan. 18, 2007 . . . . . 122

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Cabot v. United States,
35 Fed. Cl. 442 (1996) . . . . . . . . . . 24

Carl Zeiss Stiftung v. V.E.B. Carl Zeiss,
40 F.R.D. 318 (D.D.C. 1966) . . . . . . . . . . 14

Committee for Nuclear Responsibility, Inc. v. Seaborg,
463 F.2d 788 (D.C. Cir. 1971) . . . . . . . . . . 14

Dairyland Power Cooperative v. United States,
No. 04-106C, slip op. (Fed. Cl. June 29, 2007) . . . . . . . . . . passim

First Height Bank, FSB v. United States,
46 Fed. Cl. 312 (2000) . . . . . . . . . . 24

In re Franklin National Bank Securities Litigation,
478 F. Supp. 577 (E.D.N.Y. 1979) . . . . . . . . . . 14

Marriott International Resorts, L.P. v. United States,
437 F.3d 1302 (Fed. Cir. 2006) . . . . . . . . . . 13, 14, 15

Pacific Gas & Electric Co. v. United States,
70 Fed. Cl. 128 (2006) . . . . . . . . . . 5, 6, 22

Pacific Gas & Electric Co. v. United States,
71 Fed. Cl. 205 (2006) . . . . . . . . . . passim

Pacific Gas & Electric Co. v. United States,
No. 04-74C & -75 C, slip op. (Fed. Cl. May 14, 2006) . . . . . . . . . . passim

Redland Soccer Club, Inc. v. Department of the Army,
55 F.3d 827 (3d Cir. 1995), cert. denied, 516 U.S. 1071 (1996) . . . . . . . . . . 14

In re Sante Fe International Corp.,
272 F.3d 705 (5th Cir. 2001) . . . . . . . . . . 24

Scott Paper Co. v. United States,
943 F. Supp. 489 (E.D. Pa. 1996) . . . . . . . . . . 14

TABLE OF AUTHORITIES (continued)

**CASES** **PAGE(S)**

Scott v. PPG Indus., Inc.,
142 F.R.D. 291 (N.D.W. Va. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. AT&T,
524 F. Supp. 1381 (D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Electro-Voice, Inc.,
879 F. Supp. 919 (N.D. Ind. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Farley,
11 F.3d 1385 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Yankee Atomic Electric Co. v. United States,
54 Fed. Cl. 306 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Yankee Atomic Electric Co. v. United States,
No. 98-126C, slip op. (Fed. Cl. Aug. 25, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENERGY NORTHWEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-10C |
| | ) | (Chief Judge Damich) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DOCUMENTS WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE

Defendant, the United States, respectfully responds to "Energy Northwest's Motion To Compel Production of Documents Withheld Under The "Deliberative Process" Privilege," filed by plaintiff, Energy Northwest. With its motion to compel, Energy Northwest seeks the production of 256 documents that the Government has withheld in the spent nuclear fuel ("SNF") litigation upon the basis of the deliberative process privilege, including numerous documents that also include information protected by the attorney-client privilege or the work product doctrine. Energy Northwest's motion should be denied in its entirety. To the extent that the Court determines that Energy Northwest has established a "compelling need" for any of the documents at issue and that any of the documents are to be produced, the Government requests that the Court limit the production of any documents to counsel for Energy Northwest for use in this case only.

## BACKGROUND

### I. DOCUMENTS AT ISSUE IN PLAINTIFF'S MOTION

Pursuant to the Government's discussions with counsel for Energy Northwest on March 19 and June 28, 2007, plaintiff's First Set of Requests for Production of Documents, dated January 18, 2007, and the "Table of Challenges" attached to Energy's Northwest's motion to

compel, the Government understands that Energy Northwest seeks to compel the production of 256 documents withheld on the basis of deliberative process privilege by the Department of Energy ("DOE"). A. 1-17.[1] Energy Northwest seeks to compel production of all of the documents that were the subject of plaintiff's motion to compel the production of documents withheld on the basis of deliberative process in Pacific Gas & Electric Co. v. United States, No. 04-74C & -75C (Fed. Cl.), with the exception of documents related to the issue of Greater-Than-Class-C radioactive ("GTCC") waste. With the removal of the GTCC documents, Energy Northwest seeks to compel production of the majority of documents that are covered by the declaration of Mr. Ronald Milner, Chief Operating Officer, Office of Civilian Radioactive Waste Management ("OCRWM"),[2] A. 18, and the three documents that are the subject of the declaration of Mr. Gregory Friedman, Inspector General ("IG"), DOE.[3] A. 95.

---

[1] "A. __" refers to the appendix to this response. Energy Northwest included a "table of challenges" (Exh. B to its motion to compel) similar to the table that had been produced with the motion to compel that Pacific Gas & Electric Company ("PG&E") had filed when PG&E challenged the Government's privilege assertions in Pacific Gas & Electric Co. v. United States, No. 04-74C & -75C (Fed. Cl.). Energy Northwest included information on the table from the Court's June 29, 2007 order in Dairyland Power Cooperative v. United States, No. 04-106C, slip op. (Fed. Cl. June 29, 2007). The Government has provided its own table of challenges in response to Energy Northwest's motion to compel that identifies all of the documents that are at issue. A. 1-17.

[2] Energy Northwest stated that it does not seek the production of the following documents that this Court ordered produced in Dairyland for *in camera* inspection: Document Nos. 105, 106, 107, 289, 300, and 302. Pl. Mtn. at Exh. A, fn.2.

[3] Like the plaintiff in Dairyland, Energy Northwest does not discuss Mr. Friedman's affidavit in its motion or include his affidavit in the appendix to its motion. However, based upon the inclusion of the three documents cited in Mr. Fiedman's affidavit in Energy Northwest's "Table of Challenges" attached to its motion to compel, the Government understands that Energy Northwest seeks the production of these three documents.

