AMENDMENT TO THE DEPARTMENT OF ENERGY
REDELEGATION ORDER NO. 00-002.06
TO THE DIRECTOR,
OFFICE OF CIVILIAN RADIOACTIVE WASTE MANAGEMENT

1. DELEGATION: Pursuant to section 202(b) of the Department of Energy Organization Act (Public Law 95-91, 42 U.S.C. 17132(b)) and Secretary of Energy Delegation Order 00-002.00 provided to the Under Secretary of Energy, Science and Environment to perform the function and duties related to Civilian Radioactive Waste Management, I delegate to the Director, Office of Civilian Radioactive Waste Management authority to assert the Federal Government's deliberative process privilege with respect to any matters arising under his or her cognizance. This delegation is made to protect internal predecisional DOE documents in judicial or administrative proceedings in situations where the court may require the claim to be formally asserted by an affidavit from an agency official. The authority delegated to the Director by this Order may be further delegated, in whole or in part, as may be appropriate. In exercising the delegated authority, the delegate(s) shall be governed by the rules and regulations of DOE and the policies and procedures prescribed by the Secretary or his delegate(s).

All actions pursuant to any authority delegated prior to this Order or pursuant to any authority delegated by this Order taken prior to and in effect on the date of this Order are hereby confirmed and ratified, and shall remain in full force and effect as is taken under this Order, unless or until rescinded, amended or superseded.

Nothing in this Order shall preclude the Secretary from exercising any of the authority hereby delegated whenever, in his judgment, the exercise of such authority is necessary or appropriate to administer the functions vested in him.

Therefore, Redelegation Order No. 00-002.06 is hereby amended by adding a new paragraph 1.4 to read as follows:

> "1.4 Assert on a nonexclusive basis, the Federal Government's deliberative process privilege with respect to any matters arising under his or her cognizance."

2. EFFECTIVE DATE: This Order is effective May 13, , 2002.

Robert G. Card
Under Secretary for Energy,
Science and Environment

# Department of Energy
Washington, DC 20585

May 13, 2002

MEMORANDUM FOR RONALD A. MILNER, CHIEF OPERATING OFFICE

FROM: DR. MARGARET S. Y. CHU, DIRECTOR
OFFICE OF CIVILIAN RADIOACTIVE WASTE MANAGEMENT

SUBJECT: Delegation of Authority

Pursuant to Amendment to Redelegation Order No. 00-002.06, May 13, 2002, I hereby delegate to you the authority to assert the deliberative process privilege over documents within the cognizance of the Office of Civilian Radioactive Waste Management.



Printed with soy ink on recycled paper

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENERGY NORTHWEST, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04-0010C |
| | ) | |
| v. | ) | Chief Judge Damich |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiff Energy Northwest, by its attorneys, pursuant to RCFC 34, hereby request that you serve them with a written response within 30 days after the service hereof, and produce the documents identified below for inspection and copying at a mutually convenient time and place.

## DEFINITIONS AND INSTRUCTIONS

### A. Definitions

1. "Acceptance Rate" means the pace or rate at which DOE takes delivery of spent nuclear fuel and/or High Level Radioactive Waste from Purchasers pursuant to the Standard Contract.

2. "Document" or "Documents" shall be construed in the broadest sense possible under RCFC 34 and shall include all writings as that term is defined in Federal Rule of Evidence 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored, on paper, cards, tape, film, electronic facsimile, computer storage devices, or any other medium in DOE's possession, custody or control, or whose existence is or was ever known to DOE, including but not limited to: correspondence, letters, notes, memoranda, appointment calendars, schedules, telegrams, telexes, facsimiles, electronic mail, press releases, notices, brochures,

pamphlets, guidelines, manuals, instructions, summaries or abstracts, diaries, notebooks, minutes, computer printouts or information stored in computer-readable form, tests, reports, files, file jackets, analyses, studies, testimony, speeches, worksheets, invoices, bills, written estimates, contracts, agreements of any kind, purchase orders, change orders, plans, charts, diagrams, drawings, graphs, designs, blueprints, tables, photographs, books, articles, or extracts from any of the foregoing, and any other writings or documentary materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith.

