**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ENERGY NORTHWEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-0010C |
| v. | ) | |
| | ) | Chief Judge Damich |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**ENERGY NORTHWEST'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD UNDER THE "DELIBERATIVE PROCESS" PRIVILEGE**

Plaintiff, Energy Northwest, by and through its attorneys, hereby replies to the response brief (the "Response") filed by the Defendant in opposition to Plaintiff's Motion to Compel and states as follows:

## INTRODUCTION

In its motion to compel production of documents withheld under the "deliberative process" privilege (the "Motion"), Energy Northwest presented a straightforward request for production of withheld documents that have *already been ordered produced* in related SNF litigation. In response, the Government defends claims of privilege that have been rejected not just once, but on two prior occasions, by two different Judges of this Court. The Government's response proceeds as if these prior rulings had not been made.

To the contrary, all of the documents Energy Northwest's motion seeks were previously ordered produced, either by Your Honor in *Dairyland*, by Judge Hewitt in *PG&E*, or by both. In addition, Energy Northwest seeks production of documents Your Honor has already ruled should

be subject to *in camera* review if, and only if, Your Honor orders those documents produced in *Dairyland.*[1]

More fundamentally – and despite pages of argument – the Government fails to explain why the balancing analysis conducted by Your Honor in *Dairyland* does not apply identically to a similarly situated SNF plaintiff, such as Energy Northwest. The Government fails to identify a single fact which distinguishes Energy Northwest from Dairyland, or establish that the Government's interest in confidentiality is any greater in this case, particularly given the documents have now been disclosed to two other plaintiffs. And the Government continues to wrongly assert that the Court should apply a "compelling need" standard – despite Your Honor's ruling in *Dairyland* that the correct standard is whether or not the Plaintiff has an "evidentiary need" sufficient to overcome the Government's dubious claims of privilege.

Because Energy Northwest has an evidentiary need for the material withheld by the Government that outweighs any Government interest in confidentiality, Energy Northwest respectfully requests that the Court grant the motion.

## ARGUMENT

### I. Energy Northwest's Motion Is Narrowly Tailored To Minimize The Burden On Judicial Resources.

Energy Northwest has taken the modest position that it is entitled to production of documents that have now been ordered produced in *two* other SNF cases. Energy Northwest's Motion's narrowly tailored request for relief was designed to limit the burden on the Court, and also limit the burden on the Government. In fact, Energy Northwest offered to forego making a motion to compel altogether if the Government would simply comply with Your Honor's order

[1] Exhibit B to Energy Northwest's motion identifies each document at issue along with the relevant rulings in *Dairyland* and *PG&E* on each document. In its response, the Government indicates that it will produce Document Nos. 132, 223, 286 and 326. (Response at 3.)

in *Dairyland*. (*See* Motion at ¶ 17.) The government declined that offer and has instead filed a 25 page response brief that re-asserts several contentions this Court has already rejected regarding the relevance of the documents, and goes on to make alarmist claims about the harm of revealing the Combined DP Production[2] to Energy Northwest, despite the prior disclosure of the identical documents to two other SNF plaintiffs.

Much of the Government's background discussion provides only marginally relevant procedural history of these issues in prior cases. However, there are three points on which Energy Northwest feels the record must be clarified:

*First*, Energy Northwest is *not* asking the Court to produce any documents where, after conducting an *in camera* review in *Dairyland*, Your Honor determines there is not an evidentiary need for an SNF plaintiff to have access to such documents. (*See* Motion at ¶ 16.) As such, it is disingenuous for the Government to suggest (at 12 n. 8) that Energy Northwest "seeks the production of 124 of the 128 documents that were recently submitted to this Court for *in camera* inspection."

*Second*, there is no validity to the Government's contention that Energy Northwest demands production of attorney-client privileged or work product protected documents. (Response at 23-25.) Energy Northwest has only requested production of un-redacted versions of withheld privileged documents if Your Honor concludes that such production is appropriate after reviewing them *in camera*. (Motion at ¶ 16 n.6.) If Your Honor finds that the attorney-client and/or work product claims are valid, Energy Northwest is willing to accept that determination.

