# Exhibit A

# UNITED STATES
# COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SOUTHERN NUCLEAR OPERATING | : | |
| COMPANY, ALABAMA POWER COMPANY, | : | |
| and GEORGIA POWER COMPANY, | : | NO. 98-614C |
| Plaintiffs | : | |
| vs. | : | |
| THE UNITED STATES, | : | |
| Defendant. | : | |

Pages: 1731 through 1933

Place: Washington, D.C.

Date: October 26, 2005

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SOUTHERN NUCLEAR OPERATING )
COMPANY, ALABAMA POWER )
COMPANY, and GEORGIA POWER ) NO. 98-614C
COMPANY, )
Plaintiffs, )
v. )
THE UNITED STATES, )
Defendant )

Courtroom Number 5
Court of Federal Claims
717 Madison Place NW
Washington, D.C.

Wednesday, October 26, 2005

VOLUME 8

The parties met, pursuant to the notice of the Judge, at 10:00 a.m.

BEFORE THE HONORABLE JAMES F. MEROW

APPEARANCES:

ON BEHALF OF THE PLAINTIFFS:

M. STANFORD BLANTON, ESQ.
K.C. HAIRSTON, ESQ.
S. ALLEN BAKER, JR., ESQ.
Balch & Bingham
1710 Sixth Avenue North
Birmingham, Alabama 35203
(205) 226-3417

and

RONALD A. SCHECHTER, ESQ.
Arnold & Porter
555 12th Street, Northwest
Washington, DC 20004

ON BEHALF OF THE DEFENDANT:

JOHN EKMAN, ESQ.
HEIDE HERRMANN, ESQ.
MARIAN SULLIVAN, ESQ.
JOSHUA E. GARDNER, ESQ.
ALAN LO RE, ESQ.
STEPHEN FINN, ESQ.
U.S. Department of Justice
1100 L Street, Northwest
Washington, DC 20530

** Index appears at end of transcript **

P R O C E E D I N G S

- - - - -

JUDGE MEROW: Please be seated. Mr. Ekman, do you have a witness today, or --

MR. EKMAN: We do. We have a couple witnesses, Your Honor, but before we begin our case, or actually before we call our witnesses, at the start of our case there are a few administrative items to take care of.

First of all, there's still the issue of the government exhibits to which there are no objections. I have a list here which I provided the Plaintiffs last week. With the exception of DX329, which is still on this list, but I've crossed off the list which we're withdrawing, I would ask that to the extent these exhibits have not already been admitted -- and some of them have been. For instance, there's some administrative record documents in here that were admitted -- that the government's exhibits to which there are no objections by Plaintiffs be admitted.

JUDGE MEROW: Yes.

MR. BLANTON: No objection from us on that, Your Honor.

JUDGE MEROW: Okay, the exhibits where

out of business. There was still some hope that there were some Indian tribes that were interested, and there were some discussions about whether or not an interim storage site could be identified in one of those sites that was still interested or Congress could pick another site.

So there was still possibilities and the department was still hopeful, although we admit here, I think, that there are uncertainties and 1998 was going to be a challenge, so therefore, we were putting the acceptance schedule in terms of year one, year two.

Q Thank you.

I'd like to change topics. Can we go to Defendant's Exhibit 332, please? Mr. Kouts, could you identify the chart that is Defendant's Exhibit 332, please?

A Yes. This is a summary history of the appropriations history, requested funds for the program versus appropriated funds for the program since its inception in 1983 continuing through this last fiscal year.

Q Did you direct that this chart be prepared?

A Yes, I did.

Q And what information does this chart convey regarding DOE's funding since the inception of the program?

A Well, first of all, it indicates that we did not always receive what we had requested of Congress, and there were certain years that had substantial impact on the program.

If you look back at 1987, basically, Congress took away a lot of our funds because they redirected the program in the sense of only having one repository site to characterize instead of three.

Another area that -- and every year virtually you see we get less than we typically ask for. Probably one of the biggest dislocations was in 1996 where, although it shows we received $400 million, we actually received $315 million because 85 million of the appropriated 400 million was withheld and was not to be provided to the department unless interim storage legislation was passed by the Congress.

So this was another indication as late as 1996 that Congress was still indicating an interest in trying to pass interim storage legislation and we could not use those funds, nor were they ever released because that legislation was never passed.

Effectively what that caused to the program at that time was a substantial reduction in our contractor structure, and subsequently, we actually underwent, about a year or two after that, a reduction in federal staff.

Q And have these funding shortfalls affected DOE's ability to perform the standard contract in a timely manner?

MR. BLANTON: I'm sorry to interrupt. But we object. Liability has been found in this case. The Court's issued an order. The DC circuit has ordered the Justice Department not to raise excusable delay as a defense. I can't think of any other reason this testimony would be relevant other than that, and we object to it.

MS. SULLIVAN: As we noted in our pretrial brief, Your Honor, we are seeking to preserve the record by having Mr. Kouts present this evidence. What arguments we may make in the future is still a matter to be decided, but while Mr. Kouts is here, we would ask he be allowed to testify about this so that the information is in the record.

JUDGE MEROW: Well, I can see some possible relevance, not necessarily on the liability aspect of this, but just to complete the historical

part of the matter, may not be directly related to the Southern case, but I think it gives a full picture of the program involved. And to that extent, I'll overrule the objection. You can present the evidence, but of course, you can object to any findings --

MR. BLANTON: Thank you, sir.

JUDGE MEROW: -- that are proposed based on it in the nature of any limitation of liability or something like that that is attempted.

MR. BLANTON: Thank you. Sorry to interrupt.

MS. SULLIVAN: Thank you, Your Honor.

JUDGE MEROW: Fine.

(The reporter read from the record.)

A To the extent that the lack of funding did not allow the department to undertake the -- all the activities that it had anticipated in any one year, I would agree with that statement.

JUDGE MEROW: These appropriations are out of the Nuclear Waste Fund, I take it.

THE WITNESS: They are out of actually two funds. A lot of it's from the Nuclear Waste Fund but also some from the defense fund that's also set up where there has to be a contribution from the defense side of the house, which are other appropriated

dollars that also support this -- that support this appropriation.

BY MS. SULLIVAN:

Q Mr. Kouts, I've handed you what's been marked as Defendant's Exhibit 1, which is Alabama Power's standard contract with the Department of Energy. Do you recognize this document to be there?

A Yes.

Q Okay. Can I direct your attention to page 11 of this document? And can we bring up that second? And can you highlight the last sentence?

JUDGE MEROW: What is this exhibit number? I'm sorry.

MS. SULLIVAN: Defense Exhibit Number 1, Your Honor, Alabama Power's contract.

JUDGE MEROW: All right.

BY MS. SULLIVAN:

Q Mr. Kouts, would you please read the provision or the sentence that's been highlighted?

A Yes. "Purchaser shall have the right to adjust the quantities of SNF and/or HLW plus or minus 20 percent and the delivery schedule up to two months until the submission of the final delivery schedule."

Q Mr. Kouts, are you familiar with the provision of the contract that you've just read?