No. 04-10C
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ENERGY NORTHWEST,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR A PROTECTIVE ORDER TO PRECLUDE PLAINTIFF'S NOTICED 30(b)(6) DEPOSITION OR, IN THE ALTERNATIVE, TO RE-INSTITUTE THE COORDINATED DISCOVERY PROCEEDINGS IN THE PENDING SPENT NUCLEAR FUEL CASES

---

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-0347

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT R. DAMELIN
RUSSELL SHULTIS
SONIA ORFIELD
Trial Attorneys
Department of Justice

October 16, 2007

Attorneys for Defendant

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR A PROTECTIVE ORDER TO PRECLUDE PLAINTIFF'S NOTICED 30(b)(6) DEPOSITION OR, IN THE ALTERNATIVE, TO RE-INSTITUTE THE COORDINATED DISCOVERY PROCEEDINGS IN THE PENDING SPENT NUCLEAR FUEL CASES . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. ENERGY NORTHWEST'S REQUESTED DEPOSITION IS SUBSTANTIALLY DUPLICATIVE OF PRIOR DISCOVERY OR IRRELEVANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. THE COURT SHOULD RE-INSTITUTE COORDINATED DISCOVERY PROCEEDINGS FOR ANY FURTHER DISCOVERY THAT ANY SNF PLAINTIFFS REQUIRE FROM THE GOVERNMENT . . . . . . . . . . . . . . . . . . . 4

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

## CASES

PAGE

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Dairyland Power Coop. v. United States,
77 Fed. Cl. 330 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Indiana Michigan Power Co. v. United States,
57 Fed. Cl. 88 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Indiana Michigan Power Co. v. United States,
60 Fed. Cl. 639 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Indiana Michigan Power Co. v. United States,
112 Fed. Appx. 37 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Yankee Atomic Electric Co. v. United States,
54 Fed. Cl. 306 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENERGY NORTHWEST, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-10C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR A PROTECTIVE ORDER TO PRECLUDE PLAINTIFF'S NOTICED 30(b)(6) DEPOSITION OR, IN THE ALTERNATIVE, TO RE-INSTITUTE THE COORDINATED DISCOVERY PROCEEDINGS IN THE PENDING SPENT NUCLEAR FUEL CASES

Defendant, the United States, respectfully submits this reply to the response to the Government's motion for protective order for a protective order or, in the alternative, to re-institute the coordinated discovery proceedings in the spent nuclear fuel ("SNF") cases, which plaintiff, Energy Northwest, filed October 1, 2007.

SUMMARY OF ARGUMENT

Energy Northwest has failed to justify why, in light of the enormous quantity and scope of discovery provided by the Government to the SNF plaintiffs to date, it is entitled to yet another deposition of Department of Energy ("DOE") witnesses on topics duplicative of those already covered in prior depositions or that are irrelevant to this case. Energy Northwest's justifications simply gloss over the details of the Government's basis for seeking a protective order. Further, Energy Northwest's response to the Government's suggested alternative of re-instituting coordinated discovery proceedings is insufficient and fails to consider the history of the SNF litigation.

## ARGUMENT

### I. ENERGY NORTHWEST'S REQUESTED DEPOSITION IS SUBSTANTIALLY DUPLICATIVE OF PRIOR DISCOVERY OR IRRELEVANT

Energy Northwest's claim that the requested deposition "is narrowly limited to topics that have either not been fully addressed in prior cases or as to which the Government's positions, or the facts, are subject to change over time" fails to recognize to record of the SNF cases. Pl. Br. 2, 6. Although we will not repeat here the details set forth in our motion for protective order, the detailed description of prior depositions taken in the SNF cases confirm that the requested Rule 30(b)(6) topics have been covered by SNF plaintiffs. Def. Mot. 8-13.

