**No. 04-10C**
**(Chief Judge Damich)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ENERGY NORTHWEST,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# ENERGY NORTHWEST'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO STRIKE PLAINTIFF'S CLAIM FOR INTEREST

---

NORMAN M. HIRSCH
Jenner & Block LLP
330 N. Wabash Ave
Chicago, IL 60611
(312) 923-2782 (tel.)
(312) 840-7782 (fax)

OF COUNSEL:

WILLIAM D. HEINZ
DAVID JIMÉNEZ-EKMAN
CHRISTOPHER TOMPKINS
APRIL A. OTTERBERG
Jenner & Block LLP
330 N. Wabash Ave
Chicago, IL 60611
(312) 222-9350

DAVID A. HANDZO
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, D.C. 20005
(202) 639-6000

*Attorneys for Plaintiff*

June 30, 2008

# Table Of Contents

Table Of Contents ..... ii

Table Of Contents To Appendix ..... iii

Table Of Authorities ..... iv

Introduction ..... 1

I. Factual Background. ..... 2

II. The Court Should Deny The Government's Motion. ..... 4

A. The Motion Should Be Denied As Procedurally Improper Because It Is A Motion For Partial Summary Judgment, Filed Without Leave And Without The Papers Specified In Rule 56. ..... 4

B. Alternatively, On The Merits, EN Is Entitled To Recover The Financing Costs As Part Of Its Expectation Damages. ..... 8

1. The Financing Costs Are Recoverable Because They Are "Interest As A Claim," Not "Interest On A Claim." ..... 8

2. The Government's Arguments That EN's Claim Is Barred By The Rule Against Prejudgment Interest Lack Merit. ..... 12

## Table Of Contents To Appendix

Declaration of Gregory P. Armatrout ........................................................................A. 001

Exhibit A: Citibank Promissory Note ..........................................................................A. 004

Exhibit B: Executive Board Resolution No. 1250 ......................................................A. 008

Exhibit C: Executive Board Resolution No. 1350 ......................................................A. 034

Exhibit D: Excerpts from Columbia Generating Station Electric Revenue Bonds, Series 2003-F Official Statement......................................................................A. 061

Exhibit E: Summary of financing charges ..................................................................A. 084

*Carolina Power & Light Corp. v. United States*, No. 04-37C, 2008 WL 2154103 (Fed. Cl. May 19, 2008)..........................................................................................A. 088

## Table Of Authorities

### Cases

*Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400 (D. Md. 1987) ........ 7

*Bayou Land & Marine Contractors, Inc. v. United States*, 23 Cl.Ct. 764 (1991) ........ 6

*Bluebonnet Sav. Bank, FSB v. United States*, 266 F.3d 1348 (Fed. Cir. 2001) ........ 9

*Brobst v. Columbus Servs. Int'l*, 761 F.2d 148 (3rd Cir. 1985) ........ 6

*Cannon v. William Chevrolet/GEO, Inc.*, 794 N.E.2d 843 (Ill. App. Ct. 2003) ........ 7

*Carolina Power & Light Co. v. United States*, No. 04-37C, 2008 WL 2154103 (Fed. Cl. May 19, 2008) ........ 12

*Centex Corp. v. United States*, 55 Fed. Cl. 381 (2003) ........ 9

*Energy Northwest. v. United States*, 69 Fed. Cl. 500 (2006) ........ 5

*England v. Contel Advanced Sys. Inc.*, 384 F.3d 1372 (Fed. Cir. 2004) ........ 13

*Forest Glen Properties, LLC v. United States*, 79 Fed. Cl. 669 (2007) ........ 6

*Gevyn Constr. Corp. v. United States*, 827 F.2d 752 (Fed. Cir. 1987) ........ 9, 10

*N. States Power Co. v. United States*, 78 Fed. Cl. 449 (2007) ("*Northern States*") ........ 12

*Provident Life & Accident Ins. Co. v. Adie*, 176 F.R.D. 246 (E.D. Mich. 1997) ........ 7

