**No. 04-0010C**
**(Chief Judge Damich)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ENERGY NORTHWEST,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# ENERGY NORTHWEST'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE ADMISSION AT TRIAL OF DOCUMENTS PREPARED BY GOVERNMENT CONTRACTORS

---

NORMAN M. HIRSCH
Jenner & Block LLP
330 N. Wabash Ave
Chicago, IL 60611
(312) 923-2782 (tel.)
(312) 840-7782 (fax)

OF COUNSEL:

WILLIAM D. HEINZ
DAVID JIMÉNEZ-EKMAN
CHRISTOPHER TOMPKINS
APRIL A. OTTERBERG
Jenner & Block LLP
330 N. Wabash Ave
Chicago, IL 60611
(312) 222-9350

DAVID A. HANDZO
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6000

June 30, 2008

*Attorneys for Plaintiff*

## Table Of Contents

Table Of Contents ........................................................................................................ i

Table Of Contents To Appendix ................................................................................. ii

Table Of Authorities ................................................................................................... iv

Introduction .................................................................................................................. 1

Argument ...................................................................................................................... 3

I. DOE Fulfills Its Mission Under the Nuclear Waste Policy Act And The Standard Contract Through Its Contractors. ..................................................................... 3

II. The Challenged Documents Are Admissible As Public Records Or Reports Under FRE 803(8)............................................................................................. 6

A. Because These DOE Contractors Are Functionally Indistinct From DOE, They Can Create Documents Admissible Under FRE 803(8). .............................. 6

B. Energy Northwest Does Not Have The Burden To Prove Trustworthiness Before A Document Is Admissible Under FRE 803(8). ..................................... 10

III. The Challenged Documents Are Admissible As Non-Hearsay Admissions Under FRE 801(d)............................................................................................ 12

A. The Challenged Documents Are Admissible As Authorized Statements Under FRE 801(d)(2)(C)................................................................................ 12

B. The Challenged Documents Are Admissible As Statements Of Agents Or Servants Under FRE 801(d)(2)(D)................................................................. 15

IV. The Challenged Documents Are Admissible As Business Records Under FRE 803(6).. 18

V. Several Challenged Documents Are Admissible As Ancient Documents Under FRE 803(16)........................................................................................... 21

Conclusion ................................................................................................................... 22

## Table Of Contents To Appendix

<u>Documents Cited</u>

Excerpt from the May 10, 2002 Deposition of Lake Barrett ....................................A 001

Excerpt from the July 14, 2004 Trial Transcript in *Yankee Atomic*............................A 005

Pacific Northwest National Laboratory, “About PNNL,”
http://www.pnl.gov/about/default.asp................................................................A 008

<u>Trial Exhibits Excerpted</u>

PX 1 ..........................................................................................................A 009

PX 58 ..........................................................................................................A 017

PX 64 ..........................................................................................................A 018

PX 65 ..........................................................................................................A 019

PX 89 ..........................................................................................................A 021

PX 101 ..........................................................................................................A 024

PX 140 ..........................................................................................................A 026

PX 238 ..........................................................................................................A 027

PX 336 ..........................................................................................................A 029

PX 407 ..........................................................................................................A 031

PX 424 ..........................................................................................................A 033

PX 430 ..........................................................................................................A 035

PX 462 ..........................................................................................................A 038

PX 532 ..........................................................................................................A 042

<u>Unpublished Orders or Cases Cited</u>

*Dairyland Power Coop. v. United States*, No. 04-0106C, slip op.
(Fed. Cl. June 20, 2008)..........................................................................A 043

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C, 2004 WL 2450874
(Fed. Cl. Sept. 17, 2004) .......................................................................... A 066

*Wisc. Elec. Power Co. v. United States*, No. 00-697C, slip op.
(Fed. Cl. Aug. 16, 2007) .......................................................................... A 079

*Westinghouse Elec. Corp. v. United States*, Nos. 93-445C, 93-446C,
1997 WL 1068204 (Fed. Cl. June 4, 1997)................................................... A 109

## Table Of Authorities

### Cases

*Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338 (Fed. Cir. 1999) .................. 19, 20, 21

*Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004) .......................................................................... 17, 18

*Blue Water Envtl., Inc. v. United States*, 60 Fed. Cl. 48 (2004) .................................................... 9

*Bradford Trust Co. v. Merrill Lynch*, 805 F.2d 49 (2d Cir. 1986) ............................................. 7, 8

*Columbia First Bank, F.S.B. v. United States*, 58 Fed. Cl. 333 (2003) ................................. 20, 21

*Dairyland Power Coop. v. United States*, No. 04-0106C, slip op. (Fed. Cl. June 20, 2008) ................................................................................ passim

*Dickerson v. N.J. Dep't of Human Servs.*, 767 F. Supp. 605 (D.N.J. 1991) ................................ 11

*Equal Employment Opportunity Comm'n v. Watergate at Landmark Condo.*, 24 F.3d 635 (4th Cir. 1994) ........................................................................ 16, 17, 18

*Glendale Fed. Bank, F.S.B. v. United States*, 39 Fed. Cl. 422 (1997) ......................................... 12

*Globe Sav. Bank, F.S.B. v. United States*, 61 Fed. Cl. 91 (2004) .......................................... 12, 16

*Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398 (N.D. Ill. 1993) .......................... 2

*In re Flat Glass Antitrust Litig.*, 385 F.3d 350 (3d Cir. 2004) ....................................................... 9

*In re Oil Spill by Amoco Cadiz Off Coast of Fr. on Mar. 16, 1978*, 954 F.2d 1279 (7th Cir. 1992) ............................................................................................................ 8

*Jama v. U.S. Immigration & Naturalization Serv.*, 334 F. Supp. 2d 662 (D.N.J. 2004) ............. 11

*Johnson v. City of Pleasanton*, 982 F.2d 350 (9th Cir. 1992) ..................................................... 11

*Lockheed Martin Corp. v. United States*, 50 Fed. Cl. 550 (2001), *aff'd*, 48 F. App'x 752 (Fed. Cir. 2002) ............................................................................................................ 9

*MRT Constr., Inc. v. Hardrives, Inc.*, 158 F.3d 478 (9th Cir. 1998) ........................................... 19

