**No. 04-10C**
**(Chief Judge Damich)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ENERGY NORTHWEST,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# ENERGY NORTHWEST'S RESPONSE TO GOVERNMENT'S MOTION TO STRIKE NOTICE OF DESIGNATION OF DEPOSITION AND PRIOR TRIAL TESTIMONY OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO ADMIT PRIOR TESTIMONY INTO EVIDENCE

---


NORMAN M. HIRSCH
Jenner & Block LLP
330 N. Wabash Ave
Chicago, IL 60611
(312) 923-2782 (tel.)
(312) 840-7782 (fax)

*Attorneys for Plaintiff*

OF COUNSEL:

WILLIAM D. HEINZ
DAVID JIMÉNEZ-EKMAN
CHRISTOPHER TOMPKINS
APRIL A. OTTERBERG
Jenner & Block LLP
330 N. Wabash Ave
Chicago, IL 60611
(312) 222-9350

DAVID A. HANDZO
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6000


July 9, 2008

# Table of Contents

Table of Contents ........ i

Table of Contents to Appendix ........ ii

Table of Authorities ........ iii

Introduction ........ 1

I. The Court Should Deny The Government's Motion To Strike. ........ 2

A. The Court Should Deny The Motion To Strike As Procedurally Improper. ........ 2

B. The Court Should Reject The Government's Legal Arguments For The Same Reasons The Court Properly Rejected Them In *Dairyland*. ........ 4

C. The Government's General Attack On The Volume Of Designations Is Inaccurate And Misplaced. ........ 10

1. The Overall Volume Of Designations Is Proper. ........ 10

2. The Government's Characterizations Of The Specific Designations Cited In Its Motion Are Inaccurate And Do Not Support Its Argument. ........ 15

Conclusion ........ 19

**Table of Contents to Appendix**

Case Documents Cited

Dkt. No. 109, Def.'s Mot. to Strike Pls.' "Joint Notice of Deposition & Trial Testimony Designations" &, In the Alternative, Mot. *in Limine* to Preclude Reliance Upon Those Designations as Substantive Evidence Pursuant to RCFC 32(a) & Federal Rule of Evidence 801(d)(2), *Boston Edison Co. v. United States*, Nos. 99-447C (Fed. Cl.) ................................................................A 001

Dkt. No. 53, Def.'s Mot. to Strike Pls.' "Joint Notice of Deposition & Trial Testimony Designations" &, In the Alternative, Mot. *in Limine* to Preclude Reliance Upon Those Designations as Substantive Evidence Pursuant to RCFC 32(a) & Federal Rule of Evidence 801(d)(2), *Carolina Power & Light Co.*, No. 04-37C (Fed. Cl.) (appendix & attachment omitted).....................A 027

Dkt. No. 296, Def.'s Resp. to Pl.'s Notice of Deposition & Trial Testimony Designations or, Alternatively, Mot. for Leave to Admit Prior Testimony Into Evidence, *Dairyland Power Coop. v. United States*, No. 04-0106C (Fed. Cl.) (appendix omitted).......................................................A 050

Dkt. No. 325, Def.'s Objection to Pl.'s Designation of Deposition & Trial Testimony, *S. Nuclear Operating Co. v. United States*, No. 98-614C (Fed. Cl.) (attachment omitted)......................................................A 068

Dkt. No. 131, Def.'s Mot. to Strike Pl.'s "Joint Notice of Deposition & Trial Testimony Designations" &, In the Alternative, Mot. *in Limine* to Preclude Reliance Upon Those Designations as Substantive Evidence Pursuant to RCFC 32(a) & Federal Rule of Evidence 801(d)(2), *Sys. Fuels, Inc. v. United States*, No. 03-2623C (Fed. Cl.) (attachment & appendix omitted)...........A 080

Unpublished Cases or Orders Cited

*Adams v. Cal. Dep't of Health Serv.*, 220 F. App'x 590 (9th Cir. 2007).....................A 108

*Dairyland Power Coop. v. United States*, No. 04-0106C, slip op. (Fed. Cl. June 20, 2008)..........................................................................A 112

*Perera v. U.S. Fid. & Guar. Co.*, No. 8:02-CV-688-EAJ, 2007 WL 4247699 (M.D. Fla. Dec. 3, 2007)..........................................................................A 117

*Wisc. Elec. Power Co. v. United States*, No. 00-697D, slip. op. (Fed. Cl. Aug. 16, 2007) ..........................................................................A 119

# Table of Authorities

**Cases**

*Adams v. Cal. Dep't of Health Serv*., 220 F. App'x 590 (9th Cir. 2007)........ 9

*Carolina Power & Light Co. v. United States*, 82 Fed. Cl. 23 (2008)........ 11

*Dairyland Power Coop. v. United States*, No. 04-0106C, slip op. (Fed. Cl. June 20, 2008)........ passim