Energy Northwest also seeks to compel the production of six documents that Judge Hewitt ordered produced in Pacific Gas, but which were not sought in Dairyland's motion to compel based upon PG&E's showing of a "compelling need" for those documents. These documents are identified as Document Nos. 132, 223, 282, 285, 286 and 325. Pl. Mtn. at 4 n.4. Document Nos. 132, 223, 286 and 326 were released to PG&E on April 18, 2006, and were produced to Dairyland on July 20, 2007. We are in the process of making these documents available to all SNF plaintiffs on the Government's document production website. The Government is asserting attorney client privilege and work production protection for Document No. 285, not the deliberative process privilege. Document No. 282, included in the attached table of challenges, is discussed in paragraph 71 of Mr. Milner's declaration.

In addition, the Government understands that Energy Northwest seeks to compel the production of an additional 55 documents for which Judge Hewitt determined PG&E did not have a "compelling need" sufficient to overcome the Government's assertion of deliberative process privilege, but that this Court in Dairyland ordered either produced to the plaintiff or produced for *in camera* inspection. These documents include two documents regarding possible modifications to the Standard Contract (Ref. Nos. 367 and 369), five documents regarding the issuance of the 2004 Annual Capacity Report/Acceptance Priority Ranking ("ACR/APR") and the resumption of the delivery commitment schedule process (Ref. Nos. 387-90 and 368), and over 40 documents related to the possible rates of spent fuel acceptance that DOE may use when

performance of the Standard Contract begins. Energy Northwest's motion apparently identifies these documents in the "Table of Challenges" attached as Exhibit B to its motion to compel.[4]

## II. PRIOR CHALLENGES TO THE GOVERNMENT'S ASSERTION OF DELIBERATIVE PROCESS PRIVILEGE [5]

In a motion to compel the production of documents withheld on the basis of deliberative process in Pacific Gas, PG&E, represented by the same counsel for Dairyland, sought to compel the production of all of the documents withheld by the Government on the basis of deliberative process privilege since the beginning of the spent fuel litigation pending before the Court. PG&E's motion to compel followed previous challenges to the assertion of deliberative process privilege in the coordinated discovery proceedings, over which Judge Sypolt presided, and in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.). During the coordinated discovery proceedings in 2002, plaintiffs challenged DOE's assertion of deliberative process over 24 documents. Based upon a declaration executed by Mr. Milner, the Court upheld this

[4] In Dairyland, Dairyland's counsel referred counsel for the Government to footnote 4 of PG&E's motion to compel, filed in May 2006, to identify these documents. A. 104.

[5] The Government sets forth here the course of prior proceedings regarding challenges to the Government's assertion of deliberative process privilege in the SNF cases as background, in part because Energy Northwest, in its motion, simply relies upon prior Court pleadings and proceedings filed by PG&E and Dairyland involving similar challenges to the Government's assertion of the deliberative process privilege in the SNF cases. Energy Northwest, in part, simply asks the Court to "enforce" the initial ruling by Judge Hewitt, rather than her order on reconsideration of that initial ruling, on PG&E's motion to compel. Pl. Mtn. at 4-5. As set forth in the argument section of our brief, we expect that the Court will consider Energy Northwest's challenge independently from previous challenges and determine whether DOE's assertions of deliberative process privilege are proper. To the extent that the Court relies upon the course of proceedings in Pacific Gas and Dairyland, we urge the Court to consider the entirety of those proceedings as well as the Court's two previous decisions on the Government's assertions of deliberative process privilege in the coordinated discovery proceedings and Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.).

assertion of deliberative process privilege for these documents, finding that Mr. Milner had "'precise and certain reasons' for invoking the privilege . . . by providing descriptions of the documents and averring that continued confidentiality is necessary to assure the free flow of ideas and candid discussions within the agency." Yankee Atomic Electric Co. v. United States, 54 Fed. Cl. 306, 312 (2002).

By motion dated March 6, 2003, filed in Yankee Atomic, plaintiff in that SNF case sought to challenge every assertion of deliberative process privilege by the Government, including the assertions of deliberative process privilege that had been upheld by Judge Sypolt in the coordinated discovery proceedings. In response to this motion, Mr. Milner, as well as Ms. Patrice Bubar, Office of Environmental Management ("EM"), DOE, and Mr. Martin Virgilio, Director, Office of Nuclear Materials Safety and Safeguards, Nuclear Regulatory Commission ("NRC"), executed declarations formalizing the Government's assertion of deliberative process privilege over approximately 200 documents. The Court ordered the Government to produce documents related to GTCC issues, based upon a determination of Yankee Atomic's "compelling necessity" for these documents, Yankee Atomic Electric Co. v. United States, No. 98-126C, slip. op. at 3 (Fed. Cl. Aug. 25, 2003), but sustained the remainder of the Government's assertions of deliberative process privilege. Id. at 4.

## III. MOTION TO COMPEL FILED BY PG&E

### A. Initial Ruling

In 2005, PG&E, in a new motion to compel, sought again to challenge the Government's assertion of deliberative process over the documents that had been the subject of the two previous motions to compel, as well as all of the Government's subsequent assertions of

deliberative process. In total, PG&E sought to compel the production of 465 documents, arguing that the Government had failed to "comply with the procedural requirements for the invocation of deliberative process." Pacific Gas & Electric Co. v. United States, 70 Fed. Cl. 128, 136 (2006). In an initial ruling on this motion, the Court found that the Government had failed to meet the procedural requirements for invoking the privilege. Id. at 137. Specifically, the Court found that the Government had failed to demonstrate that the "privilege was invoked by an appropriate official," that the declarations executed by the Government officials failed to provide "'precise and certain reasons' for maintaining the confidentiality of the requested documents," and that the declarations supporting the assertion of deliberative process were "belatedly executed." Id. The Court did not decide "whether the documents [subject to challenge] meet the legal standards of the privilege by being 'pre-decisional' and 'deliberative.'" Id. at 136. Based upon these determinations, the Court ordered the Government to produce the documents that were the subject of PG&E's motion to compel. Id.