These requests encompass all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, included but not limited to "e-mail," digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "document" or "documents" shall also include any preliminary drafts of any documents or any working papers related thereto, and specifically includes internal memoranda. If a document responsive to any request for production was, but no longer is, in DOE's possession and control, describe in detail the contents of the document, its date of creation and disposition, and its present location and custodian.

3. "DOE" or "Government" shall mean the United States Department of Energy as well as its predecessors, including without limitation, the United States Atomic Energy Commission, the Office of Civilian Radioactive Waste Management, the Office of Nuclear Waste Storage Investigations, and the Office of Nuclear Energy, as well as all offices, divisions or departments, officials, directors, officers, employees, agents, contractors, subcontractors and other representatives, past or present, thereof.

4. "NRC" means the Nuclear Regulatory Commission.

5. "Individual" or "person" means any natural person, corporation (private or governmental), subsidiaries, syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, including all respective officials, directors, officers, employees, representatives, independent contractors, investigators, consultants, agencies, or agents, whether or not still alive or in existence.

6. "NWPA" means the Nuclear Waste Policy Act of 1982, codified at 42 U.S.C. § 10101 et seq., as well as any amendment(s) thereto.

7. "Purchaser" means an owner or generator of SNF that has executed a Standard Contract with DOE.

8. "Relating to" or "relates to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting and/or in any way pertaining to the subject specified.

9. "SNF" means spent nuclear fuel as that term is defined in the Standard Contract and for purpose of these requests also includes the term High Level Radioactive Waste ("HLW") as it is defined in the Standard Contract.

10. "HLW" means High Level Radioactive Waste as it is defined in the Standard Contract.

11. "Standard Contract" means the Standard Contract for the Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste set forth in 10 C.F.R. Part 961, pursuant to which DOE is to accept and dispose of spent nuclear fuel and/or high-level radioactive waste delivered to DOE by those owners or generators of such fuel or waste who executed the contract.

12. "Energy Northwest's Standard Contract" means Standard Contract for the Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste No. DE-CR01-83NE44424 between Washington Public Power Supply System, and DOE dated June 13, 1983.

13. "Utility Plaintiffs" means any party or former party to a Standard Contract that has brought suit in the United States Court of Federal Claims for breach of the Standard Contract, including without limitation: Arizona Public Service Company, Atlantic City Electric Co., Boston Edison Co., BWX Tech, Inc., Canal Electric Co., Carolina Power & Light Company, Florida Power Corporation, Cleveland Electric Illuminating Co., Commonwealth Edison Co., Connecticut Yankee Atomic Power Co., Consolidated Edison Co. of New York, Inc., Constellation Generation Group, LLC, Calvert Cliffs Nuclear Power Plant, Inc., Nine Mile Point Nuclear Station, LLC, Consumers Energy Co., Dairyland Power Cooperative, Delmarva Power and Light Co., Detroit Edison Co., Dominion Resources, Inc., Dominion Nuclear Connecticut, Inc., Dominion Resources, Inc., Virginia Electric and Power Company, Duke Power, Energy Northwest, Entergy Gulf States, Inc., Entergy Nuclear Fitzpatrick, LLC, Entergy Nuclear Indian Point 3, LLC, Entergy Nuclear Operations, Inc., Entergy Nuclear Generation Company, Entergy Nuclear Indian Point 2, LLC, Entergy Nuclear Vermont Yankee, LLC, Entergy Nuclear Operations, Inc., Exelon Generation Company, LLC, Exelon Generation Company, LLC, Exelon Generation Company, LLC, AmerGen Energy Company, LLC, Florida Power & Light Co., FPL Energy Seabrook, LLC, GPU Nuclear, Inc., General Atomics, General Electric Company, General Electric Company, Illinois Power Company, Indiana Michigan Power Co., Interstate Power and Light Company, Kansas Gas & Electric Company, Maine Yankee Atomic Power Co., Nebraska Public Power District, Niagara Mohawk Power Corporation, Niagara Mohawk, Rochester Gas & Electric Company, New York State Electric & Gas Company, Central Hudson