[2] Unless otherwise specified herein, capitalized terms should be construed to have the same meaning defined in Energy Northwest's Motion.

*Third,* the Government's repeated demand that if production is ordered here it be limited to Energy Northwest alone is perfectly acceptable to Energy Northwest. (*See* Response at 1, 21, 22.) In its motion, Energy Northwest has already expressly agreed to a revised protective order that would limit the production of such documents for Energy Northwest's use only. (Motion at ¶ 14.) The Government's interest in maintaining the confidentiality of these documents is not meaningfully impacted by such a limited disclosure in light of the previous productions to PG&E and Dairyland.

## II. Energy Northwest's Need For The Combined DP Production Meets The Applicable Legal Standard.

The Government's Response fails to show how Energy Northwest's right to the requested documents differs in any way from the plaintiffs in *Dairyland* or *PG&E.* The simple, basic fact is that in *Dairyland*, *PG&E,* and virtually every other case for breach of the Standard Contract, the Government has asserted that the plaintiff cannot show causation because the rate at which the Government is obligated to perform would have required the plaintiff to incur the same expenses even if the Government performed. (*See e.g.,* Defendant's Response to the Court's Order to Show Cause and Defendant's Motion for Summary Judgment, No. 04-0010, at 2, 15-17.) While the effect of the rate varies from case to case, the Government has put its "non-breach" performance squarely at issue in each of these cases. In fact, the Government has not pointed to a *single* difference between this case and *Dairyland* and *PG&E* that would mandate a different result. Rather, the Government merely reasserts arguments concerning relevance of particular documents that were rejected in two prior motions, and which have not been made any more meritorious by virtue of repetition.

Initially, it is important to note that the Government bases its arguments on a legal standard this Court has already rejected in *Dairyland.* Specifically, in *Dairyland*, Your Honor

explained that "[i]n evaluating the applicability of the deliberative process privilege, this Court will consider whether Plaintiff's *evidentiary need is sufficient to outweigh* the Government's interest in confidentiality." (Case No. 04-106C, June 29, 2007 Order at 5) (citing *Marriot Int'l Resorts, L.P. v. United States*, 437 F.3d 1302 (Fed. Cir. 2006)) (emphasis supplied). In that same discussion, Your Honor rejected the Government's suggestion that a stricter "compelling need" standard applies. (*Id.*). Despite this ruling, the Government's response repeatedly insists that Energy Northwest must establish a "compelling need" for the documents. (*See, e.g,* Response at 1, 3, 13-14, 18, 21-22.)

Without accepting the Government's invitation to entirely re-brief the relevance of all the documents in the Combined DP Production, Energy Northwest must dispel some of the misleading arguments made in the Government's response brief.

*First*, the Government incorrectly asserts that it should not be required to produce documents discussing DOE's future plans, such as documents discussing acceptance rates DOE is planning on using when (and if) it actually commences performance, the reasons for publication of such rates in Government reports and requests for submission of delivery commitment schedules, or potential plans for interim storage, because those documents have no relation to how DOE should or would have performed beginning in 1998 if it had not breached. (Response at 17, 19, 20-21.)

On the contrary, however, Energy Northwest has a clear evidentiary need for those documents. The 3,000 MTU/year acceptance rate DOE is planning on using in the future is consistent with acceptance rates that DOE used in planning documents published over the history of the disposal program, and is inconsistent with the 900 MTU/year rate the Government has asserted applies to this case. Energy Northwest believes that the very reason why DOE has used this 3,000 MTU/yr rate in the past and continues to use it in its planning is because it represents

the most efficient and reasonable rate at which to operate the disposal program. Accordingly, Energy Northwest should be allowed to investigate the reasons the Government continues to use a 3,000 MTU/year rate in its planning.

Furthermore, the Government has put its future performance directly at issue in other ways, such as by (1) arguing in its Motion for Summary Judgment in this case that DOE may begin acceptance of SNF sometime in the future and "catch up" to the level of acceptance that would have existed without a breach (*See* Defendant's Response to the Court's Order to Show Cause and Defendant's Motion for Summary Judgment, No. 04-0010, at 17), and (2) taking discovery from Energy Northwest regarding costs the Government claims would have been incurred delivering SNF had DOE performed. Accordingly, DOE's future plans are directly relevant to each of these issues. The level of DOE's future performance is directly relevant to any assertion that DOE can ever "catch up" as the Government has argued. In addition, the Government's future performance plans are relevant to delivery related costs given that Energy Northwest will still incur these costs when, and if, DOE eventually performs.