Energy Northwest's deposition topics that concern the acceptance rate and schedule (Topics 1-3, 8-9) and the Monitored Retrievable Storage facility (Topic 10) have been covered in both depositions and trial testimony by multiple Government witnesses. Energy Northwest and/or its counsel either participated in or has access to every one of the relevant deposition and trial transcripts. In fact, in the days before the filing of this reply brief, the Government presented trial testimony from DOE employees David Zabransky, Christpher Kouts, and Alan Brownstein, as well as Nuclear Regulatory Commission employees, in the proceedings for Wisconsin Electric Power Company v. United States, No. 00-697C (S.J. Merow).

In addition to the duplicative nature of many of Energy Northwest's deposition topics, as explained in our motion, Topic 7, which relates to DOE's position regarding the reasonableness or unreasonableness of Energy Northwest's decision to adopt and implement dry storage for its spent fuel, is objectionable because it seeks to have a Rule 30(b)(6) witness make certain legal conclusions concerning the "reasonableness" of Energy Northwest's decision to implement on-site dry-storage. Yet, as explained in the Government's motion for protective order, there is

simply no fact witness from DOE who could offer the type of testimony that Energy Northwest seeks, see Def. Mot. 12-13, given that DOE does not make these types of determinations as part of its regular activities. Energy Northwest is essentially seeking expert witness and legal analysis in the guise of a Rule 30(b)(6) deposition, which is not a proper use of Rule 30(b)(6). It is Energy Northwest's burden to establish the reasonableness of its alleged mitigation at trial, although the Government may challenge plaintiff's claim of reasonableness.

Topics 4 and 6, which concern the earliest date for DOE to commence acceptance of SNF under the Standard Contract and the type of casks and ancillary equipment that DOE will use to accept SNF from Energy Northwest when DOE commences performance, and Topic 11, which concerns whether DOE will accept SNF loaded in multi-purpose canisters, are not relevant to Energy Northwest's claim in this case. Again, Energy Northwest has access to and knowledge of all the prior discovery taken in the SNF cases. Energy Northwest's response lacks any substantive detail as to why, for example, the type of casks that DOE will use when it commences acceptance from Energy Northwest on a future date is necessary for the determination of causation, foreseeability, and reasonable certainty of its claimed damages in this case. Energy Northwest makes the blanket assertion that "how DOE is planning on performing may be probative of how it would have performed had it commenced waste acceptance on time." Pl. Br. 10. That is the sum and substance of Energy Northwest's claim. The response brief fails to offer an explanation supporting the validity of this valid assertion. Finally, as the Government explained in its motion, Topic 5, which concerns the type of cask and ancillary equipment that DOE would have used to accept SNF from Energy Northwest under the Standard Contract had it commenced performance on January 31, 1998, has generally been

addressed in prior depositions. Def. Mot. 11.

Energy Northwest seeks to conduct a Rule 30(b)(6) deposition spanning 11 topics. Because Energy Northwest states that it can use existing deposition testimony as if it had been taken by Energy Northwest, the Court should consider Energy Northwest's notice as seeking to re-open existing depositions. Energy Northwest, however, has failed to identify new information that has been produced since the existing depositions which necessitates the additional deposition testimony or to demonstrate any other "good cause." Thus, the Court should grant the Government's motion and enter a protective order to preclude the conduct of these depositions.

## II. THE COURT SHOULD RE-INSTITUTE COORDINATED DISCOVERY PROCEEDINGS FOR ANY FURTHER DISCOVERY THAT ANY SNF PLAINTIFFS REQUIRE FROM THE GOVERNMENT

Energy Northwest argues that there is no need for "coordinated discovery to accommodate a single deposition" and that "the Government's 11th hour demand for coordinated discovery has no merit." Pl. Br. 12-13. Energy Northwest's argument is misplaced and ignores the history of the SNF cases. The Government has repeatedly asked this Court to coordinate pre-trial discovery matters in the SNF litigation. Most recently, on September 28, 2007, the Government, pursuant to the Court's order dated September 21, 2007, in Dairyland Power Coop. v. United States, No. 04-106C (Fed. Cl.), submitted a letter summarizing the Government's justifications for reconstituting coordinated discovery on a case-wide basis in the SNF litigation pending before this Court.