*S. Nuclear Operating Co. v. United States*, 77 Fed. Cl. 396 (2007) ........ 11

*Sales v. State Farm Fire & Casualty Co.*, 632 F. Supp. 435 (N.D. Ga. 1986) ........ 6

*Sys. Fuels Inc. v. United States*, 78 Fed. Cl. 769 (2007) ("*Entergy Grand Gulf*") ........ passim

*Sys. Fuels, Inc., v. United States*, 79 Fed. Cl. 37 (2007) ("*Entergy Arkansas*") ........ 2, 12

*Tenn. Valley Auth. v. United States*, 69 Fed. Cl. 515 (2006) ("*TVA*") ........ 2, 9, 11

*Turner v. Northwest Ark. Neurosurgery Clinic*, 133 S.W.3d 417 (Ark. Ct. App. 2003) ........ 6

*Westfed Holdings, Inc. v. United States.*, 52 Fed. Cl. 135 (2002) ........ 9

*Wickham Contracting Co. v. Fischer*, 12 F.3d 1574 (Fed. Cir. 1994) ........ passim

*Yankee Atomic Elec. Co. v. United States*, 73 Fed. Cl. 249 (2006) ........ 11

**Statutes**

28 U.S.C. § 2516 (1994) ........................................................................................................ 8

**Rules**

RCFC 56 .................................................................................................................................... 5

**Treatises**

75 Am. Jur. 2d Trial § 44 (2004) .............................................................................................. 7

## Introduction

The Government has filed a motion seeking to "strike" a specific element of plaintiff Energy Northwest's ("EN") damages claim, namely, certain financing costs EN incurred to mitigate damages in this case. As Your Honor knows, EN's damages claim in this case includes the costs it incurred to obtain dry storage for its spent nuclear fuel ("SNF") to mitigate the Government's breach of its obligations under the Standard Contract to accept EN's SNF. To pay for the large capital project of constructing and procuring that dry storage, EN borrowed funds, first from a bank, and then by selling bonds. At trial, the evidence will show – and we believe that there is no dispute – that the borrowings were specifically for the purpose of financing, and directly traceable to, the dry storage project. EN's damages expert, Michael P. Emmert, has included in EN's damages approximately $6 million in financing costs directly attributable to those borrowings. It is these costs that are the target of the Government's current motion.

The Government's motion is meritless and should be denied for two reasons. ***First***, the Government's motion is procedurally defective because it fails to comply with the requirements for summary judgment. The relief the Government seeks is not to bar evidence, but to preclude a certain claim entirely – i.e., for partial summary judgment on EN's claims. But even apart from the fact that this Court has not authorized additional summary judgment practice after the Government's first motion, the Government plainly fails to comply with the requirements of RCFC 56. The motion should be denied on this basis alone. (Part II.A.)

***Second***, alternatively, on the merits, EN is entitled to recover the financing costs it seeks. There is no dispute that there is no authority to award statutory prejudgment interest in this case, and that is not what EN seeks. Rather, the increased financing costs EN seeks are recoverable on the recognized authority of interest ***as an independent claim***: they are actual out-of-pocket damages directly traceable to the mitigation efforts EN was required to undertake, costs which

were reasonably foreseeable to the Government at the time of contracting and are valid expectation damages. Indeed, contrary to the Government's claim, in other SNF cases, Judges of this Court have recognized that a plaintiff can recover these costs if it can present evidence of the type EN will present in this case – evidence clearly linking the financing costs it paid with the dry cask storage project. *Sys. Fuels, Inc. v. United States*, 79 Fed. Cl. 37, 70 (2007) ("*Entergy Arkansas*"); *Sys. Fuels, Inc. v. United States*, 78 Fed. Cl. 769, 807 (2007) ("*Entergy Grand Gulf*"); *Tenn. Valley Auth. v. United States*, 69 Fed. Cl. 515, 542 (2006) ("*TVA*"). Because EN is clearly entitled to present this evidence to the Court (and to recover these costs), the Government's motion should be denied. (Part II.B.)