*Nekolny v. Painter*, 653 F.2d 1164 (7th Cir. 1981) ...................................................................... 16

*P.R. Contractors, Inc. v. United States*, 69 Fed. Cl. 468 (2006) .................................................. 16

*Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534 (2d Cir. 1992) .......................................... 16

*Paul v. Fed. Mine Safety & Health Review Comm'n*, 812 F.2d 717 (D.C. Cir. 1987) ................. 17

*Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292 (9th Cir. 1983) .......................... 12

*Smith v. Isuzu Motors Ltd.*, 137 F.3d 859 (5th Cir. 1998) ........................................................ 11

*United States v. Cent. Gulf Lines, Inc.*, 747 F.2d 315 (5th Cir. 1984)........................................... 7

*United States v. Childs*, 5 F.3d 1328 (9th Cir. 1993)............................................................... 19

*United States v. Davis*, 826 F. Supp. 617 (D.R.I. 1993)............................................................... 8

*United States v. Frazier*, 53 F.3d 1105 (10th Cir. 1995) ...................................................... 19, 20

*United States v. Langer*, 962 F.2d 592 (7th Cir. 1992)............................................................... 20

*United States v. Lykes Bros. S.S. Co.*, 432 F.2d 1076 (5th Cir. 1970)........................................... 7

*United States v. Orleans*, 425 U.S. 807 (1976)............................................................................ 9

*Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544 (2003), *aff'd in part & rev'd in part on other grounds*, 407 F.3d 1352 (Fed. Cir. 2005).......................................... 12

*Westinghouse Elec. Corp. v. United States*, Nos. 93-445C, 93-446C, 1997 WL 1068204 (Fed. Cl. June 4, 1997)................................................................................................... 4

*Wisc. Elec. Power Co. v. United States*, No. 00-697C (Fed. Cl. Aug. 16, 2007) .................. 15, 16

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004)............................................................................................ passim

*Yates v. Rexton, Inc.*, 267 F.3d 793 (8th Cir. 2001)................................................................. 18

*Zeus Enters., Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238 (4th Cir. 1999) .................................... 10

**Statutes & Regulations**

18 U.S.C. § 1001......................................................................................................... 20

42 U.S.C. § 10222(d) ..................................................................................................... 3

48 C.F.R. § 17.601 ......................................................................................................... 4

48 C.F.R. § 17.604 ......................................................................................................... 4

48 C.F.R. § 17.605......................................................................................................... 20

**Rules**

FED. R. EVID. 801(d)(2)(C) ..................................................................... 1, 12, 15, 18

FED. R. EVID. 801(d)(2)(D) ........ passim

FED. R. EVID. 803(16) ........ 2, 21

FED. R. EVID. 803(6) ........ passim

FED. R. EVID. 803(8) ........ passim

FED. R. EVID. 803(8)(A) ........ passim

FED. R. EVID. 803(8)(C) ........ 7, 11

FED. R. EVID. 901(b)(8) ........ 21

**Treatises**

GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6722 ........ 12

## Introduction

The Government moves to preclude from admission at trial 21 documents included on Energy Northwest's exhibit list and prepared by the Department of Energy ("DOE") through its contractors. These documents, many of which were produced from DOE's own files, are highly relevant to this litigation: they concern DOE's research, planning, and activities related to the disposal of spent nuclear fuel under the Standard Contract. Notably, the Government does not argue that these 21 exhibits are unreliable, that they contain inaccurate or incorrect information, or that they misrepresent any official position of DOE. Indeed, with one or two exceptions, the Motion is notably lacking in discussion of any of the documents the Government challenges.[1] Instead, the Government makes a generic argument essentially contending that *no* document prepared by a contractor for DOE can be admitted in this case.

The Government's argument in this case is nearly identical to the one it recently made before Your Honor in *Dairyland Power Cooperative v. United States*. There, Your Honor rejected the Government's argument and held that documents created by DOE contractors – some of which are the very same documents at issue here – were admissible under three separate and independent Federal Rules of Evidence ("FRE"): as public records admissible under FRE 803(8)(A), as admissions of persons "authorized" to speak under FRE 801(d)(2)(C), and as admissions of the Government's agents under FRE 801(d)(2)(D). *Dairyland Power Coop. v. United States*, No. 04-0106C, slip op. at 3-5 (Fed. Cl. June 20, 2008) (App. 45-47). That ruling is similar to rulings by other Judges of this Court denying very similar motions by the

[1] One exhibit referenced in the Motion (PX 407) is a DOE document rather than a document prepared by a DOE contractor. PX 407 states on page 1: "This plan was prepared by the Office of Civilian Radioactive Waste Management on behalf of the Secretary of Energy . . . . The plan provides the Department of Energy strategy for the timely fabrication of transportation casks and deployment of waste acceptance capabilities." (Excerpt of PX 407 (App. 31-32).) Thus, PX 407 is not a contractor document

Government. *E.g.*, *Pac. Gas & Elec. Co. v. United States*, 73 Fed. Cl. 333, 439-40 (2006) ("*PG&E*"); *Yankee Atomic Elec. Co. v. United States*, No. 98-126C, 2004 WL 2450874, at *3-11 (Fed. Cl. Sept. 17, 2004) (App. 68-78). Your Honor should make the same ruling here to dispose of the Government's Motion.

As Your Honor recognized in *Dairyland*, the Government's argument against admission is based on a narrow reading of the Federal Rules of Evidence and an unduly restrictive view of the relationship between DOE and its contractors. Indeed, the Government's key argument – that DOE contractors do not create departmental policy for DOE and that their statements "do not represent DOE positions" (Gov't Mot. at 2) – has little or no bearing on whether the documents or statements are admissible under the applicable Federal Rules of Evidence. In fact, as demonstrated below, the documents in question are clearly admissible for the same reasons Your Honor admitted similar documents in *Dairyland*. *See* No. 04-0106C, slip op. at 3-5 (App. 45-47). In addition, as explained below, the documents are independently admissible as business records under FRE 803(6) and, for documents more than 20 years old, as ancient documents under FRE 803(16). Despite implications to the contrary in the Government's brief, the challenged documents are admissible if they satisfy any *one* of the evidentiary provisions discussed below.[2]

---

[2] The Government's Motion also assumes that all 21 of the challenged documents will be offered for their truth at trial. To the contrary, Energy Northwest may offer some documents for non-hearsay purposes. Because a court should "exclude *in limine* only when evidence is clearly inadmissible on *all* potential grounds," *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (emphasis added), this is another reason to deny the Government's Motion.