*Glendale Fed. Bank v. United States*, 39 Fed. Cl. 422 (1997)........ 7

*Globe Sav. Bank v. United States*, 61 Fed. Cl. 91 (2004)........ 5, 6

*In re Hanford Nuclear Reservation Litig.*, 521 F.3d 1028 (2008)........ 7

*Kinser v. Gehl Co.*, 184 F.3d 1259 (10th Cir. 1999), *abrogated on other grounds by Weisgram v. Marley, Co.*, 528 U.S. 440 (2000)........ 7

*Kolb v. Suffolk County*, 109 F.R.D. 125 (E.D.N.Y. 1985)........ 6

*Long Island Sav. Bank, F.S.B. v. United States*, 63 Fed. Cl. 157 (2004)........ 5, 6

*Perera v. U.S. Fid. & Guar. Co.*, No. 8:02-CV-688-EAJ, 2007 WL 4247699 (M.D. Fla. Dec. 3, 2007)........ 9

*Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 669 F.2d 1292 (9th Cir. 1983)........ 8

*Rodriguez v. United States*, 69 Fed. Cl. 487 (2006)........ 5

*United States v. Mathis*, 559 F.2d 294 (5th Cir. 1977)........ 6

*Weaver-Bailey Contractors, Inc. v. United States*, 19 Cl. Ct. 474 (1990)........ 6

*Wisc. Elec. Power Co. v. United States*, No. 00-697D, slip. op. (Fed. Cl. Aug. 16, 2007)........ 9

**Rules**

Court of Federal Claims Rule 32(a)(2)........ 5

Court of Federal Claims Rule 32(a)(3)(E)........ 9

Court of Federal Claims Rule 45(c)(3)(B)(iii)........ 9

FED. R. CIV. P. 45........ 9

FED. R. EVID. 801(d)........ 1, 5, 6

FED. R. EVID. 801(d)(2)(C) ........ 7, 9

FED. R. EVID. 801(d)(2)(D) ........ 5, 6

FED. R. EVID. 803(24) ........ 6

FED. R. EVID. 804(b)(5) ........ 6

**Treatises**

5 WIGMORE ON EVIDENCE ........ 5

GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE ........ 7

**Introduction**

The Government's Motion to Strike Energy Northwest's ("EN") designations of prior testimony is procedurally defective and meritless. Instead of timely filing its objections to our designations, as agreed by the parties and ordered by the Court, the Government has filed a Motion complaining about the overall volume of designations and raising certain legal arguments Your Honor has already rejected in the *Dairyland* case. The Government has not made complete objections or citations to each example of the supposed deficiency in our designations. Rather, the Government's aim is to avoid making those objections by asserting we have designated "too much," giving anecdotal instances of testimony the Government says is objectionable, and attempting to generalize to the rest of our designations – without complete citations to other "examples."

The Government's Motion should be denied. ***First***, the Motion to Strike is procedurally improper because it was not authorized by the agreed Trial Preparation Order and is not the proper vehicle to address the objections the Government raises. The Government should have timely filed its objections, as agreed, or sought a timely extension.

***Second***, Your Honor has already correctly rejected the Government's principal legal arguments in the *Dairyland* case. Pursuant to the holding in *Dairyland*, under Federal Rule of Evidence 801(d), EN does not need to demonstrate either unavailability or good cause to designate testimony from a witness who will also appear at trial. And Your Honor also concluded in *Dairyland* that the fact that a witness did not work for a DOE contractor at the time the witness provided testimony goes, to weight, not admissibility.

***Third***, the Government's overall and abstract attack on the volume of designated materials lacks merit for many reasons. As discussed below, a number of the Government's assertions regarding EN's supposed lack of selectivity or duplication are inaccurate. However,

even putting that issue aside, we are trying a claim for approximately $60 million, which justifies a detailed case and the expenditure of resources that comes with that. The Government's unfounded position on the acceptance rate requires EN to put in evidence regarding the 25-year history of a complex Government program – involving testimony from a number of current and former DOE employees with responsibility for the program. Trying this part of the case through the designations is far more efficient than calling witnesses to give live testimony particularly where, as here, the witnesses were authorized to speak for the Government. And the Government's own conduct – in criticizing the designations by other plaintiffs in SNF cases as incomplete – also has required substantial designations in the case. The Government should not be heard to complain about them now.

## I. The Court Should Deny The Government's Motion To Strike.

### A. The Court Should Deny The Motion To Strike As Procedurally Improper.

Under the Trial Preparation Order, to which the Government agreed, both parties were required to submit their deposition designations, and/or motions to present deposition testimony, on or before May 30, 2008. (Dkt. No. 99, 4/21/08 Trial Prep. Ord. ¶ 2.c.i.(3).) EN timely complied with this agreed date. (Dkt. No. 118, 6/3/08 Corrected Notice of Designation of Prior Deposition and Trial Testimony Or, In the Alternative, Motion for Leave to Admit Prior Testimony Into Evidence ("the Notice").) The Government elected not to designate any testimony.