B. The Government's Motion For Reconsideration

The Government filed a motion for reconsideration of the Court's order, asking that the Court re-examine its determination regarding the untimeliness of the Government's assertions of deliberative process, which had a potentially devastating effect upon the Government's ability to assert the deliberative process privilege in any case. With regard to the Court's finding that the Government essentially waived the deliberative process privilege by not providing affidavits when it originally produced its privilege logs, the Government, in its motion for reconsideration, established that the Court's decision was in direct conflict with the overwhelming weight of authority on that issue. With regard to the Court's findings that the Government's delegations

were not sufficiently careful and that the supporting affidavits did not provide sufficiently "precise and certain reasons" for non-disclosure, the Government asserted that the Court's analysis established no guidelines by which the Government, in future cases, could identify the Court's standards for the invocation of this privilege. Finally, the Government established that, particularly in light of the fact that this Court, in two prior SNF cases, upheld the Government's assertion of the deliberative process privilege over some of the same documents at issue in Pacific Gas on the basis of the same affidavits, with the same delegations and same explanations of harm, the Court's order for immediate production of all documents, without any opportunity to correct the technical defects that the Court found and without any opportunity for in camera review, was unwarranted.

C. The Court's Order On Reconsideration

In response to the Government's motion for reconsideration, the Court ordered that the Government provide for in camera review each document withheld on the basis of deliberative process privilege and that the same Government officials who had previously invoked deliberative process privilege prepare new affidavits for those documents. Pacific Gas & Electric Co. v. United States, 71 Fed. Cl. 205, 206-07 (2006). The Court directed that these new affidavits were to "'describe with specificity the 'precise and certain reasons' for maintaining the confidentiality of each document that continues to be withheld.'" Id. Mr. Milner executed his new affidavit on March 31, 2006, A. 94, and Mr. Friedman executed his new affidavit on April 10, 2006. A. 102.

Regarding the Government's request for reconsideration of the Court's previous ruling regarding the timing of the execution of affidavits in support of assertions of deliberative

process, the Court stated that it "did not, as defendant suggests, find that the Government waived the right to assert the deliberative process privilege by waiting until it responded to plaintiff's motion to compel to execute affidavits in support of its assertion of the privilege." Pacific Gas, 71 Fed. Cl. at 208. "Rather, the Court merely found such practice to be 'procedurally deficient,' thereby eroding the credibility of defendant's claim of the privilege." Id. The Court suggested that the time for the execution of such an affidavit would be after plaintiff's counsel put the Government on notice that it intended to challenge the Government's assertion of deliberative process, presumably as the result of the obligation to meet and confer, but before plaintiff's counsel actually involved the Court in the dispute. Id. at 209 ("The parties' counsel can still, as defendant states, 'resolve their disputes consensually without need for the Court's involvement,' and without need to resort to obtaining a formal affidavit to support all preliminary assertions of the deliberative process privilege. As to those documents about which the parties are unable to agree, however, if the Government wishes to continue (successfully) to assert that the deliberative process privilege protects them from discovery, the government should carefully support that assertion with an affidavit from an agency official at that time.").[6]

With regard to the Government's request that the Court reconsider its prior ruling regarding the sufficiency of the affidavits submitted in support of the assertion of deliberative process privilege, the Court stated that the affidavits "need not reveal the contents of the deliberations; rather [they] must only identify, with respect to a specific document or type of

---

[6] With regard to the Government's request that the Court reconsider its decision regarding the delegation of authority to the officials who executed the declarations, the Court stated that it "did not rely on its determination that defendant's delegations were not carefully undertaken in ruling on plaintiff's motion to compel." Id. at 209. On this basis, the Court found no need to reconsider that portion of its ruling.

documents, why that document should be protected from discovery and what specific harm will result from its disclosure." Id. The Court stated that the Government had failed to meet this requirement with the affidavits that it had originally submitted, but found that it had been met with the new affidavits that the Government was ordered to produce. Id. at 210. Based upon its review of these new affidavits and the documents withheld, the Court exercised "its discretion in the circumstances of [the] case to afford defendant the opportunity properly to assert the deliberative process privilege over the documents it continues to withhold." Id.

Having determined that the Government properly asserted deliberative process privilege over the documents, the Court ordered PG&E to review the new affidavits and "move the Court to compel production of any of the documents described in the affidavits, based on 'a showing of evidentiary need . . . that outweighs the harm that disclosure of such information may cause to the defendant.'" Id. In its opinion on the Government's motion for reconsideration, the Court provided examples of documents for which it thought that "defendant's interest in maintaining the confidentiality of the documents -- while described with sufficient particularity -- is outweighed by the plaintiff's evidentiary need for the documents." Id. at 214. The Court also provided examples of documents for which it thought that PG&E could not make a showing of compelling need. Id. at 211.