Gas & Electric Corporation, Northern States Power Co., Omaha Public Power District, Pacific Gas & Electric Company, Pacific Gas & Electric Company, Portland General Electric Co., PPL Susquehanna, LLC, PSEG Nuclear LLC, Power Authority of New York, Rochester Gas & Electric Corporation, Sacramento Municipal Utility District, South Carolina Electric & Gas Company, Southern California Edison Company, Southern Nuclear Operating Co. et al., System Fuels Inc., on its own behalf and as agent for Entergy Arkansas, Inc., System Fuels Inc., on its own behalf and as agent for Entergy Louisiana, Inc., System Fuels Inc., on its own behalf and as agent for System Energy Resources, Inc. and South Mississippi Electric Power Association, Tennessee Valley Authority, Texas Genco, LP, TXU Generation Company, Union Electric Company, United Illuminating Co., Vermont Yankee Nuclear Power Corp., Wisconsin Electric Power Co., Wisconsin Public Service Corporation, and Yankee Atomic Electric Co.

14. "Spent Fuel Litigation" refers to lawsuits brought by the Utility Plaintiffs in the United States Court of Federal Claims for breach of a Standard Contract.

## B. Instructions

1. These requests for production are continuing and require supplemental responses if Defendant obtains additional information after service of its original response. Such supplemental responses shall be served from time to time.

2. When a request for production calls for an answer in more than one part, separate the parts in the response accordingly so that the response to each separate part of the request for production is apparent; do not join together and provide a common response or answer to two or more requests for production or to subparts of a request for production.

3. If you believe that any of the following requests for production calls for the production of documents that you claim contained privileged material, produce so much of the

document(s) as is not objected to, and set forth, with respect to each such document as to which a claim of privilege is asserted, the nature of the privilege claimed (e.g. attorney-client and/or work product privileges) and all the reasons upon which you base the claim of privilege. In a separate Privilege Log, for each document or part of a document as to which you claim privilege state:

a. the date thereof;

b. the type, title, and subject matter of the document, sufficient to assess whether the assertion of privilege is valid;

c. the name of the person or persons who prepared or signed the document;

d. the name and positions of all intended and actual recipients of the document; and

e. if not previously identified, the nature of the privilege being claimed and all facts relevant to the claim.

4. Notwithstanding a claim that a document is privileged, any document so withheld must be produced with the portion claimed to be protected excised.

5. To the extent the Government considers any of the following requests for production, or their subparts, to be objectionable, answer the portion of the request for production, or subpart, to which you have no objection and separately state the portion of the request for production, or subpart, to which you object and state with specificity all grounds for your objection. If you object to a request for production on the basis that it is too broad, provide the response that the Government believes is within a reasonable scope of the request for production. If the Government objects to a request for production on the basis that to provide a response would constitute an undue burden, provide all requested documents that can be supplied without undertaking an undue burden. For those requests for production, or portions thereof, that

you decline to answer, state the reason for subject objection or declination in sufficient detail to permit the Court to adjudicate the merits of the claim.

6. In answering these requests for production, furnish all documents that are within the possession, custody or control of DOE, NRC, other relevant Government agencies, and their officials, directors, officers, employees, agents, investigators, contractors, subcontractors, consultants and/or attorneys.

**REQUESTS FOR PRODUCTION**

**Request No. 1.**

Any and all documents produced to any Utility Plaintiff in any Spent Fuel Litigation.

**Request No. 2.**

Any and all documents responsive to (a) Utility Plaintiff's Joint First Set of Requests for Production of Documents served on or about September 26, 2001; and/or (b) Plaintiff's Second Set of Requests for Production of Documents served on or about November 18, 2003 by Commonwealth Edison Company; and/or (c) Plaintiff's First Request for Production of Documents served on or about March 30, 1998 by Yankee Atomic Electric Company; and/or (d) Plaintiff's Second Request for Production of Documents served on or about April 19, 2002 by Yankee Atomic Electric Company, including without limitation, any document responsive to such requests not previously produced to any Utility Plaintiff and any document responsive to such requests created or located subsequent to the Defendant's latest production to any Utility Plaintiff.