*Second*, the Government claims that documents generated in the process of preparing budget submissions and responding to congressional inquiries are not relevant to any issues in the case. (Response at 16.) But without doubt, public pronouncements and communications regarding the state of the program, and expected future performance, may be relevant to whether certain mitigation measures Energy Northwest may have taken are reasonable or not. Moreover, the Government's own arguments in other SNF cases have placed these documents squarely at issue. Specifically, the Government has introduced evidence in several previously-tried SNF cases concerning how Congressional appropriations have affected its performance of the program. (*See, e.g.*, 10/26/05 Tr. of Proceedings in *Southern Nuclear v. United States*, Case No. 99-614C at 1793-1797, testimony of Christopher Kouts, attached as Exhibit A.) Energy

Northwest does not believe that these documents support any valid defense, but given that the Government has presented evidence on this subject in the past, the Government's assertion that Energy Northwest lacks any evidentiary need for this material is clearly incorrect.

*Third*, the Government claims Energy Northwest has no use for one document regarding utilities' estimates of at-reactor storage costs because that information was reported to DOE or from third-party sources. (Response at 17.) If the Government is accurately describing the contents of the document at issue, then the Government's claim of deliberative process privilege does not appear to have a reasonable basis. However, even assuming for the purpose of argument that the deliberative process privilege could even apply, Energy Northwest's evidentiary need arises from the Government's own arguments regarding the reasonableness or unreasonableness of Energy Northwest's storage costs.

*Finally*, the Government's suggestion that because it has previously produced "other documents that do not contain privileged information" on the topics addressed in the Combined DP Production, Energy Northwest has no need for additional information is incorrect. (Response at 15.) Such an argument defies logic and suggests applying a standard that the Government would certainly object to if Energy Northwest applied it in reverse. That is, the Government would not tolerate Energy Northwest's producing a large portion of relevant information responsive to its document requests under the caveat that Energy Northwest could selectively hold back a small percentage of relevant documents at its choosing. Simply because the Government has produced *some* relevant information on topics responsive to Energy Northwest's discovery requests does not mean Energy Northwest does not have a valid need for additional information. The Government cannot contend that the Combined DP Production is

entirely duplicative of the documents that have already been produced. If that were the case, then any privilege claims would have been waived.[3]

[3] Similarly, there is also no validity to the Government's contention that Energy Northwest cannot demonstrate an evidentiary need for the Combined DP Production because PG&E did not use any of the deliberative process documents as exhibits during trial. (Response at 17-18.) First, Your Honor clearly found that Dairyland had a valid evidentiary need for the documents regardless of PG&E's decision not to introduce them at trial. Second, and perhaps more importantly, Energy Northwest is entitled to make its own determination of how to litigate this matter. It may choose to use any number of documents as trial exhibits that other SNF plaintiffs opt to exclude.

**CONCLUSION**

The Government has failed to demonstrate that it has a greater interest in secreting the Combined DP Production from Energy Northwest than from PG&E and Dairyland. Despite the Government's efforts to complicate this process, Energy Northwest's Motion remains a narrow request only for documents that the Government has previously been ordered to produce. For all of the reasons described above, Energy Northwest's Motion should be granted.

Dated: August 27, 2007

Respectfully submitted,

s/ Norman M. Hirsch
NORMAN M. HIRSCH
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 923-2782 telephone
(312) 840-7782 facsimile

OF COUNSEL:

David A. Handzo
Jenner & Block LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 639-6000

William D. Heinz
David Jiménez-Ekman
Christopher Tompkins
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of August, 2007, a copy of the foregoing *Energy Northwest's Reply In Support Of Its Motion To Compel Production Of Documents Withheld Under The "Deliberative Process" Privilege* was filed electronically with the Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Norman M. Hirsch