To date, private sector utility companies have filed 67 cases arising from the delay by DOE in accepting SNF pursuant to the parties' Standard Contract. Of these, 14 cases have

proceeded to trial,[1] seven have settled (including two plaintiffs represented by the same counsel as Energy Northwest), two were withdrawn, and 44 others remain pending before the Court. One SNF case is currently in trial, and five more are scheduled for trial before the end of 2008. While discovery is underway in some additional cases, many have yet to reach this stage.

Given that these cases all arise from the same Standard Contract, the Government, in 2001, sought to consolidate the 14 cases then pending before the Court. See The United States' Motion To The Chief Judge To Reassign To A Single Judge Cases Involving Alleged Breaches Of The Standard Contract Published At 10 C.F.R. Part 961, filed January 8, 2001. Initially, the Court deferred ruling upon the Government's motion and, instead, directed that the parties engage in coordinated discovery proceedings. By motion filed July 10, 2001, the utility plaintiffs and the Government filed a joint motion regarding the scope and the procedures to be employed in the coordinated discovery proceedings. The parties agreed that the scope of the coordinated discovery proceedings would concern "schedule issues," which included "the order, pace, and rate of acceptance of spent nuclear fuel and high-level radioactive waste pursuant to the Standard Contract, any priority for shutdown reactors, exchanges of acceptance slots, and the Government's obligation to accept and time of acceptance of Greater-Than-Class C radioactive waste." This stipulated order was entered by the Court on September 26, 2001.

Judge Sypolt presided over these proceedings and decided discovery disputes between the parties. By order dated February 1, 2002, the Court determined that the utility plaintiffs would be allowed ten depositions in the effort to conduct discovery upon the Government's

[1]We anticipate that appeals now pending before the United States Court of Appeals for the Federal Circuit will define the parameters of future SNF litigation.

pending motions for partial summary judgment regarding the rate of acceptance and whether the Standard Contract obligated DOE to accept GTCC radioactive waste pursuant to the Standard Contract.[2] By order dated March 25, 2002, the Court granted the utility plaintiffs' request not to include the RCFC 30(b)(6) depositions in the ten that plaintiffs were allowed and cautioned that "future depositions will be permitted only upon showing that 1) the information sought from the additional deponents is critical to responding to the pending dispositive motions, and 2) such information could not have been obtained in prior depositions or through other methods of discovery."

In response to the utility plaintiffs' requests for production, the Government produced 795,834 pages of documents through the coordinated discovery period. The Government also made ten fact witnesses available for deposition, and three additional witnesses testified on behalf of the Government in five separate Rule 30(b)(6) depositions addressed to ten core SNF topics. These coordinated discovery depositions occupied 34 days between February 19, 2002, and May 21, 2002.

On February 24, 2003, the Court granted the Government's motion for leave to file a motion for renewed consideration of its still pending motion to the Chief Judge for the

---

[2] In recent filings in Boston Edison Co. v. United States, No. 99-447C (Fed. Cl.), and Dairyland Power Cooperative v. United States, No. 04-0106C (Fed. Cl.), plaintiffs have cited to this order as evidence that the scope of discovery was unnecessarily or improperly limited. This order does not support such a conclusion. With this order, the Court limited discovery to that necessary to respond to the Government's pending motions for partial summary judgment, pursuant to RCFC 56(g). However, those motions concerned the same issues identified in the parties' original joint motion for coordinated discovery proceedings (including order, pace, and rate of SNF acceptance and the Government's obligation to accept GTCC radioactive waste pursuant to the Standard Contract). Moreover, the Government designated witnesses to testify on all ten of the RCFC 30(b)(6) topics identified by the utility plaintiffs, although some of these topics arguably fell outside those necessary to respond to the Government's pending motions.