## I. Factual Background.

As Your Honor knows, this is a case against the Government for breach of the Standard Contract for the Removal of Spent Nuclear Fuel and High-Level Radioactive Waste (the "Standard Contract"). The Court has entered a finding of liability against the Government, and the remaining issue is damages. The principal item of damages EN seeks is for costs related to the procurement of additional storage for its SNF made necessary because of the Government's breach of the Standard Contract. EN has submitted an expert report from its expert, Michael P. Emmert, which summarizes the damages EN claims, including the actual out-of-pocket costs EN incurred in obtaining additional SNF storage.

One of those out-of-pocket costs is financing costs EN actually incurred to borrow a portion of the funds to complete the SNF dry storage project. The SNF storage project represented a significant capital investment for EN, one which would have a significant impact on the cost of electricity generated by Columbia and charged to the Participants who are members of EN. (Armatrout Decl. ¶ 3, App. 1.) Accordingly, EN financed a significant portion

of costs of the SNF storage project by issuing electric revenue bonds to ensure that the cash flows for the project matched the depreciation value for the project. (*Id.*)

EN's borrowing incurred in two steps. First, on May 10, 2002, EN was advanced $34,518,000 against a promissory note from Citibank. (*Id.* ¶ 4, App. 1-2.) This draw on the Citibank note was made specifically for ISFSI expenses, some portion of which had already been incurred and paid, and permitted EN the time to arrange for the issuance of Electric Revenue Bonds. (*Id.*; Ex. B Exec. Bd. Resolution No. 1250, App. 18.) Subsequently, EN issued Electric Revenue Bonds. (Armatrout Decl. ¶ 5, App. 2.) As with the Citibank note, there can be no dispute that the bonds were issued – and increased financing charges subsequently paid – for the purpose of paying for the dry cask storage project. (Armatrout Decl. ¶ 6, App. 2; Ex. C Exec. Bd. Resolution No. 1301, App. 43; Ex. D Columbia Generating Station Electric Revenue Bonds, Series 2003-F Official Statement, App. 74.) The bond closing documents specified that the purpose of the bonds was to:

> provide moneys to pay a portion of the cost of the acquisition, construction and equipping of the following described improvements to the Columbia Generating Station . . . (i) The initial phase of the dry spent fuel storage facility (the Independent Spent Fuel Storage Facility or "ISFSI") . . . the initial phase consisting of two reinforced concrete storage pads . . . (iv) the acquisition and installation, from time to time, of ISFSI Outer Casks consisting of additional over packs for the ISFSI facility . . .

(Armatrout Decl. ¶ 6, App. 2; Ex. C Exec. Bd. Resolution No. 1301, App. 43.) EN used approximately $34 million of the bond issue to retire the Citibank note. (Armatrout Decl. ¶ 5, App. 2; Ex. D Columbia Generating Station Electric Revenue Bonds, Series 2003-F Official Statement, App. 74; Ex. E Summary of Financing Charges, App. 86.) Through August 2006, the cutoff for damages in this case, EN actually paid $941,379 in financing charge payments on the Citibank note, and EN has made financing charge payments to the bondholders in the amount of

$5,127,530. (Armatrout Decl. ¶ 7-8, App. 2-3; Ex. E Summary of Financing Charges, App. 85.) Consequently, in this case, unlike some of the other SNF decisions cited by the Government, the approximately $6 million of financing charges EN actually incurred were incurred because EN had to construct dry cask storage and the charges are directly traceable to the dry cask storage project. (*Id.*)

## II. The Court Should Deny The Government's Motion.

### A. The Motion Should Be Denied As Procedurally Improper Because It Is A Motion For Partial Summary Judgment, Filed Without Leave And Without The Papers Specified In Rule 56.

The Government's Motion, filed with its other motions in limine to exclude particular categories of evidence, is not a proper motion in limine. As relief, the Government does not seek to exclude evidence as is typical for a motion in limine.[1] Rather, the Government is seeking judgment as a matter of law on an aspect of EN's damages claim. In particular, the Government's prayer for relief at the conclusion of its Motion is:

> The Government respectfully requests that the Court ***deny any recovery*** to ENW for any and all costs claimed as interest on any promissory note or revenue bond, allegedly incurred as a result of the Government's breach of contract.