**Argument**

**I. DOE Fulfills Its Mission Under the Nuclear Waste Policy Act And The Standard Contract Through Its Contractors.**

The Government is simply wrong, both as a factual and legal matter, in its argument against admission of the challenged documents. In every practical sense, the "contractor" documents at issue here are DOE documents. As Judge Merow explained in *Yankee Atomic* and Your Honor recently held in *Dairyland*, "'[t]o a significant, if not exclusive extent, DOE's activities, duties, and responsibilities under the NWPA [Nuclear Waste Policy Act], have been and are conducted through its national laboratories and management and operations ("M&O") contractors.'" *Dairyland*, No. 04-0106C, slip op. at 2 (App. 44) (quoting *Yankee Atomic*, 2004 WL 2450874, at *3 (App. 68)). Indeed, the Standard Contract between Energy Northwest and DOE ("the Standard Contract") expressly provides that "DOE may fulfill any of its obligations, or take any action, under this contract either directly *or through contractors*." (Excerpt of PX 1, Energy Northwest's Standard Contract, Art. IV.B.3 (emphasis added) (App. 15).) Consistent with the Standard Contract, and consistent with the statutory authority granted to DOE, *see, e.g.*, 42 U.S.C. § 10222(d) (authorizing expenditure of funds for non-generic research, development, and demonstration activities under the NWPA), DOE has engaged a number of contractors to provide services to it in connection with the Standard Contract and the management of its SNF program in general.

These contractors have included a number of entities that have been engaged by DOE under M&O contracts. M&O contracts create a uniquely close relationship between DOE and the M&O contractor:

> DOE normally uses M & O contractors to manage and operate its Government-owned facilities. The DOE M & O contract is unique. Unlike a typical Government contract through which the Government obtains products and services to assist it in carrying

> out its mission, *DOE uses the M & O contract to conduct its mission*.

*Westinghouse Elec. Corp. v. United States*, Nos. 93-445C, 93-446C, 1997 WL 1068204, at *2 (Fed. Cl. June 4, 1997), (emphasis added) (App. 110). This close relationship between DOE and its M&O contractors is further confirmed by the Federal Acquisition Regulations ("FAR"), which define M&O contractors as acting on behalf of the Government:

> Management and operating contract means an agreement under which the Government contracts for the operation, maintenance, or support, *on its behalf*, of a Government-owned or -controlled research, development, special production, or testing establishment wholly or principally devoted to one or more major programs of the contracting Federal agency.

48 C.F.R. § 17.601 (emphasis added). Further, the FAR recognize that "[a] management and operating contract is characterized both by its purpose . . . and *by the special relationship it creates between Government and contractor*" and that an M&O contract is unique in that "[b]ecause of the nature of the work, or because it is to be performed in Government facilities, *the Government must maintain a special, close relationship with the contractor and the contractor's personnel* in various important areas . . . ." 48 C.F.R. § 17.604 (emphasis added).

In other words, DOE relies on its M&O contractors in essentially the same way it relies on its own employees, and M&O contractors function in a manner similar to DOE employees. In the context of DOE's activities under the NWPA and the Standard Contract, any supposed boundary between DOE and its M&O contractors is particularly tenuous. As Judge Merow stated in *Yankee Atomic*, the M&O contractors have played and continue to play a critical role in DOE's attempts to fulfill its statutory and contractual mission:

> These contractors were retained under unique circumstances to perform DOE's function, provided critical and essential data and input to DOE, and operate and manage the national laboratories for and on behalf of DOE. *In a very real sense, these contractors*

> *performed DOE's statutory mission*, or at a minimum provided the technical input to perform the same.

2004 WL 2450874, at *11 (emphasis added) (App. 77). As a result of this close relationship, Judge Merow held – and Your Honor recently agreed – that "[t]he documents indicate that the contractor personnel who operate DOE facilities are functionally indistinguishable from the DOE employees who request and use their research or drafting input. They are more akin to contract employees of DOE." *Id.* at *7 (App. 73); *accord Dairyland*, No. 04-0106C, slip op. at 5 (App. 47) ("[T]he DOE contractors are akin to employees that worked for DOE . . . .").

Testimony of DOE employees confirms Judge Merow's and Your Honor's rulings. Dr. John Bartlett, the former director of DOE's Office of Civilian Radioactive Waste Management ("OCRWM"), testified at the *Yankee Atomic* trial that DOE performs its work through its M&O contractors:

> All of the work is done by the – by the support contractors. That's what they're there for. . . . OCRWM itself has about 65 employees. The program has about 5,000 employees. . . . The work is done by [the contractors]. And the job of the DOE people is to oversight that, do the program planning, give them guidance and direction for what their activities should be.

(*Yankee Atomic* 7/14/04 Trial Tr. 615:24-616:22 (App. 6).) Dr. Bartlett was also asked about the extent to which the M&O contractor was "authorized by the Department to make statements concerning the subjects addressed in studies." (*Id.* at 616:23-617:1 (App. 6).) In response, Dr. Bartlett testified that "[t]hey have *full authority* to accomplish and report this work." (*Id.* at 617:2-3 (emphasis added) (App. 6).)

As revealed by the documents the Government seeks to exclude by its Motion, DOE engaged its contractors to investigate and report on a number of subjects specifically relating to the fulfillment of DOE's obligations under the Standard Contract, including the following: the schedule for accepting SNF (PX 58), the adequacy of the fee charged to utilities in return for

DOE's performance (PX 65, PX 101, PX 336, PX 462), SNF acceptance scenarios (PX 133), a reasonable rate of SNF acceptance (PX 64, 140, 529, 532), projected calculations of SNF discharges from utilities (PX 424), and the use of multipurpose canisters as a possible way to accept SNF (PX 430).