The parties also agreed, and Your Honor ordered, that "[a]ny objections, including the grounds therefore, to the opposing party's motions regarding deposition testimony and any proposed cross-designation of transcript pages" should be filed by June 30, 2008. (Dkt. No. 99, Trial Prep. Ord. ¶ 2.c.iii.(1).) The Government neither sought an extension of this deadline nor

filed any objections and counter-designations by the agreed deadline. Instead, the Government filed its "Motion to Strike," only accounting for the possibility that its Motion may be denied in a footnote asserting that "If the Court denies our motion, it will be necessary for the Government to request additional time within which to respond" to EN's designations. (Mot. at 19 n.8.) The Motion is not authorized by the rules, by the parties' agreed upon deadlines, or by the Court's Trial Preparation Order, although it is a tactic that the Government has employed in other cases. (*See, e.g.*, Dkt. No. 53, Def.'s Mot. to Strike, *Carolina Power & Light Co.* v. *United States*, No. 04-37C (Fed. Cl.) (App. 027-49); Dkt. No. 109, Def.'s Mot. to Strike, *Boston Edison Co. v. United States*, No. 99-447C (Fed. Cl.) (App. 001-026); Dkt. No. 131, Def.'s Mot. to Strike, *Sys. Fuels, Inc. v. United States*, No. 03-2623C (Fed. Cl.) (App. 080-107).)[1]

The Court should deny the Government's Motion as procedurally improper. All of the arguments the Government raises in its Motion, including its objections that the designations are burdensome or cumulative, are in substance "objections" that could, and should, have been included in the Government's agreed June 30 filing deadline for objections and counter-designations, or in its response to EN's original notice and motion filed on May 30. Indeed, most of them are far more effectively dealt with on a case-by-case basis rather than in a generic fashion – for example, the Government's incorrect contentions (at 4-7) that certain testimony is duplicative or unnecessary or, the quintessential trial objection, irrelevant, cannot be handled on a wholesale basis. Nor can the Government's assertion (at 16-17) – based on just one provided example – that EN's designations contain testimony where "it is not clear from the designations what document is being discussed or whether a proper foundation has been laid . . . ." These

---

[1] Citations to "App." refer to the appendix filed with this response. Citations to "C.App." refer to the Corrected Appendix that Energy Northwest filed on June 3, 2008 with the Notice. (Dkt. No. 118.)

objections should have been asserted as to specific testimony the Government contends fits into this category, at which point EN would have had a chance to respond in the context of the particular testimony to which the Government objects and the Court would have been able to rule. This is the process contemplated by the parties and the Court, and it should be followed.

Because there was no substantive reason to file a Motion to Strike as opposed to the objections the Government agreed to file, it appears the Government has pursued this strategy to obtain an indefinite, and ungranted, extension of the due date for its objections. Indeed, because the Government has ***not*** sought or obtained an extension, it has now let the time to file its objections lapse, on the theory that the Court will interpret its Motion to Strike as a request for leave to later seek an extension if its Motion is denied. We respectfully suggest that the Government's Motion should be denied as procedurally improper, and the Court order that the Government file its objections in a short period of time so that EN is not prejudiced in its ability to respond to the objections and counter-designations.

### B. The Court Should Reject The Government's Legal Arguments For The Same Reasons The Court Properly Rejected Them In *Dairyland*.

In substance, the Government's Motion to Strike is substantively identical to a pleading it has filed in many other SNF cases. The Government has essentially drafted a template pleading opposing deposition designations and routinely files it in the various SNF cases. Indeed, the Government filed a pleading making the same legal arguments as this Motion in the *Dairyland* case. (Dkt. No. 296, Def.'s Resp. to Plaintiff's Notice of Deposition & Trial Testimony Designations or, Alternatively, Mot. for Leave to Admit Prior Testimony Into Evidence, *Dairyland Power Coop. v. United States*, No. 04-0106C (Fed. Cl.) (App. 050-67).) Consequently, Your Honor has already ruled on those arguments – against the Government.

*Dairyland*, No. 04-0106C, slip op. at 3-5 (Fed. Cl. June 20, 2008) (App. 114-16). The Government has not sought reconsideration of Your Honor's *Dairyland* ruling, and has not demonstrated why the result in this case should be any different than that ruling. In particular, the Court has already rejected each of the Government's principal legal arguments raised here.

***First***, Your Honor correctly ruled that deposition testimony is admitted under Federal Rule of Evidence 801(d) regardless of the availability of the witness at trial, and without any showing of "good cause." As Your Honor held:

> Under Fed. R. Evid. 801(d), there is no requirement of unavailability of the declarant. *Globe Sav. Bank*, 61 Fed. Cl. at 95 ("the general rules that the witness must be shown unavailable for testifying in court does not apply to a party's use of his *party-opponent's deposition* . . . [] for the simple reason that every statement of an opponent may be used against him as an admission . . . []the opponent's sworn statement, though a deposition, is no less an admission than any other statement of his." citing 5 John Henry Wigmore, *Evidence in Trials at Common Law* § 1415, at 243 (James H. Chadbourn ed., 1972)). Therefore, the fact that six of [the witnesses] may be called at trial has no bearing on the admissibility of the deposition or trial testimony.

*Dairyland*, No. 04-0106C, slip op. at 4 (App. 115).