D. PG&E's Renewed Motion To Compel

In response to the Court's decision on reconsideration, PG&E moved to compel the production of 209 documents. After examining these documents again in camera, the Court ordered the Government to produce 21 documents. Pacific Gas & Electric Co. v. United States, No. 04-74C & -75C (Fed. Cl. May 14, 2006). However, the Court declined to compel the

production of an additional 54 documents regarding the rate of spent fuel acceptance,[7] finding that "plaintiff's evidentiary need for these documents [did not outweigh] defendant's interest in maintaining their confidentiality." Id. at 4. Similarly, the Court rejected PG&E's motion to compel the production of documents related to the issuance of the 2004 Annual Capacity Report/ Acceptance Priority Ranking and related documents regarding delivery commitment schedules, documents related to "DOE's Adoption of a Market Driven Approach for OCRWM," and documents related to DOE's proposals to modify or amend the Standard Contract. Id. at 4-5.

Based upon the Court's order on reconsideration, the Government identified approximately 85 documents that related to the same subject matter as those for which the Court had previously determined PG&E's evidentiary need probably outweighed the Government's interest in maintaining the assertion of deliberative process over these documents. Id. at 2. The Government asked that the Court order the production of these documents for use in PG&E's case to preclude any argument that the Government had waived the assertion of deliberative process privilege in other cases by agreeing voluntarily to produce these documents. Id. The Court ordered the production of these documents and amended the protective order in the case to preclude the use of these documents outside of the Pacific Gas case. Id. In addition, counsel for PG&E conducted a two-hour deposition of Mr. David Zabransky, Contracting Officer, regarding these documents, just before trial began. PG&E sought the admission of none of these documents at trial and did not elicit any testimony from Mr. Zabransky or other witnesses regarding these documents at trial.

[7] As explained below, the Court's characterization of these documents are "related to the rate of acceptance" is not wholly accurate.

IV. MOTION TO COMPEL FILED BY DAIRYLAND

On January 18, 2007, Dairyland filed its Motion to Compel Production of Documents Withheld Under the "Deliberative Process" Privilege and Attorney Client Privileges. In its motion, Dairyland sought to compel the production of 281 documents as to which the Government asserted the deliberative process privilege, the attorney client privilege, and/or the work product doctrine. Dairyland sought to challenge the Government's assertion of deliberative process privilege over documents responsive to requests for production of documents served by the plaintiffs in the SNF cases. Although the Court in other cases had previously upheld the Government's assertion of deliberative process over many of these same documents, Dairyland asked the Court to undertake another review of the documents at issue in the motion to compel. Dairyland's challenge had two aspects. First, Dairyland asserted that the Government had not met the procedural requirements for the assertion of the deliberative process privilege. Second, Dairyland claimed that it had a "compelling need" for the documents at issue in its motion to compel. However, the Government argued that Dairyland failed to establish that it had a "compelling need" sufficient to overcome the Government's proper assertion of deliberative process privilege.

On June 29, 2007, this Court issued an opinion and order on Dairyland's motion to compel. First, this Court found that the Government had met the procedural requirements for the assertion of the deliberative process privilege. Dairyland Power Cooperative v. United States, No. 04-106C, slip op at 7-9 (Fed. Cl. June 29, 2007). Second, this Court ordered that the Government produce a number of the same documents that Judge Hewitt ordered the Government to produce in Pacific Gas. Third, this Court ordered the Government to provide the

Court, for purposes of *in camera* review, with 128 of the documents sought by Dairyland. On July 20 and 23, 2007, the Government submitted the 128 documents to this Court for *in camera* review. This Court's review of the documents *in camera* remains pending at the time of this filing.[8]

SUMMARY OF ARGUMENT

Energy Northwest now seeks simply to rely on prior rulings in the SNF litigation involving the Government's assertions of the deliberative process privilege.[9] Energy Northwest failed to establish the basic compelling need for the documents in its motion. Energy's Northwest's substantive argument as to its compelling need for these privileged documents encompassed all of four paragraphs of text in its motion to compel. The Government is forced to respond to Energy Northwest's motion containing generalized notions of "compelling need" without any of the analysis underpinning its request to compel the Government to produce privileged documents. If this Court determines that Energy Northwest has shown a compelling

---

[8] Energy Northwest, in its motion to compel, seeks the production of 124 of the 128 documents that were recently submitted to this Court for *in camera* inspection. Pl. Mtn. at Exh. A n.2.

[9] In its motion, Energy Northwest asserts that, "[w]hile it reserves the right to do so later, in this motion, Energy Northwest does not attack the procedural propriety of the Government's privilege claims. Rather, Energy Northwest's limited request is that [the] Court order the Government to turn over the Combined DP Production because Energy Northwest's evidentiary need to examine the documents outweighs the Government's need to protect them in this case." Pl. Mtn. at 6 ¶15. As the Government argued in response to prior efforts by SNF plaintiffs to compel the production of documents withheld on the basis of the deliberative process privilege, DOE has properly asserted the deliberative process privilege over the documents at issue. However, given Energy Northwest's representations, the Government will not reiterate its arguments in this response related to the procedural requirements for assertion of the privilege.

need for any of the documents at issue, the Government requests that the Court order the production of those documents for use in this case only.

## ARGUMENT

### I. ENERGY NORTHWEST HAS NOT SHOWN A COMPELLING NEED FOR THE DOCUMENTS AT ISSUE

#### A. Energy Northwest Has Not Made Its Own Showing For The Documents That The Court Ordered The Government To Produce In *Pacific Gas* and *Dairyland*

Energy Northwest moves to compel the production of numerous privileged documents based upon a purported showing of "compelling need."[10] Specifically, Energy Northwest moves to compel the production of 124 of the 128 documents that Judge Hewitt ordered produced in Pacific Gas. See Pacific Gas, 71 Fed. Cl. at 216; Pacific Gas, No. 04-74C & -75C, slip op. at 6-7 (Fed. Cl. May 14, 2006). In addition, Energy Northwest moves to compel the production of an additional 55 documents for which Judge Hewitt found that PG&E did not have a "compelling need." Id. Energy Northwest moves for the production of numerous documents that this Court ordered produced in Dairyland. Energy Northwest has not established that it has a compelling need for any of these documents, and the Government's assertion of deliberative process should preclude the production of these documents to Energy Northwest.[11]

[10] Energy Northwest simply states that "Energy Northwest expressly adopts the arguments made by Dairyland in its Motion to Compel Production of Documents Withheld Under The "Deliberative Process" and Attorney Client Privileges, filed 1/18/07, Case No. 04-106C," Pl. Mtn. at 4 n.3.