**Request No. 3.**

Any and all documents produced to Pacific Gas & Electric Company ("PG&E") in response to the court's orders of March 14, 2006, March 15, 2006 and May 14, 2006 on

plaintiff's motion to compel filed in *PG&E v. United States* (Fed. Cl. Nos. 04-74 and 04-75), or any other order in that case requiring the Government to produce documents.

**Request No. 4.**

Any and all documents relating to any allegation in the Complaint in this action.

**Request No. 5.**

Any and all documents relating to the interpretation, drafting, development, negotiation, proposal, or promulgation of the terms of the Standard Contract, including without limitation, the contents of the notice of proposed rulemaking in 10 C.F.R. Part 961 set forth at 48 Fed. Reg. 5458, and the final rulemaking set forth at 48 Fed. Reg. 16599, and responses thereto.

**Request No. 6.**

Any and all documents related to the execution and subsequent performance of Energy Northwest Standard Contract, including without limitation, (a) any communication by or between DOE and Energy Northwest regarding execution of Energy Northwest's Standard Contract, and/or (b) any communication by or between DOE and Energy Northwest regarding Energy Northwest's Standard Contract or DOE's or Energy Northwest's performance under Energy Northwest's Standard Contract, and/or (c) any internal DOE documents, notes, and/or memoranda regarding Energy Northwest's Standard Contract or the performance of either party under Energy Northwest's Standard Contract.

**Request No. 7.**

Any and all documents relating to communications between Energy Northwest or DOE regarding SNF or HLW.

**Request No. 8.**

Any and all documents relating to storage of SNF, HLW, and/or greater-than-Class-C waste at Energy Northwest, including without limitation, expansion of Energy Northwest's SNF storage capacity and Energy Northwest's construction of an Independent Spent Fuel Storage Installation.

**Request No. 9.**

Any and all documents relating to the damages Energy Northwest has suffered or will suffer as the result of the DOE's breach of its obligations under the Standard Contract.

**Request No. 10.**

Any and all documents relating to any advice, instructions, guidance, or other information provided by DOE to Energy Northwest or any other Purchaser relating to (a) the manner in which a Purchaser should provide storage for SNF in the event that the Purchaser no longer had the requisite space for storage in its spent fuel pool, and/or (b) the manner in which a Purchaser should provide storage for SNF in light of DOE's breach of the Standard Contract, and/or (c) the storage of SNF for the time after January 1998.

**Request No. 11.**

Any and all documents relating to the Acceptance Rate and/or the order among utilities of acceptance had DOE commenced acceptance of waste on January 31, 1998.

**Request No. 12.**

Any and all documents relating to any studies of the most efficient Acceptance Rate at which to accept SNF, including without limitation, any document studying the efficiency of any

Acceptance Rate which operates at 900 MTU per year for any period or an acceptance rate which operates at 3,000 MTU per year.

**Request No. 13.**

Any and all documents relating to any Acceptance Rate DOE would or could employ after expiration of the ten-year period covered by the 1991 ACR or 1995 ACR that DOE contends would provide the Acceptance Rate in this case.

**Request No. 14.**

Any and all documents regarding or relating to the Acceptance Rates contained in the Preliminary Estimates of the Total System Cost for the Restructured Program: An Addendum to the May 1989 Analysis of the Total System Life Cycle Costs for the Civilian Radioactive Waste Management System, DOE/RW-0295P.

**Request No. 15.**

Any and all documents relating to the role of Delivery Commitment Schedules ("DCS") submitted by Purchasers in the performance of the Standard Contract.

**Request No. 16.**

Any and all documents, including any drafts, e-mail, or analysis, related to the DOE's July 2004 Acceptance Priority Ranking / Annual Capacity Report ("APR/ACR") and the DOE's 2004 Instructions for Completing the Appendix C Delivery Commitment Schedules.