reassignment of all of the SNF cases to a single judge on the Court. By order dated April 16, 2003, the Chief Judge entered an order directing that six of the pending cases be designated as "lead" cases for the purpose of deciding the pending motions for summary judgment regarding the rate of acceptance and the Government's obligations regarding the acceptance of GTCC radioactive waste. The Court issued decisions in five of six of these lead cases in June 2003, with different results. Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652 (2003); Yankee Atomic Electric Co. v. United States, No. 98-126C, slip op. (Fed. Cl. June 26, 2003); Indiana Michigan Power Co. v. United States, 57 Fed. Cl. 88 (2003).[3] Because these lead cases were proceeding without further coordination, the Government renewed its motion to consolidate the spent nuclear fuel cases then pending before the Court, requesting that the Court consolidate the cases for the limited purpose of deciding the rates and schedule of acceptance in all of the SNF cases pending before the Court. See Defendant's Second Motion To Renew Its Motion To Consolidate, filed July 29, 2003. By order dated January 30, 2004, the Court denied the Government's second motion to renew, based upon the determination that "consolidation – even as to the particular issues of rate of acceptance and schedule of acceptance – would not effectuate any greater efficient administration of justice than that of letting the six lead cases proceed with their dispositive motions and/or trial on damages."

---

[3] In Indiana Michigan, the Court granted plaintiffs' cross-motion for summary judgment, eliminating the Government's ability to present evidence regarding the scope of the Government's obligations at trial. See Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639, 642 n.4 (2004). The United States Court of Appeals for the Federal Circuit dismissed the Government's cross-appeal of the Court's ruling upon the rate issue, finding that it was not necessary to the trial court's judgment. Indiana Michigan Power Co. v. United States, 112 Fed. Appx. 37 (2004).

On April 30, 2004, the Court convened a case-wide status conference in response to the filing of additional SNF cases. At that hearing, or in status reports to the Court, counsel for many of the utility plaintiffs represented that they would not pursue duplicative discovery in their individual cases against the Government. Notwithstanding these representations, the plaintiffs have consistently sought to rediscover information obtained through coordinated discovery or in other SNF proceedings, including taking multiple duplicative and repetitive depositions of the same fact witnesses. As a result, the Government has been forced to respond repeatedly to redundant requests for discovery.

With discovery yet to commence in the majority of SNF cases, the Government has already responded to 602 individual requests for the production of documents, produced 2,160,837 million pages of documents, and defended 113 witness depositions occupying 160 days. The Government's four principal witnesses have spent approximately 263 hours over the course of 49 days providing deposition testimony to the utility plaintiffs. These same witnesses also have testified live and by designation at trial on over 50 occasions. Whether at deposition or trial, the Government's principal witnesses have offered consistent testimony regarding the same core SNF issues, all of which is available to the utility plaintiffs.

Moreover, the plaintiffs have propounded upon the Government numerous duplicative requests for the production of documents. For example, we have responded to 71 identical or substantially similar requests for documents relating to the following four core subjects: general date of performance by DOE; Greater-than-Class-C waste disposal; development and interpretation of the Standard Contract; and the general rate of SNF acceptance by DOE.
A representative sample of the duplicative efforts undertaken by the Government in fielding SNF

discovery requests appears below:

Duplicative Deposition Testimony (All Government Witnesses)

| Type of Discovery | Fact Witnesses Deposed | Days of Fact Witness Depositions | 30(b)(6) Witnesses Deposed | Days of 30(b)(6) Depositions |
|---|---|---|---|---|
| Coordinated | 10 | 27 | 3 | 7 |
| Individual | 79 | 102 | 19 | 24 |
| Totals | 89 | 129 | 24 | 31 |

Redundant Requests for Production of Documents (by Plaintiffs)

| Type of Discovery | Date of Performance Generally | GTCC | Standard Contract | Acceptance Rate Generally |
|---|---|---|---|---|
| Coordinated | 2 | 2 | 2 | 2 |
| Individual | 27 | 13 | 9 | 14 |
| Totals | 29 | 15 | 11 | 16 |

Since the conclusion of coordinated discovery, the utility plaintiffs also have repeatedly filed duplicative challenges to the Government's discovery objections and privilege claims before multiple judges of this Court in an effort to reverse prior discovery rulings favoring the Government. For instance, during the course of coordinated discovery in 2002, the plaintiffs challenged the Government's assertions of deliberative process privilege over certain documents. Judge Sypolt upheld the Government's assertions, finding "precise and certain reasons for invoking the privilege . . . ." By order dated October 9, 2002, Judge Sypolt denied the utility plaintiffs' motion to compel the production of privileged documents, upholding the Government's assertion of deliberative process privilege, attorney-client privilege, or attorney work product protection over 300 documents. See Yankee Atomic Electric Co. v. United States,