(Mot. at 9 (emphasis added).) The Government's initial paragraph is to the same effect. (Mot. at 1 (requesting an order "strik[ing]" EN's claim on the ground that the "recovery of any type or amount of interest is contrary to law").) Consequently, the Government's Motion – which cites

---

[1] We recognize that "in limine" refers to timing – according to Black's Law Dictionary, "on or at the threshold; at the very beginning; preliminarily" – and that any motion relating to trial filed before trial can be called a "motion in limine." However, we respectfully believe that the Trial Preparation Order contemplates that motions in limine will relate to the exclusion of evidentiary materials: "motions in limine . . . to the opposing party's proposed witnesses or exhibits" (Dkt. No. 99 ¶ 2.c.i.(4).). Moreover, as explained in the text, regardless of the title of the motion, a motion seeking judgment as a matter of law on a claim filed as a motion in limine is improper.

no rule from this Court as its basis – is seeking relief only authorized by Rule 56, the summary judgment rule.

The Court should therefore strike the Government's Motion as an improper summary judgment motion filed in violation of the requirements of RCFC 56. We note at the outset that the Government did not seek leave with this Court to file another summary judgment motion. As the Court will recall, in response to the Court's May 9, 2005 order to show cause why liability should not be entered in favor of EN, the Government took it upon itself to file a summary judgment motion seeking liability in its favor. *Energy Northwest v. United States*, 69 Fed. Cl. 500 (2006). That motion resulted in extensive briefing, at considerable expense to EN, and required the expenditure of considerable resources by the Court. On January 30, 2006, the Court entered a memorandum opinion and order denying the Government's summary judgment motion. *Id.* Since that time, the Government has not sought or obtained leave to file a successive motion of any kind. Neither the pretrial schedule, nor the Court's April 21, 2008 Trial Preparation Order, authorized any additional summary judgment practice. While successive motions are not specifically prohibited by the Courts rules, the Court has the inherent authority to address such issues, and we respectfully submit that the Court should exercise that authority here.

In any event, the Government's new summary judgment motion in the guise of a motion in limine plainly fails to meet the requirements of Rule 56. As the Court knows, given the nature of the relief Rule 56 permits, the Rule also imposes procedural requirements that are not present for motions in limine. Specifically, Rule 56 requires the filing of Proposed Findings of Uncontroverted Fact. RCFC 56(h)(1). The Government has not done that here. Nor is this failure a mere technical default. The proposed findings required by the Rule play an important

part in defining and narrowing the issues raised by a summary judgment motion. *Forest Glen Properties, LLC v. United States*, 79 Fed. Cl. 669, 677 (2007) (Proposed Findings of Uncontroverted Facts are required because "[t]hese documents provide a framework for – as well as notice – of the facts that each side believes can be established, tying each fact to some evidentiary support."); *Bayou Land & Marine Contractors, Inc. v. United States*, 23 Cl. Ct. 764, 770-71 (1991) ("Were the rules not enforced [and Proposed Findings of Uncontroverted Facts not submitted], the Claims Court in a typical summary judgment motion would be required to sift through hundreds of pages of appendices to the complaint and briefs to ferret out the one material fact that either would support or inhibit summary judgment. A mind-numbing review would be mandated in every case to assure that no dispositive factual issue lurked in the parties' submissions. The burden would be insupportable . . . failure to comply with Rule 56(d)(1) and (2) can, and should be, fatal in all but the exceptional case."). Consequently, the Government's motion should be denied as procedurally defective.

Although we have not located any authority from this Court addressing the issue, numerous other courts have denied motions "in limine" that effectively sought summary judgment relief. A motion in limine is a pre-trial, procedural request that certain inadmissible evidence not be referred to or offered at trial. *Turner v. Northwest Ark. Neurosurgery Clinic*, 133 S.W.3d 417, 422 (Ark. Ct. App. 2003). In ruling on a motion in limine, a court focuses on the admissibility of the testimony and makes an advisory ruling to avoid unnecessarily wasting trial time. *Id.* This ruling is subject to change as events unfold at trial. *Sales v. State Farm Fire & Casualty Co.*, 632 F. Supp. 435, 436 (N.D. Ga. 1986). A motion in limine, however, is not the proper place to request that the Court strike a substantive claim. *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 154 (3d Cir. 1985) ("When a trial court disposes of a claim in ruling on a motion