As explained below, given the close relationship between DOE and its contractors, the challenged documents are admissible at trial under any of several evidentiary rules.

## II. The Challenged Documents Are Admissible As Public Records Or Reports Under FRE 803(8).

Under Federal Rule of Evidence 803(8), "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency . . . unless the sources of information or other circumstances indicate lack of trustworthiness" are excluded from the bar on hearsay evidence. As Your Honor has already held, in light of the special relationship between DOE and its contractors in the context of DOE's activities in relation to the NWPA and the Standard Contract, documents created by DOE contractors are admissible under FRE 803(8)(A). *Dairyland*, No. 04-0106C, slip op. at 3-4 (App. 45-46); *PG&E*, 73 Fed. Cl. at 439; *Yankee Atomic*, 2004 WL 2450874, at *7-8 (App. 73-74). By arguing to the contrary, the Government ignores the M&O contractors' indispensable and integral role in executing activities related to DOE's SNF program.

### A. Because These DOE Contractors Are Functionally Indistinct From DOE, They Can Create Documents Admissible Under FRE 803(8).

As Your Honor has already recognized, "[t]he contractors in this matter have a significant amount of responsibility under the NWPA for activities related to the disposal of SNF." *Dairyland*, No. 04-0106C, slip op. at 3 (App. 45). In recognition of this close relationship between DOE and its contractors, the Court in *Yankee Atomic* reasoned that "public offices or agencies" in FRE 803(8)(A) is, in this context, "construed broadly to include those activities

done by national laboratories at the behest of DOE and within the parameters thereof" because "DOE cannot bifurcate its responsibilities for SNF and/or high level waste . . . disposal by utilizing M & O contractors to develop DOE's spent nuclear fuel program. Contracting statutory and regulatory responsibility does not eliminate the underlying public nature of these documents." 2004 WL 2450874, at *6 (App. 72); *see United States v. Lykes Bros. S.S. Co.*, 432 F.2d 1076, 1079-80 (5th Cir. 1970) ("[T]he duty to prepare the report can be delegated, under government regulations, to an independent agency or to a foreign government without the report losing its character . . . as a report of a 'department or agency of the United States.'").

Rather than create a "ridiculous result" as the Government contends (at 11), acceptance of the challenged documents as public records is fully in accordance with the underlying justification for this hearsay exception. First, "Rule 803(8) does not require a public official to make the record." *United States v. Cent. Gulf Lines, Inc.*, 747 F.2d 315, 319 (5th Cir. 1984) (admitting report of a cargo surveyor, an independent contractor, as a public record under FRE 803(8)(C), where the contractor had a duty to report the matters contained in the record to a public official). Moreover, FRE 803(8) is premised on the assumption that public officials "perform their duties properly without motive or interest other than to submit accurate and fair reports." *Bradford Trust Co. v. Merrill Lynch*, 805 F.2d 49, 54 (2d Cir. 1986). If a contractor is acting for an agency – and indeed, is functionally indistinguishable from it – there is no reason to treat statements, reports, or records of a contracting official any differently from those of an agency official. For example, Pacific Northwest National Laboratory ("PNNL") is a DOE laboratory operated by Battelle, a DOE M&O contractor that has operated PNNL for DOE and DOE's predecessors since the laboratory was established in January 1965. *E.g.*, Pacific Northwest National Laboratory, "About PNNL," http://www.pnl.gov/about/default.asp (App. 8).

There is no reason to assume that Battelle, after over 40 years of operating PNNL for DOE and 25 years of involvement in DOE's SNF program, has been doing anything other than "perform[ing its] duties properly without motive or interest other than to submit accurate and fair reports." *See Bradford Trust Co.*, 805 F.2d at 54.

Judge Merow in *Yankee Atomic* specifically rejected the Government's contention that this view of FRE 803(8) would create a "ridiculous result":

> The "contractors" involved in the instant document issues are in no way analogous to a contractor who bids for and obtains a contract to construct a building. The documents indicate that the contractor personnel who operate DOE facilities are functionally indistinguishable from the DOE employees who request and use their research or drafting input. They are more akin to contract employees of DOE. There is no way courthouse construction contractor employees would be performing court work in an equivalent manner.

2004 WL 2450874, at *7 (citation omitted) (App. 73-74). In other words, the nature of the contractual relationship between DOE and its contractors working on the SNF program, not the mere existence of any run-of-the-mill Government contract, justifies this view of FRE 803(8). In this situation, "[t]he qualifier 'of' [in FRE 803(8)] does not mean that data compilations, records, reports and statements must in all situations have been authored by the public office or agency – just that they must have emanated therefrom." *Id.*; *accord United States v. Davis*, 826 F. Supp. 617, 621 (D.R.I. 1993) ("Although initially drafted on a contract basis . . . under the supervision of the [U.S. Environmental Protection Agency], courts have held that such closely managed investigations satisfy the 'report of a public agency' requirement under FRE 803(8)."). Thus, the challenged documents here are "'documents generated or collected by the national government in the course of its public functions'" and therefore admissible under FRE 803(8). *Yankee Atomic*, 2004 WL 2450874, at *7 (quoting *In re Oil Spill by Amoco Cadiz Off Coast of Fr. on Mar. 16, 1978*, 954 F.2d 1279, 1309 (7th Cir. 1992)) (App. 74).