Your Honor's ruling in *Dairyland*, consistent with the rulings by other Judges of this Court to address this same issue, was clearly correct. "Under [Rule 801(d)(2)(D)], the proffering party need not prove that the witness is unavailable nor does the party need also to invoke RCFC 32(a)(2) regarding admissibility of deposition testimony." *Rodriguez v. United States*, 69 Fed. Cl. 487, 494 n.8 (2006)); *accord Long Island Sav. Bank, F.S.B. v. United States*, 63 Fed. Cl. 157, 163 (2004). Nor is it relevant that the witness may be called in person to testify at trial. "The common law's preference for live testimony has no bearing on the use of party admissions as evidence." *Long Island Sav. Bank*, 63 Fed. Cl. at 163*; see also Weaver-Bailey Contractors, Inc.*

*v. United States*, 19 Cl. Ct. 474, 483 (1990) (holding Rule 30(b)(6) testimony admissible regardless of the individual witness's availability at trial).

This Court has also rejected the flawed reasoning in *Kolb v. Suffolk County*, 109 F.R.D. 125 (E.D.N.Y. 1985), which the Government cites in its unsuccessful attempt to add an unavailability requirement to Rule 801(d). (Mot. at 9-12.) In *Long Island Savings Bank*, the Government made the same argument it makes here and cited many of the same cases – including *Kolb* and *United States v. Mathis*, 559 F.2d 294 (5th Cir. 1977) – that it cites here.[2] 63 Fed. Cl. at 163. The Court rejected the holding in *Kolb* as "contraven[ing] the plain and straightforward text of Fed. R. Evid. 801(d)(2)(D)" because that rule, by its terms, does not require a showing of unavailability. *Id.* at 164. Moreover, in *Globe Savings Bank, F.S.B. v. United States*, the Court admitted deposition testimony under Rule 801(d) without a showing that the witness was unavailable, reasoning that "'every statement of an opponent may be used against him as an *admission* without calling him . . . ; the opponent's sworn statement, though called a deposition, is no less an admission than any other statement of his.'" 61 Fed. Cl. 91, 95 (2004) (quoting 5 WIGMORE ON EVIDENCE § 1415, at 243). The Court should reject the Government's arguments in its Motion (at 7-14) and make the same ruling here.

***Second***, in *Dairyland*, Your Honor already correctly rejected the Government's contention (at 14-16) that a witness's retired status renders his testimony inadmissible as an

[2] This Court in *Long Island Savings Bank* correctly noted that *Mathis* addressed a rule that, unlike Rule 801(d), explicitly required unavailability. *Long Island Sav. Bank*, 63 Fed. Cl. at 163; *see Mathis*, 559 F.2d at 298-99 (analyzing admissibility under Federal Rule of Evidence 804(b)(5), which requires unavailability, and Federal Rule of Evidence 803(24), which has a requirement of necessity and therefore does not apply when a witness is available to testify at trial).

admission.[3] The Court stated: "Therefore, the Court holds that Mr. Cole's retirement status at the time of his testimony goes to the weight not the admissibility of his testimony." *Dairyland*, No. 04-0106C, slip op. at 4 (App. 115). The Court's ruling is plainly correct. The Government's argument simply ignores the demonstration in the Notice that the four witnesses it challenges on this basis (Daniel Dreyfus, Michael Lawrence, Robert Morgan and Bernard Rusche) were "authorized to speak" on these issues. (Notice at 20-27.) The testimony of all four witnesses is admissible under Rule 801(d)(2)(C) as admissions of a party-opponent made "by a person authorized by the party to make a statement concerning the subject." Under this rule, the witness need not have been an agent of the party-opponent at the time of his or her testimony. "FRE 801(d)(2)(C) applies to a person who is not an agent but is 'authorized' to speak." *Glendale Fed. Bank v. United States*, 39 Fed. Cl. 422, 424 (1997). "Authorization to make a statement concerning the subject matter may . . . be established by the acts or conduct of the principal or his statements to the agent or third party." GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6722, at 503-04.

Thus, authorization to speak arises from the circumstances, such as where the principal has offered the testimony in other litigation, *In re Hanford Nuclear Reservation Litig.*, 521 F.3d 1028, 1061 (9th Cir. 2008) (admitting against the plaintiff under Rule 801(d)(2)(C) testimony that had been proffered by the plaintiff at a previous trial), or where there is some suggestion of a lingering bond between the witness and the principal, *Kinser v. Gehl Co.*, 184 F.3d 1259, 1275 (10th Cir. 1999) (admitting retired employee's deposition testimony that concerned events and policies occurring during employment and circumstances suggested a lingering bond between

[3] The Government's argument on this issue also fails to account for this Court's observation in the *Dairyland* order that Mr. Lawrence's testimony is also admissible because he was a Government contractor at the time of his deposition. *Dairyland*, No. 04-0106C, slip op. at 4 (App. 115).

employee and employer), *abrogated on other grounds by Weisgram v. Marley, Co.*, 528 U.S. 440 (2000)). Additionally, a witness can be considered authorized to speak where the principal relies on the witness's statements. *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306-07 (9th Cir. 1983) (admitting statements contained in report of an employee of a shareholder of the party-opponent, where the party-opponent subsequently relied on the report by distributing it widely among its officers and managers).