[11] It appears that Energy Northwest's motion to compel concerns the three documents covered by Mr. Friedman's affidavit (Ref. Nos. 306, 308 and 309, Pl. Mtn. at Exh. B at 31-32). The Court did not order the production of these documents in Pacific Gas, but this Court ordered that these three documents be provided to this Court in Dairyland for *in camera* inspection.

The Government recognizes the deliberative process privilege is not absolute. Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302, 1307 (Fed. Cir. 2006) (citing In re Sealed Case, 121 F.3d at 737) ("[A] showing of compelling need can overcome the qualified deliberative process privilege.") (emphasis added); Redland Soccer Club, Inc. v. Department of the Army, 55 F.3d 827, 853 n.18 (3d Cir. 1995), cert. denied, 516 U.S. 1071 (1996); United States v. Electro-Voice, Inc., 879 F. Supp. 919, 923 (N.D. Ind. 1995). After concluding that the privilege is properly invoked, the Court must balance the public interest in non-disclosure with the plaintiff's individual need for the information as evidence. Redland Soccer Club, Inc., 55 F.3d at 854; Committee for Nuclear Responsibility, Inc. v. Seaborg, 463 F.2d 788, 791 (D.C. Cir. 1971); Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, 40 F.R.D. 318, 327 (D.D.C. 1966); Scott v. PPG Indus., Inc., 142 F.R.D. 291, 294 (N.D.W. Va. 1992). The factors to be weighed include 1) the degree to which the proffered evidence is relevant,[12] 2) the extent to which it may be cumulative, and 3) the opportunity of the party seeking disclosure to prove the particular facts by other means. United States v. AT&T, 524 F. Supp. 1381, 1386 n.14 (D.D.C. 1981) (citing United States v. IBM, 20 F.R. Serv. 2d 1082, 1089-91 (S.D.N.Y. 1975)); see Scott Paper Co. v. United States, 943 F. Supp. 489, 496 (E.D. Pa. 1996); In re Franklin National Bank Securities Litigation, 478 F. Supp. 577, 583 (E.D.N.Y. 1979). To compel disclosure, the claimant must make "a showing of necessity sufficient to outweigh the adverse effects the production would engender." Carl Zeiss, 40 F.R.D. at 328-29. The Court, in balancing these interests, may also

[12] A requesting party cannot, as a matter of law, demonstrate "need" in the absence of relevance. United States v. Farley, 11 F.3d 1385, 1390 (7th Cir. 1993) (internal memoranda containing unpublished views of agency staff regarding legal issues are not relevant to court's interpretation of the law).

need to conduct an ex parte review of the documents at issue. Marriot Int'l, 437 F.3d at 1307 ("a trial court may conduct *in camera* review of documents under this qualified branch of the executive privilege doctrine").[13] Energy Northwest has not made a showing of "compelling need" to overcome DOE's right to keep these documents confidential. The documents that Energy Northwest seeks have little or no relevance to the issues to be decided by the Court. Moreover, the Government has already produced hundreds of other documents that do not contain privileged information on these topics which should provide Energy Northwest all the information that it could need.

Energy Northwest seeks the production of documents that Judge Hewitt ordered produced to PG&E, based upon Judge Hewitt's determination regarding PG&E's need for those documents and, apparently Dairyland's need for those documents.[14] As is clear from Mr. Milner's declaration, these documents concern a variety of subjects, many of which are wholly irrelevant to the Court's determination of DOE's obligations to Energy Northwest beginning January 31, 1998. Contrary to Energy Northwest's assertion, Pl. Mtn. at 5-6, these documents do not all concern "spent fuel acceptance rates." For example, Energy Northwest seeks

---

[13] Energy Northwest has failed to make the necessary showing of "compelling need" sufficient to overcome the Government's proper assertion of deliberative process privilege. However, prior to the Court ordering the production of any of these documents to Energy Northwest, the Government asks that the Court undertake the same in camera review that the Court performed in Pacific Gas so that it may accurately assess and weigh the harm to the Government from the disclosure of any of these documents against Energy Northwest's need for these documents. See Marriot Int'l, 437 F.3d at 1307; Pacific Gas, No. 04-74C & -75C, slip op. at 4-5 (May 14, 2006).

[14] As shown on the attached "Table of Challenges," the Court in Pacific Gas ordered the production of documents described in the following paragraphs of Mr. Milner's affidavit: 13, 14, 32, 35, 43, 46, 50-71, and 77. A. 1-17.

production of the documents covered by paragraphs 13 and 14 of Mr. Milner's declaration, which concern DOE's evaluation of interim storage. DOE did not pursue interim storage and the consideration of this possibility cannot inform the Court regarding what DOE's obligations were to Energy Northwest. Similarly, Energy Northwest seeks documents regarding portions of DOE's license application to the NRC for the repository. A. 52, 54 (Milner Aff. ¶¶ 32 and 35). Energy Northwest has failed to explain how repository design documents could be relevant to its case. In addition, Energy Northwest seeks documents generated in the process of preparing a budget submission and responding to a congressional inquiry, A. 61, 89 (Milner Aff. ¶¶ 43 and 77), which, again, are not relevant to Energy Northwest's claims.