**Request No. 17.**

Any and all documents related to DOE's decision to resume the DCS process or the APR/ACR process in 2004 or any other time, including without limitation, any and all

documents related to the DOE's request for submittals of new DCSs from Purchasers based on the 2004 APR/ACR.

**Request No. 18.**

Any and all documents relating to acceptance of, procedures for handling, and/or DOE's obligations, duties, or plans with respect to "Nonstandard Fuel," "Failed Fuel," and "Nonfuel Components," as those terms are used and/or defined by Appendix E of the Standard Contract, and greater-than-class-C waste, including without limitation, all subcategories of such fuel classifications.

**Request No. 19.**

Any and all documents relating to the DOE's definition or definitions of the following terms as used and/or defined in Appendix E of the Standard Contract: (a) "Standard Fuel," (b) "Nonstandard Fuel," (c) "Failed Fuel," (d) "Visual Failure or Damage," (e) "Radioactive 'Leakage,'" (f) "Encapsulated," (g) "Previously Encapsulated Assemblies," and/or (h) "Nonfuel Components."

**Request No. 20.**

Any and all documents relating to the minimum cooling time required for acceptance, transport, and disposal of SNF.

**Request No. 21.**

Any and all documents relating to the understanding or intention of DOE, at the time it executed the Standard Contract with Energy Northwest or any other signatory to a Standard Contract, of the length of time that each nuclear reactor covered by the Standard Contract would continue to operate, including without limitation, any documents relating to the understanding or

intention, if any, whether the Standard Contract would remain in effect during the period of any nuclear Purchaser operating license extension.

**Request No. 22.**

Any and all documents relating to the impact or effect, if any, on DOE's rights, obligations, duties, plans or intentions under the Standard Contract in the event a Purchaser obtains an extension of the operating license period for that Purchaser's nuclear reactor(s), including without limitation, any and all documents relating to the impact or effect, if any, on the damages (if any) owed by DOE for its breach of the Standard Contract of obtaining an extension of a nuclear utility operating license period of Energy Northwest or any other signatory to the Standard Contract.

**Request No. 23.**

Any and all compilations of SNF discharges prepared by DOE's Energy Information Administration from utilities' most recent submission of RW-859 forms including the electronic form of any spreadsheet or database summarizing such submittals. To the extent that such compilations are not available, all RW-859 submittals by all parties to the Standard Contract.

**Request No. 24.**

Any and all organization charts or other documents reflecting the position or positions within OCRWM or DOE held by Christopher Kouts from 1978 until present.

**Request No. 25.**

Any and all documents prepared or received by Christopher Kouts in connection with his employment at OCRWM relating to (a) Monitored Retrievable Storage, (b) casks, canisters, or containers for the storage, transport or disposal of SNF or HLW or other radioactive waste; or (c)

any program at DOE to develop casks, canisters or containers for the storage, transport, or disposal of SNF or HLW or other radioactive waste under the direction or control of Mr. Kouts.

**Request No. 26.**

Any and all documents relating to any decision by DOE or OCRWM to terminate any program to develop casks, canisters or containers for the storage, transport, or disposal of SNF or HLW or other radioactive waste under the direction or control of Mr. Kouts.

**Request No. 27.**

Any and all documents relating to DOE's March 1987 Monitored Retrievable Storage Submission to Congress, including without limitation, (a) all documents relating to Acceptance Rates or throughput rates DOE planned to use if DOE implemented the proposal contained in the March 1987 submission, and (b) all documents relating the expected need for additional at-reactor storage beginning in 1998 if the proposal contained in the March 1987 submission was implemented.

**Request No. 28.**

Any and all documents regarding or relating to communications between DOE and Congress regarding the March 1987 Monitored Retrievable Storage Submission to Congress, including without limitation, (1) all testimony of Benjamin Rusche before Congress in connection with DOE's March 1987 Monitored Retrievable Storage Submission to Congress, (2) all drafts of such testimony.

**Request No. 29.**

Any and all documents relating to any DOE plan to seek modification of any provision of the Nuclear Waste Policy Amendments Act of 1987.