54 Fed. Cl. 306 (2002). By motion dated March 6, 2003, counsel for Yankee Atomic Electric Company again challenged the Government's assertions of privilege before Senior Judge Merow, including those upheld by Judge Sypolt. This time, the Court directed the production of some documents, but sustained the remainder of the Government's assertions. In 2005, Pacific Gas and Electric Company filed yet another motion to compel the production of many of the very documents at issue in the two previous challenges, as well as all of the Government's subsequent deliberative process assertions, this time with Judge Hewitt. On January 18, 2007, Dairyland's attorneys filed a similar motion, urging the Court in briefing to direct the Government to produce the challenged documents to all the utility plaintiffs, thereby "put[ting] an end to repetitive litigation of the deliberative process issues[.]" In the Court's June 29, 2007 order, the Court recognized that "Dairyland's attempt 'to champion the cause of other spent nuclear fuel plaintiffs,' as Defendant characterizes it, amounts in a practical sense to judge-shopping." Dairyland Power Coop. v. United States, 77 Fed. Cl. 330, 336 (2007). This type of abusive motions practice is enormously burdensome and costly to the parties, and results in the inefficient utilization of scarce judicial resources by the Court. Similarly, on July 13, 2007, Energy Northwest moved to compel the production of 256 documents withheld on the basis of deliberative process privilege by DOE, including all of the documents that were the subject of plaintiff's motion to compel the production of documents withheld on the basis of deliberative process in Pacific Gas & Electric Co. v. United States, No. 04-74C & -75C (Fed. Cl.), with the exception of documents related to the issue of GTCC waste.

Of course, some SNF litigants may object to the reconstitution of coordinated discovery. In response, we respectfully submit that, absent coordination, the duplication of discovery in

these cases will compound exponentially as more of them reach the discovery stage. When this occurs, the Court will be increasingly called upon to resolve piecemeal disputes that otherwise could have been resolved in a single coordinated proceeding. Moreover, the commonalities among SNF cases greatly exceed those in the Winstar arena, where, with assistance from the parties, the Court crafted an effective case management order that streamlined discovery and facilitated the resolution of many cases. It is not unreasonable to believe that the parties and the Court can achieve similar efficiencies in the SNF realm.

To the extent that the Court grants Energy Northwest's request for the Rule 30(b)((6) deposition covering 11 topics, the Court should order that the coordinated discovery proceedings be re-instituted so that the Government will not have to make the same witnesses available over and over again for repetitive depositions upon the same topics. Without coordination, which would limit the number of hours that any potential deponent would have to sit for deposition and the number of times that the deponent would have to appear, the Government's witnesses will continue to be subject to repetitive and time-consuming depositions in numerous cases over a course of the next several years as the remaining SNF cases proceed through discovery and to trial. The coordinated proceedings would require that the plaintiffs join together to take only one deposition of any Government witness, particularly as they relate to basic contract formation and performance issues that are common to all of the SNF cases. The Government and the utility plaintiffs in the previous coordinated discovery operated under a set of procedures governing these depositions that the Government respectfully seeks to have implemented again.

CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court enter a protective order to preclude these Rule 30(b)(6) depositions or, in the alternative, enter an order directing all SNF litigants to coordinate all pre-trial discovery matters.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SCOTT R. DAMELIN
RUSSELL SHULTIS
SONIA ORFIELD
Trial Attorneys
Department of Justice

s/Sharon A. Snyder by Scott R. Damelin
SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-0347
Fax: (202) 307-2503

October 16, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on October 16, 2007, a copy of the foregoing "Defendant's Reply to Plaintiff's Response to Motion for a Protective Order to Preclude Plaintiff's Noticed 30(b)(6) Deposition Or, in the Alternative, to Re-institute The Coordinated Discovery Proceedings in the Pending Spent Nuclear Fuel Cases" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Scott R. Damelin