in limine, the in limine motion is effectively convert[ed] . . . into one for summary judgment, but without the procedural protections."); *Provident Life & Accident Ins. Co. v. Adie*, 176 F.R.D. 246, 250 (E.D. Mich. 1997) (a motion in limine cannot be used as a substitute for summary judgment); *see* 75 Am. Jur. 2d Trial § 44 (2004). "It is improper to file a dispositive motion seeking the dismissal of a claim as a motion in limine where it forecloses the opportunity of the opposing party to adequately respond to the motion." *Cannon v. William Chevrolet/GEO, Inc.*, 794 N.E.2d 843, 849 (Ill. App. Ct. 2003). A motion in limine is therefore not an appropriate tool to determine the ultimate sufficiency of a claim. As the court held in *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987), "[t]he Federal Rules of Civil Procedure provide at least three motions designed to narrow or fix the issues for trial – motions to dismiss, for judgment on the pleadings, and for summary judgment – and motions in limine are not among them."

Moreover, in this case, there is no legitimate, practical need to have a ruling prior to trial on the legal sufficiency of EN's claim for increased financing costs. There is no jury, so prejudice is not an issue. And there will be little time saved if the limited evidence relating to this issue is not heard and made part of the record. The facts bearing on the increased financing costs, as the Court will see, are laid out in approximately one and a half pages in Mr. Emmert's expert report. (Mot. App. A2-A3.) As reflected in Mr. Armatrout's declaration included in the appendix to this Response, the underlying factual evidence will be similarly succinct. (App. 1-3.) And because the Government has not complied with Rule 56, if the evidence is ***not*** heard and made part of the record, there would be no basis for review on appeal. Given that there will be a trial, that Mr. Emmert will testify in some detail about other matters, that the evidence relating to the increased financing costs will be minimal, and that the record will be incomplete without that

evidence, as a practical matter, the Government's motion should be denied regardless of the ultimate resolution of the Government's arguments on the merits (which, as we show below, should not prevail).

**B. Alternatively, On The Merits, EN Is Entitled To Recover The Financing Costs As Part Of Its Expectation Damages.**

**1. The Financing Costs Are Recoverable Because They Are "Interest As A Claim," Not "Interest On A Claim."**

The Government contends that EN's claim for increased financing costs is precluded under Section 2516(a), or the no-interest rule: "[i]nterest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof." 28 U.S.C. § 2516(a) (1994). The Government asserts that EN's claim for increased financing costs claim is barred because no provision of the Standard Contract or Act of Congress provides for the payment of interest. (Mot. at 3.) We do not dispute that there is no authorization for prejudgment interest in this case. But EN makes no such claim in this case. Such a claim would have very different parameters than EN's claim for the increased financing costs EN incurred: it would be on the entire damages amount (instead of the amount specifically borrowed), and it would run from the date of the injury through the date of judgment (instead of the actual dates EN borrowed funds to mitigate its damages and specific increased financing costs incurred under those borrowings). There is no claim in this case governed by the no-interest rule.

Rather, EN is entitled to recover its increased financing costs without a contractual or statutory provision because EN is seeking to recover interest ***as an independent claim*** – i.e., it is part of a plaintiff's expectation damages because it was actually incurred, out of pocket, as a result of the Government's breach in an attempt to mitigate. This Court has carefully