More fundamentally, in arguing that DOE contractors are not federal "agencies," the Government relies solely on case law that is inapplicable to the interpretation of FRE 803(8). Each of the Government's cases on this point – *Lockheed Martin Corp. v. United States*, 50 Fed. Cl. 550 (2001), *aff'd*, 48 F. App'x 752 (Fed. Cir. 2002) (Gov't Mot. at 8), *Blue Water Environmental, Inc. v. United States*, 60 Fed. Cl. 48 (2004) (Gov't Mot. at 8-9), and *United States v. Orleans*, 425 U.S. 807 (1976) (Gov't Mot. at 9-10) – concerns only whether a contractor met the test for being considered an agency under the Contracts Disputes Act, the Federal Tort Claims Act, or the Tucker Act. Whether a contractor is an "agency" under the jurisdictional portions of these statutes is not relevant. Such statutory definitions are properly construed narrowly and with a bias against finding an "agency" that can sue or create liability for the Government. *See, e.g.*, *Lockheed*, 50 Fed. Cl. at 553-54 (cited in Gov't Mot. at 8) ("It is well established that this Court possesses jurisdiction over a matter only to the extent that the United States has waived its sovereign immunity, and that waivers should be strictly construed in favor of the Government."). By contrast, "the Federal Rules of Evidence are to be liberally construed in favor of admissibility." *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 376 (3d Cir. 2004) (quotation and citation omitted). Accordingly, "[q]uestions of whether a contractor is a federal agency under the Tucker Act or the Federal Tort Claims Act are not the same as the court's evidentiary inquiry here." *Yankee Atomic*, 2004 WL 2450874, at *6 (App. 72).

Finally, the Government's primary and continuing theme in its Motion – that the challenged documents "do not represent DOE positions" (*e.g.*, Gov't Mot. at 2) – is irrelevant to admissibility under FRE 803(8)(A). All that is required is that the documents be "of [a] public office[] or agenc[y]" and "set[] forth (A) the activities of the office or agency." FRE 803(8)(A). That some of the documents contain a disclaimer that they "'do not necessarily state or reflect'"

the views "'of the United States Government or any agency thereof'" (Gov't Mot. at 10 (quoting PX 101)) does not mean the document does not set forth the activities of a public office or agency. *See Dairyland*, No. 04-0106C, slip op. at 3-4 (App. 45-46) (explaining that though the challenged documents were admissible as public records, the Court would reserve for trial the issue of whether the documents reflected or established DOE policy). Rather, as M&O contractors operating federal facilities pursuant to an express grant of authority from DOE, these contractors operate functionally as DOE, and the documents at issue here (many of which were produced from DOE's own files)[3] reveal and demonstrate the activities of DOE in connection with its obligations under the NWPA and the Standard Contract. That is enough to establish admissibility under FRE 803(8).

**B. Energy Northwest Does Not Have The Burden To Prove Trustworthiness Before A Document Is Admissible Under FRE 803(8).**

The Government also argues that "reliability . . . simply cannot be assumed for these documents" and attempts to shift to Energy Northwest the burden of establishing that the challenged documents have "indicia of 'trustworthiness.'" (Gov't Mot. at 13-14.) Here, the Government misapprehends FRE 803(8). "Since the assurance of accuracy is generally greater for public records than for private business records, the proponent is usually not required to establish their admissibility through foundation testimony." *Yankee Atomic*, 2004 WL 2450874, at *4 (App. 69). Thus, if a document has been determined to be a public record under FRE 803(8), it is presumed admissible, and "[t]he party opposing admission has the burden to establish unreliability." *Zeus Enters., Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 241 (4th Cir. 1999) (cited in Gov't Mot. at 7, 11, 13, & 15); *accord Johnson v. City of Pleasanton*, 982 F.2d

[3] For example, documents beginning with the Bates prefix "HQR" (like PX 336) came from DOE headquarters, and documents beginning with the Bates prefix "PNL" (like PX 65) came from DOE's PNNL.

350, 352 (9th Cir. 1992) ("The trial court is entitled to presume that the tendered public records are trustworthy. . . . When public records are presumed authentic and trustworthy, the burden of establishing a basis for exclusion falls on the opponent of the evidence.").

Because admissibility is presumed once a document is determined to be a public record, the Government's argument (at 19-21) that the "preliminary or interim nature" of some of the challenged documents prevents their admission under FRE 803(8)(A) is incorrect. Not only does the Government fail to identify which of the 21 exhibits at issue is of a "preliminary or interim nature," but it also misconstrues the law under FRE 803(8)(A). That a document may be "preliminary" or a "draft" does not make it any less a record or report subject to the rule; rather, to the extent such circumstances exist (and the Government thus far has identified none), they bear on the document's trustworthiness, not whether it is a public record in the first instance. *See Jama v. U.S. Immigration & Naturalization Serv.*, 334 F. Supp. 2d 662, 678-81 (D.N.J. 2004) (admitting "interim" report as public record under FRE 803(8)(C) and reasoning that the report's preliminary nature did not itself defeat admissibility but instead "should be considered under the rubric of trustworthiness") (quotation and citation omitted); *Dickerson v. N.J. Dep't of Human Servs.*, 767 F. Supp. 605, 612 (D.N.J. 1991) (admitting preliminary report under FRE 803(8)(C), reasoning there was no evidence the report was not trustworthy).[4] Moreover, other than broadly asserting that some documents are "preliminary" or "drafts," the Government has made no showing that any specific document is untrustworthy. Without that showing, the fact that any particular document is a draft or is preliminary merely goes to its weight, not its admissibility.

[4] For these reasons, *Smith v. Isuzu Motors Ltd.*, 137 F.3d 859 (5th Cir. 1998), which the Government cites (at 19-20), was wrongly decided and should not be relied upon here. *See Yankee Atomic*, 2004 WL 2450874, at *6 (App. 72) (acknowledging the Government's citation to *Smith* but ultimately holding that the contractor documents "in any form" were admissible as public records).

*Cf. Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544, 567 (2003), *aff'd in part & rev'd in part on other grounds*, 407 F.3d 1352 (Fed. Cir. 2005) ("[T]he mere fact that a document is a draft went to weight, not admissibility" under FRE 803(6).).

## III. The Challenged Documents Are Admissible As Non-Hearsay Admissions Under FRE 801(d).

The challenged documents are also independently admissible as substantive evidence under FRE 801(d)(2)(D) or FRE 801(d)(2)(C). "It is a widely-accepted rule that admissions of a party-opponent under Rule 801(d)(2) are accorded generous treatment in determinations of admissibility." *Globe Sav. Bank, F.S.B. v. United States*, 61 Fed. Cl. 91, 96-97 (2004) (quotation and citation omitted). The documents in question here easily satisfy the requirements of either provision.