Further confirming the procedural infirmity of its "Motion to Strike," instead of responding to our arguments on this point, the Government simply ignores them. As we showed in the Notice, the witnesses whose testimony Energy Northwest seeks to admit were each authorized to speak because the Government has identified the witness as having knowledge on relevant subjects, has called the witness to testify at trial in other SNF cases, and/or has relied on the witness's testimony in the presentation of its case. (Notice at 20-27.) Each of the four former DOE officials was represented by Government counsel at the time of their testimony. Moreover, the Government has called three of these witnesses (Messrs. Lawrence, Morgan, and Rusche) to testify on its own behalf in trials in other SNF cases.[4] The Government identified two of these witnesses (Messrs. Lawrence and Morgan) in its interrogatory responses as DOE personnel with knowledge of the drafting of the Standard Contract and utility comments received in relation to Standard Contract drafts. (Def.'s Resps. to Utility Pls.' Joint Suppl. Interrogs. Nos. 77-80 (C.App. 0017-20).) Finally, the Government affirmatively relied on Mr. Morgan's

[4] Mr. Lawrence testified in person at the trials in *Carolina Power* and *Dominion*, and Mr. Rusche testified at the trial in the *Yankee* cases. Mr. Morgan testified at the trials in *Northern States*, *Carolina Power*, *TVA*, *PG&E*, the *Yankee* cases, and *Boston Edison*, and the parties designated his testimony for the trials in *Southern Nuclear* and both *System Fuels* cases.

deposition to respond to utility plaintiffs' Interrogatory No. 81. (*Id.* at No. 81 (C.App. 0021-22).)[5]

Judge Merow in *Wisconsin Electric Power Co. v. United States* relied on similar evidence of a witness's authorization to speak when admitting designated testimony of Dr. Dreyfus and Messrs. Lawrence, Morgan, and Rusche. No. 00-697D, slip. op. at 23-26 (Fed. Cl. Aug. 16, 2007) (App. 141-44). In addition, the Court noted that all four witnesses were high-level government officials and suggested that such circumstances further demonstrated the reliability of the witnesses' testimony. *Id.* Indeed, the Court reasoned, "[t]hat these gentlemen were authorized agents, deposed after that agency ended, but about that agency, goes to the weight of those statements, not their non-hearsay character." *Id.* at 26 (App. 147). For the reasons described by Judge Merow and those set forth above, these witnesses were authorized to speak on matters concerning their involvement with DOE's SNF program, and their testimony is admissible under Rule 801(d)(2)(C).

[5] The Government also misapprehends the limits on the Court's subpoena power under the rules of Court. (Mot. at 13.) Although the Court of Federal Claims has nationwide jurisdiction, the Court may require a witness who will incur substantial expense to travel more than 100 miles under RCFC 45, which is similar to Federal Rule of Civil Procedure 45, if the moving party shows a "substantial need for the testimony . . . that cannot be otherwise met without undue hardship." RCFC 45(c)(3)(B)(iii); *see also* RCFC 32(a)(3)(E) (permitting use of deposition testimony where the witness resides more than 100 miles from the place of trial). It is axiomatic that a party will rarely be able to demonstrate "substantial need" for the testimony of an individual who has been deposed before trial. *See, e.g.*, *Adams v. Cal. Dep't of Health Serv*., 220 F. App'x 590, 592 (9th Cir. 2007) (App. 110) (no substantial need under FED. R. CIV. P. 45 where out-of-district witness had been deposed); *Perera v. U.S. Fid. & Guar. Co.*, No. 8:02-CV-688-EAJ, 2007 WL 4247699, at *1 (M.D. Fla. Dec. 3, 2007) (App. 118) (no substantial need under Fed. R. Civ. P. 45 where parts of witnesses' depositions were designated to be used at trial).

**C. The Government's General Attack On The Volume Of Designations Is Inaccurate And Misplaced.**

**1. The Overall Volume Of Designations Is Proper.**

The Government's Motion repeatedly criticizes the overall volume of materials we have designated, calling it "staggering" and asserting that it "outnumber[s]" the designations in other SNF cases. But instead of showing why it believes the designations are improper through the objections they agreed to file, the Government attempts to avoid that obligation by making generalized statements about the volume of designations, and anecdotally and informally making a few of those objections in its Motion. Here, however, an objection to the volume of designations, without context or specific objections, is meritless for at least five reasons.

***First***, this is a substantial case seeking significant damages. EN has incurred almost $60 million in damages. The amount of resources required to respond to our deposition designations is neither out of proportion to those damages, or to the other activities the Government has undertaken in the case. For example, the Government repeatedly traveled to Richland, Washington and Chicago, Illinois (and once to New Mexico) to take 13 fact depositions in this case (in addition to those that occurred in Washington, DC). Typically, the Government sent two lawyers to each deposition, and between one and three additional consultants. The Government certainly recognized the significance of the claim when attempting to assemble its own case, and should not be heard to complain that it has to respond to a significant case – relating to its own witnesses – as well.