The documents that reference possible acceptance rates, which Judge Hewitt ordered the Government to produce in Pacific Gas, are those documents referenced in paragraphs 50-71 of Mr. Milner's declaration. The documents described in these paragraphs all relate to an effort undertaken by OCRWM at the request and direction of then-Under Secretary Card to develop a "business case" for the Yucca Mountain repository to support future budget requests by DOE for the efforts of OCRWM. A. 66 (Milner Aff. at 49). As Mr. Milner further explains in his declaration, this effort "focused upon two goals: one, to be able to accelerate the rate of waste acceptance once repository operations began; and, two, to reduce overall program costs." Id. Finally, as Mr. Milner attests, "all of this analysis did not produce any viable courses of action to meet the Under Secretary's objectives and no changes in program direction were implemented as a result." Id.

Contrary to Energy Northwest's contention (and the Court's findings in Pacific Gas), these documents do not relate to the rates of acceptance that DOE would have used if it had been

able to begin acceptance in 1998. By definition, these documents cannot inform such an inquiry because they were all produced more than three years after DOE was obligated to begin acceptance. Accordingly, these documents cannot be relevant and cannot inform the Court as to DOE's obligation to Energy Northwest and the other utilities beginning January 31, 1998.

The Court in Pacific Gas also ordered the Government to produce one document regarding the spent fuel storage costs (Ref. No. 123). As described in Mr. Milner's affidavit, the document contains information regarding "utilities' estimates of at-reactor storage costs," presumably reported to DOE or gathered from third-party sources. A. 63-64 (Milner Aff. ¶ 46) (emphasis added). This document does not contain DOE's estimates regarding at-reactor storage costs. Moreover, it is Energy Northwest's burden to establish its costs with regard to spent fuel storage. Energy Northwest cannot have an "evidentiary need" for this document because it cannot use this document, regarding utility-reported costs, to carry this burden. Energy Northwest references this document in a footnote to its motion to compel, Pl. Mtn. at 5 n.5, arguing "storage costs are also a critical component of the damages in the instant action involving Energy Northwest." Plaintiff offers no explanation as to how such a document is even relevant to the litigation, and Energy Northwest has failed to make any showing of need for the document.

Rather than making its own showing of "compelling need" for these documents, Energy Northwest simply asserts, without support, that, "[w]ithout reiterating the arguments made at length in the PG&E case, or in Dairyland's motion, Energy Northwest similarly has an evidentiary need for the withheld documents that outweighs the Government's need for protection." Pl. Mtn. at 4. To the extent that the Court allows Energy Northwest to rely upon

PG&E's and Dairyland's purported showing of "compelling need," the Court should also consider the fact that PG&E listed only 30 of the 128 documents ordered produced by Judge Hewitt on its exhibit list, but then did not seek the admission of any of them into evidence at trial. Further, although PG&E was allowed to conduct an additional two-hour deposition of Mr. David Zabransky, Contracting Officer, regarding these documents, PG&E elicited no testimony from Mr. Zabransky or any other witness regarding these documents at trial. PG&E's purported "evidentiary need" for these documents is belied by PG&E's conduct at trial and cannot be the sole basis for Energy Northwest's showing of compelling need.

B. Energy Northwest Has Not Made A Showing Of Compelling Need For The Documents That The Court Did *Not* Order The Government To Produce In *Pacific Gas*, But That Were Produced In *Dairyland*

Energy Northwest also seeks to compel the production of 55 documents that the Court did not order the Government to produce in Pacific Gas, but that this Court ordered produced to plaintiff in Dairyland, or ordered provided to the Court for *in camera* review. Again, Energy Northwest does not provide any specific support for its "compelling need" for these documents, but apparently just latches onto this Court's ruling in Dairyland as the basis for its request. Pl. Mtn. at 4.

Two of the documents that Energy Northwest seeks are analyses performed by Mr. Zabransky, in response to a request by then-Undersecretary Card, regarding possible contract modifications that could be undertaken if DOE decided to modify the Standard Contract. A. 54-55 (Milner Aff. ¶ 36 (Ref. Nos. 367 and 369)). As Mr. Milner states in his declaration, these documents concern possible modifications that DOE has not decided to undertake. As Judge Hewitt noted, these documents are "the type of documents that the deliberative process privilege

is designed to protect." Pacific Gas, 71 Fed. Cl. at 212. Mr. Zabransky has been deposed on numerous occasions and questioned about his understanding of the current contract terms. Energy Northwest obviously has its own Standard Contract and had an opportunity to question Mr. Zabransky about his understanding of its terms. Accordingly, these documents are not the only source of this information, and Energy Northwest cannot demonstrate a "compelling need" for them on this basis. DOE's understanding of relevant terms of the Standard Contract has been extensively litigated already in the SNF cases pending before the Court, and thousands of pages relevant to DOE's understanding of the terms of the Standard Contract have been produced.