**Request No. 30.**

Any and all documents authored or created between 1982 and 1998 relating to DOE's plans to construct a Monitored Retrievable Storage Facility, including without limitation, any document reflecting any decision or proposal to discontinue plans for construction of Monitored Retrievable Storage.

**Request No. 31.**

Any and all documents related to the activities of the Monitored Retrievable Storage review commission.

**Request No. 32.**

Any and all documents relating or referring to DOE's program to develop a multi-purpose cask or canister, including without limitation, all DOE communications with parties to the Standard Contract concerning DOE's plans to accept such casks or canisters for disposal under the Standard Contract and/or the NWPA,

**Request No. 33.**

Any and all documents relating or referring to DOE's plans to furnish multi-purpose casks or canisters to any party to a Standard Contract in partial fulfillment of its obligations under such Standard Contract

**Request No. 34.**

Any and all documents relating or referring to any of DOE's plans, specifications, protocols, designs, intentions, or other descriptions relating or referring to the loading of any dry container, canister, and/or cask for transportation under the Standard Contract.

**Request No. 35.**

Any and all documents relating or referring to DOE's obligations and duties, or any limitations thereon, with respect to any container manufactured or fabricated by Holtec (including without limitation Holtec MPC, Hi-Star and/or Hi-Storm Casks), whether arising under the Standard Contract or any other statute, agreement, or regulation, including without limitation, (a) any plans, studies, reports, memoranda, discussions, correspondence or notes, (b) draft or final criteria, plans, or specifications related to the acceptance of any container manufactured or fabricated by Holtec (including without limitation Holtec MPC, Hi-Star and/or Hi-Storm Casks), (c) all documents relating or referring to the timing of acceptance of any container manufactured or fabricated by Holtec (including without limitation Holtec MPC, Hi-Star and/or Hi-Storm Casks) by DOE, (d) current Yucca Mountain plans or designs relating or referring to the ability of DOE to accept any container manufactured or fabricated by Holtec (including without limitation Holtec MPC, Hi-Star and/or Hi-Storm Casks), (e) the transportation of any container manufactured or fabricated by Holtec (including without limitation Holtec MPC, Hi-Star and/or Hi-Storm Casks), (f) the technical feasibility or non-feasibility of DOE's accepting any container manufactured or fabricated by Holtec (including without limitation Holtec MPC, Hi-Star and/or Hi-Storm Casks).

**Request No. 36.**

Any and all documents relating to the date DOE will begin accepting SNF from Purchasers, including without limitation, any milestone schedules, critical path activities or sensitivity analyses conducted by or on behalf of DOE.

**Request No. 37.**

Any and all documents the Government will or may introduce as an exhibit at any hearing or trial in this action.

**Request No. 38.**

Any and all documents, data, assumptions, bases and any other information communicated to, provided to, given to, or otherwise relied on or considered by any person or entity who may or will offer expert testimony on behalf of the Government in this action in connection with such testimony.

**Request No. 39.**

Any and all documents relating or referring to any documents, data, assumptions, bases and any other information communicated to, provided to, given to, or otherwise relied on by any person or entity who may or will offer expert testimony on behalf of the Government in this action in connection with such testimony.

**Request No. 40.**

Any and all documents relating or referring to any time sheets, diaries, billing records, invoices, engagement letters, retention letters, contracts, or other evidence of work or activities of any person or entity who may or will offer expert testimony on behalf of the Government in this action in connection with such testimony.

Dated: January 18, 2007

Respectfully submitted,

NORMAN M. HIRSCH
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 923-2782 telephone
(312) 840-7782 facsimile

OF COUNSEL:

David A. Handzo
Jenner & Block LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 639-6000

William D. Heinz
David Jiménez-Ekman
Lisa M. Eddington
Christopher Tompkins
Nada Djordjevic
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of January, 2007, a copy of the foregoing Plaintiff's First Set Of Requests For Production Of Documents was served by overnight mail on:

Sharon A. Snyder
U.S. Department of Justice
Commercial Litigation Branch, Civil Division
Attn: Classification Unit
Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-0347 (Tel.)
(202) 307-2503 (Fax)