distinguished between these two different types of interest payments: (1) interest ***on a claim*** – interest based simply on a delay in payment owed by the Government; and (2) interest ***as a claim*** – interest on a specific borrowing as part of a plaintiff's attempt to mitigate. *Entergy Grand Gulf*, 78 Fed. Cl. at 807; *Westfed Holdings, Inc. v. United States*, 52 Fed. Cl. 135, 163 (2002) (the distinction between interest as an element of damages and "interest on a claim" is well recognized). While Section 2516(a) precludes recovery of interest on a claim, it does not preclude the recovery of interest paid on funds that were borrowed to mitigate a contractual breach. "Courts frequently distinguish, however, between 'interest ***on*** a claim,' generally precluded by the statute, and 'interest ***as*** a claim,' which courts may treat as an element of compensation." *Centex Corp. v. United States*, 55 Fed. Cl. 381, 390 (2003) (emphasis in original). "Although interest on equity capital is not recoverable, a contractor may recover interest actually paid on funds borrowed." *Wickham Contracting Co. v. Fischer*, 12 F.3d 1574, 1582 (Fed. Cir. 1994); *accord Gevyn Constr. Corp. v. United States*, 827 F.2d 752, 754 (Fed. Cir. 1987) (distinguishing between claims of interest on equity capital, which are not recoverable, and claims where interest was paid on funds borrowed because of the Government's delay in payments, which may be recoverable).

In other words, while interest as an imputed cost is a receivable, interest on borrowings is an expense and may be a valid component of a damage claim. *Entergy Grand Gulf*, 78 Fed. Cl. at 807; *TVA*, 69 Fed. Cl. at 542; *Bluebonnet Sav. Bank, FSB v. United States*, 266 F.3d 1348, 1354-58 (Fed. Cir. 2001) (financing costs that represent a claim in themselves may be recoverable as expectation damages). As long as causation is established – i.e., the Government's breach caused the mitigation expense for which the borrowing occurred– parties may recover such costs from the Government. *Entergy Grand Gulf*, 78 Fed. Cl. at 807. "If

causation is established, a private party to a government contract may recover an amount charged by a lender for borrowed funds that were loaned to mitigate a breach of contract." *Id*.; *see also* *Wickham*, 12 F.3d at 1582 (same).

The Federal Circuit's holding in *Wickham v. United States*, illustrates the distinction. In *Wickham*, the court differentiated between the two types of interest payments and held that interest on a specific borrowing is recoverable. The plaintiff incurred costs on its renovation contract with the Government, due to Governmental delays, and filed a damages claim. *Wickham*, 12 F.3d at 1576. Plaintiff sought (i) reimbursement for the cost of using his equity capital as well as (ii) the interest he paid on borrowed funds. *Id.* at 1582. The Federal Circuit held that the recovery of interest on the plaintiff's equity capital was prohibited by Section 2516(a), but the interest on the borrowed funds was recoverable if it was used in connection with the Government renovation. *Id.* at 1582-83. Consequently, interest as a substantive claim was not barred by the no-interest rule.[2]

Another Judge of this Court has applied this principal to specifically determine that interest as a claim is not barred as a matter of law in cases for breach of the Standard Contract. In *Entergy Grand Gulf*, upon learning that the DOE would not perform, plaintiffs borrowed

[2] In the Motion, the Government attempts to avoid the holding in *Wickham* by asserting that the interest was only recoverable because of a "changes" clause in the contract permitting payment of interest. The Government's theory cannot be supported by the opinion. Indeed, in its Motion, the Government admits that the Court does not even mention the changes clause. (Mot. at 4, n.1.) Instead, the Court's decision rests on its differing treatment of types of interest: "[a]lthough interest on equity capital is not recoverable, a contractor may recover interest actually paid on funds borrowed because of the government's delay in payments and used on the delayed contract." *Wickham*, 12 F.3d at 1582 (citing *Gevyn*, 827 F.2d at 754). Thus, if, as the Government asserts, the interest payments were recoverable in *Wickham* only because the contract so stipulated, then all interest would be recoverable. Yet the *Wickham* court specifies that interest on equity capital is ***not*** recoverable, and held that only the interest on borrowings is recoverable. That result would not be possible if it was the changes clause that authorized payment.

funds to plan, design, and construct a dry fuel storage project to house its SNF. *Id.* at 808. Plaintiffs then brought a claim against the DOE to collect the borrowed money and the cost of borrowed funds. *Id.* at 808-09. The Court found that plaintiffs borrowed the funds to correct the Government's partial breach. *Id.* at 806. Rejecting the Government's assertion that interest paid on those borrowed funds was not recoverable under the no-interest rule, the Court held that if the funds and interest payments could be determined with reasonable certainty, then plaintiffs were entitled to recover all costs, including the interest payments. *Id.* at 808. The Court then scheduled additional hearings because, in that case, unlike the situation here, the Court found that the expert's cost of borrowed funds had not been shown with sufficient certainty. *Id.* In *TVA*, 69 Fed. Cl. at 542-43, the Court reached the same legal conclusion – that interest as a claim was recoverable – and made an award of $34,893,207 in that case because the necessary factual predicate had been established.