### A. The Challenged Documents Are Admissible As Authorized Statements Under FRE 801(d)(2)(C).

Under FRE 801(d)(2)(C), a statement is non-hearsay if it is made "by a person authorized by the party to make a statement concerning the subject." "FRE 801(d)(2)(C) applies to a person who is not an agent but is 'authorized' to speak." *Glendale Fed. Bank, F.S.B. v. United States*, 39 Fed. Cl. 422, 424 (1997). By the plain language of the rule, no specific authorization to make admissions, as opposed to authorization to speak, is required. Further, "[a]uthorization to make a statement concerning the subject matter may . . . be established by the acts or conduct of the principal or his statements to the agent or third party." GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6722, at 503-04.[5]

[5] For example, a declarant can be considered authorized to speak where the principal relies on the declarant's statements. *See Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306-07 (9th Cir. 1983) (admitting report containing statements of an employee of a shareholder of the party-opponent, where the party-opponent relied on the report by distributing it widely among its officers and managers).

In *Dairyland*, faced with an identical argument from the Government, this Court held that "the DOE contractors were authorized, in fact contracted, to make statements for DOE concerning the transportation and disposal of SNF pursuant to the Standard Contract." No. 04-0106C, slip op. at 5 (App. 47). Accordingly, FRE 801(d)(2)(C) provides a further independent ground for admission of the challenged documents. *Id.* at 4-5 (App. 46-47).

Testimony of Government witnesses and the challenged documents themselves confirm this view. For instance, in the very same passage cited by the Government where Lake Barrett, then Deputy Director of OCRWM, refers to PNNL as a "contractor" (Gov't Mot. at 3-4), Mr. Barrett admits that his staff "assign[ed]" work to PNNL and that he "authorize[d]" his staff to do so. (5/10/02 Barrett Dep. Tr. 1151:5-11 (App. 3).) Indeed, several of the challenged documents state explicitly on their inside cover that the document "was prepared as an account of work sponsored by an agency of the United States Government." (Excerpt of PX 101 (App. 24-25); Excerpt of PX 424 (App. 33-34); Excerpt of PX 430 (App. 35-37).)

In addition, while the Government generally avoids discussing the documents in its Motion, it is readily apparent from the face of some of these challenged documents that DOE authorized the contractors to produce the report or record. (Excerpt of PX 65 (App. 19-20) ("Work Performed Under Contract No. DE-AC01-83-NE-44301 . . . for The U.S. Department of Energy Office of Civilian Radioactive Waste Management"); Excerpt of PX 140 (App. 26) ("Work supported by the U.S. Department of Energy under Contract DE-ACO6-76RLO 1830"); Excerpt of PX 238 (App. 27-28) ("This report fulfills the requirement of FY 95 Work Authorization Directive 95-40, WBS 3.3.1.1 – Contract and Policy Procedures."); Excerpt of PX 336 (App. 29-30) ("Prepared for: U.S. Department of Energy . . . Under Contract Number DE-AC08-91RW00134"); Excerpt of PX 462 (App. 38-41) ("The work associated with this letter

report is consistent with the contract requirement included in Section C2, Paragraph 4.0, Program Integration Functions and is included as part of the BSC work scope under the work breakdown structure element 9.13."); Excerpt of PX 532 (App. 42) ("A comprehensive logistics and cost analysis is being carried out by Pacific Northwest Laboratory (PNL) . . . . Pacific Northwest Laboratory is operated by Battelle Memorial Institute for the U.S. Department of Energy under Contract DE-AC06-76RL0 1830."). Even absent such explicit statements, it is simply not credible to assume that these studies, reports, and papers were prepared and published *sua sponte*, without DOE's authorization.[6]

As it did in *Dairyland*, this Court should also reject the Government's argument that the documents are inadmissible because there is no evidence the contractors were "'authorized' to make admissions upon DOE's behalf" or that they spoke for DOE. (Gov't Mot. at 24-25); *see* No. 04-0106C, slip op. at 4-5 (App. 46-47). As Judge Hewitt recognized in *PG&E*, such arguments are "based on a misapplication of [FRE] 801(d)(2)" because admissibility does not hinge upon "whether DOE contractors were authorized to make 'admissions' on behalf of the government." 73 Fed. Cl. at 439-40. Rather, as Judge Merow explained in *Wisconsin Electric Power Co. v. United States* – there, addressing contractor statements contained in deposition and trial testimony designations – "an admission is not as to legal liability. In this context, an 'admission' may be that the design rate or other input or analysis used by the contractor within the scope of its contract with DOE was 'X'." No. 00-697C, slip op. at 28 (Fed. Cl. Aug. 16,

[6] The Government argues that some of the challenged documents "were never even delivered to DOE and that they, instead represent internal documents from within the contractors' files of which DOE, during the events at issue in this case, was never aware and that DOE never saw" or that some of the documents "relat[e] to work that DOE never requested." (Gov't Mot. at 2.) The Government fails entirely to identify any such documents internal to contractor files or relating to unrequested work. In any event, to the extent such issues exist, they are disputed facts best addressed at trial rather than through the bare *ipse dixit* found in the Government's Motion.

2007) (App. 106). Thus, "the contractors were 'authorized' – indeed, in some cases, contracted by DOE to make such statements. These contractors were hired by DOE to do DOE's work." *Id.* (App. 106); *accord PG&E*, 73 Fed. Cl. at 440; *Yankee Atomic*, 2004 WL 2450874, at *8-9 (App. 74-76). Your Honor already recognized this same principle in *Dairyland*: "DOE fulfills its mission through the use of Government contractors. The Government cannot now disavow a relationship that was created contractually simply because it would be beneficial to the pending litigation." No. 04-0106C, slip op. at 4 (App. 46). Accordingly, whether the contractor statements represent the views of DOE is irrelevant to admissiblity, and "[t]o the extent that any statement was made [that] was inconsistent with DOE's position, contrary evidence or argument can be advanced." *Wisc. Elec. Power Co.*, No. 00-697C, slip op. at 28 (App. 106).

For all these reasons, the challenged documents are admissible pursuant to FRE 801(d)(2)(C).

**B. The Challenged Documents Are Admissible As Statements Of Agents Or Servants Under FRE 801(d)(2)(D).**

The challenged documents are also independently admissible under FRE 801(d)(2)(D). Under that rule, "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is admissible as a non-hearsay admission by a party-opponent. FRE 801(d)(2)(D).