***Second***, the Government's unfounded position on the acceptance rate (discussed at some length in the cross-motions to exclude expert testimony) has forced EN to put on a case that covers a Government program spanning more than 25 years. We would be pleased to withdraw most of our deposition designations if the Government did not persist in its assertion that the

Court should use an acceptance rate to determine damages that is contradicted by much of the 25-year history of the program, and was only developed after it appeared that the Government was going to breach the contract. *See, e.g.*, *Carolina Power & Light Co. v. United States*, 82 Fed. Cl. 23, 37-41 (2008). We do not expect the Government to do that. Instead, EN's counsel spent substantial time reviewing prior testimony from numerous individuals associated with the history of the DOE program and carefully designated testimony that counsel believes will greatly assist the Court in determining this issue.

***Third***, in making our showing on acceptance rate, submitting these deposition designations will be far more efficient than calling each of the witnesses who gave that testimony, or prolonging their stay on the witness stand while counsel attempts to elicit the same admissions they have already provided in sworn testimony. We believe there will be no need for the Court to resolve a credibility determination in evaluating the testimony of witnesses who either do or did work for the Government when that testimony is adverse to the Government and therefore the witness has no reason to favor EN in his or her testimony. Consequently, there is no reason to call many of them to testify in person. In estimating the time for trial, and asking Your Honor to set aside that time, we have assumed this portion of the case could be submitted largely through deposition testimony. If the Court does not permit that, of course, we still have reserved the right to call the witnesses live, and we would respectfully submit a revised estimate of the trial time. However, EN respectfully submits that would serve no legitimate end here.[6]

[6] Similarly, contrary to the Government's suggestion (at 18), requiring that the deposition testimony be read into the record and count against trial time would be inefficient and serve no purpose. The Government suggests that it is somehow being disadvantaged by EN's ability to submit a disproportionate amount of testimony by designation and not having it count against the time in EN's case. But the Government was also free to make whatever designations it deemed appropriate; it has simply declined to do so. There is no "prejudice" to the Government merely because the Government elected not to avail itself of its rights under the rules. In that

***Fourth***, the Government's complaints about the volume of testimony ring hollow when the Government has criticized other SNF plaintiffs' designations as being incomplete. In making our designations, we had in mind the Government's arguments in other cases that the testimony designated was inadequate to the purpose. For example, in the *Carolina Power & Light* case, the Government repeatedly criticized the plaintiff for failing to designate ***enough***; the Government argued there:

- "Plaintiffs have wholly failed to provide the Court with the evidence necessary to make determinations regarding the extensive deposition testimony that they seek to designate as admissions of a party opponent. Plaintiffs have designated no testimony to establish the employee's job descriptions, when the individual was employed by the Department of Energy, or even that the individual was employed by the Department of Energy at the time of the testimony. Without this information, the Court is unable to make a proper determination as to whether the testimony is properly admissible."
- "Plaintiffs, in compiling their designations, have wholly failed to establish the proper foundation for much of the testimony that they have designated."
- "Plaintiffs have designated little, if any, testimony regarding when these individuals began their involvement with the program and testimony regarding the nature of their responsibilities. Without this information, the Court cannot properly evaluate whether the designated testimony has a proper foundation."

(Dkt. No. 53, Def.'s Mot. to Strike at 6-7, 14, 15, *Carolina Power & Light Co*., No. 04-37C (App. 038-39, 046-47); *see also* Dkt. No. 325, Def.'s Objection to Pl.'s Designation of

---

connection, EN observes that this Court rejected a similar request in *Dairyland*. *Dairyland*, No. 04-0106C, slip op. at 5 (App. 116.)

Deposition & Trial Testimony at 4, *S. Nuclear Operating Co. v. United States*, No. 98-614C (Fed. Cl.) (App. 071) ("Because so many of plaintiffs' designations are themselves incomplete or fail to provide the proper context for the testimony, the Government has had to counter-designate numerous deposition excerpts."); Dkt. No. 109, Def.'s Mot. to Strike at 8, *Boston Edison Co.* No. 99-447C (App. 014) ("Plaintiffs designated no testimony that would establish Alan Brownstein's responsibility for . . . matters discussed in his designated testimony or the period of his employment with DOE."); Dkt. No. 131, Def.'s Mot. to Strike at 18, *Sys. Fuels, Inc.*, No. 03-2623C (App. 104) ("[Plaintiff's] designations are problematic because it is not clear from the designations what document is being discussed or whether a proper foundation has been laid for the witness to testify about that specific document.").)

To be sure, foundational testimony does not account for all of the volume about which the Government complains. But that is the problem with the Government's Motion to Strike (as opposed to the objections that should have been filed): it is not possible to even evaluate if "too much" foundational testimony has been designated when the Government has not made specific objections. The Court should not countenance the Government's complaint about the overall volume in light of its complaints that not enough foundation had been designated in other cases.