Energy Northwest also seeks production of five documents related to the issuance of the 2004 Annual Capacity Report/Acceptance Priority Ranking and the re-institution of the delivery commitment schedule process. A. 49 (Milner Aff. ¶ 29 (Ref. Nos. 368, 387-390)). As described in Mr. Milner's affidavit, these documents are drafts of memoranda to the Secretary and a letter to Standard Contract holders regarding the issuance of the 2004 ACR/APR and the resumption of the delivery commitment schedule process. Id. As Energy Northwest is aware (based upon citation to the 2004 ACR/APR in its own pleadings), the Government has produced documents related to the issuance of the 2004 ACR/APR and the resumption and subsequent suspension of the delivery commitment schedule process. Further, as Energy Northwest must acknowledge, Messrs. Pollog and Zabransky have been questioned about their efforts related to these activities in depositions. Energy Northwest does not explain why, in light of the existing record of testimony regarding these issues and the extensive document production, it also needs these five additional documents. Instead, Energy Northwest, adopting Dairyland's motion to compel arguments, criticizes Mr. Milner's description of the potential harm that may result from the

release of these documents. However, that criticism does not establish a "compelling need" for these documents. Accordingly, the Court should find that Energy Northwest has not established its need for these documents sufficient to overcome the Government's assertion of deliberative process. See Pacific Gas, No. 04-74C & -75C, slip op. at 4-5 (Fed. Cl. May 14, 2006) ("the court finds that plaintiff's evidentiary need for these documents does not outweigh defendant's interest in maintaining the confidentiality. The court agrees with defendant that 'these documents are not relevant to this litigation.'")

Finally, Energy Northwest seeks to compel the production of an approximately 48 documents that it asserts concern the "rate of acceptance." In its motion to compel, Dairyland did not provide a list of these documents in its motion, but counsel for Dairyland directed counsel for the Government to footnote four of PG&E's May 2006 motion to compel for the list of these documents. A. 104 (excerpt of PG&E's May 2006 motion to compel).[15] As shown by a review of the paragraphs of Mr. Milner's affidavit that cover these documents, the documents cover a wide variety of issues, many of which are not relevant to the issues before the Court, and do not, contrary to Energy Northwest's apparent contention, all relate to the possible rate of spent fuel acceptance in the future. For example, Ref. Nos. 136, 137, 141 and 263 are all covered by paragraph 31 of Mr. Milner's declaration. A. 51-52. As Mr. Milner explains in this paragraph, these documents are draft presentations regarding repository design options that were considered but are not being pursued. As Mr. Milner further explains, "every design decision is potentially subject to extensive questioning by Congress and others regarding its basis and

[15] These documents, by reference number, are: 115, 125, 129, 136, 137, 141, 197-201, 204, 206, 209-11, 217-19, 222, 225, 227-32, 235, 237, 257-61, 263, 271, 273, 291, 295, 303, 315, 317-18, 320-21, 323-24, 331, 338, 340, 382, and 383. A. 104.

merits." A. 51 (Milner Aff. at 34). Because of this scrutiny and the need to obtain the best advice regarding possible repository designs from individuals, Mr. Milner asserted deliberative process over these documents. Energy Northwest has provided no showing of a "compelling need" for the production of these documents over this proper assertion of deliberative process.

Contrary to Energy Northwest's contention that the Court had no basis for distinguishing these documents from the other "acceptance rate" documents that the Court ordered produced, the Court in Pacific Gas examined these documents that PG&E had identified as "potentially" helpful and determined that PG&E's evidentiary need did not outweigh the Government's interest in maintaining their confidentiality. Pacific Gas, No. 04-74C & -75C, slip op. at 4 (Fed. Cl. May 14, 2006). Without an explanation from Energy Northwest as to why it needs each of these documents, the Court should find that Energy Northwest has not established a basis for overcoming the Government's proper assertion of deliberative process privilege over these documents.

C. If The Court Determines That Energy Northwest Has Shown A Compelling Need For Any Of The Documents At Issue In Its Motion, The Court Should Order Those Documents Produced For Use In This Case Only

If the Court determines that Energy Northwest has shown a compelling need for any of these documents sufficient to overcome the Government's assertion of deliberative process, the Government requests that the Court order the production of these documents for use in Energy Northwest's case only. To the extent that the Court orders the production of any of these documents, it will be as a result of a determination that Energy Northwest has shown a compelling need for them, not any other plaintiff. Therefore, the Court should properly limit the production of these documents to use in Energy Northwest's case only.

Energy Northwest has sought to challenge the Government's assertion of deliberative process privilege, although the Government's assertions of deliberative process over these same documents have been upheld on three separate occasions. Yankee Atomic Electric Co. v. United States, 54 Fed. Cl. 306, 311-12 (2002); Yankee Atomic, No. 98-126C, slip op. (Fed. Cl. Aug. 25, 2003); Pacific Gas, 71 Fed. Cl. at 210. In Pacific Gas, Judge Hewitt considered PG&E's challenges to the Government's assertion of deliberative process, although the Government's assertions of deliberative process had been previously upheld on two previous occasions, because PG&E had not been a party to the coordinated discovery proceedings. Pacific Gas, 70 Fed. Cl. at 131 n.3. However, Judge Hewitt ordered that the documents produced as a result of that challenge would only be available for use by counsel for PG&E in PG&E's case. Morever, as discussed above, Energy Northwest may overcome the Government's proper assertion of deliberative process privilege with a showing of "compelling need" for the documents. However, that showing would be tied to Energy Northwest's need to have the documents for its case, not the need of another plaintiff in the spent nuclear fuel cases. Further, in making a determination that Energy Northwest has a "compelling need" for these documents, the Court will have to find that Energy Northwest's need for the documents outweighs the potential harm from disclosure. The "harm from disclosure" can be limited by restricting the production of the documents to Energy Northwest's case only. There is no basis for the Court to order the production of the documents to all of the spent nuclear fuel plaintiffs.

## II. ENERGY NORTHWEST'S CHALLENGE TO THE GOVERNMENT'S ASSERTION OF ATTORNEY-CLIENT PRIVILEGE IS WITHOUT MERIT

In addition to moving to compel the production of 256 documents over which the Government has asserted deliberative process privilege, Energy Northwest seeks to compel the production of eight documents in unredacted form, all of which were produced in redacted form in response to Judge Hewitt's orders in Pacific Gas. Pl. Mtn. at 7 n.6. In its motion, Energy Northwest fails to offer any analysis of its own to support its motion to compel and simply asserts that the Government should produce these documents in unredacted form, unless the Court determines that the redactions were proper. As it simply asserts the arguments set forth in Dairyland's prior motion to compel, the Government must assume that Energy Northwest's challenge focuses upon the description in the Government's privilege log in which the basis for the assertion of privilege is that these documents were "under legal review."