Here, as in *Wickham* and *Entergy Grand Gulf*, the financing charges included in EN's damages claim are clearly interest ***as a claim***. The claim is for costs already actually incurred by EN that are directly (and indisputably) traceable to the actions EN was required to take to mitigate the Government's breach of the Standard Contract. (Armatrout Decl. ¶¶ 4, 6, App. 2; Ex. B Exec. Bd. Resolution No. 1250, App. 18; Ex. C Exec. Bd. Resolution No. 1301, App. 43; Ex. D Columbia Generating Station Electric Revenue Bonds, Series 2003-F Official Statement, App. 74.) Here, EN borrowed the money to pay for the dry storage capital project. It would be contrary to the rule on mitigation of damages to deny EN recovery for costs actually and necessarily incurred in mitigation. *S. Nuclear Operating Co. v. United States*, 77 Fed. Cl. 396, 408 (2007); *Yankee Atomic Elec. Co. v. United States*, 73 Fed. Cl. 249, 264 (2006). Accordingly, the increased financing costs EN seeks are recoverable as a claim.

### 2. The Government's Arguments That EN's Claim Is Barred By The Rule Against Prejudgment Interest Lack Merit.

Besides simplistically characterizing EN's claim for increased financing costs as interest on a claim, the Government makes three arguments in support of its contention that EN's claim for increased financing costs is barred. Each of those arguments lacks merit.

***First***, the Government's contention that other Judges on this Court have denied claims for "interest" (at 7) is misplaced because those denials were based on the plaintiff's inability to show that the claimed borrowing cost could be linked to the Government's breach – indisputably ***not*** the situation here. In *Entergy Grand Gulf*, 78 Fed. Cl. at 809, the Court specifically held that interest as a claim was recoverable, but scheduled additional hearings because the amount of interest attributable to the project had not been shown with sufficient certainty. Judges of this Court, in other recently decided SNF cases cited in the Government's Motion, have not, as the Government implies, decided this legal issue in favor of the Government. *Carolina Power & Light Co. v. United States*, No. 04-37C, 2008 WL 2154103, at *34 (Fed. Cl. May 19, 2008); *N. States Power Co. v. United States*, 78 Fed. Cl. 449, 471-72 (2007) ("*Northern States*"); *Entergy Arkansas*, 79 Fed. Cl. at 70. In two of those cases, the Court did not reach the breadth of the no interest rule, but rejected the claims due to a lack of evidence tying the borrowed money or interest payments to mitigation projects. *Carolina Power*, 2008 WL 2154103, at * 34 (rejecting interest claim because plaintiff "failed to provide any evidence tying any borrowed money to specific projects"); *Northern States*, 78 Fed. Cl. at 471 (it was not "necessary to address the parties' differing interpretations" because plaintiff had "not demonstrated, apart from the existence of debt to augment its capital structure, any borrowing specifically undertaken to address the capital required to fund its mitigation efforts"). Similarly, in the third case, *Entergy Arkansas*, 79 Fed. Cl. at 70, the Court, while citing to the *Wickham* holding, nevertheless

concluded that *Wickham* was inapplicable because the plaintiff "has not shown that it borrowed money specifically to pay for the cost of the dry storage project." Here, as stated, EN can make such a connection between its financing costs and the dry storage project.