As this Court concluded in *Dairyland*, in the circumstances of SNF cases such as this one, DOE contractors are "akin to employees that worked for DOE and carried out DOE's contractual responsibilities under the . . . NWPA and the Standard Contract." No. 04-0106C, slip op. at 4-5 (App. 46-47). As such, the contractors were agents or servants of DOE, and statements made within the scope of their agency or employment are admissible under FRE 801(d)(2)(D). *See id.*

FRE 801(d)(2)(D) does not require the Government to have specifically directed or authorized the declarant to make the statements that it did. *See P.R. Contractors, Inc. v. United States*, 69 Fed. Cl. 468, 473 (2006); *accord, e.g.*, *Nekolny v. Painter*, 653 F.2d 1164, 1171-72 (7th Cir. 1981). Rather, "'admissions' are statements made in furtherance of the deponent's government job or contract. . . . [T]he statement need only be related to the declarant's duties." *Wisc. Elec. Power Co.*, No. 00-697C, slip. op. at 21 (App. 99) (quotation and citation omitted). Nor does the rule require the Government to have ratified or agreed with the statement. *See, e.g.*, *Equal Employment Opportunity Comm'n v. Watergate at Landmark Condo.*, 24 F.3d 635, 638-39 (4th Cir. 1994). To meet FRE 801(d)(2)(D)'s second prong, "[t]he only requirement is that the subject matter of the admission match the subject matter of the employee's job description." *Globe Sav. Bank*, 61 Fed. Cl. at 97 (quotation and citation omitted).

The requirements for creating an agency relationship are not onerous, and, "[i]n light of the liberal treatment [that] proof under Rule 801(d)(2)(D) is accorded," can be proven through a variety of types of evidence, including circumstantial evidence.[7] *See, e.g.*, *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 538 (2d Cir. 1992) (holding statements should have been admitted under FRE 801(d)(2)(D) because circumstantial evidence was sufficient to demonstrate agency relationship). These requirements have been more than satisfied here. As Judge Merow reasoned in *Yankee Atomic*, "[a]s 'servants,' direct employees of DOE could make binding admissions as to matters within their employment duties, and there may be no good reason to not

[7] The Government's claim that *Rotec Industries Inc. v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000), holds "that a contract *must* contain language creating an agency relationship" for a contract to establish such a relationship (Gov't Mot. at 30 (emphasis added)) is incorrect. *Rotec* does not require specific contractual language; rather, *Rotec* recognizes that an agency relationship may be created from the circumstances, one of which can be a contract. 215 F.3d at 1256 (explaining that Rotec had not presented evidence of an agency relationship *or* contractual language creating such a relationship).

afford the same evidentiary treatment to the contractors here" because "[a]ny distinction between a nuclear physicist preparing tonnage estimates for DOE under a direct employment contract versus the M & O contracts here is questionable, and at best a matter of degree."[8] 2004 WL 2450874, at *11 (App. 77).

That DOE contractors were significantly involved in the process by which DOE made decisions and issued policy in relation to the SNF program is sufficient to establish an agency relationship under FRE 801(d)(2)(D). In an analogous situation, the Sixth Circuit held that letters from a consultant with a county's insurer should have been admitted as statements by the county's agent under FRE 801(d)(2)(D). *Beck v. Haik*, 377 F.3d 624, 638-40 (6th Cir. 2004). The Sixth Circuit rejected the defendant county's argument that the declarant was "simply a consultant" and reasoned that "[t]he statements dealt directly with the subject matter of the [insurer's] contract with the county, and were expressed during the course of that relationship." *Id.* at 639.

Similarly, the Fourth Circuit affirmed the admission of statements made by two volunteers who were members of a committee whose function was to advise the defendant's board of directors on certain issues. *Watergate*, 24 F.3d at 638-39. In that case, the Fourth Circuit recognized that the two declarants "were significantly involved in assisting Watergate's Board of Directors, the ultimate decisionmaker, in arriving at and implementing the solution to [specific] problems." *Id.* at 639. The Court was not persuaded by the defendant's argument that the volunteers' function was "purely advisory" and that only the Board "had the ultimate decisionmaking authority" and reasoned that "[s]ignificant involvement, either as advisor or

---

[8] Moreover, the D.C. Circuit has specifically described an M&O contractor as the "agent" of the Government agency for which it works. *Paul v. Fed. Mine Safety & Health Review Comm'n*, 812 F.2d 717, 718 (D.C. Cir. 1987) (describing Battelle Memorial Institute, the same M&O contractor that operates PNNL). Several of documents at issue here were prepared by Battelle.

other participant in a process leading to a challenged decision, may suffice to establish 'agency' for this purpose; it is not necessary that the declarant be the actual final decisionmaker." *Id.* at 640; *accord Yates v. Rexton, Inc.*, 267 F.3d 793, 802 (8th Cir. 2001) (affirming admission under FRE 801(d)(2)(D) of statements made by individuals who were not actual decision-makers but who were "intimately involved in the process of shaping [the] workforce").

In this case, as this Court has already recognized, the same reasoning applies: DOE contractors were significantly involved in DOE's SNF program; indeed, the contractors were virtually indistinguishable from DOE employees in carrying out their duties. *See Dairyland*, No. 04-0106C, slip op. at 4-5 (App. 46-47). That DOE contractors may not have been the ultimate decision-makers does not negate their status as DOE agents. *See Beck*, 377 F.3d at 638-40; *Yates*, 267 F.3d at 802; *Watergate*, 24 F.3d at 639.

Accordingly, DOE contractors were agents or servants of DOE, and the challenged documents are admissible under FRE 801(d)(2)(D): the Government concedes that the challenged documents were created by parties that had contracted with the Government; the documents themselves show they were created in fulfillment of the contractors' duties to the Government; and the Government cannot deny that the contractor statements both concerned matters within the scope of their employment and were made during the existence of that relationship.