***Fifth***, the Government's arguments about the number of witnesses designated, and the number of proceedings from which testimony is designated (at 5-6), are particularly misplaced given the arguments the Government made in opposing the Rule 30(b)(6) deposition we sought. The Court will recall that the Government sought to deprive EN of the ***single*** Rule 30(b)(6) deposition it sought in this case on the ground that multiple witnesses in other proceedings had already testified about the designated topics. (Dkt. No. 84, Def. Mot. For Prot. Ord. at 11-14.) Indeed, in planning our limited discovery, as encouraged by Your Honor, we intended at all

times to be able to rely on testimony given in prior depositions and at trial in other cases rather than duplicate that discovery here. In fact, when the Government filed its motion for a protective order, in response to the Government's concern, the Court required EN to search through the testimony given in prior proceedings to determine whether our topics had, in fact, already been covered. The Government should not be heard to complain now that EN has designated testimony from multiple depositions and trial transcripts when the Government previously relied on those many transcripts in opposing our deposition request.

For these reasons, the Government's attack on the volume of designation per se is misplaced. Nevertheless, if Your Honor concludes that the Court has concerns about the volume of designated testimony, there are several potential approaches. First, the Government's request to strike all of our designations is obviously overbroad. EN has complied with the procedural requirements and should not be deprived of its opportunity to designate testimony based on a post hoc attack on the volume by the Government. If the Court concludes that the volume is a concern, EN should be provided with an opportunity to refile its designations with the Court's concern in mind. Second, EN would consider agreeing to defer the Government's objections until the Government's post-trial brief is due, and only requiring the Government to object to testimony we rely on in ***our*** post-trial brief and proposed findings of fact. We believe that, subject to what the Government actually does at trial, we will rely on most of that testimony. But the Government's assertion that we have overdesignated irrelevant testimony would be better addressed in that fashion rather than through the Government's overly general Motion to Strike.[7]

[7] We would request, however, that we have leave to move to re-open the trial record if a Government objection has been sustained, so that we could cure the objection with live

### 2. The Government's Characterizations Of The Specific Designations Cited In Its Motion Are Inaccurate And Do Not Support Its Argument.

Many of the Government's "specific" assertions it makes in support of its request that all of our designations be stricken are simply inaccurate. Indeed, the anecdotal claims the Government makes in an attempt to show EN's supposed lack of selectivity or duplication are in many instances simply incorrect. For example, the Government's assertion (at 2) that EN designated "nearly entire" deposition transcripts for Messrs. Cole, Lawrence, Morgan and Pollog, and Ms. Klein is inaccurate. As the rules require, we have included the entire page of a transcript whenever there is any designation, even a few lines, from that page. But the portion designated – the shaded portion – of each of those transcripts is far less than the "nearly entire" transcript for each witness.

In addition, the Government contends (at 4-6) that EN has submitted multiple testimony designations on the same topic that are cumulative because the topic will be covered by the witness in live testimony at trial. At the outset, the Government's argument ignores the caselaw discussed above holding that EN is entitled to submit previous testimonial admissions regardless of witness availability. But in any event, the Government's own "illustrative" citations reveal that EN's testimony citations cover non-duplicative and valuable testimony on several important subjects. As one example, here are the topics covered in the testimony of Christopher Kouts that the Government cites on the ground that it is all "regarding the 2004 Annual Priority Ranking/ Annual Capacity Report" (Mot. at 5):

---

testimony. That is, in part, why the objections should be made prior to trial: so that EN can call witnesses, if necessary, to provide live testimony that cannot be admitted by designation.

| **Page** | **Subject** |
|---|---|
| C.App. 0518 | Identification as 30(b)(6) witness on the 2004 Acceptance Priority Ranking ("APR")/Annual Capacity Report ("ACR"); foundation for the 2004 APR/ACR; identification of the DOE staff who worked on the document |
| C.App. 0522-23 | DOE's treatment of Delivery Commitment Schedules ("DCS") in 2004; the decision to issue the 2004 APR |
| C.App. 0524 | Revision 6 of the DOE System Requirements document for the SNF program |
| C.App. 0529 | Status of prior DCS submissions in light of DOE's decision to request DCS submissions in 2004 |
| C.App. 0536 | DOE's planned acceptance rate as reflected in several program documents, including the 2004 APR/ACR and the DOE's lack of any stated intention to pick up at 900 MTU for the life of the SNF program |
| C.App. 0548-49 | A comparison of the 2004 APR/ACR acceptance rate to that in Total System Life Cycle Cost documents; status of DOE's decision to refrain from requesting DCS submissions from utilities; the basis of the acceptance rate contained in the 2004 APR/ACR |
| C.App. 0616 | Mr. Kouts' role in the creation of the 2004 APR/ACR; the purpose of the 2004 APR/ACR |
| C.App. 0617 | DOE's decision not to issue an ACR or APR between 1995 and 2004 |