As an initial matter, Energy Northwest's challenge to this privilege claim should be deemed moot. With regard to each of the documents at issue here, the Government invoked not only the attorney-client privilege, but also the attorney work product doctrine. Even if the Court were to overrule the Government's claim of attorney-client privilege, the Government would still be entitled to rely upon its prior invocation of the work product doctrine and the absence of any challenge to that claim. Given that any consideration of Energy Northwest's challenge to the attorney-client privilege claims will be purely academic, since the Government will still be entitled to rely upon the work product doctrine regardless of the Court's views on the attorney-client privilege claim, the Court need not expand time and resources evaluating Energy Northwest's attorney-client privilege challenges.

To the extent that the Court evaluates Energy Northwest's attorney-client privilege claim, it should be denied. The attorney-client privilege attaches to communications made by a client, or a person seeking to be a client, to an attorney outside the presence of third parties for the purpose of securing legal advice or services. Cabot v. United States, 35 Fed. Cl. 442, 444 (1996). "While the Government may bear the burden of persuading the court that the communication at issue arose out of an actual attorney-client relationship," this "burden is satisfied if 'the overall tenor of the document indicates that it is a request for legal advice or services.'" First Height Bank, FSB v. United States, 46 Fed. Cl. 312, 315 (2000) (quoting In re Spalding Sports Worldwise, Inc., 203 F.3d 800, 805 (Fed. Cir. 2000)). Further, a privilege log identifying the author, addressee, and date for a document and identifying the general character of the document is sufficient to satisfy this obligation. First Height, 46 Fed. Cl. at 315 ("[plaintiff's] assertion that the Government has not provided sufficient detail in its privilege logs to justify its attorney-client privilege claims is without merit"); see In re Sante Fe International Corp., 272 F.3d 705, 710 (5th Cir. 2001) ("[i]n complex litigation, compliance with Rule 26(b)(5) is 'usually accomplished by submission of a log identifying documents or other communications by date and by the names of the author(s) and recipient(s), and describing their general subject matter . . . .'") (quoting Manual for Complex Litigation (Third) § 21.431 (1995)).

The Government's privilege log for these documents indicates that a portion of each of these documents -- the redacted portion that has never previously been produced -- contains a description of the status of the spent nuclear fuel cases pending before the Court and reflects the analysis of that litigation by counsel for the Department of Energy. Further, the privilege log for these documents indicates that the source of that privileged communication was the Office of the

General Counsel, DOE. We agree with Energy Northwest's apparent contention that passing a document before a lawyer's eyes does not make it privileged. For that reason, the Government has produced numerous documents that have been "reviewed" by counsel without any claim of privilege or redaction. For example, the Government routinely produces "concurrence sheets" that appear to accompany many documents that DOE generates. On these concurrence sheets, counsel for DOE routinely "initials" the sheet indicating review. When that concurrence sheet is not accompanied by any legal advice or other communication, the Government has produced the document. However, as the Government's privilege log explains, the nature of the attorney-client communication present in these documents is more than simply a "legal review" by counsel, and the Government has properly asserted an attorney-client privilege over it.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court deny Energy Northwest's motion to compel the production of documents withheld under the deliberative process privilege, attorney-client privilege, and work product doctrine. If the Court determines that Energy Northwest has demonstrated a "compelling need" for any of the documents at issue, the Government requests that the Court order the production of those documents for use in this case only.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Sharon A. Snyder
SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington D.C. 20530
Tele: (202) 616-0347
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT DAMELIN
SONIA ORFIELD
RUSSELL SHULTIS
Trial Attorneys
Department of Justice
Washington, D.C. 20530

August 6, 2007

Attorneys for Defendant

# APPENDIX

# INDEX TO THE APPENDIX

Document — Page

Table of Challenges, Prepared by Government to Identify the Documents Remaining at Issue in Energy Northwest's Motion to Compel . . . . . . . . . . 1

Declaration of Ronald L. Milner, Chief Operating Officer, Office of Civilian Radioactive Waste Management, executed March 31, 2006 . . . . . . . . . . 18

Declaration of Gregory H. Friedman, Inspector General, Department of Energy, executed April 10, 2006 . . . . . . . . . . 95

Excerpt of Pacific Gas & Electric's Second Motion To Compel The Production Of Documents Withheld Under The Deliberative Process Privilege, filed May 11, 2006 . . . . . . . 103

Department of Energy Delegation Order No. 00-002.00E To Under Secretary for Energy, Science, And Environment, dated November 23, 2005 . . . . . . . . . . 105

Memorandum and Amendment to Delegation Order No. 00-002.00 from Secretary of Energy to Under Secretary for Energy, Science, and Environment Authorizing the Assertion of the Deliberative Process Privilege, dated May 13, 2002 . . . . . . . . . . 117

Amendment to Redelegation Order No. 00-002.06 from Under Secretary of Energy, Science, and Environment to Director of OCRWM Authorizing the Assertion of the Deliberative Process Privilege, dated May 13, 2002 . . . . . . . . . . 119

Delegation of Authority from Director of OCRWM to Ronald Milner Authorizing the Assertion of the Deliberative Process Privilege, dated May 13, 2002 . . . . . . . . . . 121

Energy Northwest's First Set of Requests For Production of Documents, Jan. 18, 2007 . . . . . 122