***Second***, while the Government attempts to rely on the *England* case, the Government's reliance on that case is misplaced. In *England v. Contel Advanced Systems Inc.*, 384 F.3d 1372, 1374 (Fed. Cir. 2004), the dispute stemmed from the Navy's contract with Contel Advanced Systems Inc. ("CASI") to design, install, and maintain a telecommunication system. To facilitate the contract, CASI obtained a third-party loan. *Id*. at 1375. Due to a government policy and before the breach **– *i.e., unrelated to the breach* –** CASI was required to borrow the full amount of the existing contract price. *Id.* The Government sent its installment payments on the contract directly to the third-party lender, and these payments included the interest CASI owed to the lender. *Id.* After a few payments, the Navy issued a unilateral modification reducing the contract price. *Id.* at 1376. The Navy paid the full reduced contract price to the third-party lender and then stopped making payments, leaving an outstanding balance. *Id*. CASI then negotiated payment of the balance with the lender, which included an additional $2,121,106 in interest payments, and brought an action against the Navy for the outstanding amount and the additional interest payments. *Id.* The court denied CASI's claim for recovery of the additional interest. *Id.* at 1379. But contrary to the Government's assertion, the court in *England* did not deny CASI's claim on the ground that all interest payments are per se unrecoverable, only that the interest payments in that case – payments made because CASI borrowed, not to mitigate the Government's breach of performance, but to cover a general cash shortfall after the Government failed to pay a liquidated amount of money owed by the Government on a particular date – fell within the rule**.** That situation is not distinguishable from statutory prejudgment interest; any

time an amount of money was owed by the Government, a party could simply borrow that money and then claim the amount as interest.

That is in contrast to the situation here. The Government owed no liquidated damages amount here. Instead, EN mitigated its damages to avoid even greater damages. In order to do that, EN borrowed funds that were specifically used to pay for that mitigation. That is interest ***as a claim*** as part of EN's mitigation efforts, not interest ***on a claim*** for a specific liquidated damages amount.

***Third***, the Government's assertion (Mot. at 8-9) that interest as a claim must have been expressly discussed by the parties does not support its motion. In the first place, because the Government has not complied with the summary judgment filing rules, there is no showing in the Government's papers, one way or the other, whether that was the case. But more importantly, the Government misstates the standard. Proof of a discussion at the time of contracting is not required; EN may recover damages provided the damages were actually foreseen or reasonably foreseeable by the breaching party at the time of contracting. *Bluebonnet*, 266 F. 3d at 1355 ("Expectation damages are recoverable provided they are actually foreseen ***or reasonably foreseeable***" (emphasis supplied)).

Here, the costs of developing, constructing, and loading the ISFSI – and the increased financing charges needed to perform those activities – were reasonably foreseeable as a matter of law. In *Entergy Grand Gulf*, 78 Fed. Cl. at 790, the Court held that it was a matter of public record that the nuclear utilities in the United States had limited space and were running out of room to store SNF. The Court determined that "it was 'foreseeable' to DOE that, if performance could not be commenced by January 31, 1998, Plaintiffs would have to make interim arrangements to store SNF." *Id.* at 791. Further, the Court held that the "DOE could have

foreseen that such interim arrangements could entail the need to plan, design, and construct dry fuel storage ***and incur the costs to borrow funds to finance those mitigation efforts***." *Id.* (emphasis supplied). EN will present similar evidence here regarding the foreseeability that the Government's breach would cause utilities, such as EN, to incur large capital costs to build additional SNF storage. Accordingly, the costs at issue here were reasonably foreseeable and are recoverable.

## Conclusion

For the foregoing reasons, the Court should deny the Government's Motion.

Dated: June 30, 2008

Respectfully submitted,

s/ Norman M. Hirsch
NORMAN M. HIRSCH
Jenner & Block LLP
330 N Wabash Avenue
Chicago, IL 60611
(312) 923-2782 telephone
(312) 840-7782 facsimile

OF COUNSEL:

David A. Handzo
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6000

William D. Heinz
David Jiménez-Ekman
Christopher Tompkins
April A. Otterberg
Jenner & Block LLP
330 N Wabash Avenue
Chicago, IL 60611
(312) 222-9350

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of June 2008, a copy of the foregoing Energy Northwest's Response In Opposition To Defendant's Motion In Limine To Strike Plaintiff's Claim For Interest was filed electronically with the Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Norman M. Hirsch