## IV. The Challenged Documents Are Admissible As Business Records Under FRE 803(6).

In *Dairyland*, this Court determined that the documents in question are admissible under FRE 803(8)(A), FRE 801(d)(2)(C), and FRE 801(d)(2)(D). *See* No. 04-0106C, slip op. at 3-5 (App. 45-47). Another option for admitting the challenged documents is FRE 803(6), which allows for the admission of records "kept in the course of a regularly conducted business

activity." *See, e.g.*, *United States v. Frazier*, 53 F.3d 1105, 1110 (10th Cir. 1995) (approving the admission under FRE 803(6) of a report prepared by an independent contractor at the direction of the Department of Labor). On this point, the Federal Circuit precedent cited by the Government actually supports Energy Northwest's position. In *Air Land Forwarders, Inc. v. United States*, the Federal Circuit held that to be admitted as a "business record," a document of one entity held by another entity could be admitted if the holding party "rel[ied] upon the accuracy of the document incorporated and . . . there are other circumstances indicating the trustworthiness of the document." 172 F.3d 1338, 1343 (Fed. Cir. 1999); *accord MRT Constr., Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483-84 (9th Cir. 1998) (affirming admission, under FRE 803(6), of bills received from services performed by a law firm, as the party maintained the bills in its files, relied upon them as statements of fees it owed, and had a substantial financial interest in their accuracy); *United States v. Childs*, 5 F.3d 1328, 1333 (9th Cir. 1993) (citing cases and admitting third-party documents as the holding party's business records based on similar reasoning).

The Government asserts that, in order for a business record held by a third party to be admitted under FRE 803(6), the foundational testimony of a DOE employee is required. (Gov't Mot. at 23-24.) Here, the Government is simply wrong on the law: "such testimony is not necessary where an organization incorporated the records of another entity into its own, relied upon those records in its day-to-day operations, and where there are other strong indicia of reliability." *Air Land Forwarders*, 172 F.3d at 1344.

The Government does not deny that it relied on the accuracy of the challenged documents in this case, nor could it: through these documents, the contractors "provided critical and essential data and input to DOE," *Yankee Atomic*, 2004 WL 2450874, at *11 (App. 77), including the data DOE relied upon to determine its strategy and goals for fulfilling its mission

under the NWPA and the Standard Contract. The trustworthiness of the documents also cannot seriously be disputed. To the extent they were created pursuant to contracts with the Government, penalties (even criminal) exist for submitting false information. *See, e.g.*, 18 U.S.C. § 1001 (establishing penalties for making false statements to the Government); *United States v. Langer*, 962 F.2d 592, 596, 598 (7th Cir. 1992) (affirming criminal conviction for submitting false information to the Government in connection with performance under a Government contract). The existence of such penalties helps demonstrate trustworthiness under *Air Land Forwarders*. *Columbia First Bank, F.S.B. v. United States*, 58 Fed. Cl. 333, 339 (2003) (citing *Air Land Forwarders*, 172 F.3d at 1343-44).

More practically, because each Government contractor presumably desired to remain a DOE contractor, each was motivated to perform well and to provide accurate information. *See, e.g.*, *Frazier*, 53 F.3d at 1110 (contractor's report admitted as a business record was trustworthy in part because the contractor "was bound by contract to prepare the report and was interested in insuring the report was accurate"); FAR, 48 C.F.R. § 17.605 (providing for a formal review of an M&O contractor's performance at least once every five years). Further, it is clear from the face of several of the challenged documents that the contractors fully understood (and DOE anticipated) that DOE would rely on the accuracy of their data. For example, PX 462 states that "[t]his letter report is being issued to update the *Analysis of the Total System Life Cycle Cost (TSLCC) of the Civilian Radioactive Waste Management Program*, published in May 2001 and supports the Secretary of Energy's annual Fee Adequacy Assessment, as required by the Nuclear Waste Policy Act as amended. . . . The TSLCC supports the Secretary's efforts to perform the annual Fee Adequacy Assessment." (Excerpt of PX 462 (App. 38-41).)

Because the Government has relied on the accuracy of the challenged documents, and because it is undisputed that they are trustworthy, they meet the *Air Land Forwarders* test and should be admitted under FRE 803(6).

**V. Several Challenged Documents Are Admissible As Ancient Documents Under FRE 803(16).**

In addition to the bases for admissibility set forth above, five of the challenged documents are admissible for the independent reason that they fall within the exception to hearsay for ancient documents, FRE 803(16).[9] That rule allows into evidence "[s]tatements in a document in existence twenty years or more the authenticity of which is established." FRE 803(16). The twenty-year period is measured up to the date the document is offered into evidence. *Columbia First Bank*, 58 Fed. Cl. at 336 (rejecting argument that the period be measured from the creation of the document to the date the controversy arises). Notably, the Government does not challenge the authenticity of these documents under FRE 901(b)(8). Thus, PX 58 (created 1/24/1984 (App. 17)), PX 64 (created 4/26/1984 (App. 18)), PX 65 (created 4/27/1984 (App. 19)), PX 89 (created 1/1987 (App. 21-23)) and PX 101 (created 7/1987 (App. 24)) are admissible as ancient documents under FRE 803(16).

[9] In its Motion, the Government concedes that some of the challenged documents "may be 'ancient documents'" but purports to reserve the right to assert FRE 805 hearsay-within-hearsay challenges to statements contained in the documents. (Gov't Mot. at 33.) Such objections are likely to be futile: Energy Northwest, of course, can rely on other hearsay exceptions to establish that even the statements within the ancient documents are admissible.

**Conclusion**

For all of the reasons set forth above, this Court should deny the Government's Motion in limine to exclude the challenged documents.

Dated: June 30, 2008

Respectfully submitted,

s/ Norman M. Hirsch
NORMAN M. HIRSCH
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
Telephone: (312) 923-2782
Facsimile: (312) 840-7782

OF COUNSEL:

David A. Handzo
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6000

William D. Heinz
David Jiménez-Ekman
Christopher Tompkins
April A. Otterberg
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611
(312) 222-9350

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of June 2008, a copy of the foregoing *Plaintiff Energy Northwest's Response in Opposition to Defendant's Motion in Limine to Exclude the Admission at Trial of Documents Prepared by Government Contractors* was filed electronically with the Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Norman M. Hirsch