EN submits that the testimony for the other witness whose designations the Government criticizes on this ground, David Zabransky, also covers a variety of relevant topics that will be helpful to the Court to resolve the disputed issues. For example, we note that the testimony from Mr. Zabransky that the Government criticizes contains key admissions which, no doubt, the Government would prefer to have Mr. Zabransky attempt to recant and explain at trial. The portion of the testimony the Government complains about includes Mr. Zabransky's testimony in the coordinated discovery deposition six years ago, in which Mr. Zabransky admits the lack of any real basis for the Government's use of the 900 MTU acceptance rate in the 1995 ACR. (Mot. at 6 (citing Zabransky testimony at C.App. 1409-13, 1416).) This testimony culminated in

Mr. Zabransky's admission that the DOE used the 900 MTU rate in that document to attempt to limit its obligation to the Standard Contract holders:

> Q. Was the department trying to minimize the commitments it had to utilities who were parties to the standard contracts in using this document, in using Exhibit 5 [the 1995 ACR]?
>
> A. I believe that that was a consideration.
>
> Q. Were there any other considerations that you can think of for using those rates?
>
> A. There was no other basis to develop any other rates at that point in time.

(C.App. 1417 (4/18/02 Zabransky Dep. Tr. 365:1-9).)

Similarly, the Government's contention that we have designated testimony on topics that are not "at issue in this case" is misplaced. The Government identifies failed fuel and multi-purpose and dual purpose canisters as issues that "are not relevant here." (Mot. at 6.) Because the Government has not filed its objections, it has done nothing more than assert – without demonstration – that the issues are not relevant. And the Government has made arguments on these topics in other cases. This motion to strike is the first notice we have had that the Government definitively does not intend to raise these issues and, if made in a binding way, we may be able to withdraw these designations. But, again, that would be much better done in the context of responding to the specific relevancy objections the Government is required to file, and these two examples could not justify any relief beyond excluding the specific designations the Government cites.

Likewise, the Government's contention (at 16-17) that our designation is "replete" with testimony from witnesses who discuss documents without providing proper authentication is unfounded. Of course, because the Government has not filed its actual objections, the attempt to strike all of the testimony is based on a single example. And that example is a poor one. The

Government fails to include that portion of the designations on the previous page where Mr. Barrett was shown a document labeled as deposition exhibit, which counsel had marked C.App. 0152) and which appears on EN's exhibit list submitted to the Government on May 9, 2008 as PX 88. Moreover, apart from testimony about any particular document, the testimony quoted by itself establishes a relevant point made here and elsewhere in Mr. Barrett's testimony – that there were numerous studies performed by the DOE in the 1980s supporting a 3,000 MTU acceptance rate. (C.App. 0153 ("There were various studies done in the eighties and also in the very early nineties on system performance rate . . . generally they supported the system rate of 3,000 was a reasonable rate."); *see also* C.App. 0173, 1095, 0255-56, 0263.) This example certainly does not justify the broad relief the Government seeks.[8]

---

[8] Our designations do, in fact, contain the proper authentication for documents when testimony is given about those documents. For example, we designated the following as foundation for PX 55 (A941 (11/15/06 Morgan Dep. 110:4-111:4)):

Q. Do you recognize this document, Mr. Morgan?
A. Yes.
Q. This is a draft mission plan, an excerpt of a draft mission plan dated December 20, 1983?
A. That's correct.
Q. You were involved in the preparation of this document?
A. Yes, I was.
Q. Just for the record, what was your role in the preparation of this document?
A. I reviewed it and authorized its publication. I own it.
Q. You own it?
A. Yes.
Q. By that you mean, you were, as the acting director of OCRWM, you were the individual responsible for its promulgation?
A. That's correct.

We could offer numerous additional examples, such as the foundation for PX 28 (C.App. 0901-02, 3/21/02 Morgan Dep. 199:6-200:5, 200:23-201:14), the foundation for PX 100 (C.App. 0310-311, 4/9/02 Brownstein Dep. 119:8-120:7, 122:2-8), the foundation for PX 214 (C.App. 0211-12, 4/26/02 Barrett Dep. 736:10-737:2, 740:15-741:3), or many others. While we recognize that these examples do not by definition show that ***all*** of our other included designations are proper, they are more probative than the Government's single example, and, in

## Conclusion

For all of the reasons set forth above, this Court should deny the Government's Motion to Strike.

July 9, 2008

Respectfully submitted,

s/ Norman M. Hirsch
NORMAN M. HIRSCH
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
Telephone: (312) 923-2782
Facsimile: (312) 840-7782

OF COUNSEL:

David A. Handzo
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6000

William D. Heinz
David Jiménez-Ekman
Christopher Tompkins
April A. Otterberg
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611
(312) 222-9350

*Attorneys for Plaintiff*

---

the absence of the specific objections the Government was supposed to file, the "best we can do" to respond to the Government's generic and unsupported criticism.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of July 2008, a copy of the foregoing *Energy Northwest's Response to Government's Motion to Strike Notice of Designation of Deposition and Prior Trial Testimony or, In the Alternative, Motion for Leave to Admit Prior Testimony Into Evidence* was filed electronically with the Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Norman M. Hirsch