**No. 04-10C**
**(Chief Judge Damich)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ENERGY NORTHWEST,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# APPENDIX TO ENERGY NORTHWEST'S RESPONSE TO GOVERNMENT'S MOTION TO STRIKE NOTICE OF DESIGNATION OF DEPOSITION AND PRIOR TRIAL TESTIMONY OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO ADMIT PRIOR TESTIMONY INTO EVIDENCE

---

OF COUNSEL:

WILLIAM D. HEINZ
DAVID JIMÉNEZ-EKMAN
CHRISTOPHER TOMPKINS
APRIL A. OTTERBERG
Jenner & Block LLP
330 N. Wabash Ave
Chicago, IL 60611
(312) 222-9350

DAVID A. HANDZO
Jenner & Block LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
202-639-6000

NORMAN M. HIRSCH
Jenner & Block LLP
330 N. Wabash Ave
Chicago, IL 60611
(312) 923-2782 (tel.)
(312) 840-7782 (fax)

July 9, 2008

*Attorneys for Plaintiff*

**Table Of Contents To Appendix**

Case Documents Cited

Dkt. No. 109, Def.'s Mot. to Strike Pls.' "Joint Notice of Deposition & Trial Testimony Designations" &, In the Alternative, Mot. *in Limine* to Preclude Reliance Upon Those Designations as Substantive Evidence Pursuant to RCFC 32(a) & Federal Rule of Evidence 801(d)(2), *Boston Edison Co. v. United States*, Nos. 99-447C (Fed. Cl.) ....................A 001

Dkt. No. 53, Def.'s Mot. to Strike Pls.' "Joint Notice of Deposition & Trial Testimony Designations" &, In the Alternative, Mot. *in Limine* to Preclude Reliance Upon Those Designations as Substantive Evidence Pursuant to RCFC 32(a) & Federal Rule of Evidence 801(d)(2), *Carolina Power & Light Co*., No. 04-37C (Fed. Cl.) (appendix & attachment omitted)....................A 027

Dkt. No. 296, Def.'s Resp. to Pl.'s Notice of Deposition & Trial Testimony Designations or, Alternatively, Mot. for Leave to Admit Prior Testimony Into Evidence, *Dairyland Power Coop. v. United States*, No. 04-0106C (Fed. Cl.) (appendix omitted)....................A 050

Dkt. No. 325, Def.'s Objection to Pl.'s Designation of Deposition & Trial Testimony, *S. Nuclear Operating Co. v. United States*, No. 98-614C (Fed. Cl.) (attachment omitted)....................A 068

Dkt. No. 131, Def.'s Mot. to Strike Pl.'s "Joint Notice of Deposition & Trial Testimony Designations" &, In the Alternative, Mot. *in Limine* to Preclude Reliance Upon Those Designations as Substantive Evidence Pursuant to RCFC 32(a) & Federal Rule of Evidence 801(d)(2), *Sys. Fuels, Inc. v. United States*, No. 03-2623C (Fed. Cl.) (attachment & appendix omitted)..........A 080

Unpublished Cases or Orders Cited

*Adams v. Cal. Dep't of Health Serv*., 220 F. App'x 590 (9th Cir. 2007)....................A 108

*Dairyland Power Coop. v. United States*, No. 04-0106C, slip op. (Fed. Cl. June 20, 2008)....................A 112

*Perera v. U.S. Fid. & Guar. Co.*, No. 8:02-CV-688-EAJ, 2007 WL 4247699 (M.D. Fla. Dec. 3, 2007)....................A 117

*Wisc. Elec. Power Co. v. United States*, No. 00-697D, slip. op. (Fed. Cl. Aug. 16, 2007)....................A 119

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BOSTON EDISON COMPANY,

Plaintiff,

v.

UNITED STATES,

Defendant,

ENTERGY NUCLEAR GENERATION CO.,

Plaintiff,

v.

UNITED STATES,

Defendant.

DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' "JOINT NOTICE OF DEPOSITION & TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
SCOTT R. DAMELIN
STEPHEN P. FINN
JOSHUA E. GARDNER
SONIA M. ORFIELD
Trial Attorneys
Department of Justice

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

ALAN J. LO RE
Senior Trial Counsel
Commercial Litigation Branch

Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0226
Fax: (202) 307-2503

May 25, 2007



Attorneys for Defendant

TABLE OF CONTENTS

PAGE

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. PLAINTIFFS' DESIGNATIONS SHOULD BE STRICKEN BECAUSE THEY SHOULD NOT BE ADMITTED INTO THE RECORD OF THIS CASE PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)(D) WITHOUT THIS COURT'S DETERMINATION THAT THEY, IN FACT, CONSTITUTE ADMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . 4

II. PLAINTIFFS HAVE FAILED TO ESTABLISH AN INDEPENDENT BASIS FOR THE ADMISSION OF THE DESIGNATED TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2) . . . . . . . . . . . . . 5

A. Plaintiffs Have Identified No Basis Upon Which To Avoid Their Burden Of Establishing The Admissibility Of Each Of Their Proposed Designations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B. Plaintiffs Cannot Introduce Testimony From Individuals Who Were Not Employees Of The Federal Government At The Time Of Their Designated Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C. Plaintiffs Have Identified No Foundation For Finding That The Remaining Witness Testimony Falls Within FRE 801(d)(2)(D) . . . . . . . . 8

III. PLAINTIFFS HAVE NOT MADE THE PROPER SHOWING AS TO WHY DESIGNATED TESTIMONY SHOULD BE ALLOWED TO BURDEN THE RECORD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

A. Plaintiffs Have Failed To Establish Good Cause For Using Deposition Designations *In Lieu* Of Live Testimony At Trial . . . . . . . . . . . . . . . . . . . 10

B. When There Has Been No Showing Of Unavailability, There Is A Strong Preference For Live Testimony . . . . . . . . . . . . . . . . . . . . . . 13

IV. TO THE EXTENT THAT WITNESSES DISCUSS EXHIBITS IN THEIR DESIGNATED TESTIMONY, PLAINTIFFS' DESIGNATIONS CONFLICT WITH PLAINTIFFS' RESPECTIVE OBLIGATIONS TO ESTABLISH PROPER FOUNDATION FOR THE ADMISSION OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TABLE OF CONTENTS (cont'd)

PAGE

V. NOTWITHSTANDING PLAINTIFFS' FAILURE TO DEMONSTRATE THE ADMISSIBILITY OF DEPOSITION TESTIMONY IN THIS CASE, THE GOVERNMENT REQUESTS THAT IT BE ALLOWED TO SUBMIT ITS LIST OF OBJECTIONS AND COUNTER-DESIGNATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TABLE OF AUTHORITIES

CASES PAGE(S)

Aliotta v. National R.R. Passenger Corp.,
315 F.3d 756 (3d Cir. 2003) . . . . . 5

American Steel Works v. Hurley Construction Co.,
46 F.R.D. 465 (D. Minn. 1969) . . . . . 15

Angelo v. Armstrong World Industrial,
11 F.3d 957 (10th Cir. 1993) . . . . . 11

Banks v. Yokemick,
144 F. Supp. 2d 272 (S.D.N.Y. 2001) . . . . . 14

Carden v. Westinghouse Electric Co.,
850 F.2d 996 (8th Cir. 1998) . . . . . 6

Delaware v. Van Arsdall,
475 U.S. 673 (1986) . . . . . 16

Evans v. Port Authority of New York & New Jersey,
192 F. Supp. 2d 247 (S.D.N.Y. 2002) . . . . . 5

Globe Savings Bank v. United States,
61 Fed. Cl. 91 (2004) . . . . . passim

Grimna v. Makousky,
76 F.3d 151 (7th Cir. 1966) . . . . . 15

Harris v. Itzhaki,
183 F.3d 1043 (9th Cir. 1999) . . . . . 5

Kolb v. County of Suffolk,
109 F.R.D. 125 (E.D.N.Y. 1985) . . . . . 6, 14, 17

Long Island Savings Bank v. United States,
63 Fed. Cl. 157 (2004) . . . . . 6, 10

TABLE OF AUTHORITIES (cont'd)

Napier v. Bossard,
102 F.2d 467 (2d Cir. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Pacific Gas & Electric Co. v. United States,
73 Fed. Cl. 333 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Renda Marine, Inc. v. United States,
66 Fed. Cl. 639 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Robertson v. National R.R. Passenger Corp.,
No. 98-1397, 1999 WL 280407 (E.D. La. May 3, 1999) . . . . . . . . . . . . . . . . . . . . . . . . 8

Sacramento Municipal Utility Dist. v. United States,
No. 98-488C (Fed. Cl. March 16, 2005) (unpublished) . . . . . . . . . . . . . . . . . . . . . . . . 13

Sea-Land Serv., Inc. v. Lozen Int'l, Inc.,
285 F.3d 808 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Selby v. Pepsico, Inc.,
784 F. Supp. 750 (N.D. Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Shapiro, Lifschitz, & Schram, P.C. v. Hazard,
90 F. Supp. 2d 15 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Blum,
62 F.3d 63 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Holmes,
44 F.3d 1150 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. International Business Machines Corp.,
90 F.R.D. 377 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Mathis,
559 F.2d 294 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Yankee Atomic Elec. Co. v. United States,
No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004) . . . . . . . . . . . . . . . . . . . . . . 9

Young & Assoc. Public Relations, L.L.C. v. Delta Air Lines, Inc.,
216 F.R.D. 521 (D. Utah 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TABLE OF AUTHORITIES (cont'd)

Young v. James Green Management, Inc.,
327 F.3d 616 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

MISCELLANEOUS

Fed. R. Evid. 801(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 804(b)(1), Advisory Committee Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

8A C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 2142 (2d ed. 1994) . 17

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BOSTON EDISON COMPANY,<br><br>Plaintiff,<br><br>v.<br>UNITED STATES,<br><br>Defendant. | |
| ENTERGY NUCLEAR GENERATION CO.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | No. 99-447C<br>No. 03-2626C<br>(Judge Lettow) |

DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' "JOINT NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)

Defendant respectfully requests that the Court strike the "Joint Notice Of Deposition & Trial Testimony Designations" that plaintiff, Boston Edison Company ("Boston Edison"), and plaintiff, Entergy Nuclear Generation Company ("Entergy") (collectively, "Plaintiffs"), filed on May 18, 2007. To the extent that the Court does not strike those designations from the record of this case, defendant alternatively requests that the Court preclude Plaintiffs from relying upon those designations or from considering those designations as substantive evidence, given, among other deficiencies discussed below, Plaintiffs' failure to establish an appropriate foundation for

the designated testimony and to establish that the designated testimony constitutes "admissions" of the United States.[1]

## SUMMARY OF ARGUMENT

Plaintiffs have proffered extensive deposition and previous trial testimony of 11 past and present Government employees, and 546 pages of testimony, as substantive evidence.[2] Rather than filing a motion seeking to have this Court review the proposed designations to determine whether they, as Plaintiffs claim, all properly constitute "admissions" by the United States pursuant to Federal Rule of Evidence ("FRE") 801(d)(2), Boston Edison and Entergy have merely filed them with the Court through a "notice," apparently simply including them in the record of this case under an assumption that Plaintiffs are entitled to treat all of them as "admissions" without any Court review.

---

[1] Subsequent to the filing of Plaintiffs' May 18, 2007 "Joint Notice Of Deposition & Trial Testimony Designations," Plaintiffs also filed a similar "Amended Joint Notice Of Deposition & Trial Testimony Designations," dated May 22, 2007, which includes additional witness designations. Accordingly, this motion is directed to both the May 18, 2007, and the May 22, 2007 designation "notices" that Plaintiffs have filed in this case.

[2] In their "notice," Plaintiffs seek to introduce by designation the deposition and trial testimony of Lake Barrett, Alan Brownstein, Susan Klein, Christopher Kouts, Michael Lawrence, Ronald Milner, Robert Morgan, Thomas Pollog, Nancy Slater (Thompson), Victor Trebules, and David Zabransky. Plaintiffs' list of designations is similar to the list of designations filed by the plaintiffs in System Fuels, Inc. v. United States, No. 03-2624C (Fed. Cl. Aug. 18, 2006) and Northern States Power Co. v. United States, No. 98-484C (Fed. Cl. Sept. 1, 2006). Although plaintiffs in those cases withdrew portions of the designations or have indicated that they do not intend to rely upon all of these designations in those cases, Plaintiffs' list of proposed designations in this case does not reflect those changes. Of the individuals for whom Plaintiffs' have proposed designations, Entergy has identified Mr. Pollog, Mr. Morgan, and Mr. Zabransky as possible witnesses for Entergy at trial on its witness list. Messrs. Kouts, Morgan, and Zabransky are on the Government's witness list, and the Government expects to call one or more of these witnesses at trial.

Contrary to Plaintiffs' apparent belief, it is the Court, not Plaintiffs, that determines whether the proposed designations properly constitute "admissions" of the United States. Because Plaintiffs did not file a motion seeking the Court's review of these designations, but, instead, merely included them in the record of this case as predetermined "admissions," we respectfully request that the Court strike Plaintiffs' "notice" from the case. Even if the Court considers the "notice" to constitute a motion to deem the designated testimony as admissions of the Government, Plaintiffs have failed to make the required showing under FRE 801(d)(2) that the testimony which they have designated may properly be considered to be the admission of a party opponent, and they have ignored or failed to identify numerous objections to the testimony upon which the Court must rule before the testimony could be admitted into the record of this case. Plaintiffs also have not overcome the preference for live testimony and met their burden to show cause as to why these designations should be allowed. Because the designated testimony is irrelevant, incomplete, or subject to extensive objections, Plaintiffs should not be allowed to burden the record with its admission. To the extent that the Court allows Plaintiffs' designations to become part of the record, in whole or in part, we request that the Court grant us the opportunity to file specific objections that are contained in the testimony that Plaintiffs have designated, pursuant to RCFC 32(b), and we respectfully request that the Court consider and rule upon such objections. Likewise, we request that the Court grant us the opportunity to file a listing of deposition and trial testimony that we intend to counter-designate, and we respectfully request that the Court consider such counter-designations pursuant to FRE 106 and RCFC 32(a)(4) . We further request that the Court require the parties to read the designated testimony into the trial record and that the time devoted to that effort be included in the parties' respective trial time.

DISCUSSION

I. PLAINTIFFS' DESIGNATIONS SHOULD BE STRICKEN BECAUSE THEY SHOULD NOT BE ADMITTED INTO THE RECORD OF THIS CASE PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)(D) WITHOUT THIS COURT'S DETERMINATION THAT THEY, IN FACT, CONSTITUTE ADMISSIONS

In the "notice" of deposition and trial testimony designations that Plaintiffs have filed, Plaintiffs recognize that "RCFC Appendix A, ¶ 15(b) provides that a party must move for leave to file designations of substantive testimony, *except 'as provided by Fed. R. Evid. 801(d).'*" Plaintiffs' Notice, at 1 (May 18, 2006) (italics in original) (quoting RCFC App. A ¶ 15(b)). Claiming that all of their proposed designations constitute "admissions" by the United States pursuant to FRE 801(d)(2), Plaintiffs then filed a "notice" of their designations, without any motion requesting that the Court determine whether the proposed designations actually constitute "admissions" under the identified Federal Rule of Evidence. The lack of a motion seeking the Court's review and admission of these proposed designations, as opposed to Plaintiffs' mere admission of the designations into the record of this case without any Court review and approval, is inappropriate. Seemingly in response to the Government's criticism of the same "notices" filed in System Fuels, Inc. (No. 03-2624C) and Northern States, Plaintiffs note at the end of their notice that Plaintiffs "reserves their right to supplement these designations . . . to otherwise assure that the testimony presented meets the requirements of Fed. R. Evid. 801(d)." Plaintiffs Notice at 2 (May 18, 2007). Rather than reserve the right to submit additional designations, Plaintiffs should have sought to provide the proper basis for the admission of the testimony with their notice.

"[T]here are two relevant requirements under Rule 801(d)(2)(D). First, [the designated individual's] deposition testimony must be an admission. Second, the statements must be made

'concerning a matter within the scope' of [the designated individual's] employment." Aliotta v. National R.R. Passenger Corp., 315 F.3d 756, 761 (3d Cir. 2003). Although a party certainly must identify the specific testimony that it wants to designate for inclusion in the trial record, "the burden of establishing admissibility, of course, is with the proponent of the evidence." Evans v. Port Auth. of N.Y. & N.J., 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002). The Court is the ultimate decision-maker regarding these two factors. See Aliotta, 315 F.3d at 761. Specifically, it is the burden of "the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's employment," Sea-Land Serv., Inc. v. Lozen Int'l, Inc., 285 F.3d 808, 821 (9th Cir. 2001) (quoting Harris v. Itzhaki, 183 F.3d 1043, 1054 (9th Cir. 1999)), and constitutes an admission. "When a court is evaluating whether such a foundation has been established, '[t]he contents of the statement shall be considered but are not alone sufficient to establish . . . the agency or employment relationship and scope thereof.'" Id. (quoting Fed. R. Evid. 801(d)(2)).

## II. PLAINTIFFS HAVE FAILED TO ESTABLISH AN INDEPENDENT BASIS FOR THE ADMISSION OF THE DESIGNATED TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)

### A. Plaintiffs Have Identified No Basis Upon Which To Avoid Their Burden Of Establishing The Admissibility Of Each Of Their Proposed Designations

In their "notice," Plaintiffs assert that they need not comply with the requirements of RCFC 32(a) in submitting their testimony designations because all of the designated testimony is admissible as an admission of a party opponent, pursuant to FRE 801(d)(2). Plaintiffs relies upon the Court's decision in Globe Savings Bank v. United States, 61 Fed. Cl. 91 (2004), in which the Court held that a party need not show cause for the admission of deposition testimony, pursuant to RCFC 32(a)(2), if the Federal Rules of Evidence, in particular the rule concerning

admissions of a party opponent in FRE 801(d), provide an independent basis for the admission of the deposition testimony. Id. at 95 (2004);[3] see Long Island Savings Bank v. United States, 63 Fed. Cl. 157, 163 (2004). However, consistent with other court decisions, the Court in Globe and Long Island required a showing that the testimony that the plaintiffs sought to designate in each case properly met the requirements of FRE 801(d)(2) as an admission of a party opponent. See Sea-Land, 285 F.3d at 821; Carden v. Westinghouse Elec. Co., 850 F.2d 996, 1002 (8th Cir. 1998); Selby v. Pepsico, Inc., 784 F. Supp. 750, 757 (N.D. Cal. 1991). Plaintiffs have made no attempt to meet these requirements for much of the testimony that the have designated.

Rule 801(d)(2) provides, in pertinent part, as follows:

> Admission by a party-opponent. The statement is offered against a party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, . . .

Fed. R. Evid. 801(d)(2). In Globe and Long Island, the Court conducted an analysis of the testimony designated to ensure that it met the requirements of the rule. Globe, 61 Fed. Cl. at 96-97; Long Island, 63 Fed. Cl. at 164-65. Specifically, the Court required the plaintiffs to establish that: (1) the statements were made by the party, the United States, against whom the statements

---

[3] The factual difference between the instant case and Globe provides a proper basis for limiting the application of the analysis in Globe. The plaintiff in Globe was successful in offering into evidence portions of the deposition testimony of a single individual as the admission of a party opponent. Globe, 61 Fed. Cl. at 95. However, in this case, Plaintiffs seek to admit the deposition and trial testimony of 11 individuals as substantive evidence. Other courts have recognized that deposition testimony conceded to be an admission under FRE 801(d)(2)(D) should not be used in place of the deponent's live trial testimony when the deponent is readily available to testify at trial. Kolb v. County of Suffolk, 109 F.R.D. 125, 127 (E.D.N.Y. 1985). Plaintiffs' wholesale designation of deposition testimony, rather than providing proper trial testimony, amounts to a "trial by deposition," which is disfavored in the Federal courts. Id.

Case 1:03-cv-02626-CFL  Document 14-9  Filed 07/29/2007  Page 13 of 260

were being offered; (2) the subject matter of the testimony designated matched the "subject matter of the employee's job description;" and (3) all of the individuals for whom testimony was designated were employees of the United States Government at the time of their depositions. Id. (citations omitted). Plaintiffs here have failed to provide the Court with the evidence to make similar determinations regarding the extensive deposition testimony that they seek to designate as admissions of a party opponent.

B. Plaintiffs Cannot Introduce Testimony From Individuals Who Were Not Employees Of The Federal Government At The Time Of Their Designated Testimony

Plaintiffs cannot seek to admit the testimony of Michael Lawrence or Robert Morgan pursuant to FRE 801(d)(2). Although both of these individuals had once been employed by the Federal Government, neither were not Federal employees at the time of their depositions or trial testimony. See App. 2, 4, 6. To fall within the parameters of FRE 801(d)(2)(D), the individual making the statements at issue must have been an employee or agent of the party opponent when the statement constituting the alleged admission was made. See, e.g., Young v. James Green Mgt., Inc., 327 F.3d 616, 622-23 (7th Cir. 2003) (statements made by former employees of party, who were not employed by party at time of statement, cannot be party admissions under FRE 801(d)(2)(D)); Shapiro, Lifschitz, & Schram, P.C. v. Hazard, 90 F. Supp. 2d 15, 18 n.3 (D.D.C. 2000) ("affidavit does not qualify under the party admission exception in Fed. R. Evid. 801(d)(2)(D) because O'Riordan is a former employee"); Robertson v. National R.R. Passenger Corp., No. 98-1397, 1999 WL 280407, at *1 (E.D. La. May 3, 1999) ("statement issued by a former employee after the employment ceases, is inadmissible under Rule 801(d)(2)(D)"). Indeed, Plaintiffs here have not attempted to make any showing under RCFC 32(a) that would permit the introduction of this testimony as evidence in this case. See Long Island, 63 Fed. Cl. at

165 (Court analyzed admission of deposition testimony pursuant to RCFC 32(a) because individual was not an employee of the Federal Government at the time of his deposition).

C. Plaintiffs Have Identified No Foundation For Finding That The Remaining Witness Testimony Falls Within FRE 801(d)(2)(D)

With respect to the remaining individuals who were Government employees at the time of their depositions or trial testimony, Plaintiffs have failed to provide the necessary showing that the testimony that they have designated for admission falls within the scope of the responsibility for the employee for the following: Alan Brownstein, Susan Klein, Christopher Kouts, Nancy Slater, and Victor Trebules.[4] With respect to Susan Klein, Plaintiffs only have designated Ms. Klein's testimony that her position was as a "senior policy advisor" to Mr. Lake Barrett, Deputy Director, OCRWM, and that she had held that position since 1997. See Klein Deposition, Apr. 24, 2002, 11:10-12:15. Plaintiffs provide no further testimony regarding the scope of Ms. Klein's responsibilities. Similarly, Plaintiffs have designated two excerpts from two of the three days of deposition testimony from Nancy Slater regarding delivery commitment schedules ("DCSs") under the Standard Contract, but has not designated any testimony regarding Ms. Slater's position or her responsibilities that would allow the Court to determine that Ms. Slater's statements regarding DCSs should be considered to be within the scope of her employment. Similarly, Plaintiffs designated no testimony that would establish Alan Brownstein's responsibility for Annual Capacity Reports, delivery commitment schedules, the Monitored Retrievable Storage facility, or other matters discussed in his designated testimony or the period of his employment with DOE. Without information regarding the subject matter

[4] As explained below, we currently intend to call Mr. Kouts to testify in our case-in-chief. Deposition designations for Mr. Kouts are unnecessary given his expected testimony at trial.

encompassed by these individuals' positions in the Government, the Court is unable properly to determine that the statements which Plaintiffs seek to introduce as substantive evidence are within the scope of the employment of the individuals and, therefore, independently admissible pursuant to FRE 801(d)(2).

Significantly, certain of Plaintiffs' designations for other deponents (Messrs. Barrett, Milner, Pollog, and Zabransky) demonstrate Plaintiffs' understanding of the requirements of FRE 801(d)(2) and their obligation to establish that the individual was employed by the Government and the scope of that employment. For example, Plaintiffs have designated testimony for Messrs. Barrett and Milner that established their employment by DOE in the positions of the Deputy Director and the Chief Operations Officer, respectively, for the Office of Civilian Radioactive Waste Management ("OCRWM"). Barrett Deposition, Apr. 22, 2002, 10:21-11:5; Milner Deposition, May 1, 2002, 11:23-12:8. Although Plaintiffs should have designated additional testimony regarding the scope of employment for these individuals, we do not dispute that they occupied senior positions within OCRWM within DOE. Plaintiffs also have designated testimony regarding the scope of employment for Messrs. Pollog and Zabransky. Pollog Testimony from the trial in Tennessee Valley Authority v. United States, No. 01-249C (Fed. Cl.), Tr. 908:6-909:24; Zabransky Deposition, Aug. 5, 2004, 4110:15-4112:3. While we maintain foundational objections to portions of the testimony designated for all of these individuals, including objections that the testimony is outside their scope of employment, Plaintiffs have at least attempted to provide the scope of employment information required by FRE 801(d)(2). Plaintiffs' failure to attempt to establish that scope of employment for Mr. Brownstein, Ms. Klein, Mr. Kouts, Ms. Slater, and Mr. Trebules leaves the Court with no basis upon which to determine whether the designations may be properly admitted pursuant to FRE

801(d)(2). As a result, Plaintiffs' designations for these five witnesses (in addition to the two individuals identified above – Messrs. Lawrence, and Morgan – who were not Federal employees at the time of their designated testimony) should not be admitted. See Long Island, 63 Fed. Cl. at 165; Globe, 61 Fed. Cl. at 97.

## III. PLAINTIFFS HAVE NOT MADE THE PROPER SHOWING AS TO WHY DESIGNATED TESTIMONY SHOULD BE ALLOWED TO BURDEN THE RECORD

### A. Plaintiffs Have Failed To Establish Good Cause For Using Deposition Designations *In Lieu* Of Live Testimony At Trial

Plaintiffs have sought the admission of the testimony of 13 individuals from 43 of deposition or trial, consisting of 546 additional transcript pages for the Court to consider. Plaintiffs have made no effort to show that any of the witnesses whose deposition testimony they have designated are unavailable to testify at trial. Moreover, the testimony is irrelevant, incomplete, and replete with objections, all of which need to be ruled upon before the Court considers its substance.[5] Because Plaintiffs have failed to meet their burden to show why this testimony should be admitted, the Court should exclude it from the record.

[5] At trial in Northern States, plaintiff's counsel further reduced the number of designations upon which Northern States intended to rely to those from Messrs. Barrett and Brownstein and Ms. Slater-Thompson. Rather than have the Court rule upon the objections to the testimony and consider the Government's counter-designations, the parties agreed with the Court that the parties would cite to those designations or counter-designations necessary to the parties' case in post-trial briefing and the Court will consider any objections to those designations or counter-designations during closing arguments to be held after the post-trial briefing is complete. With this procedure, the parties should prevent a large amount of unnecessary testimony from burdening the record. Similarly, in Pacific Gas & Electric Co. v. United States, the Court limited its consideration of designated testimony to that upon which the parties relied in post-trial briefing and struck the remaining testimony that the parties designated from the record. Pacific Gas & Electric Co. v. United States, 73 Fed. Cl. 333, 442-3 (2006).

Pursuant to paragraph 15(b) of Appendix A of the Court's rules, Plaintiffs must show "good cause" for using designated deposition and trial testimony, "other than as provided by [FRE] 801(d)." See RCFC, App. A, ¶ 15(b) ("Any party intending to present substantive evidence by way of deposition testimony . . . *shall show cause* why the deposition testimony should be admitted") (emphasis added)); see also Angelo v. Armstrong World Industrial, 11 F.3d 957, 963 (10th Cir. 1993) (proponent of using deposition testimony at trial bears the burden of proving that it is admissible in lieu of live testimony under Rule 32 of the Federal Rules of Civil Procedure). Although paragraph 15(b) of Appendix A itself does not expressly require that a party "show cause" in a written motion regarding the admission of FRE 801(d) evidence, it is clear that this Court has a preference for live testimony and that, even though FRE 801(d) evidence may be presented at trial and supported orally, the party seeking to introduce duplicative, cumulative, and unnecessary evidence must properly support that request.

In their "notice" of the designations, Plaintiffs asserts only that their designations are proper because they will "streamline the parties' trial preparation and reduce trial time and cost." Plaintiff's Notice, at 2 (May 18, 2007). However, this reason does not amount to sufficient "cause" to permit Plaintiffs' to justify the designation of a substantial amount of testimony that ultimately seeks an "end run" around the Court's order regarding the length of trial. The Court's existing scheduling order specifically states that trial in this matter will consume a little over two weeks, commencing on June 4, 2007 and continuing until June 20, 2007. Scheduling Order, issued Feb. 27, 2007, at 2. Although Plaintiffs claim in their notice that they seek to "reduce" their trial time by avoiding calling live witnesses, they are actually attempting to supplement their designated trial time. Indeed, because this case involves claims relating to three separate parties, Boston Edison, Entergy, and the United States, the Court already has instructed the

Case 1:03-cv-02626-ECF Document 141 Filed 05/29/2007 Page 18 of 215

parties that there will be strict time limits imposed upon each party in presenting its case. Further, particularly to the extent that the Government will have to address some of the out-of-context designated statements in these deposition designations with live witnesses, Plaintiffs' use of designations prejudices the Government by increasing the amount of live testimony that the Government will have to present. To eliminate the burden to the record of unnecessary designations, we request that Plaintiffs be required to read the designations upon which they intend to rely into the record and that the time required for this effort be counted against the trial time available to Plaintiffs. The Government's reading of counter-designations in response to these designations will be counted against the time allowed the Government in the presentation of its case.

Significantly, Plaintiffs have designated testimony of three individuals – Messrs. Kouts, Morgan, and Zabransky – whom the Government may call in its case-in-chief. If one or more of these individuals testify, as expected, Plaintiffs will have burdened the record with additional testimony that could have been elicited during cross-examination. See Renda Marine, Inc. v. United States, 66 Fed. Cl. 639, 645 (2005) (citing United States v. Int'l Bus. Machs. Corp., 90 F.R.D. 377, 382 (S.D.N.Y. 1981)) (disregarding designated deposition testimony of witnesses who testified at trial); Sacramento Municipal Utility Dist. v. United States, No. 98-488C, order, at 2 (Fed. Cl. March 16, 2005) (unpublished) (denying motion to designate prior testimony of witnesses who were to testify at trial). While we believe that Plaintiffs should not be allowed to designate testimony from witnesses who will testify at trial, to the extent that the Court allows it,

we ask that Plaintiffs be barred from cross-examining these witnesses upon the topics that are the subject of Plaintiffs' designations.[6]

B. When There Has Been No Showing Of Unavailability, There Is A Strong Preference For Live Testimony

Plaintiffs proffer no evidence, and makes no suggestion, that the witnesses whose deposition and trial testimony that they have designated have been or are unavailable to testify at the trial in this case. The Government is prepared to assist in making all former and current Government witnesses who appear upon Plaintiffs' proposed designation list available for trial, but, to date, we have received no inquiries from counsel for Plaintiffs regarding the availability of these individuals for trial. Even deposition testimony conceded to be an admission under FRE 801(d)(2)(D) should not be used in place of the deponent's live trial testimony when the deponent is readily available to testify at trial. Kolb, 109 F.R.D. at 127. Plaintiffs should be required to present their case through live testimony at trial and should not be permitted to avoid this obligation by forcing the Court and the Government to read and analyze hundreds of pages of proposed testimony in addition to the evidence that Plaintiffs presents at trial.

Plaintiffs failure to make a showing of unavailability flies in the face of established precedent. The preference for live testimony, when available, has been well-established by the courts:

[6] Because of Plaintiffs' designations, this Court must review voluminous snippets of substantive testimony, replete with objections, as well as counter-designations, themselves replete with objections, and rule upon all objections, in order to admit the testimony into evidence. RCFC 32(d)(3)(A) ("Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if present at that time"). By submitting volumes of deposition testimony, Plaintiffs not only attempt to supplement their trial time, but also will significantly increase the Government's out-of-trial work.

> In both civil and criminal cases, our common law heritage has always favored the presentation of live testimony over the presentation of hearsay testimony by the out-of-court-declarant. See McCormick Evidence 2d § 244. The jury's observation of the demeanor of the witness and the effectiveness of cross-examination in the discovery of the truth are the traditional reasons for the preference even though the out-of-court statement had been given under oath.

United States v. Mathis, 559 F.2d 294, 299 (5th Cir. 1977); see Young & Assoc. Public Relations, L.L.C. v. Delta Air Lines, Inc., 216 F.R.D. 521, 522 (D. Utah 2003) ("[t]he deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand") (quoting from Judge Learned Hand in Napier v. Bossard, 102 F.2d 467, 469 (2d Cir. 1939)); Banks v. Yokemick, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001) ("The general rule is that testimony at all trials must be live . . . [D]eposition testimony is only a substitute, not to be resorted to if the witness can appear in person"). Live testimony is necessary to provide this Court with an opportunity to evaluate the witnesses' demeanor during the discussion of events in which the witnesses were involved. Clearly, the reading of a deposition transcript does not serve as an adequate alternative to evaluation of the witness' testimony in person. See American Steel Works v. Hurley Construction Co., 46 F.R.D. 465, 470 (D. Minn. 1969) ("[t]he taking of a deposition is not equivalent to having 'live' testimony"); see also Grimna v. Makousky, 76 F.3d 151, 153 (7th Cir. 1966) ("strong preference of Anglo-American courts for live testimony"); Kolb, 109 F.R.D. at 127 ("when depositions are submitted in place of live testimony, the trial judge is denied the opportunity to question the witness . . . [c]learly, testimony by deposition is less desirable than oral testimony and should be used as a substitute only under very limited circumstances."). The preference for live testimony is recognized in Rule 32 itself, which provides that the Court may allow deposition testimony to be introduced

unless it finds "it is not in the interests of justice, *with due regard to the importance of presenting the testimony of witnesses orally in open court* . . ." RCFC 32(a)(3)(E)(ii) (emphasis added).

The inquiry on the admissibility of deposition and trial transcripts under RCFC 32(a)(2) is further informed by this "long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person." 8A C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 2142, at 158 (2d ed. 1994) (discussing FRCP 32); see Fed. R. Evid. 804(b)(1), Advisory Committee Notes (1972) ("testimony given on the stand in person is preferred over hearsay," such as a witness' former testimony, and "tradition, founded in experience, uniformly favors the production of the witness if he is available" because the "opportunity to observe demeanor is what in a large measure confers depth and meaning upon oath and cross-examination"). Plaintiffs' introduction into evidence of deposition and trial testimony designations deprives the Court of the opportunity to see witnesses respond to questions, explain their testimony, as well as respond to any questions asked by the Court. Because this Court possesses national jurisdiction and can summon witnesses to testify form throughout the United States when necessary (RCFC 63), this Court should adhere to the strong preference for live testimony and reject Plaintiffs' attempt to eliminate the need to present such testimony to the Court.

Finally, even if the Court in Globe is correct that deposition testimony satisfying the requirements of FRE 801(d)(2) is admissible even if the witness is available to testify, this Court retains the discretion to preclude wholesale introduction of the massive amounts of deposition testimony that Plaintiffs proposes to introduce, which threaten to transform this case into a

document review case without testimony. See RCFC 1. A party's right to present its case in the manner that it desires "must be balanced against a court's leave to set reasonable limits on the admission of evidence." United States v. Blum, 62 F.3d 63, 67 (2d Cir. 1995) (citing Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). "[J]udges are accorded 'wide latitude' in excluding evidence that poses an undue risk of 'harassment, prejudice [or] confusion of the issues' or evidence that is 'repetitive or only marginally relevant.'" Blum, 62 F.3d at 67 (quoting Van Arsdall, 475 U.S. at 679); see United States v. Holmes, 44 F.3d 1150, 1157 (2d Cir. 1995) ("[a]bsent a clear abuse of discretion, a trial judge retains a wide latitude to exclude irrelevant, repetitive, or cumulative evidence"). Under the Rules, this Court possesses the clear authority to exclude the wholesale introduction of designated testimony, in place of live testimony.

## IV. TO THE EXTENT THAT WITNESSES DISCUSS EXHIBITS IN THEIR DESIGNATED TESTIMONY, PLAINTIFFS' DESIGNATIONS CONFLICT WITH PLAINTIFFS' OBLIGATION TO ESTABLISH PROPER FOUNDATION FOR THE ADMISSION OF EXHIBITS

Plaintiffs' designations are replete with testimony concerning documents that were identified as exhibits during the deposition or at trial. These designations are problematic because it is not clear from the designations what document is being discussed or whether a proper foundation has been laid for the witness to testify about that specific document. For example, Plaintiffs have designated Mr. Barrett's testimony about the statements contained in a document generated by a group within OCRWM that did not include Mr. Barrett about studies that were undertaken by OCRWM:

> Q: Do you know what the, or are you familiar with the system study that is being referred to in this entry?
>
> A: Not this specific one.

Q: Do you have a general understanding of the system study being referred to here?

[Objection]

A: There were various studies done in the eighties and also in the very early nineties on system performance rate, you know, what the costs were, schedules were, plausibility of them.

Q: And these system studies looked at system issues, correct?

A: Yes.

Q: And am I correct that each one of these studies to which you've just referred confirmed an acceptance rate, an aggregate acceptance rate of 3,000 MTU per year?

[Objection]

A: I think its overstated to say it confirmed it. It showed that, you know, at 2,000 it does this, at 3,000 it does that, 4,000 it does something different. I don't know if they actually reached an absolute confirmation that 3,000 was the exact number, but generally they supported the system rate of 3,000 was a reasonable number.

Barrett Deposition, April 22, 2002, 197:4-197:22. It is unclear whether the document about which Mr. Barrett was being asked or the "various system studies" to which Mr. Barrett referred will be made part of the trial record. By including these designations, Plaintiffs are apparently trying to provide the Court with testimony about documents that the Court will not have the ability to review or evaluate. These designations do not provide the Court with the benefit of an explanation as to why the documents are important or, conversely, why the documents should be

disregarded.[7] For these reasons, the designations that concern documents should not be admitted by the Court.

V. NOTWITHSTANDING PLAINTIFFS' FAILURE TO DEMONSTRATE THE ADMISSIBILITY OF DEPOSITION TESTIMONY IN THIS CASE, THE GOVERNMENT REQUESTS THAT IT BE ALLOWED TO SUBMIT ITS LIST OF OBJECTIONS AND COUNTER-DESIGNATIONS

If the Court allows the testimony that Plaintiffs have designated to become part of the record in this case, the Government respectfully requests that the Court grant us the opportunity to file objections and counter-designations and that the Court first rule upon the objections to that testimony indicated in the portions of the testimony designated. RCFC 32(b). To the extent that the Court admits any designated testimony, the Government requests that the Court consider the Government's counter-designations from these same depositions. FRE 106; RCFC 32(a)(4). Further, to the extent that the Court allows Plaintiffs to designate testimony for Messrs. Kouts, Morgan, and Zabransky, who are currently expected to testify at trial, the Government requests that the Court preclude any cross-examination by Plaintiffs on the matters covered by those designations. The Government's objections and counter-designations are identified in Attachment A to this motion.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny the admission of the deposition and trial testimony that Plaintiffs have designated. To the extent that the Court allows Plaintiffs' designations to become part of the record, in whole or in part, we request that

[7] To the extent that we have been able to discern that the designated testimony concerns a document that may or may not be identified in the testimony excerpted, we intend to lodge a "best evidence" objection among the specific list of objections that we plan to file soon with the Court.

the Court grant us the opportunity to file specific objections that are contained in the testimony that Plaintiffs have designated, pursuant to RCFC 32(b), and we respectfully request that the Court consider and rule upon such objections. Likewise, we request that the Court grant us the opportunity to file a listing of deposition and trial testimony that we intend to counter-designate, and we respectfully request that the Court consider such counter-designations pursuant to FRE 106 and RCFC 32(a)(4) . We further request that the Court require the parties to read the designated testimony into the trial record and that the time devoted to that effort be included in the parties' respective trial time.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Dept. of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

PATRICK B. BRYAN
SCOTT R. DAMELIN
STEPHEN P. FINN
JOSHUA E. GARDNER
SONIA M. ORFIELD
Trial Attorneys
U.S. Department of Justice

May 25, 2007

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Alan J. Lo Re
ALAN J. LO RE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0226
Fax: (202) 307-2503

Attorneys for Defendant

No. 04-37C
(Judge Wheeler)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

CAROLINA POWER AND LIGHT COMPANY,
FLORIDA POWER CORPORATION
Plaintiffs,

v.

THE UNITED STATES,
Defendant.

---

DEFENDANT'S MOTION TO STRIKE "PLAINTIFF'S NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS OR, ALTERNATIVELY, MOTION FOR LEAVE TO ADMIT PRIOR TESTIMONY INTO EVIDENCE" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)

---

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
Senior Trial Counsel

CHRISTOPHER J. CARNEY
LISA L. DONAHUE
STEPHEN FINN
Trial Attorneys
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

ANDREW P. AVERBACH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-0527
Fax: (202) 307-2503

November 2, 2007

Attorneys for Defendant

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . iii

DEFENDANT'S MOTION TO STRIKE "PLAINTIFF'S NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS OR, ALTERNATIVELY, MOTION FOR LEAVE TO ADMIT PRIOR TESTIMONY INTO EVIDENCE" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2) . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . 2

DISCUSSION . . . . . . . . . . 3

I. PLAINTIFFS' "NOTICE" SHOULD BE STRICKEN BECAUSE THE DESIGNATED TESTIMONY SHOULD NOT BE ADMITTED INTO THE RECORD OF THIS CASE PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)(D) WITHOUT THIS COURT'S DETERMINATION THAT THEY, IN FACT, CONSTITUTE ADMISSIONS . . . . . . . . . . 3

II. PLAINTIFFS HAVE FAILED TO ESTABLISH AN INDEPENDENT BASIS FOR THE ADMISSION OF THE DESIGNATED TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2) . . . . . . . . . . 5

A. Plaintiffs Have Identified No Basis Upon Which To Avoid Its Burden Of Establishing The Admissibility Of Each Of Its Proposed Designations . . . . . . . . . . 5

B. Plaintiffs Cannot Introduce Testimony From Individuals Who Were Not Employees Of The Federal Government At The Time Of Their Designated Testimony . . . . . . . . . . 7

III. PLAINTIFFS HAVE NOT MADE THE PROPER SHOWING AS TO WHY DESIGNATED TESTIMONY SHOULD BE ALLOWED TO BURDEN THE RECORD . . . . . . . . . . 9

A. Plaintiffs Have Failed To Establish Good Cause For Using Deposition Designations *In Lieu* Of Live Testimony At Trial . . . . . . . . . . 9

TABLE OF CONTENTS (cont'd)

B. When There Has Been No Showing Of Unavailability, There Is A Strong Preference For Live Testimony . . . . . . . . . . . . . . . . . . . . . . 10

IV. PLAINTIFFS HAVE FAILED TO ESTABLISH A PROPER FOUNDATION FOR MUCH OF THE DESIGNATED TESTIMONY . . . . . . . . . . . . . . . . . . . . 14

V. NOTWITHSTANDING PLAINTIFFS' FAILURE TO DEMONSTRATE THE ADMISSIBILITY OF DEPOSITION TESTIMONY IN THIS CASE, THE GOVERNMENT SUBMITS ITS OBJECTIONS AND COUNTER-DESIGNATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TABLE OF AUTHORITIES

CASES PAGE(S)

Aliotta v. National R.R. Passenger Corp.,
315 F.3d 756 (3d Cir. 2003) . . . . . . . . . . 4

American Steel Works v. Hurley Construction Co.,
46 F.R.D. 465 (D. Minn. 1969) . . . . . . . . . . 12

Angelo v. Armstrong World Industrial,
11 F.3d 957 (10th Cir. 1993) . . . . . . . . . . 9

Banks v. Yokemick,
144 F. Supp. 2d 272 (S.D.N.Y. 2001) . . . . . . . . . . 11

Carden v. Westinghouse Electric Co.,
850 F.2d 996 (8th Cir. 1998) . . . . . . . . . . 6

Delaware v. Van Arsdall,
475 U.S. 673 (1986) . . . . . . . . . . 13

Evans v. Port Authority of New York & New Jersey,
192 F. Supp. 2d 247 (S.D.N.Y. 2002) . . . . . . . . . . 4

Globe Savings Bank v. United States,
61 Fed. Cl. 91 (2004) . . . . . . . . . . 4, 5, 6, 13

Grimna v. Makousky,
76 F.3d 151 (7th Cir. 1966) . . . . . . . . . . 12

Harris v. Itzhaki,
183 F.3d 1043 (9th Cir. 1999) . . . . . . . . . . 4

Kinser v. Gehl Co.,
184 F.3d 1259 (10th Cir. 1999) . . . . . . . . . . 8

Kolb v. County of Suffolk,
109 F.R.D. 125 (E.D.N.Y. 1985) . . . . . . . . . . 5, 11, 12

Long Island Savings Bank v. United States,
63 Fed. Cl. 157 (2004) . . . . . . . . . . 4, 5, 6

TABLE OF AUTHORITIES (cont'd)


Pacific Gas & Electric Co. v. United States,
73 U.S. 333 (2006) . . . . . . . . . . 14

Robertson v. National R.R. Passenger Corp.,
No. 98-1397, 1999 WL 280407 (E.D. La. May 3, 1999) . . . . . . . . . . 7

Sea-Land Serv., Inc. v. Lozen Int'l, Inc.,
285 F.3d 808 (9th Cir. 2001) . . . . . . . . . . 4, 5

Selby v. Pepsico, Inc.,
784 F. Supp. 750 (N.D. Cal. 1991) . . . . . . . . . . 6

Shapiro, Lifschitz, & Schram, P.C. v. Hazard,
90 F. Supp. 2d 15 (D.D.C. 2000) . . . . . . . . . . 7

United States v. Blum,
62 F.3d 63 (2d Cir. 1995) . . . . . . . . . . 13, 14

United States v. Holmes,
44 F.3d 1150 (2d Cir. 1995) . . . . . . . . . . 14

United States v. Mathis,
559 F.2d 294 (5th Cir. 1977) . . . . . . . . . . 11

Young & Assoc. Public Relations, L.L.C. v. Delta Air Lines, Inc.,
216 F.R.D. 521 (D. Utah 2003) . . . . . . . . . . 11

Young v. James Green Management, Inc.,
327 F.3d 616 (7th Cir. 2003) . . . . . . . . . . 7

MISCELLANEOUS PAGE(S)

Fed. R. Evid. 801(d) . . . . . . . . . . passim

Fed. R. Evid. 804(b)(1), Advisory Committee Notes . . . . . . . . . . 12

8A C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 2142 (2d ed. 1994) . 12

INDEX TO APPENDIX AND ATTACHMENT

APPENDIX:

Letter from Brad Fagg, Morgan Lewis & Bockius, LLP, to Andrew Averbach, U.S. Department of Justice, dated October 31, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ATTACHMENT A:

Defendant's Objections To Plaintiffs' Designations And Defendant's Counter-Designations

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CAROLINA POWER & LIGHT COMPANY and FLORIDA POWER CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | ) | No. 04-37C<br>(Judge Wheeler) |

DEFENDANT'S MOTION TO STRIKE "PLAINTIFF'S NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS OR, ALTERNATIVELY, MOTION FOR LEAVE TO ADMIT PRIOR TESTIMONY INTO EVIDENCE" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)

Defendant, the United States, respectfully requests that the Court strike "Plaintiff's Notice of Deposition And Trial Testimony Designations Or, Alternatively, Motion For Leave To Admit Prior Testimony Into Evidence," which plaintiffs, Carolina Power and Light Company and Florida Power Corporation, filed on October 22, 2007. Plaintiffs have failed to establish any foundation for the designated testimony or to establish that the designated testimony constitutes "admissions" of the United States, pursuant to Federal Rules of Evidence ("FRE") 801(d)(2)(D). To the extent that the Court deems any of the designated testimony to constitute "admissions" or be admissible pursuant to some other rule, the Government requests that the Court rule upon the Government's objections to the designated testimony prior to its admission into evidence and that the Government be allowed to counter-designate any testimony that it believes is necessary to complete the record, pursuant to FRE 106 and Rule 32 of the Rules of the Court of Federal Claims ("RCFC"). The list of the Government's objections and text of the counter-designations is Attachment A to this motion.

SUMMARY OF ARGUMENT

Plaintiffs state, in their notice, that they "may [seek] to introduce" the deposition and previous trial testimony of eight past and present Government employees, consisting of an 207 transcript pages, for the Court to consider as substantive evidence. Plaintiffs also move "in the alternative" for leave to introduce the prior testimony as substantive evidence. Nowhere in their "notice" do plaintiffs ask the Court to conduct a review of the designated testimony to determine whether the entirety of the testimony, as plaintiffs claim, properly constitutes "admissions" by the United States pursuant to FRE 801(d)(2).

Contrary to plaintiffs' apparent belief, it is the Court, not plaintiffs, that must determine whether the proposed designations properly constitute "admissions" of the United States. Because plaintiffs did not file a motion seeking the Court's review of these designations, but, instead, merely included them in the record of this case as pre-determined "admissions," we respectfully request that the Court strike plaintiffs' "notice" from the case. Even if the Court considered plaintiffs' "notice" to constitute a motion to deem the designated testimony as admissions of the Government, plaintiffs have failed to make the required showing under FRE 801(d)(2) that the testimony which they have designated may properly be considered to be the admission of a party opponent, and they have ignored or failed to identify numerous objections to the testimony upon which the Court must rule before the testimony could be admitted into the record of this case. Plaintiffs also have not overcome the preference for live testimony and met their burden to show cause as to why these designations should be allowed. Because the designated testimony is irrelevant, incomplete, or subject to extensive objections, plaintiffs should not be allowed to burden the record with its admission.

To the extent that the Court allows plaintiffs' designations to become part of the record, in whole or in part, we respectfully request that the Court rule upon the Government's objections to the testimony that plaintiffs have has designated, pursuant to RCFC 32(b), prior to the admission of any testimony and consider the testimony that the Government has counter-designated, pursuant to FRE 106 and RCFC 32(a)(4).

## DISCUSSION

### I. PLAINTIFFS' "NOTICE" SHOULD BE STRICKEN BECAUSE THE DESIGNATED TESTIMONY SHOULD NOT BE ADMITTED INTO THE RECORD OF THIS CASE PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)(D) WITHOUT THIS COURT'S DETERMINATION THAT THEY, IN FACT, CONSTITUTE ADMISSIONS

In the "notice" of deposition and trial testimony designations that they filed on November 22, 2007, plaintiffs state that RCFC Appendix A, Rule ¶ 15(b) "provides that '[a]ny party intending to present substantive evidence by way of deposition testimony, other than as provided by Fed. R. Evid. 801(d), shall serve and file a separate motion for leave to file the transcript of such testimony.'" Notice, at 1 (Oct. 22, 2007) (emphasis in original) (quoting RCFC App. A ¶ 15(b)). Claiming that all of their proposed designations constitute "admissions" by the United States pursuant to FRE 801(d)(2), plaintiffs have merely filed a "notice" of their designations, without any motion requesting that the Court determine whether the proposed designations actually constitute "admissions" under the identified Federal Rule of Evidence. The lack of a motion seeking the Court's review and admission of these proposed designations, as opposed to plaintiffs' attempt to seek admission of the designations into the record of this case without any Court review and approval, is inappropriate.

To be admissible pursuant to Rule 801(d)(2)(D), a party must establish that the testimony meets three requirements: (1) that the statement is made by the party that offered it; (2) that the

statement concerns matters within the scope of the "agency or employment;" and (3) that the statement was made during the existence of the relationship. Long Island Savings Bank v. United States, 63 Fed. Cl. 157, 164-65 (2004); Globe Savings Bank v. United States, 61 Fed. Cl. 91, 97 (2004); Aliotta v. National R.R. Passenger Corp., 315 F.3d 756, 761 (3d Cir. 2003). Although a party certainly must identify the specific testimony that it wants to designate for inclusion in the trial record, "the burden of establishing admissibility, of course, is with the proponent of the evidence." Evans v. Port Auth. of N.Y. & N.J., 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002). The Court is the ultimate decision-maker regarding these two factors. See Long Island, 63 Fed. Cl. at 164; Globe, 61 Fed. Cl. at 97; Aliotta, 315 F.3d at 761. Specifically, it is the burden of "the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's employment," Sea-Land Serv., Inc. v. Lozen Int'l, Inc., 285 F.3d 808, 821 (9th Cir. 2001) (quoting Harris v. Itzhaki, 183 F.3d 1043, 1054 (9th Cir. 1999)), and constitutes an admission. "When a court is evaluating whether such a foundation has been established, '[t]he contents of the statement shall be considered but are not alone sufficient to establish . . . the agency or employment relationship and scope thereof.'" Id. (quoting Fed. R. Evid. 801(d)(2)).

Because plaintiffs appear to attempt to remove from the Court's purview any review of their proposed admissions, the Court should strike plaintiffs' "notice" of designations. Below, we further discuss specific objections to the proposed designations, to the extent that the Court considers plaintiffs' "notice" as a motion to deem testimony as admissions.

II. PLAINTIFFS HAVE FAILED TO ESTABLISH AN INDEPENDENT BASIS FOR THE ADMISSION OF THE DESIGNATED TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)

A. Plaintiffs Have Identified No Basis Upon Which To Avoid Their Burden Of Establishing The Admissibility Of Each Of Their Proposed Designations

In their "notice," plaintiffs assert that they need not comply with the requirements of RCFC 32(a) in submitting its testimony designations because all of the designated testimony is admissible as an admission of a party opponent, pursuant to FRE 801(d)(2). Plaintiffs rely upon the Court's decision in Globe Savings Bank v. United States, 61 Fed. Cl. 91 (2004), in which the Court held that a party need not show cause for the admission of deposition testimony, pursuant to RCFC 32(a), if the Federal Rules of Evidence, in particular the rule concerning admissions of a party opponent in FRE 801(d), provide an independent basis for the admission of the deposition testimony. Id. at 95 (2004);[1] see Long Island Savings Bank v. United States, 63 Fed. Cl. 157, 163 (2004). However, consistent with other court decisions, the Court in Globe and Long Island required a showing that the testimony that the plaintiffs sought to designate in each case properly met the requirements of FRE 801(d)(2) as an admission of a party opponent. See

[1] The factual difference between the instant case and Globe provides a proper basis for limiting the application of the analysis in Globe. The plaintiff in Globe was successful in offering into evidence portions of the deposition testimony of a single individual as the admission of a party opponent. Globe, 61 Fed. Cl. at 95. However, in this case, plaintiffs seek to admit the deposition and trial testimony of eight individuals as substantive evidence. Other courts have recognized that deposition testimony conceded to be an admission under FRE 801(d)(2)(D) should not be used in place of the deponent's live trial testimony when the deponent is readily available to testify at trial. Kolb v. County of Suffolk, 109 F.R.D. 125, 127 (E.D.N.Y. 1985). Plaintiffs' wholesale designation of deposition testimony, rather than providing proper trial testimony, amounts to a "trial by deposition," which is disfavored in the Federal courts. Id.

Sea-Land, 285 F.3d at 821; Carden v. Westinghouse Elec. Co., 850 F.2d 996, 1002 (8th Cir. 1998); Selby v. Pepsico, Inc., 784 F. Supp. 750, 757 (N.D. Cal. 1991). Plaintiffs have made no attempt to meet these requirements for any of the testimony that they have designated.

Rule 801(d)(2) provides, in pertinent part, as follows:

> Admission by a party-opponent. The statement is offered against a party and is . . .(D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, . . .

Fed. R. Evid. 801(d)(2). In Globe and Long Island, the Court conducted an analysis of the testimony designated to ensure that it met the requirements of the rule. Globe, 61 Fed. Cl. at 96-97; Long Island, 63 Fed. Cl. at 164-65. Specifically, the Court required the plaintiffs to establish that (1) the statements were made by the party, the United States, against whom the statements were being offered; (2) the subject matter of the testimony designated matched the "subject matter of the employee's job description;" and (3) all of the individuals for whom testimony was designated were employees of the United States Government at the time of their depositions. Id. (citations omitted).

Plaintiffs have wholly failed to provide the Court with the evidence necessary to make determinations regarding the extensive deposition testimony that they seek to designate as admissions of a party opponent. Plaintiffs have designated no testimony to establish the employee's job descriptions, when the individual was employed by the Department of Energy, or even that the individual was employed by the Department of Energy at the time of the testimony. Without this information, the Court is unable to make a proper determination as to whether the testimony is properly admissible. Instead, plaintiffs only offer a very short written description of some of the titles that the individuals may have held and a generalized description of the

testimony they have designated. Plaintiffs have not provided support for these descriptions in the accompanying designations or by any other evidence. Because plaintiffs have not undertaken the effort necessary to meet the requirements of FRE 801(d)(2)(D) and establish that the testimony designated truly constitute "admissions" against the Government, the Court should not admit the designated testimony as substantive evidence.

B. Plaintiffs Cannot Introduce Testimony From Individuals Who Were Not Employees Of The Federal Government At The Time Of Their Designated Testimony

Plaintiffs cannot seek to admit the testimony of Michael Lawrence or Benard Rusche pursuant to FRE 801(d)(2). Although these individuals had once been employed by the Federal Government, neither were Federal employees at the time of their depositions or trial testimony. Attachment A, Lawrence Dep., May 20, 2002, 13:11-25:25, Rusche Dep., May 16, 2002, 13:3-14, 39:19- 40:15. To fall within the parameters of FRE 801(d)(2)(D), the individual making the statements at issue must have been an employee or agent of the party opponent when the statement constituting the alleged admission was made. See, e.g., Young v. James Green Mgt., Inc., 327 F.3d 616, 622-23 (7th Cir. 2003) (statements made by former employees of party, who were not employed by party at time of statement, cannot be party admissions under FRE 801(d)(2)(D)); Shapiro, Lifschitz, & Schram, P.C. v. Hazard, 90 F. Supp. 2d 15, 18 n.3 (D.D.C. 2000) ("affidavit does not qualify under the party admission exception in Fed. R. Evid. 801(d)(2)(D) because O'Riordan is a former employee"); Robertson v. National R.R. Passenger Corp., No. 98-1397, 1999 WL 280407, at *1 (E.D. La. May 3, 1999) ("statement issued by a former employee after the employment ceases, is inadmissible under Rule 801(d)(2)(D)").

Plaintiffs, in their notice, recognize that neither Messrs. Lawrence or Rusche were employed by the Government at the time of their testimony, but argue that the testimony of these individuals still should be admitted because they once occupied senior positions within DOE, were represented by Government counsel at the time of their depositions and there is “no suggestion of an adverse position or bias toward the Government.” Pl. Notice at 7. None of these facts establish, however, that Messrs. Lawrence or Rusche were employed by the United States at the time of their deposition, a requirement for the testimony to be admitted pursuant to FRE 801(d)(2)(D).

Plaintiffs also rely upon Kinser v. Gehl Co., 184 F.3d 1259, 1275 (10th Cir. 1999), as support for the proposition that the testimony of “former employees” can be properly admitted pursuant to FRE 801(d)(2)(D). However, it appears that the individuals’ statements in that case were admitted pursuant to FRE 801(d)(2)(C), based upon a finding of “agency.” Id. Plaintiffs have not and cannot make a similar showing of “agency” for the testimony of Messrs. Lawrence and Rusche. The fact that Government had identified them as individuals knowledgeable about relevant matters in the litigation and represented them during their depositions, based upon their positions as former Government employees, do not provide the necessary indicia. Therefore, plaintiffs have established no basis for the admission of the testimony of Messrs. Lawrence and Rusche as substantive evidence pursuant to FRE 801(d)(2)(D).

## III. PLAINTIFFS HAVE NOT MADE THE PROPER SHOWING AS TO WHY DESIGNATED TESTIMONY SHOULD BE ALLOWED TO BURDEN THE RECORD

### A. Plaintiffs Have Failed To Establish Good Cause For Using Deposition Designations *In Lieu* Of Live Testimony At Trial

Plaintiffs seek the admission of the testimony of eight individuals from 23 days of deposition or trial, consisting of 207 additional transcript pages for the Court to consider. Plaintiffs have made no effort to show that any of the witnesses whose deposition testimony they have designated are unavailable to testify at trial. Moreover, the testimony is irrelevant, incomplete, and replete with objections, all of which need to be ruled upon before the Court considers its substance. Because plaintiffs have failed to meet their burden to show why this testimony should be admitted, the Court should exclude it from the record.

Pursuant to paragraph 15(b) of Appendix A of the Court's rules, plaintiffs must show "good cause" for using designated deposition and trial testimony, "other than as provided by [FRE] 801(d)." See RCFC, App. A, ¶ 15(b) ("Any party intending to present substantive evidence by way of deposition testimony . . . *shall show cause* why the deposition testimony should be admitted") (emphasis added)); see also Angelo v. Armstrong World Industrial, 11 F.3d 957, 963 (10th Cir. 1993) (proponent of using deposition testimony at trial bears the burden of proving that it is admissible in lieu of live testimony under Rule 32 of the Federal Rules of Civil Procedure). Although paragraph 15(b) of Appendix A itself does not expressly require that a party "show cause" in a written motion regarding the admission of FRE 801(d) evidence, it is clear that this Court has a preference for live testimony and that, even though FRE 801(d) evidence may be presented at trial and supported orally, the party seeking to introduce duplicative, cumulative, and unnecessary evidence must properly support that request.

In their "notice," plaintiffs assert that their designations are proper because this case is one of 60 cases still pending before the Court, these witnesses have testified on multiple occasions, and their testimony has been admitted previously as substantive evidence. Pl. Notice at 2. While we appreciate plaintiffs' stated concern for the burden that testifying in multiple trials presents, plaintiffs' statement with regard to these eight witnesses is not accurate. With the exception of Messrs. Brownstein, Milner, and Rusche, none of these individuals have been asked to testify at trial in one of the spent nuclear fuel cases. Messrs. Brownstein, Milner, and Rusche have each only testified at trial once. Moreover, while the testimony of these individuals has been admitted previously, the Court has admitted that testimony over the Government's objection, founded on many of the same grounds raised in this motion. Plaintiffs have failed to show good cause as to why the testimony of these individuals should be admitted.

B. <u>When There Has Been No Showing Of Unavailability, There Is A Strong Preference For Live Testimony</u>

Plaintiffs proffer no evidence, and make no suggestion, that any of the eight witnesses whose deposition and trial testimony that they have designated have been or are unavailable to testify at the trial in this case. Counsel for plaintiffs served on October 31, 2007 subpoenas to appear at trial for seven of the eight individuals for whom plaintiffs have designated testimony, after learning of the basis for the Government's motion to strike earlier that day. The Government has undertaken the task of attempting to determine the availability for trial of these individuals. However, as stated in counsel's accompanying cover letter, these subpoenas were

Case 1:04-cv-00103-ECW Document 115-2 Filed 01/09/2008 Page 14 of 420

only served "in an abundance of caution" should the Court grant the Government's motion to strike. A. 1.[2]

Even deposition testimony conceded to be an admission under FRE 801(d)(2)(D) should not be used in place of the deponent's live trial testimony when the deponent is readily available to testify at trial. Kolb, 109 F.R.D. at 127. Plaintiffs should be required to present their case through live testimony at trial and should not be permitted to avoid this obligation by forcing the Court and the Government to read and analyze pages of designations in addition to the evidence that plaintiffs present at trial.

Plaintiffs' failure to make a showing of unavailability flies in the face of established precedent. The preference for live testimony, when available, has been well-established by the courts:

> In both civil and criminal cases, our common law heritage has always favored the presentation of live testimony over the presentation of hearsay testimony by the out-of-court-declarant. See McCormick Evidence 2d § 244. The jury's observation of the demeanor of the witness and the effectiveness of cross-examination in the discovery of the truth are the traditional reasons for the preference even though the out-of-court statement had been given under oath.

United States v. Mathis, 559 F.2d 294, 299 (5th Cir. 1977); see Young & Assoc. Public Relations, L.L.C. v. Delta Air Lines, Inc., 216 F.R.D. 521, 522 (D. Utah 2003) ("[t]he deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand") (quoting from Judge Learned Hand in Napier v. Bossard, 102 F.2d 467, 469 (2d Cir. 1939)); Banks v. Yokemick, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001) ("The general

[2] "A. __" refers to the appendix to this motion.

rule is that testimony at all trials must be live . . . [D]eposition testimony is only a substitute, not to be resorted to if the witness can appear in person"). Live testimony is necessary to provide this Court with an opportunity to evaluate the witnesses' demeanor during the discussion of events in which the witnesses were involved. Clearly, the reading of a deposition transcript does not serve as an adequate alternative to evaluation of the witness' testimony in person. See American Steel Works v. Hurley Construction Co., 46 F.R.D. 465, 470 (D. Minn. 1969) ("[t]he taking of a deposition is not equivalent to having 'live' testimony"); see also Grimna v. Makousky, 76 F.3d 151, 153 (7th Cir. 1966) ("strong preference of Anglo-American courts for live testimony"); Kolb, 109 F.R.D. at 127 ("when depositions are submitted in place of live testimony, the trial judge is denied the opportunity to question the witness . . . [c]learly, testimony by deposition is less desirable than oral testimony and should be used as a substitute only under very limited circumstances."). The preference for live testimony is recognized in Rule 32 itself, which provides that the Court may allow deposition testimony to be introduced unless it finds "it is not in the interests of justice, *with due regard to the importance of presenting the testimony of witnesses orally in open court* . . ." RCFC 32(a)(3)(E)(ii) (emphasis added).

The inquiry on the admissibility of deposition and trial transcripts under RCFC 32 is further informed by this "long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person." 8A C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 2142, at 158 (2d ed. 1994) (discussing FRCP 32); see Fed. R. Evid. 804(b)(1), Advisory Committee Notes (1972) ("testimony given on the stand in person is preferred over

hearsay," such as a witness' former testimony, and "tradition, founded in experience, uniformly favors the production of the witness if he is available" because the "opportunity to observe demeanor is what in a large measure confers depth and meaning upon oath and cross-examination"). Plaintiffs' introduction into evidence of deposition and trial testimony designations deprives the Court of the opportunity to see witnesses respond to questions, explain their testimony, as well as respond to any questions asked by the Court. Because this Court possesses national jurisdiction and can summon witnesses to testify form throughout the United States when necessary (RCFC 63), this Court should adhere to the strong preference for live testimony and reject plaintiffs' attempt to eliminate the need to present such testimony to the Court.

Finally, even if the Court in Globe is correct that deposition testimony satisfying the requirements of FRE 801(d)(2) is admissible even if the witness is available to testify, this Court retains the discretion to preclude wholesale introduction of deposition testimony that plaintiffs propose to introduce, which threaten to transform this case into a document review case without testimony.[3] See RCFC 1. A party's right to present its case in the manner that it desires "must be balanced against a court's leave to set reasonable limits on the admission of evidence." United States v. Blum, 62 F.3d 63, 67 (2d Cir. 1995) (citing Delaware v. Van Arsdall, 475 U.S.

[3] With plaintiffs' designations, this Court must review voluminous snippets of substantive testimony, replete with objections, as well as counter-designations, themselves replete with objections, and rule upon all objections, in order to admit the testimony into evidence. RCFC 32(d)(3)(A) ("Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if present at that time"). By submitting pages of deposition testimony, plaintiffs not only attempt to supplement their trial time, but also has significantly increased the Government's out-of-trial work.

673, 679 (1986)). "[J]udges are accorded 'wide latitude' in excluding evidence that poses an undue risk of 'harassment, prejudice [or] confusion of the issues' or evidence that is 'repetitive or only marginally relevant.'" Blum, 62 F.3d at 67 (quoting Van Arsdall, 475 U.S. at 679); see United States v. Holmes, 44 F.3d 1150, 1157 (2d Cir. 1995) ("[a]bsent a clear abuse of discretion, a trial judge retains a wide latitude to exclude irrelevant, repetitive, or cumulative evidence"); see also Pacific Gas & Electric Co. v. United States, 73 Fed. Cl. 333, 442 (2006) (court struck deposition designations not relied upon by parties in post-trial briefing to avoid burdening the record, pursuant to FRE 403). Under the Rules, this Court possesses the clear authority to exclude the wholesale introduction of designated testimony, in place of live testimony.

## IV. PLAINTIFFS HAVE FAILED TO ESTABLISH A PROPER FOUNDATION FOR MUCH OF THE DESIGNATED TESTIMONY

Plaintiffs, in compiling their designations, have wholly failed to establish the proper foundation for much of the testimony that they have designated. As noted above, plaintiffs have failed to provide to designate any testimony regarding the positions that the witnesses held or when they joined DOE. In addition to eliminating the Court's ability to evaluate whether the testimony constitutes proper "admissions" against the Government, plaintiffs' failure to designate a proper foundation also eliminates the Court's ability to evaluate whether the witness possessed the proper foundational basis for the testimony designated.

For example, plaintiffs have designated the testimony of Mr. Lake Barrett regarding the development of the 3,000 Metric Tons Uranium ("MTU") design rate for the repository. However, as Mr. Barrett explained during his deposition, this rate was developed before Mr. Barrett joined the program in 1985. Attachment A, Barrett Dep. Apr. 22, 2002, 149:5-12.

Case 1:04-cv-00103-E-JDW Document 14-3 Filed 11/02/2008 Page 29 of 42

Plaintiffs have designated little, if any, testimony regarding when these individuals began their involvement with the program and testimony regarding the nature of their responsibilities. Without this information, the Court cannot properly evaluate whether the designated testimony has a proper foundation.

Plaintiffs' designations also are replete with testimony concerning documents that were identified as exhibits during the depositions from which the testimony is designated. These designations are problematic because it is not clear from many of the designations what document is being discussed or whether a proper foundation has been laid for the witness to testify about that specific document. Moreover, it is not clear as to whether these documents are included on plaintiffs' exhibit list or whether they will be admitted into evidence at trial.[4]

For example, plaintiffs have designated Mr. Rosselli's testimony about a document that is not included on either parties' exhibit list. See Pl. Notice, Att. V (Rosselli Dep., Mar. 15, 2002, 176:9-176:15 and 179:9-181:2). Similarly, plaintiffs have designated Mr. Trebules' testimony about exhibits that are not identified in the designations. See, e.g., Pl. Notice, Att. VIII (Trebules Dep., Apr. 17, 2002, 109:18-111:15). Often the testimony that identifies the documents establishes that the witness lacks the proper foundation to testify about the contents of the document. For example, plaintiffs have designated testimony from Mr. Trebules' deposition concerning exhibit 4 to that deposition, but have not designated the testimony from the deposition that identifies exhibit 4 as the December 1983 draft Mission Plan and indicates

[4] Where we have a particular concern that the witness lacks the proper foundation to provide the testimony, we have lodged a "foundation" objection. See Attachment A.

Case 1:04-cv-00103-EJD Document 141-3 Filed 10/09/2007 Page 25 of 150

that Mr. Trebules did not recall seeing the document before his deposition because it was prepared before he joined DOE. Attachment A, Trebules Dep., Apr. 17, 2002, 78:1-79:17.

With the designation of testimony without clear reference to the document about which the witness was being asked, plaintiffs ask the Court to admit testimony about documents that the Court will not have the ability to review or evaluate. Moreover, these designations do not provide the Court with the benefit of an explanation as to why the documents are important or, conversely, why the documents should be disregarded.[5] For these reasons, the designations that concern documents that are not clearly identified or not made part of the record at trial should not be admitted by the Court.

## VI. NOTWITHSTANDING PLAINTIFFS' FAILURE TO DEMONSTRATE THE ADMISSIBILITY OF DEPOSITION TESTIMONY IN THIS CASE, THE GOVERNMENT SUBMITS ITS OBJECTIONS AND COUNTER-DESIGNATIONS

If the Court allows the testimony that plaintiffs have designated to become part of the record in this case, the Government respectfully requests that the Court first rule upon the objections to that testimony indicated in the portions of the testimony designated. RCFC 32(b). Thereafter, and to the extent that the Court admits any designated testimony, the Government requests that the Court consider the Government's counter-designations from these same depositions. FRE 106. The Government's objections and counter-designations are identified in Attachment A to this motion.

[5] When we have been able to discern that the designated testimony concerns a document that may or may not be identified in the testimony excerpted, we have lodged a "best evidence" objection. See Attachment A.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny the admission of the deposition and trial testimony that plaintiffs have designated or, in the alternative, that the Court rule upon the Government's objections prior to the admission of any designations and admit the Government's counter-designations.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Andrew P. Averbach by s/ Marian E. Sullivan
ANDREW P. AVERBACH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-0527
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
Senior Trial Counsel

CHRISTOPHER J. CARNEY
LISA L. DONAHUE
STEPHEN FINN
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice

November 2, 2007

**No. 04-106C**
**(Chief Judge Damich)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**DAIRYLAND POWER COOPERATIVE,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

---

# DEFENDANT'S RESPONSE TO PLAINTIFF'S NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS OR, ALTERNATIVELY, MOTION FOR LEAVE TO ADMIT PRIOR TESTIMONY INTO EVIDENCE

---

**GREGORY G. KATSAS**
**Acting Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**HAROLD D. LESTER, JR.**
**Assistant Director**

**RUSSELL A. SHULTIS**
**Commercial Litigation Branch**
**U.S. Department of Justice**
**Attn: Classification Unit,**
**8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tele: (202) 616-0347**
**Fax: (202) 307-2503**

**OF COUNSEL:**

**JANE K. TAYLOR**
**Office of General Counsel**
**U.S. Department of Energy**
**Office of General Counsel**
**1000 Independence Ave., S.W.**
**Washington, D.C. 20585**

**ALAN J. LO RE**
**Senior Trial Attorney**

**PATRICK B. BRYAN**
**JOSHUA E. GARDNER**
**ANTHONY W. MOSES**
**SONIA M. ORFIELD**
**SCOTT SLATER**
**Trial Attorneys**
**Commercial Litigation Branch**

**June 6, 2008**

**Attorneys for Defendant**

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . ii

SUMMARY OF ARGUMENT . . . . . 1

DISCUSSION . . . . . 3

I. DAIRYLAND HAS NOT SHOWN CAUSE FOR THE ADMISSION OF TESTIMONY DESIGNATIONS IN LIEU OF LIVE TESTIMONY AT TRIAL . . . . . 3

II. DAIRYLAND HAS NOT ESTABLISHED A PROPER BASIS FOR THE ADMISSION OF DESIGNATED TESTIMONY PURSUANT TO FED. R. EVID. 801(d)(2) . . . . . 7

A. Dairyland Has Not Established Any Basis Upon Which To Avoid Its Burden Of Showing The Admissibility Of Each Of Its Proposed Designations . . . . . 7

B. Dairyland Cannot Designate Testimony From Individuals Who Were Not Employees Of The Federal Government At The Time Of Their Testimony . . . . . 10

C. Dairyland Has Not Identified A Foundation For Finding That The Remaining Witness Testimony Falls Within Fed. R. Evid. 801(d)(2)(D) . . . . . 11

CONCLUSION . . . . . 11

TABLE OF AUTHORITIES

CASES PAGE(S)

Aliotta v. National R.R. Passenger Corp.,
315 F.3d 756 (7th Cir. 2003). .......... 8, 9

American Steel Works v. Hurley Constr. Co.,
46 F.R.D. 465 (D. Minn. 1969).......... 4

Angelo v. Armstrong World Indus., Inc.,
11 F.3d 957 (10th Cir. 1993). .......... 5

Banks v. Yokemick,
144 F. Supp. 2d 272 (S.D.N.Y. 2001).......... 3

Delaware v. Van Arsdall,
475 U.S. 673 (1986).......... 6

Evans v. Port Auth. of N.Y. & N.J.,
192 F. Supp. 2d 247 (S.D.N.Y. 2002).......... 7, 9

Globe Savings Bank, FSB v. United States,
61 Fed. Cl. 91 (2004). .......... passim

Griman v. Makousky,
76 F.3d 151 (7th Cir. 1966). .......... 4

Hill v. Speigel, Inc.,
708 F.2d 233 (6th Cir. 1983). .......... 8

Kolb v. County of Suffolk,
109 F.R.D. 125 (E.D.N.Y. 1985). .......... passim

Krause v. City of La Crosse,
246 F.3d 995 (7th Cir. 2001). .......... 7

Long Island Sav. Bank, FSB v. United States,
63 Fed. Cl. 157 (2004). .......... 8, 9

Napier v. Bossard,
102 F.2d 467 (2d Cir. 1939).......... 3

Sea-Land Serv., Inc. v. Lozen Int'l, LLC,
285 F.3d 808 (9th Cir. 2002). .......... 8, 9

TABLE OF AUTHORITIES (Cont'd)

CASES PAGE(S)

Shapiro, Lifschitz, & Schram, P.C. v. Hazard,
90 F. Supp. 2d 15 (D.D.C. 2000). .... 10

Tallarico v. Trans World Airlines, Inc.,
881 F.2d 566 (8th Cir. 1989). .... 8

United States v. Blum,
62 F.3d 63 (2d Cir. 1995). .... 6

United States v. Holmes,
44 F.3d 1150 (2d Cir. 1995). .... 6

United States v. Mathis,
559 F.2d 294 (5th Cir. 1977). .... 3, 4

Williams v. Pharmacia, Inc.,
137 F.3d 944 (7th Cir. 1998). .... 7

Young & Assoc. Pub. Relations, L.L.C. v. Delta Air Lines, Inc.,
216 F.R.D. 521 (D. Utah 2003). .... 3

Young v. James Green Mgt., Inc.,
327 F.3d 616 (7th Cir. 2003). .... 10

Zaben v. Air Prods. & Chems., Inc.,
129 F.3d 1453 (11th Cir. 1997). .... 7

STATUTES

R. Ct. Fed. Cl. 1. .... 5

R. Ct. Fed. Cl. App. A ¶ 15(b). .... 1, 5

R. Ct. Fed. Cl. 32. .... 4

Fed. R. Civ. P. 32. .... 4, 5

Fed. R. Evid. 801(d). .... passim

Fed. R. Evid. 804(b)(1). .... 4

TABLE OF AUTHORITIES (Cont'd)

MISCELLANEOUS PAGE(S)

8A C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure
§ 2142 (2d ed. 1994). .......... 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DAIRYLAND POWER COOPERATIVE,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) | No. 04-106C<br>(Chief Judge Damich) |

DEFENDANT'S RESPONSE TO PLAINTIFF'S NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS OR, ALTERNATIVELY, MOTION FOR LEAVE TO ADMIT PRIOR TESTIMONY INTO EVIDENCE

Defendant, the United States, respectfully responds to the notice of deposition and trial testimony designations or, alternatively, motion for leave to admit prior testimony into evidence, which plaintiff, Dairyland Power Cooperative ("Dairyland"), filed on April 29, 2008.[1]

## SUMMARY OF ARGUMENT

Dairyland's motion to designate as substantive evidence over 1,100 pages of deposition and trial testimony from 15 past and present Government employees and contractors should be denied. Dairyland has not shown cause as to why this Court should admit its proffered designations into evidence in lieu of live testimony, as is the Court's preference. In fact, the parties indicated they presently either will or may call six of the subject witnesses to testify at trial,[2] thereby obviating any need for admission of their designated testimony. Dairyland has not

[1] Although Dairyland styled its filed request as a notice of deposition and trial testimony designations and, in the alternative, as a motion for leave to admit prior testimony, we treat Dairyland's request as a motion because it is the appropriate means by which to seek the admission of testimonial designations. See RCFC App. A ¶ 15(b).

[2] Dairyland has indicated that it may call Lake E. Barrett, Christopher Kouts, Thomas Pollog, and David K. Zabransky to testify at trial. We presently intend to call Messrs. Kouts and

shown that the other nine witnesses whose testimony it seeks to designate are unavailable to testify at trial. Furthermore, Dairyland has failed to make the required showing under Rule 801(d)(2) of the Federal Rules of Evidence that the testimony it designated may properly be considered to be the admission of a party opponent. In addition, Dairyland ignored or failed to identify numerous objections to the testimony upon which the Court must rule before the testimony can be admitted into the record of this case. Because the designated testimony is irrelevant, incomplete, and/or subject to extensive objections, Dairyland should not be allowed to burden the record with its admission. To the extent the Court deems any of Dairyland's testimony designations to constitute admissions by the United States and/or otherwise admissible in lieu of live testimony, we ask the Court to consider and rule upon our objections to this testimony – as identified in the deposition and trial testimony and in the appendix attached hereto – prior to admitting it into evidence. Notwithstanding this Court's trial preparation order dated February 21, 2008, we further ask the Court to require the parties to read the designated testimony – including the Government's counter-designations, which will be filed on or before June 23, 2008[3] – into the trial record and that the time devoted to that effort be included in the parties' respective trial time.

---

Zabransky to testify at trial. In addition, we may call Alan Brownstein and Ronald Milner as trial witnesses.

[3] The Government's cross-designations to Dairyland's deposition and trial testimony designations were originally due on June 6, 2008, the same date on which the Government was to file its objections to Dairyland's motion for leave to admit prior testimony. By order dated May 30, 2008, the Court enlarged the time for the Government to submit its cross-designations until June 23, 2008.

## DISCUSSION

### I. DAIRYLAND HAS NOT SHOWN CAUSE FOR THE ADMISSION OF TESTIMONY DESIGNATIONS IN LIEU OF LIVE TESTIMONY AT TRIAL

This Court should deny Dairyland's motion because at least six of the witnesses for whom it has attempted to designate testimony are presently identified to testify at trial as either will or may call witnesses, and Dairyland has not shown that any of the other nine witnesses whose testimony it seeks to designate are unavailable to testify at trial.

It is axiomatic that hearsay testimony is not substituted for live testimony when a witness is available for examination at trial. See, e.g., Kolb v. County of Suffolk, 109 F.R.D. 125, 127 (E.D.N.Y. 1985). As Federal courts have long recognized, live testimony is highly favored over out-of-court written testimony:

> In both civil and criminal cases, our common law heritage has always favored the presentation of live testimony over the presentation of hearsay testimony by the out-of-court-declarant. The jury's observation of the demeanor of the witness and the effectiveness of cross-examination in the discovery of the truth are the traditional reasons for the preference even though the out-of-court statement had been given under oath.

United States v. Mathis, 559 F.2d 294, 299 (5th Cir. 1977) (citations omitted); see also Young & Assoc. Pub. Relations, L.L.C. v. Delta Air Lines, Inc., 216 F.R.D. 521, 522 (D. Utah 2003) ("The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand") (quoting from Judge Learned Hand in Napier v. Bossard, 102 F.2d 467, 469 (2d Cir. 1939)); Banks v. Yokemick, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001) ("The general rule is that testimony at all trials must be live.... [D]eposition testimony is only a substitute, not to be resorted to if the witness can appear in person"). Live testimony is

necessary to provide the Court with an opportunity to evaluate the witnesses' demeanor during the discussion of events in which the witnesses were involved. See Mathis, 559 F.2d at 299. The reading of a deposition transcript does not serve as an adequate alternative to evaluation of the witness's testimony in person. American Steel Works v. Hurley Constr. Co., 46 F.R.D. 465, 470 (D. Minn. 1969); see also Griman v. Makousky, 76 F.3d 151, 153 (7th Cir. 1966) (recognizing "strong preference of Anglo-American courts for live testimony"); Kolb, 109 F.R.D. at 127 ("when depositions are submitted in place of live testimony, the trial judge is denied the opportunity to question the witness ... [c]learly, testimony by deposition is less desirable than oral testimony and should be used as a substitute only under very limited circumstances.").

The preference for live testimony is recognized in RCFC 32 itself, which provides that the Court may allow deposition testimony to be introduced unless it finds "it is not in the interest of justice, with due regard to the importance of presenting the testimony of witnesses orally in open court...." RCFC 32(a)(3)(E)(ii) (emphasis added). The inquiry on the admissibility of deposition and trial transcripts under RCFC 32 is further informed by the "long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person." 8A C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 2142, at 158 (2d ed. 1994) (discussing Fed. R. Civ. P. 32); see also Fed. R. Evid. 804(b)(1), Advisory Committee Notes (1972) ("[T]estimony given on the stand in person is preferred over hearsay," such as a witness's former testimony, and "tradition, founded in experience, uniformly favors production of the witness if

he is available" because the "opportunity to observe demeanor is what in a large measure confers depth and meaning upon oath and cross-examination.").

Pursuant to paragraph 15(b) of Appendix A of the Rules of this Court, in those instances where designated deposition or trial testimony may be appropriate, it is the movant's obligation to show cause for the use of such testimony, other than as provided by Fed. R. Evid. 801(d). RCFC, App. A, ¶ 15(b); see also Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 963 (10th Cir. 1993) (observing that proponent of using deposition testimony at trial bears burden of proving admissibility in lieu of live testimony under Fed. R. Civ. P. 32). Although paragraph 15(b) of Appendix A does not expressly require that a party show cause in a written motion regarding the admission of evidence pursuant to Fed. R. Evid. 801(d), this Court has a preference for live testimony and, even though Fed. R. Evid. 801(d) evidence may be presented at trial and supported orally, the party seeking to introduce duplicative, cumulative, and unnecessary evidence must properly support its request.

Finally, even if, as Dairyland represents, the Court in Globe Savings Bank, FSB v. United States, 61 Fed. Cl. 91 (2004), is correct, and deposition testimony satisfying the requirements of Fed. R. Evid. 801(d)(2) is admissible in cases where a witness is available to testify in person, the Court retains the discretion to preclude the wholesale introduction of designated testimony in order to avoid transforming the trial into a matter of document review.[4] See, e.g., Kolb, 109 F.R.D. at 127; RCFC 1. In this regard, a party's right to present its case in

---

[4] Unlike in Globe Savings Bank, FSB v. United States, 61 Fed. Cl. 91 (2004), where the Court admitted into evidence portions of a single individual's deposition testimony, Dairyland seeks the admission of prior deposition and trial testimony by 15 individuals, thereby raising the specter of "trial by deposition," a practice that is strongly disfavored in the Federal courts. Kolb, 109 F.R.D. at 127.

the manner that it desires "must be balanced against a court's leave to set reasonable limits on the admission of evidence." United States v. Blum, 62 F.3d 63, 67 (2d Cir. 1995) (citing Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). Judges are, of course, accorded wide latitude in excluding evidence that is repetitive or of only marginal relevance. Blum, 62 F.3d at 67 (citing Van Arsdall, 475 U.S. at 679); United States v. Holmes, 44 F.3d 1150, 1157 (2d Cir. 1995).

Dairyland asserts that its designations are proper because this case is one of approximately 60 spent nuclear fuel ("SNF") matters pending before the Court, these same witnesses have testified on multiple occasions in other SNF cases, and their testimony has been admitted previously as substantive evidence. Mot. at 3. While we appreciate Dairyland's concern for the burden that testifying in multiple trials presents, its representation is incorrect. John Arthur, Lake Barrett, Robert Burgoyne, Billy Cole, Kevin Klein, Susan Klein, Robert Rosselli, Nancy Slater-Thompson, and Victor Trebules have never testified at trial in any SNF case. Messrs. Brownstein and Milner have each testified only once at trial.[5] Dairyland has not met its burden to establish that any of these individuals are unavailable to provide live testimony at trial, or to show cause as to why their testimony should be admitted into the record through designation.

In accordance with preferred practice, the Court should require Dairyland to present its case through live testimony at trial, not to shirk this obligation by forcing the Court and the Government to engage in a cumbersome review of testimonial designations, at least some of

---

[5] Although some prior testimony of these individuals has previously been admitted through designations, the Court has done so over the Government's objections, which were founded upon many of the same grounds set forth in the appendix to this response.

which are duplicative of evidence available for presentation at trial. Dairyland's proffered designations deprive the Court of an opportunity to engage in credibility determinations by gauging witnesses' responses and preclude witnesses from explaining their prior testimony or responding to questions that the Court may have. In addition, because this Court possesses national jurisdiction and can summon witnesses to testify from throughout the United States, the Court should reject Dairyland's attempt to avoid presenting live testimony at trial.

## II. DAIRYLAND HAS NOT ESTABLISHED A PROPER BASIS FOR THE ADMISSION OF DESIGNATED TESTIMONY PURSUANT TO FED. R. EVID. 801(d)(2)

### A. Dairyland Has Not Established Any Basis Upon Which To Avoid Its Burden Of Showing The Admissibility Of Each Of Its Proposed Designations

Dairyland's motion should be further denied because Dairyland has not met its burden to establish that the testimonial designations it seeks to admit into the record of this case constitute admissions by the United States pursuant to Fed. R. Evid. 801(d)(2). In its motion, Dairyland broadly asserts that all of the testimony it proffered is admissible as "admissions by a party-opponent under Fed. R. Evid. 801(d)." Mot. at 1. However, not every statement by every individual employed or formerly employed by a party constitutes an admission by that party. See, e.g., Krause v. City of La Crosse, 246 F.3d 995, 1002 (7th Cir. 2001) ("Rule 801(d)(2)(D) does not cast such a wide net" as to "hold a city accountable for statements made by any city employee" (emphasis added)); Williams v. Pharmacia, Inc., 137 F.3d 944, 950 (7th Cir. 1998) ("The precise reach of Rule 801(d)(2)(D) is sometimes difficult to discern, as there has been considerable debate about the justification for classifying vicarious admissions as non-hearsay."). At the very minimum, the employee must have had significant involvement in or responsibility for the decision at issue for his statements on the subject to qualify as admissions.

Evans v. Port Auth. of N.Y. & N.J., 192 F. Supp. 2d 247, 263 (S.D.N.Y. 2002); see also Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1456-57 (11th Cir. 1997) (finding that plaintiff could not testify to statements made by co-workers because co-workers did not have supervisory or decision-making authority); Tallarico v. Trans World Airlines, Inc., 881 F.2d 566, 572 (8th Cir. 1989) (affirming refusal to admit derogatory remarks of company employees as vicarious admissions where employees were non-managers without involvement in decision); Hill v. Speigel, Inc., 708 F.2d 233, 237 (6th Cir. 1983) ("The mere fact that each of these men was a 'manager' within the expansive Spiegel organization is clearly insufficient to establish that matters bearing upon [plaintiff's] discharge were within the scope of their employment.").

Rule 801(d)(2) provides, in pertinent part, that a statement constitutes an admission of a party opponent if "[t]he statement is offered against a party and is ... (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[]...." Fed. R. Evid. 801(d)(2)(D). To qualify as an admission under Rule 801(d)(2), a party must establish that the testimony offered meets three requirements: (1) the statement is made by the party that offered it; (2) the statement concerns matters within the scope of the "agency or employment;" and (3) the statement was made during the existence of the relationship. Long Island Sav. Bank, FSB v. United States, 63 Fed. Cl. 157, 164-65 (2004); Aliotta v. National R.R. Passenger Corp., 315 F.3d 756, 761 (7th Cir. 2003); Globe, 61 Fed. Cl. at 97.

It is up to the proffering party to lay a proper foundation to show that an otherwise excludable statement relates to a matter within the scope of employment of the agent or servant

and constitutes an admission.[6] See, e.g., Sea-Land Serv., Inc. v. Lozen Int'l, LLC, 285 F.3d 808, 821 (9th Cir. 2002). When evaluating whether such a foundation has been established, "[t]he contents of the statement shall be considered but are not alone sufficient to establish ... the agency or employment relationship and scope thereof." Id. (quoting Fed. R. Evid. 801(d)(2)) (internal quotations omitted). Moreover, the burden of establishing the admissibility of specific testimony for designation and inclusion in the trial record rests with the movant. Evans, 192 F. Supp. at 263 n.121. The Court is the ultimate decision-maker regarding whether the movant has met the requirements for admissibility and whether the designations sought constitute admissions by the adverse party. See Long Island Sav., FSB Bank, 63 Fed. Cl. at 164; Globe, 61 Fed. Cl. at 97; Aliotta, 315 F.3d at 761.

Dairyland relies upon Globe for the proposition that a party need not show unavailability of a witness to designate his or her testimony for the record so long as the three requirements set forth above are satisfied. Mot. at 2. Yet, prior to admitting any designated testimony, the Court in Globe undertook an analysis of the proffered designations to ensure that they met the requirements of Fed. R. Evid. 801(d)(2)(D). Globe, 61 Fed. Cl. at 96-97. Specifically, the Court required the plaintiffs in that case to establish that the statements were made by the party against whom they were offered, the United States; the subject matter of the testimony designated matched the "subject matter of the employee's job description[]"; and the individuals for whom testimony was designated were employed by the Government at the time of their statements. Globe, 61 Fed. Cl. at 97. Dairyland has failed to make an equivalent showing.

---

[6] In addition, to the extent any of the 15 witnesses whose prior testimony Dairyland seeks to designate discuss exhibits in their designated testimony, Dairyland's designations conflict with its obligation to establish a proper foundation for the admission of the exhibits.

B. Dairyland Cannot Designate Testimony From Individuals Who Were Not Employees Of The Federal Government At The Time Of Their Testimony

Dairyland cannot seek to admit the testimony of Robert Burgoyne, Billy Cole, and Michael Lawrence pursuant to Fed. R. Evid. 801(d)(2), because they were not employed by the Government at the time of their deposition and trial testimony. To fall within the parameters of Fed. R. Evid. 801(d)(2)(D), the individual making the statement constituting the alleged admission must have been an employee or agent of the party opponent at the time he or she made the statement. See, e.g., Young v. James Green Mgt., Inc., 327 F.3d 616, 622-23 (7th Cir. 2003) (statements made by former employees of party, who were not employed by party at time of statement, cannot be party admissions under Fed. R. Evid. 801(d)(2)(D)); Shapiro, Lifschitz, & Schram, P.C. v. Hazard, 90 F. Supp. 2d 15, 18 n.3 (D.D.C. 2000). When Mr. Burgoyne was deposed in 2004, he was an employee of Booz Allen Hamilton, a Government contractor. Given that Mr. Burgoyne was an employee of a Government contractor – and thus was not a Government employee – at the time of his testimony, Dairyland cannot seek to admit his testimony pursuant to Fed. R. Evid. 801(d)(2). In addition, Mr. Cole was retired from the workforce when he testified in 2002. Before Mr. Cole's retirement, he was an employee of a Government contractor. Like Mr. Burgoyne, Mr. Cole was not a Government employee at the time he testified, and, therefore, Dairyland cannot seek to admit his testimony pursuant to Fed. R. Evid. 801(d)(2). Mr. Lawrence also was not an employee of the Government when he testified in 2002 because he was employed by Battelle – a Government contractor – at the time of his deposition. Accordingly, Dairyland cannot seek to admit Mr. Lawrence's testimony pursuant to Fed. R. Evid. 801(d)(2).

C. Dairyland Has Not Identified A Foundation For Finding That The Remaining Witness Testimony Falls Within Fed. R. Evid. 801(d)(2)(D)

With respect to the remaining 12 individuals who were Government employees at the time of their deposition or trial testimony, Dairyland's motion and designations are devoid of sufficient detail to establish that all of the proffered testimony was provided within the scope of these individuals' employment. For instance, Dairyland attempts to designate the testimony of Lake Barrett regarding the development of the 3,000 Metric Tons Uranium design rate for the Department of Energy's planned SNF repository. However, as Mr. Barrett explained during his deposition, this rate was developed before he ever joined the repository program. See Barrett Apr. 22, 2002 Dep. Tr., 149:5-12. As a result, Mr. Barrett's testimony concerning this subject lacks adequate foundation, and it cannot meet the admissibility test under Fed. R. Evid. 801(d) as an admission against the United States.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny Dairyland's motion. To the extent the Court deems any of Dairyland's testimony designations to constitute admissions by the United States and/or otherwise admissible in lieu of live testimony, we ask the Court to consider and rule upon our objections to this testimony – as identified in the deposition and trial testimony and in the appendix attached hereto – prior to admitting it into evidence. Notwithstanding this Court's trial preparation order dated February 21, 2008, we further ask the Court to require the parties to read the designated testimony – including the Government's counter-designations, which will be filed on or before June 23, 2008 – into the trial record and that the time devoted to that effort be included in the parties' respective trial time.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Russell A. Shultis by s/Anthony W. Moses
RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7571
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

PATRICK B. BRYAN
JOSHUA E. GARDNER
ANTHONY W. MOSES
SONIA M. ORFIELD
SCOTT SLATER
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice

June 6, 2008

CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on this 6th day of June, 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS OR, ALTERNATIVELY, MOTION FOR LEAVE TO ADMIT PRIOR TESTIMONY INTO EVIDENCE" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Anthony W. Moses

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SOUTHERN NUCLEAR OPERATING, COMPANY, ALABAMA POWER COMPANY, and GEORGIA POWER COMPANY, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 98-614C (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S OBJECTION TO PLAINTIFFS'
DESIGNATIONS OF DEPOSITION AND TRIAL TESTIMONY

Defendant respectfully files this response and objection to "Plaintiffs' Designations of Deposition and Trial Transcripts," filed on October 18, 2005.[1] Plaintiffs, Southern Nuclear Operating Company, Alabama Power Company, and Georgia Power Company (hereinafter "plaintiffs"), have proffered extensive deposition and previous trial testimony for use in lieu of live testimony of 15 past and present Government employees and contractor personnel. Plaintiffs, however, have not overcome the preference for live testimony and met their burden to "show cause" under RCFC App. A § 15(b) as to why these designations should be allowed. Moreover, because the designated testimony is irrelevant, incomplete or subject to extensive objections, plaintiffs should not be allowed to further burden the record with its admission. In addition, there is no independent basis for the admission of the testimony of four of the individuals, pursuant to Rule 801(d)(2) of the Federal Rules of Evidence, and plaintiffs have

[1] Pursuant to the Court's pre-trial order issued September 16, 2005, the parties were to provide their deposition designations seven calendar days prior to the commencement of the propounding party's case-in-chief and all counter-designations were to be provided after the conclusion of trial. To date, the Court has not set the deadline for the submission of counter-designations and counsel for the parties have not had any discussions regarding the filing of counter-designations.

failed to make the required showing as to why the designated deposition testimony of the other individuals should be admitted pursuant to this same rule. To the extent that the Court allows plaintiffs' designations to become part of the record, we respectfully request that the Court rule upon the objections that are contained in the testimony designated by plaintiffs, pursuant to RCFC 32(b), and consider the deposition testimony that the Government has counter-designated, pursuant to Fed. R. Evid. 106. The list of these objections and counter-designations are found in Attachment A to this response.

## DISCUSSION

### I. PLAINTIFFS HAVE NOT MADE THE PROPER SHOWING AS TO WHY THE DESIGNATED TESTIMONY SHOULD BE ALLOWED TO BURDEN THE RECORD

Plaintiffs have designated the testimony of 15 individuals from 45 different days of deposition and five days of trial. Plaintiffs made no showing that any of the witnesses whose deposition testimony it has designated was unavailable to testify at the trial in this case. The testimony is irrelevant, incomplete and replete with objections, all of which need to be ruled upon before the Court considers its substance. Because plaintiffs have failed to meet their burden to show why this testimony should be admitted, the Court should exclude it from the record.

The preference that live testimony, when available, be presented at trial has been well-noted by the courts:

> In both civil and criminal cases, our common law heritage has always favored the presentation of live testimony over the presentation of hearsay testimony by the out-of-court declarant. See McCormick Evidence 2d § 244. The jury's observation of the demeanor of the witness and the effectiveness of cross-examination in the discovery of the truth are the traditional reasons

> for the preference even though the out-of-court statement had been given under oath.

United States v. Mathis, 559 F.2d 294, 299 (5th Cir. 1977); see Young & Assoc. Public Relations, L.L.C. v. Delta Air Lines, Inc., 216 F.R.D. 521, 522 (D. Utah 2003) ("'[t]he deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand.'") (quoting from Judge Learned Hand in Napier v. Bossard, 102 F.2d 467, 469 (2d Cir. 1939)); Banks v. Yokemick, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001) ("The general rule is that testimony at all trials must be live . . . [D]eposition testimony is only a substitute, not to be resorted to if the witness can appear in person."). Live testimony is necessary to provide this Court with an opportunity to evaluate the witnesses' demeanor during their discussion of the events in which they were involved. Obviously, the reading of a deposition transcript would not serve as an adequate alternative to evaluating the witnesses' testimony in person. See American Steel Works v. Hurley Construction Co., 46 F.R.D. 465, 470 (D. Minn. 1969) (observing that "[t]he taking of a deposition is not equivalent to having 'live' testimony."); see also Grimna v. Makousky, 76 F.3d 151, 153 (7th Cir. 1996) ("strong preference of Anglo-American courts for live testimony"); Kolb v. County of Suffolk, 109 F.R.D. 125, 127 (E.D.N.Y. 1985)("when depositions are submitted in place of live testimony, the trial judge is denied the opportunity to question the witness . . . [c]learly, testimony by deposition is less desirable than oral testimony and should be used as a substitute only under very limited circumstances."). The preference for live testimony is recognized in Rule 32 itself, which provides that the Court may allow deposition testimony to be introduced unless it finds "it is not in the interests of justice, *with due regard to the importance of presenting the testimony of witnesses orally in open court* . . ." RCFC 32(a)(3)(E)(ii) (emphasis added).

The inquiry on the admissibility of deposition transcripts under RCFC 32 is further informed by the "long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person." 8A Wright, Miller, & Marcus Federal Practice and Procedure § 2142, at 158 (2d ed. 1994) (discussing FRCP 32); see FRE 804(b)(1), Advisory Committee Notes (1972) ("testimony given on the stand in person is preferred over hearsay," such as a witness' former testimony, and "tradition, founded in experience, uniformly favors production of the witness if he is available" because the "opportunity to observe demeanor is what in a large measure confers depth and meaning upon oath and cross-examination").

The fact that these extensive deposition designations are a poor substitute for live testimony is evidenced by the extensive counter-designations that the Government has been required to prepare. Because so many of plaintiffs' designations are themselves incomplete or fail to provide the proper context for the testimony, the Government has had to counter-designate numerous deposition excerpts. If this testimony was truly necessary to the Court's consideration, plaintiffs should have called these witnesses to testify. Merely designating snippets of substantive deposition testimony is not the time-honored or proper method for proving a case.

The designations are also replete with objections that must be ruled upon by the Court prior to the consideration of the substance of any of this testimony. The Government has also been required to counter-designate extensive excerpts to provide a context for the objections contained within the testimony designated by plaintiffs. The Court will have to rule on each of the objections made at the time of the deposition and those objections specifically not waived

during deposition. RCFC 32(d)(3)(A) ("Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if present at that time"). The resultant presentation of evidence is of little value to the Court and is unnecessary and inefficient. FRE 403.

Finally, plaintiffs have designated the deposition testimony of three individuals, Messrs. Kouts, Pollog and Zabransky, from 12 different days of deposition as well as extensive excerpts of these individuals' testimony in Yankee Atomic Electric Co. v. United States, Fed. Cl. No. 98-126C. However, all three of these individuals testified at trial in this matter and were available to be questioned about the subjects about which plaintiffs have designated testimony. In fact, many of the subjects were raised during the cross-examination of these individuals. For example, Mr. Pollog was asked about paragraph 7(c) of the delivery commitment schedule instructions during cross-examination. Trial Transcript 1904:2-1906:5. Plaintiffs have also designated Mr. Pollog's testimony from numerous days of deposition about this paragraph. See April 11, 2002 deposition, pages 62-63, and May 16, 2002 deposition, pages 327-332. Plaintiffs should not be allowed to burden the record with deposition testimony on subjects that should have been and, often, were raised during cross-examination of these individuals. See Renda Marine, Inc. v. United States, 66 Fed. Cl. 639, 645 (2005) (citing United States v. Int'l Bus. Machs. Corp., 90 F.R.D. 377, 382 (S.D.N.Y. 1981) (disregarding designated deposition testimony of witnesses who testified at trial).

Recent decisions of this Court have waived the requirements to show cause pursuant to RCFC 32(a) if the Federal Rules of Evidence, in particular the rule concerning admissions of a

party opponent, Fed. R. Evid. 801(d), provide an independent basis for the admission of the deposition testimony. See Globe Savings Bank v. United States, 61 Fed. Cl. 91, 95 (2004); Long Island Savings Bank v. United States, 63 Fed. Cl. 157, 163 (2004). However, the decision in Globe should be limited to its facts and should not trump the responsibility of the parties to properly present their cases.

The factual difference between the instant case and Globe provides a proper basis for limiting the application of the analysis in Globe. The plaintiff in Globe was successful in offering into evidence portions of the deposition testimony of a single individual as the admission of a party opponent. Globe, 61 Fed. Cl. at 95. However, in this case, plaintiffs seek to admit the deposition and trial testimony of up to 15 individuals as substantive evidence. Other courts have recognized that deposition testimony conceded to be an admission under Federal Rule of Evidence 801(d)(2)(D) should not be used in place of the deponent's live trial testimony when the deponent is readily available to testify at trial. Kolb, 109 F.R.D. at 127. Plaintiffs' wholesale designation of deposition testimony, rather than providing proper trial testimony, amounts to a "trial by deposition," which is disfavored in the Federal courts. Id.

Even if the Court in Globe is correct that deposition testimony satisfying the requirements of Federal Rule of Evidence 801(d)(2) is admissible even if the witness is available to testify, this Court retains the discretion to preclude wholesale introduction of the massive amounts of deposition testimony that SMUD proposes to introduce, which threaten to transform this case into a document review case without testimony. See RCFC 1. Even in criminal cases, "[t]he right to present relevant testimony" and evidence "is not without limitation." Michigan v. Lucas, 500 U.S. 145, 149 (1991). A party's right to present its case in the manner that it desires

"must be balanced against a court's leave to set reasonable limits on the admission of evidence." United States v. Blum, 62 F.3d 63, 67 (2d Cir. 1995) (citing Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). "[J]udges are accorded 'wide latitude' in excluding evidence that poses an undue risk of 'harassment, prejudice [or] confusion of the issues' or evidence that is 'repetitive or only marginally relevant.'" Blum, 62 F.3d at 67 (quoting Van Arsdall, 475 U.S. at 679); see United States v. Holmes, 44 F.3d 1150, 1157 (2d Cir. 1995) ("[a]bsent a clear abuse of discretion, a trial judge retains a wide latitude to exclude irrelevant, repetitive, or cumulative evidence").

Federal Rule of Evidence 403 "gives trial courts the discretion to exclude relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" Cortes v. Maxus Exploration Co., 977 F.2d 195, 201 (5th Cir. 1992) (quoting Fed. R. Evid. 403). The wholesale substitution of written testimony, in place of live witnesses, precludes the Court from evaluating the credibility of up to 15 witnesses or from questioning those witnesses about "holes" that might otherwise exist in the questions that were previously asked as they relate to matters as they develop during trial.

## II. PLAINTIFFS HAVE FAILED TO ESTABLISH AN INDEPENDENT BASIS FOR THE ADMISSION OF THE DESIGNATED TESTIMONY PURSUANT TO RULE 801(d)(2)

Even assuming for the sake of argument that the reasoning in Globe is correct, FRE 801(d) does not provide any basis for admission of the deposition testimony of two former employees, Messrs. Rusche and Lawrence, and two former contractor personnel, Messrs. Cole and McDuffie. Because these individuals either were not employed by the Department of

Energy ("DOE") at the time of their depositions or were never employees of DOE, the statements of these individuals cannot be considered statements of party opponents. With regard to the designated depositions of the remainder of the individuals, plaintiffs have not made any showing that each of the numerous excerpts of testimony designated concerns matters within the scope of those individuals responsibilities.

Rule 801(d)(2) provides, in pertinent part:

> Admission by a party-opponent. The statement is offered against a party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, . . .

Fed. R. Evid. 801(d)(2). This rule does not provide the basis for admission of deposition testimony as a party admission if the deponent was no longer employed by the agency at the time of the deposition. Long Island, 63 Fed. Cl. at 165. Further, the rule requires a showing by the party proffering the deposition testimony that each of the statements designated concern matters within the scope of the agency or employment of the individual. Id. at 164; Globe, 61 Fed. Cl. at 97.

Messrs. Rusche and Lawrence were not employees of DOE at the time of their depositions. Mr. Lawrence was employed by a contractor for DOE at the time of his deposition, but the matters for which he was responsible for the contractor did not involve the Office of Civilian Radioactive Waste Management ("OCRWM"). Messrs. Cole and McDuffie were never employees of DOE, having worked at various times for contractors supporting the work of OCRWM, and they were retired from these contractor positions at the time of their depositions. Because Rule 801(d)(2) does not provide an independent basis for the admission of the testimony of Messrs. Rusche, Lawrence, Cole and McDuffie, plaintiffs are required to show

cause as to why these individuals were unavailable for trial or provide some other basis for the admission of their deposition testimony in lieu of live testimony. Having failed to make such a showing, the designated deposition testimony of these individuals should be excluded from the record.

While this analysis would also support the exclusion of the designated deposition testimony of Mr. Robert Morgan, who had long since retired from the Federal Government at the time of his deposition, the Government does not seek to exclude his testimony on this basis. The Government designated the testimony of Mr. Morgan from the trials held in Yankee Atomic Electric Co. v. United States, Fed. Cl. No. 98-126C, and Tennessee Valley Authority v. United States, Fed. Cl. No. 01-115C, because of the anticipated difficulty for Mr. Morgan to travel to Washington, D.C., to attend trial in this matter because of his age and the fact that he had already been required to testify in two trials. The Government notified counsel for plaintiffs of this concern for Mr. Morgan and that Mr. Morgan's previous testimony could be designated in lieu of live testimony when the Government served its witness list on August 12, 2005. The Government considers this notice, and plaintiffs' lack of objection to it, to satisfy the show cause requirements pursuant to RCFC 32(a). However, because Mr. Morgan was unavailable for trial, the Government does not object to the counter-designation of other portions of Mr. Morgan's previous deposition and trial testimony by plaintiffs.

With regard to the remaining ten individuals for whom plaintiffs have designated testimony, plaintiffs have provided no explanation as to how each of the numerous deposition excerpts should be considered admissions of a party opponent, pursuant to Rule 801(d)(2), and therefore admissible. At a minimum, plaintiffs should be required to explain how each of the

statements are statements concerning matters within the scope of the individuals' employment. Long Island, 63 Fed. Cl. at 165; Globe, 61 Fed. Cl. at 97. Absent such a showing, plaintiffs have not established that the designated testimony is properly admissible.

## III. NOTWITHSTANDING PLAINTIFFS' FAILURE TO DEMONSTRATE THE ADMISSIBILITY OF DEPOSITION TESTIMONY IN THIS CASE, THE GOVERNMENT SUBMITS ITS OBJECTIONS AND COUNTER-DESIGNATIONS

If the Court allows the testimony designated by plaintiffs to become part of the record in this case, the Government respectfully requests that the Court first rule upon the objections to that testimony indicated in the portions of the testimony designated. RCFC 32(b). In addition, the Government requests that the Court consider the Government's counter-designations of testimony from these same depositions. Fed. R. Evid. 106. These objections and counter-designations are identified in Attachment A to this motion. The Government will provide paper copies of the testimony it has counter-designated to the clerk of the Court and to counsel for plaintiffs.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny the admission of the deposition and trial testimony designated by plaintiffs or, in the alternative, that the Court also rule upon the objections and admit the Government's counter-designations.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

STEPHEN FINN
JOSHUA E. GARDNER
HEIDE L. HERRMANN
MARIAN E. SULLIVAN
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

March 16, 2006

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ John C. Ekman
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 16th day of March 2006, a copy of foregoing "DEFENDANT'S OBJECTION TO PLAINTIFFS' DESIGNATIONS OF DEPOSITION AND TRIAL TESTIMONY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Marian E. Sullivan

No. 03-2623C
(Judge Lettow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SYSTEM FUELS, INC., and
ENTERGY ARKANSAS, INC.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S "NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7583
Fax: (202) 307-2503

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

KEVIN B. CRAWFORD
SCOTT R. DAMELIN
LISA L. DONAHUE
JOHN C. EKMAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

January 19, 2007

Attorneys for Defendant

TABLE OF CONTENTS

PAGE


SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. SFI'S DESIGNATIONS SHOULD BE STRICKEN BECAUSE THEY SHOULD NOT BE ADMITTED INTO THE RECORD OF THIS CASE PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)(D) WITHOUT THIS COURT'S DETERMINATION THAT THEY, IN FACT, CONSTITUTE ADMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . 3

II. SFI HAS FAILED TO ESTABLISH AN INDEPENDENT BASIS FOR THE ADMISSION OF THE DESIGNATED TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2) . . . . . . . . . . . . . 5

A. SFI Has Identified No Basis Upon Which To Avoid Its Burden Of Establishing The Admissibility Of Each Of Its Proposed Designations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B. SFI Cannot Introduce Testimony From Individuals Who Were Not Employees Of The Federal Government At The Time Of Their Designated Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C. SFI Has Identified No Foundation For Finding That The Remaining Witness Testimony Falls Within FRE 801(d)(2)(D) . . . . . . . 10

III. SFI HAS NOT MADE THE PROPER SHOWING AS TO WHY DESIGNATED TESTIMONY SHOULD BE ALLOWED TO BURDEN THE RECORD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

A. SFI Has Failed To Establish Good Cause For Using Deposition Designations *In Lieu* Of Live Testimony At Trial . . . . . . . . . . . . . . . . . . . 12

B. When There Has Been No Showing Of Unavailability, There Is A Strong Preference For Live Testimony . . . . . . . . . . . . . . . . . . . . . . 15

IV. TO THE EXTENT THAT WITNESSES DISCUSS EXHIBITS IN THEIR DESIGNATED TESTIMONY, SFI'S DESIGNATIONS CONFLICT WITH SFI'S OBLIGATION TO ESTABLISH PROPER FOUNDATION FOR THE ADMISSION OF EXHIBITS . . . . . . . . . . . . . . . . . 18

TABLE OF CONTENTS (cont'd)

PAGE

V. NOTWITHSTANDING NSP'S FAILURE TO DEMONSTRATE THE ADMISSIBILITY OF DEPOSITION TESTIMONY IN THIS CASE, THE GOVERNMENT SUBMITS ITS OBJECTIONS AND COUNTER-DESIGNATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

CASES PAGE(S)

Aliotta v. National R.R. Passenger Corp.,
315 F.3d 756 (3d Cir. 2003) . . . . . . . . . . 4

American Eagle Insurance Co. v. Thompson,
85 F.3d 327 (8th Cir. 1996) . . . . . . . . . . 9

American Steel Works v. Hurley Construction Co.,
46 F.R.D. 465 (D. Minn. 1969) . . . . . . . . . . 16

Angelo v. Armstrong World Industrial,
11 F.3d 957 (10th Cir. 1993) . . . . . . . . . . 13

Banks v. Yokemick,
144 F. Supp. 2d 272 (S.D.N.Y. 2001) . . . . . . . . . . 16

Carden v. Westinghouse Electric Co.,
850 F.2d 996 (8th Cir. 1998) . . . . . . . . . . 6

Delaware v. Van Arsdall,
475 U.S. 673 (1986) . . . . . . . . . . 18

Evans v. Port Authority of New York & New Jersey,
192 F. Supp. 2d 247 (S.D.N.Y. 2002) . . . . . . . . . . 4

Globe Savings Bank v. United States,
61 Fed. Cl. 91 (2004) . . . . . . . . . . 5, 6, 12, 18

Grimna v. Makousky,
76 F.3d 151 (7th Cir. 1966) . . . . . . . . . . 17

Harris v. Itzhaki,
183 F.3d 1043 (9th Cir. 1999) . . . . . . . . . . 4

Kolb v. County of Suffolk,
109 F.R.D. 125 (E.D.N.Y. 1985) . . . . . . . . . . 6, 15, 17

Long Island Savings Bank v. United States,
63 Fed. Cl. 157 (2004) . . . . . . . . . . 6, 7, 12

TABLE OF AUTHORITIES (cont'd)

Napier v. Bossard,
102 F.2d 467 (2d Cir. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Pacific Gas & Electric Co. v. United States,
73 Fed. Cl. 333 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Renda Marine, Inc. v. United States,
66 Fed. Cl. 639 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Robertson v. National R.R. Passenger Corp.,
No. 98-1397, 1999 WL 280407 (E.D. La. May 3, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 7

Sacramento Municipal Utility Dist. v. United States,
No. 98-488C (Fed. Cl. March 16, 2005) (unpublished) . . . . . . . . . . . . . . . . . . . . . . . . 14

Sea-Land Serv., Inc. v. Lozen Int'l, Inc.,
285 F.3d 808 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

Selby v. Pepsico, Inc.,
784 F. Supp. 750 (N.D. Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Shapiro, Lifschitz, & Schram, P.C. v. Hazard,
90 F. Supp. 2d 15 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Blum,
62 F.3d 63 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Holmes,
44 F.3d 1150 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. International Business Machines Corp.,
90 F.R.D. 377 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Mathis,
559 F.2d 294 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Yankee Atomic Elec. Co. v. United States,
No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004) . . . . . . . . . . . . . . . . . . . . . . . 9

Young & Assoc. Public Relations, L.L.C. v. Delta Air Lines, Inc.,
216 F.R.D. 521 (D. Utah 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Case 1:04-cv-00162-JJF Document 131 Filed 01/09/2008 Page 6 of 150

TABLE OF AUTHORITIES (cont'd)

Young v. James Green Management, Inc.,
327 F.3d 616 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

MISCELLANEOUS

Fed. R. Evid. 801(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 804(b)(1), Advisory Committee Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

8A C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 2142 (2d ed. 1994) . 17

Case 1:03-cv-00213-DFL Document 132 Filed 01/09/2008 Page 78 of 150

INDEX TO ATTACHMENT AND APPENDIX

ATTACHMENT A:

Defendant's Objections To Designations Of System Fuels, Inc. And Defendant's Counter-Designations

APPENDIX:


Document — Page

Transcript of Trial Testimony of John Bartlett, *Yankee Atomic* Trial, July 14, 2004 . . . . . 1

Transcript of Deposition Testimony of Michael Lawrence, Coordinated Discovery Proceedings, May 20, 2002 . . . . . 3

Transcript of Trial Testimony of Robert Morgan, *Yankee Atomic* Trial, August 2, 2004 . . . . . 5

Transcript of Deposition Testimony of Billy Cole, Coordinated Discovery Proceedings, March 13, 2002 . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SYSTEM FUELS, INC., and )
ENTERGY ARKANSAS, INC., )
)
Plaintiffs, ) No. 03-2623C
) (Judge Lettow)
v. )
)
THE UNITED STATES, )
)
Defendant. )

DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S "NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)

Defendant respectfully requests that the Court strike the "Notice Of Deposition & Trial Testimony Designations" that plaintiff, System Fuels, Inc. ("SFI"), filed on December 22, 2006. To the extent that the Court does not strike those designations from the record of this case, defendant alternatively requests that the Court preclude SFI from relying upon those designations or from considering those designations as substantive evidence, given, among other deficiencies discussed below, SFI's failure to establish an appropriate foundation for the designated testimony and to establish that the designated testimony constitutes "admissions" of the United States.

SUMMARY OF ARGUMENT

SFI has proffered extensive deposition and previous trial testimony of 13 past and present Government employees, and 390 pages of testimony, as substantive evidence.[1] Rather than

[1] In its "notice," SFI seeks to introduce by designation the deposition and trial testimony of Lake Barrett, John Bartlett, Alan Brownstein, Billy Cole, Susan Klein, Christopher Kouts,

filing a motion seeking to have this Court review the proposed designations to determine whether they, as SFI claims, all properly constitute "admissions" by the United States pursuant to Federal Rule of Evidence ("FRE") 801(d)(2), SFI has merely filed them with the Court through a "notice," apparently simply including them in the record of this case under an assumption that SFI is entitled to treat all of them as "admissions" without any Court review.

Contrary to SFI's apparent belief, it is the Court, not SFI, that determines whether the proposed designations properly constitute "admissions" of the United States. Because SFI did not file a motion seeking the Court's review of these designations, but, instead, merely included them in the record of this case as predetermined "admissions," we respectfully request that the Court strike SFI's "notice" from the case. Even if the Court considers SFI's "notice" to constitute a motion to deem the designated testimony as admissions of the Government, SFI has failed to make the required showing under FRE 801(d)(2) that the testimony which it has designated may properly be considered to be the admission of a party opponent, and it has ignored or failed to identify numerous objections to the testimony upon which the Court must rule before the testimony could be admitted into the record of this case. SFI also has not overcome the preference for live testimony and met its burden to show cause as to why these

---

Michael Lawrence, Ronald Milner, Robert Morgan, Thomas Pollog, Nancy Slater (Thompson), Victor Trebules, and David Zabransky. SFI's list of designations is identical to the list of designations filed by plaintiff in System Fuels, Inc. v. United States, No. 03-2624C (Fed. Cl. Aug. 18, 2006) and Northern States Power Co. v. United States, No. 98-484C (Fed. Cl. Sept. 1, 2006). Although plaintiffs in those cases withdrew portions of the designations or have indicated that plaintiff does not intend to rely upon all of these designations in those cases, SFI's list of proposed designations in this case does not reflect those changes. Of the individuals for whom SFI has proposed designations, SFI has identified both Mr. Pollog and Mr. Zabransky as possible witnesses for SFI at trial on its witness list. Messrs. Kouts, Pollog, and Zabransky are on the Government's witness list, and the Government plans to call these witnesses at trial.

designations should be allowed. Because the designated testimony is irrelevant, incomplete, or subject to extensive objections, SFI should not be allowed to burden the record with its admission. To the extent that the Court allows SFI's designations to become part of the record, in whole or in part, we respectfully request that the Court rule upon the objections that are contained in the testimony that SFI has designated, pursuant to RCFC 32(b), and consider the deposition testimony that the Government has counter-designated, pursuant to FRE 106 and RCFC 32(a)(4). The list of these objections and counter-designations are found in Attachment A to this response. We further request that the Court require the parties to read the designated testimony into the trial record and that the time devoted to that effort be included in the parties' respective trial time.

## DISCUSSION

### I. SFI'S DESIGNATIONS SHOULD BE STRICKEN BECAUSE THEY SHOULD NOT BE ADMITTED INTO THE RECORD OF THIS CASE PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)(D) WITHOUT THIS COURT'S DETERMINATION THAT THEY, IN FACT, CONSTITUTE ADMISSIONS

In the "notice" of deposition and trial testimony designations that it filed on December 22, 2006, SFI recognizes that "RCFC Appendix A, ¶ 15(b) provides that a party must move for leave to file designations of substantive testimony, *except 'as provided by Fed. R. Evid. 801(d).'*" SFI Notice, at 1 (Dec. 22, 2006) (italics in original) (quoting RCFC App. A ¶ 15(b)). Claiming that all of its proposed designations constitute "admissions" by the United States pursuant to FRE 801(d)(2), SFI then filed a "notice" of its designations, without any motion requesting that the Court determine whether the proposed designations actually constitute "admissions" under the identified Federal Rule of Evidence. The lack of a motion seeking the Court's review and admission of these proposed designations, as opposed to SFI's mere admission of the

designations into the record of this case without any Court review and approval, is inappropriate. Seemingly in response to the Government's criticism of the same "notices" filed in System Fuels, Inc. (No. 03-2624C) and Northern States, SFI notes at the end of its notice that it "reserves the right to supplement these designations . . . to otherwise assure that the testimony presented meets the requirements of Fed. R. Evid. 801(d)." SFI Notice at 2. Rather than reserve the right to submit additional designations, SFI should have sought to provide the proper basis for the admission of the testimony with its notice.

"[T]here are two relevant requirements under Rule 801(d)(2)(D). First, [the designated individual's] deposition testimony must be an admission. Second, the statements must be made 'concerning a matter within the scope' of [the designated individual's] employment." Aliotta v. National R.R. Passenger Corp., 315 F.3d 756, 761 (3d Cir. 2003). Although a party certainly must identify the specific testimony that it wants to designate for inclusion in the trial record, "the burden of establishing admissibility, of course, is with the proponent of the evidence." Evans v. Port Auth. of N.Y. & N.J., 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002). The Court is the ultimate decision-maker regarding these two factors. See Aliotta, 315 F.3d at 761. Specifically, it is the burden of "the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's employment," Sea-Land Serv., Inc. v. Lozen Int'l, Inc., 285 F.3d 808, 821 (9th Cir. 2001) (quoting Harris v. Itzhaki, 183 F.3d 1043, 1054 (9th Cir. 1999)), and constitutes an admission. "When a court is evaluating whether such a foundation has been established, '[t]he contents of the statement shall be considered but are not alone sufficient to establish . . . the agency or employment relationship and scope thereof.'" Id. (quoting Fed. R. Evid. 801(d)(2)).

Because SFI appears to attempt to remove from the Court's purview any review of its proposed admissions, the Court should strike SFI's "notice" of designations. To the extent that the Court considers SFI's "notice" as a motion to deem the proposed testimony designations as admission of the United States pursuant to FRE 801(d)(2), we have attached to this motion a list of objections to those designations, including SFI's failure to identify any testimony that would establish any foundation for the proposed "admissions." Below, we further discuss specific objections to the proposed designations, to the extent that the Court considers SFI's "notice" as a motion to deem testimony as admissions.

## II. SFI HAS FAILED TO ESTABLISH AN INDEPENDENT BASIS FOR THE ADMISSION OF THE DESIGNATED TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)

### A. SFI Has Identified No Basis Upon Which To Avoid Its Burden Of Establishing The Admissibility Of Each Of Its Proposed Designations

In its "notice," SFI asserts that it need not comply with the requirements of RCFC 32(a) in submitting its testimony designations because all of the designated testimony is admissible as an admission of a party opponent, pursuant to FRE 801(d)(2). SFI relies upon the Court's decision in Globe Savings Bank v. United States, 61 Fed. Cl. 91 (2004), in which the Court held that a party need not show cause for the admission of deposition testimony, pursuant to RCFC 32(a)(2), if the Federal Rules of Evidence, in particular the rule concerning admissions of a party opponent in FRE 801(d), provide an independent basis for the admission of the deposition testimony. Id. at 95 (2004);[2] see Long Island Savings Bank v. United States, 63 Fed. Cl. 157,

[2] The factual difference between the instant case and Globe provides a proper basis for limiting the application of the analysis in Globe. The plaintiff in Globe was successful in offering into evidence portions of the deposition testimony of a single individual as the admission of a party opponent. Globe, 61 Fed. Cl. at 95. However, in this case, SFI seeks to

163 (2004). However, consistent with other court decisions, the Court in Globe and Long Island required a showing that the testimony that the plaintiffs sought to designate in each case properly met the requirements of FRE 801(d)(2) as an admission of a party opponent. See Sea-Land, 285 F.3d at 821; Carden v. Westinghouse Elec. Co., 850 F.2d 996, 1002 (8th Cir. 1998); Selby v. Pepsico, Inc., 784 F. Supp. 750, 757 (N.D. Cal. 1991). SFI has made no attempt to meet these requirements for much of the testimony that it has designated.

Rule 801(d)(2) provides, in pertinent part, as follows:

> Admission by a party-opponent. The statement is offered against a party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, . . .

Fed. R. Evid. 801(d)(2). In Globe and Long Island, the Court conducted an analysis of the testimony designated to ensure that it met the requirements of the rule. Globe, 61 Fed. Cl. at 96-97; Long Island, 63 Fed. Cl. at 164-65. Specifically, the Court required the plaintiffs to establish that: (1) the statements were made by the party, the United States, against whom the statements were being offered; (2) the subject matter of the testimony designated matched the "subject matter of the employee's job description;" and (3) all of the individuals for whom testimony was designated were employees of the United States Government at the time of their depositions. Id. (citations omitted). SFI has failed to provide the Court with the evidence to make similar

---

admit the deposition and trial testimony of 13 individuals as substantive evidence. Other courts have recognized that deposition testimony conceded to be an admission under FRE 801(d)(2)(D) should not be used in place of the deponent's live trial testimony when the deponent is readily available to testify at trial. Kolb v. County of Suffolk, 109 F.R.D. 125, 127 (E.D.N.Y. 1985). SFI's wholesale designation of deposition testimony, rather than providing proper trial testimony, amounts to a "trial by deposition," which is disfavored in the Federal courts. Id.

determinations regarding the extensive deposition testimony that it seeks to designate as admissions of a party opponent.

B. SFI Cannot Introduce Testimony From Individuals Who Were Not Employees Of The Federal Government At The Time Of Their Designated Testimony

SFI cannot seek to admit the testimony of John Bartlett, Michael Lawrence, or Robert Morgan pursuant to FRE 801(d)(2). Although all three of these individuals had once been employed by the Federal Government, none were not Federal employees at the time of their depositions or trial testimony. See App. 2, 4, 6. To fall within the parameters of FRE 801(d)(2)(D), the individual making the statements at issue must have been an employee or agent of the party opponent when the statement constituting the alleged admission was made. See, e.g., Young v. James Green Mgt., Inc., 327 F.3d 616, 622-23 (7th Cir. 2003) (statements made by former employees of party, who were not employed by party at time of statement, cannot be party admissions under FRE 801(d)(2)(D)); Shapiro, Lifschitz, & Schram, P.C. v. Hazard, 90 F. Supp. 2d 15, 18 n.3 (D.D.C. 2000) ("affidavit does not qualify under the party admission exception in Fed. R. Evid. 801(d)(2)(D) because O'Riordan is a former employee"); Robertson v. National R.R. Passenger Corp., No. 98-1397, 1999 WL 280407, at *1 (E.D. La. May 3, 1999) ("statement issued by a former employee after the employment ceases, is inadmissible under Rule 801(d)(2)(D)"). Indeed, SFI has not attempted to make any showing under RCFC 32(a) that would permit the introduction of this testimony as evidence in this case. See Long Island, 63 Fed. Cl. at 165 (Court analyzed admission of deposition testimony pursuant to RCFC 32(a) because individual was not an employee of the Federal Government at the time of his deposition).

SFI's designation of Mr. Bartlett's testimony is particularly egregious, given that Mr. Bartlett was employed by several spent nuclear fuel ("SNF") plaintiffs and was testifying as their employed witness at the time that he provided the testimony that SFI now seeks to designate as an "admission" of the Federal Government. SFI's designation includes portions of Mr. Bartlett's testimony as an expert witness for the nuclear utilities (see Bartlett *Yankee* Trial Testimony 633:8-640:15 & 643:11-647:18), which is also inappropriate. SFI has not identified Mr. Bartlett as an expert witness in this case, and he has not been qualified as an expert witness in this case. Accordingly, his expert witness testimony from another SNF case should not be admissible here. Further, it was not the United States, but the SNF plaintiffs in Yankee, who were paying for Mr. Bartlett's expert witness testimony. His 2004 expert witness testimony in Yankee, given years after he had concluded his employment by the Federal Government, clearly was not an "admission" by the United States pursuant to FRE 801(d)(2)(D). In response to the Government's motion to strike plaintiffs' "notice" in Systems Fuels, Inc. (No. 03-2624C) and Northern States, the plaintiff in both of those cases withdrew these designations for Mr. Bartlett, acknowledging its agreement "that Dr. Bartlett had been called as an expert witness against the Government by another plaintiff and, therefore, FRE 801(d)(2) does not apply." System Fuels, Inc.'s Response To The Defendant's Motion To Strike Plaintiff's "Notice of Deposition and Trial Testimony Designations" and, In the Alternative, Motion In Limine To Preclude Reliance Upon Those Designations As Substantive Evidence Pursuant to RCFC 32(a) and Federal Rule of Evidence 801(d)(2), Systems Fuels, Inc. v. United States, No. 03-2624C, filed Sept. 25, 2006, at 1 n.1; Northern States Power Company's Response To The Defendant's Motion To Strike Plaintiff's "Notice of Deposition and Trial Testimony Designations" and, In the Alternative,

Case 1:03-cv-00213-JJF Document 43-1 Filed 01/10/2007 Page 16 of 50

Motion In Limine To Preclude Reliance Upon Those Designations As Substantive Evidence Pursuant to RCFC 32(a) and Federal Rule of Evidence 801(d)(2), Northern States Power Co. v. United States, No. 98-484C (Fed. Cl.), filed Oct. 10, 2006, at 1 n.1. We find it puzzling, given this acknowledgment, that SFI seeks once again to designate the testimony of Mr. Bartlett in this case.

Similarly, SFI has designated testimony from Mr. Billy Cole. Yet, Mr. Cole has never been an employee of the Federal Government. App. 9. Instead, he has worked only for entities that had contracts with the Department of Energy. SFI has submitted no evidence with its "notice" that Mr. Cole constituted an "agent" of the United States and that his statements should somehow be attributed as "admissions" of the United States.[3] See American Eagle Ins. Co. v. Thompson, 85 F.3d 327, 333 (8th Cir. 1996) (proffering party has burden of "establishing the necessary agency relationship" under FRE 801(d)(2)(D)). Accordingly, Mr. Cole's prior

---

[3] In response to the Government's motion to strike filed in System Fuels, Inc. (No. 03-2624C) and Northern States, plaintiffs did seek to establish that Mr. Cole's testimony would fall within the requirements of FRE 801(d)(2), relying in large part upon an order in Yankee Atomic Electric Co. v. United States, No. 98-126C, concerning the admission of documents prepared by contractors for the Office of Civilian Radioactive Waste Management over the Government's objection that these documents constitute hearsay. Yankee Atomic Electric Co. v. United States, No. 98-126C, 2004 WL 2450874, at *11 (Fed. Cl. Sept. 17, 2004). Although the Court, in that order, examined the nature of the relationship between the Office of Civilian Radioactive Waste Management ("OCRWM") and its contractors to determine whether FRE 801(d)(2) was a possible avenue for the admission of these documents, the Court ultimately did not rule upon that issue, instead deferring consideration until post-trial briefing. Id. Moreover, a finding that reports prepared at the request of DOE and with DOE's review constitute "admissions" pursuant to FRE 801(d)(2) cannot be expanded to allow the admission of statements of an individual contractor employee who has been required to testify pursuant to subpoena for which the agency has not authorized the statements. In response to these concerns about Mr. Cole's statements in Northern States, plaintiff's counsel withdrew Northern States' designations of Mr. Cole's testimony at the pre-trial conference in that case. Pre-Trial Conference, Northern States Power Co. v. United States, No. 98-484C (Fed. Cl.) (Oct. 18, 2006) at 71:1-2.

Case 1:04-cv-00262-CFL Document 141-2 Filed 07/09/2008 Page 18 of 50

testimony similarly cannot be designated as an "admission" by the United States under FRE 801(d)(2)(D).

C. SFI Has Identified No Foundation For Finding That The Remaining Witness Testimony Falls Within FRE 801(d)(2)(D)

With respect to the remaining individuals who were Government employees at the time of their depositions or trial testimony, SFI has failed to provide the necessary showing that the testimony that it has designated for admission falls within the scope of the responsibility for the employee for the following: Alan Brownstein, Susan Klein, Christopher Kouts, Nancy Slater, and Victor Trebules.[4] With respect to Susan Klein, SFI only has designated Ms. Klein's testimony that her position was as a "senior policy advisor" to Mr. Lake Barrett, Deputy Director, OCRWM, and that she had held that position since 1997. See Klein Deposition, Apr. 24, 2002, 11:10-12:15. SFI provides no further testimony regarding the scope of Ms. Klein's responsibilities. Similarly, SFI has designated two excerpts from two of the three days of deposition testimony from Nancy Slater regarding delivery commitment schedules ("DCSs") under the Standard Contract, but has not designated any testimony regarding Ms. Slater's position or her responsibilities that would allow the Court to determine that Ms. Slater's statements regarding DCSs should be considered to be within the scope of her employment. Similarly, SFI designated no testimony that would establish Alan Brownstein's responsibility for Annual Capacity Reports, delivery commitment schedules, the Monitored Retrievable Storage facility, or other matters discussed in his designated testimony or the period of his employment

[4] As explained below, we currently intend to call Mr. Kouts to testify in our case-in-chief. Deposition designations for Mr. Kouts are unnecessary given his expected testimony at trial.

with DOE. Without information regarding the subject matter encompassed by these individuals' positions in the Government, the Court is unable properly to determine that the statements which SFI seeks to introduce as substantive evidence are within the scope of the employment of the individuals and, therefore, independently admissible pursuant to FRE 801(d)(2).

Significantly, SFI's designations for other deponents (Messrs. Barrett, Milner, Pollog, and Zabransky) demonstrate SFI's understanding of the requirements of FRE 801(d)(2) and its obligation to establish that the individual was employed by the Government and the scope of that employment. For example, SFI has designated testimony for Messrs. Barrett and Milner that established their employment by DOE in the positions of the Deputy Director and the Chief Operations Officer, respectively, for the Office of Civilian Radioactive Waste Management ("OCRWM"). Barrett Deposition, Apr. 22, 2002, 10:21-11:5; Milner Deposition, May 1, 2002, 11:23-12:8. Although SFI should have designated additional testimony regarding the scope of employment for these individuals, we do not dispute that they occupied senior positions within OCRWM within DOE. SFI also has designated testimony regarding the scope of employment for Messrs. Pollog and Zabransky. Pollog Testimony from the trial in <u>Tennessee Valley Authority v. United States</u>, No. 01-249C (Fed. Cl.), Tr. 908:6-909:24; Zabransky Deposition, Aug. 5, 2004, 4110:15-4112:3. While we maintain foundational objections to portions of the testimony designated for all of these individuals, including objections that the testimony is outside their scope of employment, SFI has at least attempted to provide the scope of employment information required by FRE 801(d)(2). SFI's failure to attempt to establish that scope of employment for Mr. Brownstein, Ms. Klein, Mr. Kouts, Ms. Slater, and Mr. Trebules leaves the Court with no basis upon which to determine whether the designations may be

properly admitted pursuant to FRE 801(d)(2). As a result, SFI's designations for these five witnesses (in addition to the four individuals identified above – Messrs. Bartlett, Cole, Lawrence, and Morgan – who were not Federal employees at the time of their designated testimony) should not be admitted. See Long Island, 63 Fed. Cl. at 165; Globe, 61 Fed. Cl. at 97.

## III. SFI HAS NOT MADE THE PROPER SHOWING AS TO WHY DESIGNATED TESTIMONY SHOULD BE ALLOWED TO BURDEN THE RECORD

### A. SFI Has Failed To Establish Good Cause For Using Deposition Designations *In Lieu* Of Live Testimony At Trial

SFI has sought the admission of the testimony of 13 individuals from 40 days of deposition or trial, consisting of 390 additional transcript pages for the Court to consider. SFI has made no effort to show that any of the witnesses whose deposition testimony it has designated are unavailable to testify at trial. Moreover, the testimony is irrelevant, incomplete, and replete with objections, all of which need to be ruled upon before the Court considers its substance.[5] Because SFI has failed to meet its burden to show why this testimony should be admitted, the Court should exclude it from the record.

---

[5] At trial in Northern States, plaintiff's counsel further reduced the number of designations upon which Northern States intended to rely to those from Messrs. Barrett and Brownstein and Ms. Slater-Thompson. Rather than have the Court rule upon the objections to the testimony and consider the Government's counter-designations, the parties agreed with the Court that the parties would cite to those designations or counter-designations necessary to the parties' case in post-trial briefing and the Court will consider any objections to those designations or counter-designations during closing arguments to be held after the post-trial briefing is complete. With this procedure, the parties should prevent a large amount of unnecessary testimony from burdening the record. Similarly, in Pacific Gas & Electric Co. v. United States, the Court limited its consideration of designated testimony to that upon which the parties relied in post-trial briefing and struck the remaining testimony that the parties designated from the record. Pacific Gas & Electric Co. v. United States, 73 Fed. Cl. 333, 442-3 (2006).

Pursuant to paragraph 15(b) of Appendix A of the Court's rules, SFI must show "good cause" for using designated deposition and trial testimony, "other than as provided by [FRE] 801(d)." See RCFC, App. A, ¶ 15(b) ("Any party intending to present substantive evidence by way of deposition testimony . . . *shall show cause* why the deposition testimony should be admitted") (emphasis added)); see also Angelo v. Armstrong World Industrial, 11 F.3d 957, 963 (10th Cir. 1993) (proponent of using deposition testimony at trial bears the burden of proving that it is admissible in lieu of live testimony under Rule 32 of the Federal Rules of Civil Procedure). Although paragraph 15(b) of Appendix A itself does not expressly require that a party "show cause" in a written motion regarding the admission of FRE 801(d) evidence, it is clear that this Court has a preference for live testimony and that, even though FRE 801(d) evidence may be presented at trial and supported orally, the party seeking to introduce duplicative, cumulative, and unnecessary evidence must properly support that request.

In its "notice" of the designations, SFI asserts only that its designations are proper because they will "streamline the parties' trial preparation and reduce trial time and cost." SFI Notice, at 2 (Dec. 22, 2006). However, this reason does not amount to sufficient "cause" to permit SFI to justify the designation of a substantial amount of testimony that ultimately seeks an "end run" around the Court's order regarding the length of trial. The Court's existing scheduling order specifically states that trial in this matter will consume two weeks, beginning upon February 12, 2007. Scheduling Order, issued Dec. 8, 2006, at 2. Pursuant to this scheduling order, substantive evidence must be presented by both parties within the 10-day period set forth in the scheduling order. Although SFI claims in its notice that it seeks to "reduce" its trial time by avoiding calling live witnesses, it is actually attempting to supplement

its designated trial time. Further, particularly to the extent that the Government will have to address some of the out-of-context designated statements in these deposition designations with live witnesses, SFI's use of designations prejudices the Government by increasing the amount of live testimony that the Government will have to present. To eliminate the burden to the record of unnecessary designations, we request that SFI be required to read the designations upon which it intends to rely into the record and that the time required for this effort be counted against the trial time available to SFI. The Government's reading of counter-designations in response to these designations will be counted against the time allowed the Government in the presentation of its case.

Significantly, SFI has designated testimony of three individuals – Messrs. Kouts, Pollog, and Zabransky – whom the Government expects to call in its case-in-chief. SFI also has designated the testimony of an individual -- Mr. Zabransky – whom SFI has indicated it "may" call. If these individuals testify, as expected, SFI will have burdened the record with additional testimony that could have been elicited during cross-examination. See Renda Marine, Inc. v. United States, 66 Fed. Cl. 639, 645 (2005) (citing United States v. Int'l Bus. Machs. Corp., 90 F.R.D. 377, 382 (S.D.N.Y. 1981)) (disregarding designated deposition testimony of witnesses who testified at trial); Sacramento Municipal Utility Dist. v. United States, No. 98-488C, order, at 2 (Fed. Cl. March 16, 2005) (unpublished) (denying motion to designate prior testimony of witnesses who were to testify at trial). While we believe that SFI should not be allowed to designate testimony from witnesses who will testify at trial, to the extent that the Court allows it,

we ask that SFI be barred from cross-examining these witnesses upon the topics that are the subject of SFI's designations.[6]

B. When There Has Been No Showing Of Unavailability, There Is A Strong Preference For Live Testimony

SFI proffers no evidence, and makes no suggestion, that 12 of the 13 witnesses whose deposition and trial testimony that it has designated have been or are unavailable to testify at the trial in this case.[7] The Government is prepared to assist in making all former and current Government witnesses who appear upon SFI's proposed designation list available for trial, but, to date, we have received no inquiries from counsel for SFI regarding the availability of these individuals for trial. Even deposition testimony conceded to be an admission under FRE 801(d)(2)(D) should not be used in place of the deponent's live trial testimony when the deponent is readily available to testify at trial. Kolb, 109 F.R.D. at 127. SFI should be required

[6] Because of SFI's designations, this Court must review voluminous snippets of substantive testimony, replete with objections, as well as counter-designations, themselves replete with objections, and rule upon all objections, in order to admit the testimony into evidence. RCFC 32(d)(3)(A) ("Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if present at that time"). By submitting volumes of deposition testimony, SFI not only attempts to supplement its trial time, but also will significantly increase the Government's out-of-trial work.

[7] By order dated January 8, 2007, the Court granted the Government's motion to designate Mr. Morgan's testimony at trial in Northern States Power Co. v. United States, No. 98-484C, as substantive evidence in this case. The Government's designation of testimony including the entirety of the cross-examination by plaintiff's counsel. To the extent that SFI seeks to designate additional testimony of Mr. Morgan, the Government does not object to this testimony on the basis that Mr. Morgan is "unavailable" to testify, pursuant to RCFC 32(a)(2). However, we maintain our objection that Mr. Morgan's testimony cannot be admitted pursuant to FRE 801(d)(2) and our objections to the specific portions of Mr. Morgan's testimony that SFI has designated.

to present its case through live testimony at trial and should not be permitted to avoid this obligation by forcing the Court and the Government to read and analyze hundreds of pages of proposed testimony in addition to the evidence that SFI presents at trial.

SFI's failure to make a showing of unavailability flies in the face of established precedent. The preference for live testimony, when available, has been well-established by the courts:

> In both civil and criminal cases, our common law heritage has always favored the presentation of live testimony over the presentation of hearsay testimony by the out-of-court-declarant. See McCormick Evidence 2d § 244. The jury's observation of the demeanor of the witness and the effectiveness of cross-examination in the discovery of the truth are the traditional reasons for the preference even though the out-of-court statement had been given under oath.

United States v. Mathis, 559 F.2d 294, 299 (5th Cir. 1977); see Young & Assoc. Public Relations, L.L.C. v. Delta Air Lines, Inc., 216 F.R.D. 521, 522 (D. Utah 2003) ("[t]he deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand") (quoting from Judge Learned Hand in Napier v. Bossard, 102 F.2d 467, 469 (2d Cir. 1939)); Banks v. Yokemick, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001) ("The general rule is that testimony at all trials must be live . . . [D]eposition testimony is only a substitute, not to be resorted to if the witness can appear in person"). Live testimony is necessary to provide this Court with an opportunity to evaluate the witnesses' demeanor during the discussion of events in which the witnesses were involved. Clearly, the reading of a deposition transcript does not serve as an adequate alternative to evaluation of the witness' testimony in person. See American Steel Works v. Hurley Construction Co., 46 F.R.D. 465, 470 (D. Minn. 1969) ("[t]he taking of a deposition is not equivalent to having 'live' testimony"); see also Grimna v.

Makousky, 76 F.3d 151, 153 (7th Cir. 1966) ("strong preference of Anglo-American courts for live testimony"); Kolb, 109 F.R.D. at 127 ("when depositions are submitted in place of live testimony, the trial judge is denied the opportunity to question the witness . . . [c]learly, testimony by deposition is less desirable than oral testimony and should be used as a substitute only under very limited circumstances."). The preference for live testimony is recognized in Rule 32 itself, which provides that the Court may allow deposition testimony to be introduced unless it finds "it is not in the interests of justice, *with due regard to the importance of presenting the testimony of witnesses orally in open court* . . ." RCFC 32(a)(3)(E)(ii) (emphasis added).

The inquiry on the admissibility of deposition and trial transcripts under RCFC 32(a)(2) is further informed by this "long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person." 8A C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 2142, at 158 (2d ed. 1994) (discussing FRCP 32); see Fed. R. Evid. 804(b)(1), Advisory Committee Notes (1972) ("testimony given on the stand in person is preferred over hearsay," such as a witness' former testimony, and "tradition, founded in experience, uniformly favors the production of the witness if he is available" because the "opportunity to observe demeanor is what in a large measure confers depth and meaning upon oath and cross-examination"). SFI's introduction into evidence of deposition and trial testimony designations deprives the Court of the opportunity to see witnesses respond to questions, explain their testimony, as well as respond to any questions asked by the Court. Because this Court possesses national jurisdiction and can summon witnesses to testify form throughout the United States

when necessary (RCFC 63), this Court should adhere to the strong preference for live testimony and reject SFI's attempt to eliminate the need to present such testimony to the Court.

Finally, even if the Court in Globe is correct that deposition testimony satisfying the requirements of FRE 801(d)(2) is admissible even if the witness is available to testify, this Court retains the discretion to preclude wholesale introduction of the massive amounts of deposition testimony that SFI proposes to introduce, which threaten to transform this case into a document review case without testimony. See RCFC 1. A party's right to present its case in the manner that it desires "must be balanced against a court's leave to set reasonable limits on the admission of evidence." United States v. Blum, 62 F.3d 63, 67 (2d Cir. 1995) (citing Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). "[J]udges are accorded 'wide latitude' in excluding evidence that poses an undue risk of 'harassment, prejudice [or] confusion of the issues' or evidence that is 'repetitive or only marginally relevant.'" Blum, 62 F.3d at 67 (quoting Van Arsdall, 475 U.S. at 679); see United States v. Holmes, 44 F.3d 1150, 1157 (2d Cir. 1995) ("[a]bsent a clear abuse of discretion, a trial judge retains a wide latitude to exclude irrelevant, repetitive, or cumulative evidence"). Under the Rules, this Court possesses the clear authority to exclude the wholesale introduction of designated testimony, in place of live testimony.

## IV. TO THE EXTENT THAT WITNESSES DISCUSS EXHIBITS IN THEIR DESIGNATED TESTIMONY, SFI'S DESIGNATIONS CONFLICT WITH SFI'S OBLIGATION TO ESTABLISH PROPER FOUNDATION FOR THE ADMISSION OF EXHIBITS

SFI's designations are replete with testimony concerning documents that were identified as exhibits during the deposition or at trial. These designations are problematic because it is not clear from the designations what document is being discussed or whether a proper foundation has been laid for the witness to testify about that specific document. For example, SFI has

designated Mr. Barrett's testimony about the statements contained in a document generated by a group within OCRWM that did not include Mr. Barrett about studies that were undertaken by OCRWM:

> Q: Do you know what the, or are you familiar with the system study that is being referred to in this entry?
>
> A: Not this specific one.
>
> Q: Do you have a general understanding of the system study being referred to here?
>
> [Objection]
>
> A: There were various studies done in the eighties and also in the very early nineties on system performance rate, you know, what the costs were, schedules were, plausibility of them.
>
> Q: And these system studies looked at system issues, correct?
>
> A: Yes.
>
> Q: And am I correct that each one of these studies to which you've just referred confirmed an acceptance rate, an aggregate acceptance rate of 3,000 MTU per year?
>
> [Objection]
>
> A: I think its overstated to say it confirmed it. It showed that, you know, at 2,000 it does this, at 3,000 it does that, 4,000 it does something different. I don't know if they actually reached an absolute confirmation that 3,000 was the exact number, but generally they supported the system rate of 3,000 was a reasonable number.

Barrett Deposition, April 22, 2002, 197:4-197:22. It is unclear whether the document about which Mr. Barrett was being asked or the "various system studies" to which Mr. Barrett referred will be made part of the trial record. By including these designations, SFI is apparently trying to

provide the Court with testimony about documents that the Court will not have the ability to review or evaluate. These designations do not provide the Court with the benefit of an explanation as to why the documents are important or, conversely, why the documents should be disregarded.[8] For these reasons, the designations that concern documents should not be admitted by the Court.

V. NOTWITHSTANDING SFI'S FAILURE TO DEMONSTRATE THE ADMISSIBILITY OF DEPOSITION TESTIMONY IN THIS CASE, THE GOVERNMENT SUBMITS ITS LIST OF OBJECTIONS AND COUNTER-DESIGNATIONS

If the Court allows the testimony that SFI has designated to become part of the record in this case, the Government respectfully requests that the Court first rule upon the objections to that testimony indicated in the portions of the testimony designated. RCFC 32(b). The Government also requests that SFI be required to read the designated testimony into the record and that the time required for such reading count against SFI's available trial time. To the extent that the Court admits any designated testimony, the Government requests that the Court consider the Government's counter-designations from these same depositions. FRE 106; RCFC 32(a)(4). Further, to the extent that the Court allows SFI to designate testimony for Messrs. Kouts, Pollog, and Zabransky, who are currently expected to testify at trial, the Government requests that the Court preclude any cross-examination by SFI on the matters covered by those designations. The Government's objections and counter-designations are identified in Attachment A to this motion.

---

[8] When we have been able to discern that the designated testimony concerns a document that may or may not be identified in the testimony excerpted, we have lodged a "best evidence" objection. See Attachment A.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny the admission of the deposition and trial testimony that SFI has designated or, in the alternative, that the Court rule upon the Government's objections, require SFI to read the designated testimony into the record at trial and admit the Government's counter-designations.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Joshua E. Gardner
JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 305-7583
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

KEVIN B. CRAWFORD
SCOTT E. DAMELIN
LISA L. DONAHUE
JOHN C. EKMAN
MARIAN E. SULLIVAN
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

January 19, 2007

Attorneys for Defendant

Westlaw.



C
Adams v. California Dept. of Health Services
C.A.9 (Cal.),2007.
This case was not selected for publication in the Federal Reporter.Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Ninth Circuit Rule 36-3. (Find CTA9 Rule 36-3)
United States Court of Appeals,Ninth Circuit.
Avril ADAMS, Plaintiff-Appellant,
v.
State of CALIFORNIA DEPARTMENT OF HEALTH SERVICES, a public entity; Donnata Moreland, individually; Stephen G. Weyers, MD, individually and in his capacity as Chief Medical Officer; Lavonne Coen, individually and as a Supervisor, Defendants-Appellees.
**No. 05-56857.**

Submitted Dec. 5, 2006 FN*.

FN* This panel unanimously finds this case suitable for decision without oral argument. *See*Fed. R.App. P. 34(a)(2).

Filed Feb. 7, 2007.

**Background:** Unsuccessful applicant for position with state agency brought employment discrimination and retaliation action against agency and individual defendants. The United States District Court for the Central District of California, Gary A. Feess, J., granted partial summary judgment for agency and certain individual defendants, and subsequently entered judgment on jury verdict in defendants' favor and denied applicant's request for declaratory relief. Applicant appealed.

**Holdings:** The Court of Appeals held that:
(1) denying applicant's motion to amend complaint was not abuse of discretion;
(2) exclusion of evidence that applicant sought to introduce was not reversible error;
(3) applicant did not demonstrate requisite substantial need for testimony of out-of-district witnesses that could not otherwise have been met without undue hardship in seeking court's authorization to subpoena witnesses; and
(4) agency did not violate California Fair Employment and Housing Act (FEHA).

Affirmed.

West Headnotes

**[1] Federal Civil Procedure 170A ⚷840**

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(E) Amendments
170Ak839 Complaint
170Ak840 k. Time for Amendment. Most Cited Cases
Denial of motion to amend complaint by unsuccessful job applicant was not abuse of discretion in applicant's employment discrimination and retaliation action, given that applicant delayed attempting to amend complaint until more than three months after deadline set by court, even though she discovered facts giving rise to potential amendment more than two months before that deadline, that applicant failed to show good cause for not complying with scheduling order, and that allowing amendment of complaint after substantial discovery had taken place would have prejudiced defendants and caused undue delay. Fed.Rules Civ.Proc.Rule 16, 28 U.S.C.A.

**[2] Federal Courts 170B ⚷901.1**

170B Federal Courts
170BVIII Courts of Appeals
170BVIII(K) Scope, Standards, and Extent
170BVIII(K)6 Harmless Error
170Bk901 Exclusion of Evidence
170Bk901.1 k. In General. Most Cited Cases
Exclusion of evidence that unsuccessful job applicant sought to introduce in her employment discrim-


© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ination and retaliation action was not reversible error, given that applicant failed to lay a foundation for the evidence she wanted to introduce, failed to make an offer of proof, and, in some instances, failed to move for the admission of desired exhibits into evidence; it was not district court's responsibility to ensure that evidence was admitted.

**[3] Witnesses 410 ⚷4**

410 Witnesses
410I In General
410k3 Persons Who May Be Required to Appear and Testify
410k4 k. In General. Most Cited Cases

Unsuccessful job applicant did not demonstrate requisite substantial need for testimony of out-of-district witnesses that could not otherwise have been met without undue hardship in seeking court's authorization to subpoena witnesses in her employment discrimination and retaliation action, in that applicant gave no reason other than her unemployment status to show why burden should be shifted from her to witnesses to obtain their testimony. Fed.Rules Civ.Proc.Rule 45(c)(3)(B)(iii), 28 U.S.C.A.

**[4] Civil Rights 78 ⚷1127**

78 Civil Rights
78II Employment Practices
78k1124 Public Employment
78k1127 k. Hiring. Most Cited Cases

State agency did not violate California Fair Employment and Housing Act (FEHA) when it declined to hire job applicant because she was unqualified to perform essential functions of position sought. West's Ann.Cal.Gov.Code § 12900 et seq.

**[5] Federal Civil Procedure 170A ⚷2602**

170A Federal Civil Procedure
170AXVII Judgment
170AXVII(E) Notwithstanding Verdict
170Ak2602 k. Necessity for Motion for Directed Verdict. Most Cited Cases

Civil rights plaintiff waived her ability to move for judgment as a matter of law in her employment discrimination and retaliation action by failing to make such a motion at the close of the evidence and before submission of the case to the jury. Fed.Rules Civ.Proc.Rule 50(a, b), 28 U.S.C.A.

***591** B. Kwaku Duren, Los Angeles, CA, for Plaintiff-Appellant.
Martin Milas, Esq., Jessica K. Frazier Fax, AGCA-Office of the California Attorney General, Los Angeles, CA, for Defendants-Appellees.

Appeal from the United States District Court for the Central District of California; Gary A. Feess, District Judge, Presiding. D.C. No. CV-03-08920-GAF.

Before: PREGERSON, THOMPSON, and TALLMAN, Circuit Judges.

MEMORANDUM FN**

FN** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

****1** Plaintiff-Appellant Avril Adams appeals the district court's grant of partial summary judgment to Defendants-Appellees California Department of Health Services ***592** ("CDHS"), La Vonne Coen, and Donnata Moreland in this employment discrimination and retaliation action. Adams also appeals the judgment entered against her following a jury trial and the district court's denial of her request for declaratory relief. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

[1] The district court properly exercised its discretion in denying Adams's motion to amend. Adams delayed attempting to amend her complaint until more than three months after the deadline set by the district court, although she discovered facts giving rise to a potential amendment more than two months before that deadline. Adams failed to show


© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

good cause for her failure to comply with the district court's scheduling order under Federal Rule of Civil Procedure 16. *See*Fed.R.Civ.P. 16; *AmerisourceBergen Corp. v. Dialysist W., Inc.,* 465 F.3d 946, 952 (9th Cir.2006). The district court also properly determined that allowing Adams to amend her complaint after substantial discovery had taken place would have prejudiced the defendants and caused undue delay. *See AmerisourceBergen Corp.,* 465 F.3d at 953; *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 986 (9th Cir.1999).

[2] The evidentiary rulings of which Adams complains do not constitute reversible error. She failed to lay a foundation for the evidence she wanted to introduce, failed to make an offer of proof, and in some instances failed to move the admission of desired exhibits into evidence. It was not the district court's responsibility to ensure Adams's evidence was admitted. *See Tennison v. Circus Circus Enters., Inc.,* 244 F.3d 684, 689 (9th Cir.2001).

[3] In requesting authorization from the district court to subpoena out-of-district witnesses, Adams failed to demonstrate a substantial need for their testimony that could not otherwise have been met without undue hardship. *See*Fed.R.Civ.P. 45(c)(3)(B)(iii). Adams gave no reason other than her unemployment status as to why the burden should be shifted from her to the witnesses to obtain their testimony. Furthermore, one of the witnesses she sought to subpoena had been deposed, and his presence at trial was unnecessary.

[4] Although the district court may have granted summary judgment in favor of the defendants on Adams's California Fair Employment and Housing Act ("FEHA") claim on an impermissible basis-that she failed to oppose this portion of the defendants' requested summary judgment-we may affirm the district court's summary judgment on any basis supported by the record. *See N. Slope Borough v. Rogstad (In re Rogstad),* 126 F.3d 1224, 1227 (9th Cir.1997); *Cusano v. Klein,* 264 F.3d 936, 950 (9th Cir.2001). The summary judgment record shows that CDHS declined to hire Adams because she was unqualified to perform the essential functions of the position. *See Hastings v. Dep't of Corr.,* 110 Cal.App.4th 963, 2 Cal.Rptr.3d 329, 334 (2003). We therefore affirm the grant of summary judgment in favor of the defendants on the FEHA claim on this basis.

****2** We also affirm the district court's jury instructions pursuant to its findings of facts without substantial controversy under Federal Rule of Civil Procedure 56(d). The district court considered Adams's requests for modification of its findings of facts and made one suggested change. The district court's decision not to make other changes requested by Adams does not warrant reversal because even if such a decision constituted error, the error was harmless. *See Dang v. Cross,* 422 F.3d 800, 805 (9th Cir.2005).

***593** Adams's argument that she was entitled to declaratory relief because CDHS failed to obey the State Personnel Board's ("SPB") order to appoint her to the position of food and drug investigator lacks merit. The SPB ordered Adams's appointment to the position unless she was "unsuccessful in the balance of the selection process." Adams was unsuccessful in the balance of the selection process, and the district court's denial of her declaratory relief claim was appropriate.

[5] Adams waived her ability to move for judgment as a matter of law by failing to make such a motion at the close of the evidence and before submission of the case to the jury. *See*Fed.R.Civ.P. 50(a)-(b); *Janes v. Wal-Mart Stores, Inc.,* 279 F.3d 883, 886-87 (9th Cir.2002). The court's denial of her motion for a new trial was also proper because the jury's verdict was supported by the evidence presented at trial. *See Alford v. Haner,* 446 F.3d 935, 936 (9th Cir.2006).

Finally, if any errors occurred in the district court, they were harmless, and even considering their cumulative effect they did not render the jury's verdict unreliable. Adams was not denied a fair trial. *Cf. Jazzabi v. Allstate Ins. Co.,* 278 F.3d 979, 982 (9th


© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Cir.2002).

**AFFIRMED.**

C.A.9 (Cal.),2007.
Adams v. California Dept. of Health Services
220 Fed.Appx. 590, 2007 WL 464741 (C.A.9 (Cal.))

END OF DOCUMENT



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# In the United States Court of Federal Claims

No. 04-106 C
(Filed: June 20, 2008)

**************************************
*
**DAIRYLAND POWER COOPERATIVE,** *
*
Plaintiff, *
v. *
*
**THE UNITED STATES,** *
*
Defendant. *
*
**************************************

**ORDER**

On April 29, 2008, Plaintiff, Dairyland Power Cooperative ("Dairyland"), filed a Notice of Deposition and Trial Testimony Designations or, Alternatively, Motion for Leave to Admit Prior Testimony into Evidence ("Pl.'s Mot. to Admit"). Defendant, the United States ("the Government"), filed Defendant's Response to Plaintiff's Notice of Deposition and Trial Testimony Designations or, Alternatively, Motion for Leave to Admit Prior Testimony into Evidence ("Def.'s Resp.") on June 6, 2008. Dairyland filed a reply on June 17, 2008. Dairyland seeks to introduce into evidence portions of deposition and trial testimony of fifteen witnesses pursuant to Rule 801(d)(2) of the Federal Rules of Evidence (Fed. R. Evid.). For the reasons set forth below Dairyland's Notice of Deposition and Trial Testimony Designations or Alternatively, Motion for Leave to Admit Prior Testimony into Evidence is GRANTED.

## I. Background

### A. Dairyland's Position

According to Dairyland the portions of deposition or trial testimony that it seeks to admit are from witnesses who are representatives or employees of the government. Pl.'s Mot. to Admit at 1. Dairyland argues that pursuant to Paragraph 15(b) of Appendix A of the Rules of the United States Court of Federal Claims (RCFC) a motion seeking leave to present substantive evidence by way of deposition transcript is not required because the testimony is an admission under Fed. R. Evid. 801(d).[1] Without conceding that a motion is required, Dairyland moves to

[1]Paragraph 15(b) of Appendix A states, "[a]ny party intending to present substantive evidence by way of deposition testimony, other than as provided by Fed. R. Evid. 801(d), shall

admit the testimony of fifteen witnesses. Pl.'s Mot. to Admit at 2. According to Dairyland, when offering deposition or trial testimony under Fed. R. Evid. 801(d)(2), the offering party need not show that the witness would be unavailable to testify at trial. *Id*. at 2 (citing *Globe Sav. Bank v. United States*, 61 Fed. Cl. 91, 96 (2004)). Rather to be admissible under Fed. R. Evid. 801(d)(2)(D) the statement must: (1) be offered against a party; (2) be made by the party's agent or servant; (3) concerning a matter within the scope of the agency or employment; and (4) made during the existence of the agency or employment relationship. Pl.'s Mot. to Admit at 2 (citing Fed. R. Evid. 801(d)(2)(D), *Globe Sav. Bank*, 61 Fed. Cl. at 97).

Dairyland contends that all fifteen of the testimony designations satisfy the requirement of Fed. R. Evid. 801(d)(2)(D). The testimony is being offered against the government, it was taken while the declarants were working as employees or agents of the government, and it is within the scope of the declarants' employment or agency relationship with the government. Pl.'s Mot. to Admit at 3. Dairyland urges the Court to allow this prior testimony because it will greatly expedite and simplify trial in this matter. *Id*.

**B. The Government's Position**

The Government opposes Dairyland's request to admit as substantive evidence the deposition and trial testimony of "past and present Government employees." Def.'s Resp. at 1. According to the Government, pursuant to Paragraph 15(b) of Appendix A, Dairyland must show cause as to why the designated testimony should be admitted,[2] a burden that Dairyland has failed to meet. *Id*. The Government alleges that because six of the fifteen witnesses are listed as witnesses for either Dairyland or the Government, and these witnesses either will or may be called, there is no need for the admission of their designated testimony. *Id*. at 3. The Government also contends that Dairyland must show that the other nine witness are unavailable to testify at trial. *Id*. The Government argues that hearsay testimony is not a substitute for live testimony if the witness is available. *Id*. (citing *United States v. Mathis*, 559 F.2d 294, 299 (5th Cir. 1977).

---

serve and file a separate motion for leave to file the transcript of such testimony. The motion shall show cause why the deposition testimony should be admitted and identify specifically the portions of the transcript(s) that party intends to use at trial. See RCFC 32(a)(2) and (3). If the motion is granted, only those identified portions of the transcript may be filed. RCFC, Appendix A, Case Management Procedure, Paragraph 15(b).

[2]According to the Government, Dairyland is required to "show cause why the deposition testimony should be admitted and identify specifically the portions of the transcript(s) that party intends to use at trial." RCFC, Appendix A, Case Management Procedure, Paragraph 15(b). Dairyland argues because it seeks to admit the testimony pursuant to Fed. R. Evid. 801(d)(2), it is not required to show cause under the rules of this Court. *See Dairyland's Position, supra,* at1- 2.

Case 1:04-cv-00101-EJD Document 141-30 Filed 07/09/2008 Page 116 of 150

In addition to the issues raised by the Government above, it is also asserted that Dairyland has not properly addressed the numerous objections that were raised during the depositions and found in Attachment A of the Government's response. *Id*. The Governments asks the Court to rule on each individual objection to the designated testimony and requests that the Court require the parties to read the designations into the record during the trial. *Id*. The Government also comments on *Globe Sav. Bank*, arguing that even if Dairyland's representation regarding the case "is correct, and deposition testimony satisfying the requirements of Fed. R. Evid. 801(d)(2) is admissible in cases where a witness is available to testify in person, the Court retains the discretion to preclude the wholesale introduction of designated testimony in order to avoid transforming the trial into matter of document review." *Id*. at 5 (citing *Globe Sav. Bank*, 61 Fed. Cl. at 97). The Government directs the Court to *Kolb v. County of Suffolk*, in support of the contention that allowing the admission of prior deposition and trial testimony of fifteen individuals amounts to a trial by deposition, which is strongly disfavored in the court. Def.'s Resp. at n4 (citing *Kolb v. County of Suffolk*, 109 F.R.D. 125, 127 (E.D.N.Y. 1985)).

## II. Analysis

Pursuant to this Court's Trial Preparation Order of February 21, 2008, the parties were required to submit "[a]ny motions, pursuant to Appendix A, ¶ 15(b), or designation pursuant to Fed. R. Evid. 801(d) to present substantive evidence by way of deposition testimony or prior trial testimony. Such motions shall list the pages of such transcripts and include copies of the listed pages." Trial Preparation Order of February 21, 2008, at 3. It is based on this Order that Dairyland filed its Notice of Deposition and Trial Testimony Designations or, Alternatively, Motion for Leave to Admit Prior Testimony into Evidence on April 29, 2008.

In the Trial Preparation Order of February 21, 2008, it is clear that the Court recognized the distinction between a motion required under Appendix A, ¶ 15(b) and a designation pursuant to Fed. R. Evid. 801(d). The filing of a motion is required under RCFC, Appendix A, ¶ 15(b), for "[a]ny party intending to present substantive evidence by way of deposition testimony, *other than as provided by Fed. R. Evid. 801(d)* . . . ." RCFC, Appendix A, Case Management Procedure, Paragraph 15(b) (emphasis added). As delineated in the Trial Preparation Order, designated testimony that is an admission by a party-opponent is excluded from the show cause requirement of RCFC, Appendix A, ¶ 15(b). *See Yankee Atomic Electric Company v. United States*, No.98-126C, at * 7 (September 21, 2004).

The Court now turns to whether the designated testimony is a non-hearsay admission by a party-opponent. The pertinent provisions of Fed. R. Evid. 801(d) specifically state:

> A statement is not hearsay if (2) Admission by a party-opponent. The statement is offered against a party and is . . . (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

Fed. R. Evid. 801(d)(2)(C), (D). Under Fed. R. Evid. 801(d), there is no requirement of unavailability of the declarant. *Globe Sav. Bank*, 61 Fed. Cl. at 95 ("the general rules that the witness must be shown unavailable for testifying in court does not apply to a party's use of his *party-opponent's deposition* . . . []for the simple reason that every statement of an opponent may be used against him as an admission . . . []the opponent's sworn statement, though a deposition, is no less an admission than any other statement of his." citing 5 John Henry Wigmore, *Evidence in Trials at Common Law* § 1415, at 243 (James H. Chadbourn ed., 1972)). Therefore, the fact that six of these witnesses may be called at trial has no bearing on the admissibility of the deposition or trial testimony.

According to Fed. R. Evid. 801(d)(2)(D), the deposition and trial testimony must be (1) offered against a party; (2) by a party's agent or employee; (3) concerning a matter within the scope of agency or employment; and (4) made during the existence of the relationship. *Globe Sav. Bank*, 61 Fed. Cl. at 97; *see also Wisconsin Electric Power Company v. United States*, No. 00-697C, at *21 (August 16, 2007). The Court finds that all of the testimony is offered against the Government, a point which the Government does not contest. Def.'s Resp. at 8-11. Therefore, the first prong of Fed. R. Evid. 801(d)(2)(D) has been satisfied for all fifteen individuals.

The Court will review the second and fourth requirement of Fed. R. Evid. 801(d)(2)(D) concurrently. In the instant case, the Government concedes that twelve of the individuals were government employees at the time of their deposition or trial testimony. Def.'s Resp. at 11. That leaves three individuals at issue. According to the Government, Robert Burgoyne, Billy Cole and Michael Lawrence, were contractors not employees of the Government at the time of their deposition or trial testimony. *Id*. at 10; *see also* Pl.'s Mot. to Admit at 5, 7, 9. Additionally, Mr. Cole was retired when he testified in 2002. The Court holds, based on the reasoning found in this Court's Order on the parties' motions *in limine* issued on June 20, 2008, that the "contractors at issue here are akin to employees that carried out DOE's contractual responsibilities under the Nuclear Waste Policy Act [NWPA] and the Standard Contract." Order on Motions *in Limine* of June 20, 2008 (citing *Yankee Atomic Elec. Co.*, 2004 U.S. Claims LEXIS 363, at *8). Therefore, all fifteen individuals were government employees or akin to government employees at the time of their testimony. Additionally, Mr. Cole's proposed testimony concerns matters regarding the time when he was a government contractor working with the Department of Energy. Therefore, the Court holds that Mr. Cole's retirement status at the time of his testimony goes to the weight not the admissibility of his testimony. *Wisconsin Electric Power Company*, No. 00-697C, at *26. The second prong that the statement be made by a party's agent or employee has been satisfied. Fed. R. Evid. 801(d)(2)(D). Additionally, the final prong of Fed. R. Evid. 801(d)(2)(D), that the statements have been made during the existence of the relationship, has been satisfied for all fifteen individuals.[3]

[3]To the extent that Mr. Cole's retirement status effects the final prong of Fed. R. Evid. 801(d)(2)(D), the Court also concludes that Mr. Cole's testimony may be admissible under Fed. R. Evid. 804 or Fed. R. Evid. 807.

The final issue remaining is whether the testimony concerns matters within the scope of the agency or employment. Fed. R. Evid. 801(d)(2)(D). The Government contends that Dairyland has failed to establish that "all of the proffered testimony was provided within the scope of these individuals' employment." Def.'s Resp. at 11. A brief review of the designated testimony reveals that most, if not all, of the testimony pertains to matters within the scope of the individuals' employment. At the time of the deposition and/or trial testimony counsel for the Government was present. To the extent that the Government determined that a question was outside the scope of the individuals' employment, counsel objected. *See, inter alia,* Pl.'s Mot. to Admit, App. A at 55, 56, 58, 66, 68, 118, 176. Additionally, the Government has provided objections to Dairyland's proposed designations. Def.'s Resp., Attachment A at 3-23. In reviewing the deposition and trial testimony the Court is aware of all current or previously raised objections; however, an objection does not foreclose the admissibility of the testimony. The Court holds that the designated deposition and/or trial testimony concerns matters within the scope of agency or employment. Fed. R. Evid. 801(d)(2)(D); *Globe Sav. Bank*, 61 Fed. Cl. at 97. Additionally, all objections will receive appropriate consideration. Therefore, the third prong of Fed. R. Evid. 801(d)(2)(D) has been satisfied for all fifteen individuals.

The Court concludes that Dairyland's deposition and trial testimony designations are admissions of a party-opponent under Fed. R. Evid. 801(d)(2)(D). Dairyland has properly filed its "designation pursuant to Fed. R. Evid. 801(d) to present substantive evidence by way of deposition testimony or prior trial testimony." Trial Preparation Order of February 21, 2008. Furthermore, Dairyland need not show cause why the deposition testimony should be admitted. RCFC, Appendix A, Case Management Procedure, Paragraph 15(b).

**III. Conclusion**

For the reasons set forth above the deposition and trial transcripts designated by Dairyland on April 29, 2008, shall be admissible. To the extent there is a specific objection either within the deposition or trial transcript, or as part of the Attachment A of the Government's Response to Plaintiff's Notice of Deposition and Trial Testimony Designations the Court will give that objection appropriate consideration. The deposition and trial transcript shall not be read into the record. The Government shall file its proposed cross-designation of transcript pages on or before June 23, 2008, as previously ordered.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge

H
Perera v. U.S. Fidelity & Guar. Co.
M.D.Fla.,2007.
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.
Pamela PERERA, Plaintiff,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant.
**No. 8:02-CV-688-EAJ.**

Dec. 3, 2007.

Charles Paul Schropp, Schropp Law Firm, PA, Dennis Gus Diecidue, The Diecidue Law Firm, Raymond T. Elligett, Jr., Buell & Elligett, PA, Tampa, FL, for Plaintiff.
Jack R. Reiter, Adorno & Yoss, LLP, Miami, FL, Michael John McGirney, Daniels, Kashtan, Downs, Robertson & McGirney, Tampa, FL, for Defendant.

***ORDER***

ELIZABETH A. JENKINS, United States Magistrate Judge.
***1** Before the court are Curtis Carr's **Motion to Quash Trial Subpoena** (Dkt.230) and the **Emergency Motion of David K. Etheridge to Quash Subpoena and for Sanctions** (Dkt.233), both filed on November 30, 2007. For the reasons set forth below, the motions are granted.

The trial of this matter commenced on Monday, December 3, 2007 at 9:00 a.m. Curtis Carr ("Carr") and David K. Etheridge ("Etheridge"), both of whom Plaintiff and Defendant list as potential trial witnesses (Dkt.168), separately move to quash trial subpoenas issued by Defendant and allegedly served on them on Friday, November 30, 2007. Further, Etheridge requests that the court impose sanctions against defense counsel for a flagrant disregard of counsel's ethical duty to a non-party witness. The court heard Plaintiff's and Defendant's oral responses to the motions to quash on December 3, 2007.

Rule 45, Federal Rules of Civil Procedure, governs the subpoena of non-party witnesses. A party or attorney issuing a subpoena has a duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."Fed.R.Civ.P. 45(c)(1). Failure of this duty subjects the party or attorney to sanctions including lost earnings and reasonable attorneys' fees incurred in objecting to the subpoena. *Id.* A court may quash an otherwise properly issued subpoena for reasons including that the subpoena (1) fails to allow a reasonable time for compliance; (2) requires a non-party witness to travel more than a hundred miles from the place where that witness resides or is employed; or (3) subjects the witness to undue burden.Fed.R.Civ.P. 45(c)(3)(A) (i), (ii), (iv). Notwithstanding those reasons, the court may require a witness to travel more than a hundred miles in response to a subpoena if the issuing party can show a substantial need for the testimony, the need cannot be otherwise met without undue hardship, and the witness will be reasonably compensated. Fed.R.Civ.P. 45(c)(3)(B)(iii).

Here, both Carr and Etheridge have been given less than one business day to comply with the subpoenas. Indeed, Etheridge asserts that his subpoena was not served on him until 5:36 p.m. on Friday, November 30, 2007, after the close of business. Not only does neither subpoena allow the witnesses a reasonable time to comply, but both witnesses clearly reside over a hundred miles from Tampa (Carr in Richmond, Virginia; Etheridge in Burnsville, North Carolina). Moreover, Etheridge, a member of the North Carolina State Bar, has professional obligations to his clients during the trial of this case, of which Defendant was well aware prior to issuing the subpoena. Defendant submits that it subpoenaed these witnesses only for the purpose of establishing their unavailability.


© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Defendant fails to show a substantial need for the testimony of these witnesses or that the need cannot be otherwise met without undue hardship. Both of these witnesses were deposed before trial and both parties have designated portions of their depositions to be used at trial. Indeed, Defendant concedes that the subpoena power fails to extend to both witnesses because they reside outside the 100-mile radius contemplated by the Rule and that Defendant intends to use their deposition testimony at trial. Accordingly, the court finds that requiring Carr and Etheridge to comply with the subpoena would subject them to nothing but undue burden and expense. *Cf. Kimbrough v. City of Cocoa,* No. 6:05-CV-471-ORL-13KRS, 2006 WL 3412258, *1 (M.D.Fla. Nov.27, 2006) (quashing a subpoena for undue burden on the non-party witness).

***2** Upon consideration, it is **ORDERED AND ADJUDGED** that:

(1) Curtis Carr's Motion to Quash Trial Subpoena (Dkt.230) is **GRANTED;**

(2) David K. Etheridge's Motion to Quash Subpoena (Dkt.233) is **GRANTED;**

(3) **RULING IS DEFERRED** on the issue of sanctions pending Defendant's written response which shall be filed under the time normally allowed for responding by the Local Rules; and

(4) The Clerk of Court is directed to provide a copy of this order to both Carr and Etheridge through their attorneys of record.

**DONE AND ORDERED.**

M.D.Fla.,2007.
Perera v. U.S. Fidelity & Guar. Co.
Slip Copy, 2007 WL 4247699 (M.D.Fla.)

END OF DOCUMENT


© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# In the United States Court of Federal Claims

No. 00-697 C

**(FILED UNDER SEAL August 16, 2007)**[1/]

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This is one of a series of some fifty pending cases involving contracts between the Department of Energy ("DOE") and nuclear electric utilities for the disposal of spent nuclear fuel ("SNF"). Citing *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000) and *Northern States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000), defendant was found liable for partial breach of contract for failure to commence acceptance and disposal of SNF by January 31, 1998, and Plaintiff's Motion for Partial Summary Judgment on liability was granted. (Order of October 8, 2004, Dkt. 172.) Trial on damages will commence on September 10, 2007. Before the court are:

(1) Defendant's Motion *in Limine* to Exclude from Trial Exhibits Prepared by Government Contractors ("Contractors Motion");

(2) Defendant's Motion *in Limine* to Exclude the Testimony of Plaintiff's Expert Witness, Ms. Eileen M. Supko, Regarding the Impact of the Rate of Acceptance Under the Standard Contract ("Supko Motion");

---

[1/] Because it addresses documents submitted under seal, this Order is **sealed**. By motion or stipulation, parties shall submit any proposed redactions on or before **August 27, 2007**. Until that date, and pending resolution of any disagreements concerning proposed redactions, this Order shall not be publically available.

(3) Defendant's Motion for Partial Summary Judgment Regarding Plaintiff's Claim for Prejudgment Interest ("Cost of Capital Motion"); and

(4) Defendant's Motion to Strike Plaintiff's Deposition and Trial Testimony Designations and, in the Alternative, Motion *in Limine* to Preclude Reliance Upon Those Designations as Substantive Evidence Pursuant to RCFC 32(a) and Federal Rule of Evidence 801(d)(2) ("Deposition and Trial Testimony Designations Motion").

Plaintiff's filed Responses and defendant filed Replies.

**Contractors Motion**

According to defendant, included in plaintiff's Exhibit List filed December 18, 2006, are twenty-seven documents authored by companies under contract with DOE to develop a repository or other facility to store SNF – performance required by DOE under the Standard Contract. Authors include: Pacific Northwest Laboratories ("PNL"); Martin Marietta Energy Systems, Inc. ("Martin Marietta"); TRW Environmental Safety Systems, Inc. ("TRW"), and Battelle Memorial Institute ("Battelle").

Defendant seeks to preclude admission of these exhibits because:

(1) These contractors were hired to give advice, not to make policy decisions. They are not part of DOE, and their writings, some of which were never seen by DOE, are not government documents;

(2) The documents are not admissible under Fed. R. Evid. 803(8)(A) because they are not records, reports, statements, or data compilations of public officers or agencies setting forth the activities of the office or agency;

> (A) they are not public documents because DOE's contractors are not agents of the government; and
>
> (B) they were not prepared or adopted by DOE, so they are not public records or reports of DOE's activities;

(3) The contractor documents are not records of regularly conducted activity under Fed. R. Evid. 803(6);

(4) The contractors were not authorized to speak on DOE's behalf, so are not admissible under Fed. R. Evid. 801(d)(2)(C) or 801(d)(2)(D) as admissions of DOE;

(5) DOE has not adopted any statement contained therein, so they are not admissible under Fed. R. Evid. 801(d)(2)(B); and

(6) While some of the documents may be "ancient" (more than twenty years old), hearsay statements therein are not admissible.

Pointing to the critical role of DOE's contractors, plaintiff cites to the denial of substantially similar motions in *Pacific Gas and Electric Co. v. United States*, 73 Fed. Cl. 333, 439 (2006) and *Yankee Atomic Electric Co. v. United States*, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004). Plaintiff argues these documents are admissible under (1) Fed. R. Evid. 803(8)(a) as public records or reports of DOE's activities; (2) Fed. R. Evid. 801(d)(2)(C) as statements authorized by DOE; (3) Fed. R. Evid. 801(d)(2)(D) as statements of agents or servants of DOE; (4) Fed. R. Evid. 801(d)(2)(B) as documents in which DOE has "manifested an adoption or belief;" (5) Fed. R. Evid. 803(6) as business records; and/or (6) Fed. R. Evid. 803(16) as "ancient documents." Plaintiff also points out that some of the challenged documents are not contractor documents, and asserts that any objection that a document is a "draft" goes to its weight, not its admissibility.

In pursuit of its contractual responsibilities for which nuclear utilities were and are paying, DOE entered into management and operations ("M & O") contracts with highly-skilled entities, including national laboratories, authors of the contractor documents. To a significant extent, DOE's performance of its responsibilities under the Nuclear Waste Policy Act ("NWPA") and the Standard Contracts has been conducted through M & O contractors. *Yankee Atomic*, 2004 WL 245087, at *3. Plaintiff cites the trial testimony of Dr. John Bartlett, former Director of the Office of Civilian Radioactive Waste Management ("OCRWM"), that OCRWM had about 65 employees; its M & O contractor (then TRW Systems), with about 5,000 employees, did DOE's work. As noted by the undersigned's prior decision in *Yankee Atomic*, PNL, located in Richland, Washington, is one of ten national laboratories managed by DOE's Office of Science. PNL provides scientific and technical research

and "currently has approximately 4,200 staff members and a business volume of $750 million . . . . Battelle has operated [PNL] for DOE and its predecessors since 1965." www.pnl.gov/about (last visited July 27, 2007). *See Yankee Atomic*, 2004 WL 245087, at *2 (noting PNL's ".gov" web address and the Office of Science' fiscal 2005 budget request of $108 million for PNL); *Sacramento Mun. Util. Dist. v. United States*, 70 Fed. Cl. 332, 336 n.1 & 362 n.27 (2006) (granting in part a motion to file designated trial and deposition testimony as substantive evidence pursuant to Fed. R. Evid. 801(d) and RCFC 32(a), including that of "Mr. Michael Lawrence, Associate Laboratory Director for Energy Science & Technology at DOE's Pacific Northwest National Laboratory," and citing an April 1984 memorandum authored by Battelle, "DOE consultant").

Without prejudging (particularly since only parts of only some of the documents are provided), but in order to possibly narrow disagreements and encourage stipulations concerning admissibility, the court notes the following from plaintiff's Exhibit List:

1. PX55: January 24, 1984, "Memo from Fletcher (Battelle [PNL]) to Hall re: Revised Waste Acceptance Schedule from Draft Mission Plan." (Def.'s Contractors Mot., App. 1.) Neither Hall nor Fletcher are identified. The document is ancient. Fed. R. Evid. 803(16).

2. PX70: September 1, 1984, "DOE, 1984 Annual Review of the 1.0 Mill per kWh Waste Disposal Fee (PNL-5241), prepared by [PNL]." (Def.'s Contractors Mot., App. 1) The document is ancient and recites that it was prepared by PNL, operated by Battelle, under contract with DOE. (Pl.'s Resp. to Def's Contractors Mot., App. 3.)

3. PX101: "1986 Annual Review of the Adequacy of the 1.0 mill per kWh Waste Disposal Fee." (Def.'s Contractors Mot., App. 1.) The document is ancient and contains the same representation, that it was prepared by PNL, operated by Battelle, under contract with DOE. (*Id*. at App. 5-6.)

4. PX121: April 27, 1984,[2/] Final Draft of "Preliminary Analysis of the Total System Life Cycle Cost of the Civilian High-Level Radioactive Waste Disposal Program," prepared under contract by Roy F. Weston, Inc. for OCRWM. The document page provided has DOE's seal on the lower right-hand corner. (*Id.* at App. 7.) The document is ancient.

5. PX131: "1987 Annual Review of the Adequacy of the 1.0 mill per kWh Waste Disposal Fee," dated July 1987 prepared by PNL. It contains the same representation as PX101, that it was prepared by PNL, operated by Battelle, under contract with DOE. (*Id*. at App. 8-9.) By the time of trial, the document will be ancient.

6. PX196: May, 1990 "Commercial Spent Fuel Management and Concrete Cask Testing Programs Monthly Progress Report" was prepared by PNL, operated by Battelle, under contract with DOE. (*Id*. at App. 10-11.)

7. PX197: May 1, 1990, "Facility Interface Capacity Assessment (FICA) Project, Cask-Handling Assessment Point Beach Units 1 and 2." (Def.'s Contractors Mot., App. 1.) Other than an entry on plaintiff's Exhibit List, no part of this document was provided.

8. PX215: January 1, 1991, "Determination of Cost Effective Waste Management System Receipt Rates" by PNL operated by Battelle for DOE and noted as (1) presented at the Second Annual High-Level Radioactive Waste Management Conference, Las Vegas, Nevada, April 28 - May 3, 1991; and (2) "supported" by DOE. (Pl.'s Resp. to Contractors Mot., App. 12-13.)

9. PX223: June 28, 1991, "Memo from McDuffie to Langstaff Re: Recommended DOE Positions on 18 Contract Implementation Issues." (Def.'s Contractors Mot., App. 1.) Other than its entry on plaintiff's Exhibit List attached to defendant's Contractors Motion, no part of this document was provided, nor is the author or recipient identified.

10. PX230: September 1, 1991, "Martin Marietta Energy Systems, Inc., Site and Facility Waste Transportation Services Planning Document, Point Beach Nuclear

---

[2/] Plaintiff's Exhibit List records the document's date as April 27, 1987. The date is April 27, 1984. (Pl.'s Resp. to Contractors Mot., App. 7.)

Plant Unit 1, Wisconsin Electric Power Company, Draft, Revision 0." (Def.'s Contractors Mot., App. 1.) Other than its entry on plaintiff's Exhibit List, no part of this document was provided. Martin Marietta Energy Systems, Inc. was or is one of DOE's contractors. *Yankee Atomic Elec. Co. v. United States*, 2004 WL 2450874, *1 n.2. *See* www.oakridge.doe.gov/ornlseb/General%20Information%20Files/Small%20 Business%20Subcontracting%20Plan.htm (last visited July 19, 2007) (reporting that Martin Marietta Energy Systems, Inc. was awarded a contract in 1984 to manage and operate three Oakridge sites).

11. PX341: June 3, 1994, "Request for Proposal (RFP) for the Multi-Purpose Canister (MPC) System" by TRW, M & O Contractor for OCRWM. (Pl.'s Resp. to Contractors Mot., App. 14-17.) TRW was, or is, one of DOE's M & O contractors. *Yankee Atomic*, 2004 WL 2450874, *1 n.2, *3 n.5.

12. PX361: November 11, 1994, Clearance Request for Public Release of Information for material entitled "Lessons Learned From the DCS Process," signed by TRW. (Pl.'s Resp. to Contractors Mot., App. 18-19.)

13. PX396: October 25, 1995, letter from Blumford ("TRW") to Rousso ("DOE") regarding monthly status report on Delivery Commitment Schedules ("DCSs"). Other than its entry on plaintiff's Exhibit List, no part of this document was provided.

14. PX564: December 1, 1999, "Report to Update Total System Life Cycle Cost Estimate for Site Recommendation/License Application" prepared by TRW for DOE. (Pl.'s Resp. to Contractors Mot., App. 20-21.)

15. PX593: April 1, 2001, "Independent Cost Estimate Review of the Civilian Radioactive Waste Management Program 2000 Total Life Cycle Cost for DOE, OCRWM." (Def.'s Contractors Mot., App. 2.) Other than its entry on plaintiff's Exhibit List, no part of this document was provided.

16. PX774: undated PNL memorandum "re: Need for Maintenance of Full Core Reserve." (Def.'s Contractors Mot., App. 2.) Other than its entry on plaintiff's Exhibit List, no part of this document was provided.

17. PX912: February 26, 1984, memorandum “re: MRS Institutional Report.” (Def.’s Contractors Mot., App. 2.) Other than its entry on plaintiff’s Exhibit List, no part of this document was provided.

18. PX918: June 11, 1998, “Basis for the VA and TSLCC [Total System Life Cycle Costs] Cost Estimate Operational Waste Stream” prepared by TRW under contract with DOE/OCRWM. (Pl.’s Resp. to Contractors Mot., App. 22.)

19. PX922: October 19, 1990, “[l]etter from E.F. Benz to A. Brownstein, OCRWM DOE, re: Review of Draft Annual Capacity Report.” (Def.’s Contractors Mot., App. 2.) No other information was provided.

20. PX923: “Spent Fuel Acceptance Rate.” (Def.’s Contractors Mot., App. 2.) No other information was provided.

21. PX928: June 28, 1991, “Memo from P.A. McDuffie/ S.A. Vance to D.C. Langstaff/ A.B. Brownstein re: Recommended DOE Positions on 17 Contract Implementation Issues.” (Def.’s Contractors Mot., App. 2.) No other information was provided.

22. PX931: May 22, 1991, “Memo from P. A. McDuffie/ S. A. Vance to A. B. Brownstein/ D. C. Langstaff re: Comments on EEI/UWASTE Positions on Eleven Issues.” (Def.’s Contractors Mot., App. 2.) No further information was provided.

23. PX937: “1984 Annual Review of the Adequacy of the 1-Mill/KWH Waste Disposal Fee” dated September, 1984 prepared by PNL for DOE. (Pl.’s Resp. to Contractors Mot., App. 23.) The document is ancient.

24. PX938: “CRWMS [Civilian Radioactive Waste Management System] Program Baseline Change – Justification for Changing to a Multipurpose Canister-Based System.” (Def.’s Contractors Mot., App. 2.) No other information was provided.

25. PX940: March 12, 1984, “Memorandum from R. Liikala (Battelle) to Distribution re: Waste Management Program Strategy, attachment.” (Def.’s Contractors Mot., App. 2.) The document is ancient. No further information was provided.

26. PX952: May 25, 2000, "Document entitled Commercial Spent Nuclear Fuel Additional Storage Installations, Plans and Requirements." (Def.'s Contractors Mot., App. 2.) No additional information was provided.

27. PX969: February 2002 "Total System Life Cycle Cost for Site Recommendation Letter Report," prepared by Bechtel SAIC Company for DOE. (Pl.'s Resp. to Contractors Mot., App. 24-25.) There was testimony at the *Yankee Atomic* trial that Bechtel SAIC Company was OCRWM's M & O contractor. *See Yankee Atomic*, 2004 WL 2450874, at *9 n.15.

"A motion *in limine* is a preliminary motion that serves a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly would be inadmissable for any purpose." *PR Contractors, Inc. v. United States*, 69 Fed. Cl. 468, 469 (2006). However, "'[s]ome evidentiary submissions [] cannot be evaluated accurately or sufficiently by the trial judge in such a procedural environment.'" *Id.* at 469-70 (alterations in original) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

From the *Yankee Atomic* case, the court is generally familiar with M & O contractor documents in this context. However, the evidentiary rulings in that case concerning contractor documents were made in connection with trial proceedings. Although the DOE contractors are the same, required foundation, authenticity and other evidentiary requisites must be established for each document in this case, absent stipulation. In this regard, contractor documents may be relevant not only on planning, but also on issues of foreseeability, commercial reasonableness, or what performance was possible, reasonable or probable. Factors cited by defendant, including DOE's knowledge or possession of the document, the scope of the authoring contractor's employment, etc. are fact-intensive inquiries, best vented at trial. The court is not ruling on the admissibility of these documents, either individually or collectively. These determinations await trial. However, because the wholesale exclusion of these documents has not been established, and they are best evaluated at trial after appropriate foundations have been laid, the Contractors Motion *in limine* is denied without prejudice to renewal during, or after, trial to the extent a contractor document is proposed for admission, or cited as support for a proposed factual finding.

**Supko Motion**

Defendant seeks to preclude the testimony of Ms. Eileen Supko, one of plaintiff's proffered expert witnesses. Ms. Supko testified as an expert in several SNF trials to date, including before the undersigned.[3/] Applying different annual rates, Ms. Supko opines on the impact of those rates on two criteria identified by plaintiff's counsel: (1) the aggregate amount of additional at-reactor storage capacity that nuclear utilities would need to continue operations after January 31, 1998, and (2) the ability of utilities to "timely" decommission (permanently shut down) their nuclear power plants. Defendant objects to her testimony in this regard as not relevant, not based on a reliable or testable methodology, and inconsistent with plaintiff's theory of DOE's contractual obligations. Reasonableness of any particular rate is simply not an issue in this case according to defendant. As Ms. Supko admits no expertise in construing the Standard Contract or the NWPA, and is not offering an opinion as to how DOE would have performed, her expertise and opinion would not be helpful to the court, the hallmark of, and reason for, expert testimony, defendant argues.

Plaintiff counters that under the Rule 702 of the Federal Rules of Evidence, Ms. Supko's expert analysis and opinions, applying her specialized knowledge regarding SNF storage by commercial nuclear utilities, will assist the court "in understanding the practical implications of the acceptance rates that the parties have proffered in this damages case." (Pl.'s Resp. to Supko Mot., 2.)

Ms. Supko has more than twenty years of experience in the nuclear industry, with emphasis on storage and disposal of SNF. She holds a Bachelor of Science degree in Nuclear Engineering from Pennsylvania State University, and her

---

[3/] Ms. Supko was qualified as an expert witness in *Northern States Power Co. v. United States*, No. 98-484C (Wiese, J.) (Pl.'s Resp. to Supko Mot., App. 35-36) (qualifying on issues of acceptance rate, spent fuel management, spent fuel transportation and utility treatment of those issues), in *Southern Nuclear Operating Co. v. United States*, No. 98-614C (Merow, J.) (Pl.'s Resp. to Supko Mot., App. 35-36 (qualifying on DOE's nuclear waste management program, storage and disposal of SNF, modeling of acceptance rates, and allocations of SNF acceptance rights), in *Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639, 646-47 (2004) (Hodges, J.) (accepting as expert on acceptance rates, SNF storage and licensing). Briefing available electronically indicates she also testified at the trials in *System Fuels, Inc. v. United States*, No. 03-2624C (Braden, J.) and *System Fuels, Inc. v. United States*, No. 03-2623C (Lettow, J.).

Case 1:10-cv-00001-JFM Document 14-4 Filed 08/19/2008 Page 130 of 150

employment and professional background is outlined in her expert report. She is not being offered as an expert in determining DOE's obligations under the Standard Contract, which is a matter for the court. Rather, her modeling of the effect of different acceptance rates on the industry involves specialized knowledge that may be of assistance to the court. Defendant's specific objection in this regard is that the four alternative acceptance scenarios she applied are not found in any DOE document. Regardless, the application of various rates industry-wide can be of assistance to the court, not necessarily in construing DOE's contract obligations, but in resolving causation, foreseeability, reasonableness or windfall. In any event, however, her opinions and applications do not supplant the court's role as interpreter of legal obligations herein. *Pacific Gas and Electric Co. v. United States*, 73 Fed. Cl. 333, 433 (2006) ("Expert testimony is not objectionable simply because it embraces an ultimate issue to be decided by the court."). Defendant's objections to her methodology and support, or lack thereof, and the asserted inconsistencies in her calculations and applications, can be vented in cross-examination, with resulting impact on the weight the court may give to her opinion(s) and analysis. The Supko motion is **denied** without prejudice to renewal at trial.

**Cost of Capital Motion**

Defendant's motion for partial summary judgment titles a category of plaintiff's claimed damages as prejudgment interest. Plaintiff calls it weighted average cost of capital. Regardless of its label, these costs are included in the report of plaintiff's expert witnesses, Richard Sieracki, Chief Executive Office, and Kenneth Metcalfe, President, of the Kenrich Group, LLC ("Kenrich").[4/] (Pl.'s Resp. to Cost of Capital Mot., App. 1-22.) Defendant asserts the report presents plaintiff's damages in nominal[5/] or actual dollars ($48.4 million) and then adjusts that number upwards by more than forty million dollars to reflect the time value of money, to arrive at

---

[4/] Defendant has not objected to the qualifications of these experts.

[5/] "Nominal dollars retain their *number* over time, while real dollars retain their *value*." *Sandstrom v. Principi*, 358 F.3d 1376, 1377 n.1 (Fed. Cir. 2004) (emphasis in original) (rejecting claim that cost of living adjustment was not prejudgment interest). "[O]ne nominal dollar in 1969 . . . remained one nominal dollar in 1996 . . . . One real dollar in 1969, however, would retain its purchasing power, and would have been worth between four and five nominal dollars by 1996." *Id. See also District of Columbia v. United States*, 67 Fed. Cl. 292, 344 (2005) (inflationary increase would violate statutory bar).

"2007 dollars" ($91 million). Under the undisputed material facts, this increase is the substantive equivalent of prejudgment interest, defendant alleges, and since prejudgment interest is barred by statute, 28 U.S.C. § 2516(a), as a matter of law, defendant is entitled to a judgment of dismissal of this component of damages.

While agreeing that prejudgment interest is statutorily barred, plaintiff asserts its claim here is for the actual expense of raising the millions of dollars to pay for the additional SNF storage needed because of DOE's delay(s) in commencing performance. Plaintiff asserts it incurred costs to finance its mitigation expenditures including the construction of an Independent Spent Fuel Storage Installation ("ISFSI"). Costs were financed through the company's general capital structure, from public capital markets, not specific loans. Rates used to attract public funds were established by the Wisconsin Public Service Commission.

Consequential cost of capital resulting from a partial breach differs from prejudgment interest and is not barred as a matter of law, plaintiff adds, because: (1) weighted average cost of capital is the real economic cost of capital spent on SNF storage; while prejudgment interest is a statutory addition to all damages or costs; (2) weighted average cost of capital varies from year to year, while the rate of prejudgment interest remains constant regardless of capital market fluctuations; and (3) prejudgment interest is most often calculated as simple, not compound. Plaintiff concludes that: (1) recovery of its costs of financing is not precluded as a matter of law, and (2) sufficient material facts have been submitted that such costs were incurred; accordingly, defendant's motion for partial summary judgment should be denied.

Prejudgment interest against the United States is precluded by 28 U.S.C. § 2516(a) (2000).[6/] In *England v. Contel Advanced Systems, Inc.*, the Federal Circuit construed the "no-interest rule" broadly:

> [T]he force of the no-interest rule cannot be avoided simply by devising a new name for an old institution: "[T]he character or nature of 'interest'

---

[6/] 28 U.S.C. § 2516(a) provides:
(a) Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof.

> cannot be changed by calling it 'damages,' 'loss,' 'earned increment,' 'just compensation,' 'discount,' 'offset,' or 'penalty,' or any other term, because it is still interest and the no-interest rule applies to it."

384 F.3d 1372, 1379 (Fed. Cir. 2004) (citing *Library of Congress v. Shaw*, 478 U.S. 310, 321 (1986) (alterations in original) (quoting *United States v. Mescalero Apache Tribe*, 207 Ct. Cl. 369, 518 F.2d 1309, 1322 (1975)). *See also Columbia First Bank v. United States*, 54 Fed. Cl. 693, 699 (2002) (rejecting plaintiffs' claim for $4.4 million to "'compensat[e] the plaintiff for the lost use of the money for the intervening period'" because of the ban on prejudgment interest) (alteration in original) (record citations omitted).

However, there is a difference between interest *on* a claim (*i.e.*, prejudgment interest which begins accruing when a claim arises and continues through the pendency of the action) vice interest *as* a claim – such as interest actually paid to obtain capital to mitigate a breach or as a consequence of a breach, the latter being recoverable. "[The] distinction 'between interest as an element of damages and "interest on a claim"' is well-recognized." *Westfed Holdings, Inc. v. United States*, 52 Fed. Cl. 135, 163 (2002), *aff'd in relevant part*, 407 F.3d 1352 (Fed. Cir. 2005).[7/] *See also Centex Corp. v. United States*, 55 Fed. Cl. 381, 390 (2003), *aff'd*, 395 F.3d 1283 (Fed. Cir. 2005) ("Courts frequently distinguish, however, between 'interest *on* a claim,' generally precluded by the statute, and 'interest *as* a claim' which courts

[7/] Defendant is also mistaken in claiming error in plaintiff's reliance on *Westfed Holdings, Inc. v. United States*, 52 Fed. Cl. 135 (2002) and in asserting that two cases cited therein are "inapposite to an analysis of whether waiver of sovereign immunity exists that would permit [plaintiff] to recover its [weighted average cost of capital] damages from the Government pursuant to the no-interest rule." (Def.'s Reply at 4-5 n.3.) While the two cases cited do not concern the statutory ban on prejudgment interest against the United States, both cases do concern statutory bans on prejudgment interest, and both award consequential increased financing costs, rejecting claims an award would violate a statutory bar. *Pacific Gas and Electric Co. v. Howard P. Foley Co.*, Civ. No. 85-2922SW, 1993 WL 299219, at *4 (N.D. Calif. July 27, 1993) (rejecting claim that cost of capital was prejudgment interest barred by statute in private antitrust or RICO actions, commenting "[t]he mere fact that [] damage can be computed in terms of 'interest' does not make it impermissible prejudgment interest"); *United Power Ass'n v. L. K. Comstock & Co.*, Civ. No. 3-89, 1992 WL 402906, at *8 (D. Minn. Oct. 27, 1992) (similar).

may treat as an element of compensation. For that reason, . . . foreseeable financing costs can be an element of expectancy damages.").

Accordingly, financing costs are not interest and have been awarded in appropriate circumstances. "The Court of Federal Claims properly determined that the breach of the forbearances was a substantial factor in Bluebonnet's increased financing costs because it forced Bluebonnet to raise capital at a time when FIRREA had made investments in thrifts riskier and considerably less attractive." *Bluebonnet Sav. Bank v. United States*, 266 F.3d 1348, 1356 (Fed. Cir. 2001). Financing costs have been included in mitigation damages. *Old Stone Corp. v. United States*, 450 F.3d 1360, 1368 (Fed. Cir. 2006), *cert. denied*, 127 S.Ct. 1831 (2007). *See also LaSalle Talman Bank, F.S.B. v. United States*, 462 F.3d 1331, 1334-35 (Fed. Cir. 2006) (noting that all raised capital has a cost); *LaSalle Talman Bank v. United States*, 317 F.3d 1363, 1374-75 (Fed. Cir. 2003) (noting that "capital is not 'costless,'" and concluding the trial court erred in not allowing recovery of costs incurred in obtaining equity capital, because "the cost of capital does not depend on whether payment is made as debt, or out of anticipated future earnings."); *Wickham Contracting Co. v. Fischer*, 12 F.3d 1574, 1582 (Fed. Cir. 1994) ("Although interest on equity capital is not recoverable, a contractor may recover interest actually paid on funds borrowed because of the government's delay in payments and used on the delayed contract."). *Cf. J.D. Hedin Constr. Co. v. United States*, 456 F.2d 1315, 1330 (Fed. Cir. 1972) ("Interest paid on bank loans made because of financial stringency resulting from a breach by the [g]overnment of a contract between it and the borrower is not recoverable as an item of damage.")

Foreseeable costs of obtaining financing because of the government's breach are recoverable. *Bluebonnet Sav. Bank v. United States*, 266 F.3d 1348, 1354-58 (Fed. Cir. 2001). Defendant asserts *Bluebonnet* is distinguishable, limited to its facts – a contract was to infuse funds into an acquired thrift. (Def.'s Reply to Cost of Capital Mot., 4.) *Bluebonnet*, however, is not so factually limited; neither is its holding. While the underlying Assistance Agreement in *Bluebonnet* included the government's agreement to provide financial assistance, including promissory notes, asset coverage and yield maintenance, the government also agreed that for ten years the thrift could maintain regulatory capital at levels lower than required by regulation and could include subordinated debt in calculating required regulatory capital. Dividend forbearances would cover the costs of the acquisition. Passage of FIRREA breached the regulatory capital and dividend forbearances, which led to the thrift's

search for capital, at a cost. "The Court of Federal Claims properly determined that the breach of the forbearances was a substantial factor in Bluebonnet's increased financing costs . . . ." 266 F.3d at 1356. The Federal Circuit did not carve out the narrow allowance defendant urges.

Recoverability of incurred financing costs as a result of a government breach of contract was recently reiterated:

> In *Bluebonnet*, this court affirmed the Court of Federal Claims' finding that it was foreseeable that a thrift would be 'forced to seek even more capital to meet heightened regulatory requirements' and that it was also foreseeable that the costs and risks associated with meeting these requirements would have other negative economic consequences such as 'increas[ing] the costs of securing debt or equity financing.' 266 F.3d at 1356; *see also Home Sav. [of America, FSB v. United States*, 399 F.3d 1341,] [] 1355 (Fed. Cir. 2005); *cf. S. Cal. Fed. Sav. v. United States*, 422 F.3d 1319, 1336-37 (Fed. Cir. 2005).

*Citizens Fed. Sav. Bank v. United States*, 474 F.3d 1314, 1321 (Fed. Cir. 2007) (first alteration in original).

Both parties cite *Tennessee Valley Authority v. United States*, 69 Fed. Cl. 515 (2006), *appeal dismissed*, 188 Fed. Appx. 1006 (2006) – plaintiff in reliance; defendant asserting error. *Tennessee Valley Authority*, another SNF case, included in mitigation damages a category of costs referred to as an Allowance for Funds Used During Construction ("AFUDC"). For rate-making purposes, AFUDC was added to the amount of capital used on construction projects to compensate for the cost of those funds. This industry-wide practice is consistent with FERC regulations. 18 C.F.R. pt. 101 Uniform System of Accounts Prescribed for Public Utilities and Licensees Subject to the Provisions of the Federal Power Act, Electric Plant Instructions, ¶ 3.A(17) (AFUDC "includes the net cost for the period of construction of borrowed funds used for construction purposes and a reasonable rate on other funds when so used."). "TVA's cost of capital is equal to the interest rate that it pays on debt; as an entity of the federal government, TVA finances capital projects either through operating cash flows or through debt, and has no equity." 69 Fed. Cl. at 541. TVA's AFDUC was the average monthly interest charge on its short-term and long-term debts allocated to different projects based on the percentage of that project's

capital cost to the total capital projects of the plant. *Id.* Accordingly, a percentage of the total AFUDC was added to the costs of TVA's mitigating efforts. As the court there observed:

> Building the dry storage facilities required that TVA muster the financial resources to do so. The AFUDC represents the costs TVA incurred in so doing. The record is bereft of any evidence that TVA had sufficient financial resources derived from its cash flow to fund the tens of millions of dollars that were required for the dry storage facilities.

69 Fed. Cl. at 542. Likewise, here, defendant does not suggest that plaintiff had sufficient cash flow to pay the millions required to construct dry storage.

*Tennessee Valley* relied upon *Wickham Contracting Co. v. Fisher*, 12 F.3d 1574 (Fed. Cir. 1994). Under the Contracts Disputes Act ("CDA"), 41 U.S.C. § 607(g)(1) (1988), in *Wickham*, the non-breaching party sought to include in recovery of damages for the government's payment delay, interest on equity capital used to cover expenses. "Although interest on equity capital is not recoverable, a contractor may recover interest actually paid on funds borrowed because of the government's delay in payments and used on the delayed contract." 12 F.3d at 1582 (citing *Gevyn Constr. Corp. v. United States*, 827 F.2d 752, 754 (Fed. Cir. 1987) (applying 28 U.S.C. § 2516(a)).

*Tennessee Valley Authority* rejected the government's argument that a match between capital expenditures and a specific debt instrument was necessary for any recovery, holding that TVA's general debt costs, allocated by the size of the mitigation projects was sufficient. 69 Fed. Cl. at 541-42.

In *Richlin Security Service Co. v. Chertoff,* 437 F.3d 1296 (Fed. Cir.), *cert. denied*, 127 S.Ct. 253 (2006)[8/] the Federal Circuit, applying the CDA, held that a contractor could not recover interest on amounts paid by agency to discharge back wage liability because the contractor had not actually paid any interest. "[I]nterest is allowable only when the contractor has incurred a cost of money to finance [the] additional work." 437 F.3d at 1301 (quotations omitted) (second alteration in

[8/] The Federal Circuit's *Richlin* decision was issued on January 31, 2006, the same date as the CFC's decision in *Tennessee Valley.*

original). Actual out-of-pocket expenditure was described as a Congressional "bright-line rule for the computation of interest." 437 F.3d at 1302. The "changed work either must be directly traced to a specific loan or a necessity for increased borrowing must be shown to have been required by extra work or delay caused by the government." *Gevyn Constr. Corp. v. United States*, 827 F.2d 752, 754 (Fed. Cir. 1987). "In the latter situation, the allowance of interest depend[s] upon a specific showing that the course of borrowing was affected by the change in question, i.e., that apart from the normal borrowing pattern, there was a necessity to borrow specifically due to the change in question." *Singer Co. Librascope Div. v. United States*, 215 Ct. Cl. 281, 322, 568 F.2d 695, 718 (1977); *Framlau Corp. v. United States*, 215 Ct. Cl. 185, 198, 568 F.2d 687, 694 (1977) (To recover interest, plaintiff must establish that it was "forced to borrow to perform the changed work," and "prove what part, if any, of its large borrowings were attributable to compensable changes.") (footnote omitted); *Bell v. United States*, 186 Ct. Cl. 189, 404 F.2d 975, 984 (1968) (allowing a contractor to recover interest on borrowing caused by government changes to contract); *Dravo Corp. v. United States*, 219 Ct. Cl. 416, 427, 594 F.2d 842, 847 (1979) ("[I]t is clear that this court still holds to the view that direct tracing to a specific loan or necessity for increased borrowing is still required to be proven in order for a contractor to recover for interest costs under an equitable adjustment theory.").

Defendant has not established that, as a matter of law, under the undisputed material facts, plaintiff's claims for increased financing costs are prejudgment interest under 28 U.S.C. § 2516(a).

The Kenrich report quantifies plaintiff's claimed damages from 1998 through 2005, in both nominal and in "2007 dollars." The two categories are described in various ways, some supportive of defendant's position that the time-adjusted claim represents inflation, the time value of money – in short, interest, or its surrogate. The categories are described as "the nominal dollar and present value estimate of costs incurred by [plaintiff] in excess of those costs that would have been incurred if DOE disposed of spent fuel from the nuclear industry in 1998, at the assumed rate of acceptance." (Pl.'s Resp. to Cost of Capital Mot., App. 7.) "Nominal dollars are unadjusted for the effects of financing or the time value of money." (*Id*. at n.10.) In other parts of the report, however, actual out-of-pocket costs are described. "[P]ast damages are restated in 2007 dollars by applying [plaintiff's] after-tax weighted average cost of capital from the middle of each year in which damages were incurred

through March 27, 2007, *appropriately increasing past damages to account for the utility's financing costs*." (*Id.* at App. 8 n.13, emphasis supplied.)

> An additional element of past damages is the increased financing costs associated with the money spent by [plaintiff] to address the impacts of DOE's failure to pick up spent fuel from the nuclear industry in 1998. [Plaintiff] has had to finance the costs that it has incurred because of DOE's failure to perform in accordance with its contractual obligations from the time those costs were incurred. [Plaintiff's] after-tax weighted average cost of capital rates were used to calculate [plaintiff's] increased financing costs. The applicable annual rates were applied to the total nominal damages incurred each year from the middle of that year through March 27, 2007.

(*Id.* at App. 17.)

Mr. Metcalfe testified in deposition that plaintiff's weighted average cost of capital was calculated after-tax, because most of these mitigating expenses were deducted from income. "If you use a pre-tax rate, you would be overcompensating the plaintiff in this case. The pretax rate would be higher." (*Id.* at App. 25.) Without the cost of capital adjustment, "plaintiff is not made whole[;] . . . it spent money that it otherwise would not have spent. That money has a value including this pure time value of money, including inflation, since the dollars the utility spent are not worth what they were when they spent them, and including risk factors." (*Id.* at App. 25-26.) Mr. Metcalfe testified these risk factors were market-place driven. Plaintiff is a public, regulated utility that seeks both debt and equity capital from public markets.[9/] Rates for equity capital are approved by the Wisconsin Public Utility Commission and paid to investors who purchase common or preferred stock. Components of weighted average cost of capital include expenses of common equity, preferred stock, long-term debt and short-term debt. (*Id. at* App. 43.) "[Plaintiff's] weighted average costs of capital mean that its financing costs are greater than it otherwise would have had." (*Id.* at App. 58.)

---

[9/] Mr. Metcalfe also testified that Wisconsin Energy, a holding company, holds all the common stock of plaintiff. (*Id.,* App. 28-29.)

Historical components and calculations of plaintiff's capital structure from 1975 through 2000 were submitted with its Response, except for years 1994 and 1999, years in which the prior ratios and costs were used. The after-tax weighted average cost of capital goes through 2005. Apparently, there were no rate cases from 2000 until 2006. (*Id.* at App. 77-78.)

Plaintiff also submits an excerpt of the deposition of Ione Straub, Nuclear Power Department Budget Coordinator at the time plaintiff constructed the ISFSI. For the time period of 1989 through July of 1996, "the company issues commercial paper daily to cover its cash flow needs, so any costs that the company would incur would primarily be met with some form of – require some form of financing." (Pl.'s Resp. to Cost of Capital Motion, App. 82.) On the other hand, she testified that because funds were used to finance these mitigating projects, plaintiff and its ratepayers lost earning opportunities.

> [I]f the company would not have had to incur the charges associated with these projects, it would have been able to use those funds to go out and, if it had additional funds, to procure commercial paper or some other means to which it would have accrued some earnings, so there's alternatives to using the funds for this project. Lost opportunity, if you will, that the company lost by virtue of having to build these casks in the facility.

(*Id.* at App. 83-84.) In short, rates were higher because funds used for mitigation could have earned income.

David Ackerman, plaintiff's business consultant, testified in deposition that plaintiff's capital costs are financed proportionately with debt and equity capital. (*Id.* at App. 74, 78.) Operations and maintenance costs, and to a certain extent fuel expenses, are paid from rate revenue. (*Id.* at App. 75.)

In response to Interrogatory No. 63, after objections, plaintiff responded to inquiry as to the source, date and amount of funded capital:

> [Plaintiff] generally does not conduct financings for specific projects, and did not do so with respect to the ISFSI project. Therefore, all capital costs incurred by [plaintiff] were financed at the overall cost of

> capital, as detailed in Binder C, "Cost of Capital." The increased financing costs included in [plaintiff's] damage claim are based on the company's overall costs of capital as determined and authorized in rate cases by [plaintiff's] primary regulatory agency, the Public Service Commission of Wisconsin ("PSCW").

(*Id.* at App. 63-64.)

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The court must resolve all reasonable inferences in favor of the nonmoving party. *Id.* at 255. The burden on the moving party is to demonstrate that there is no genuine issue of material fact, and may be discharged upon a showing "that there is an absence of evidence to support the nonmoving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting *Celotex,* 106 S.Ct. at 2554). The burden then shifts to the nonmoving party to produce evidence setting forth specific facts of a genuine issue for trial. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 249-50, 256; *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 627 (Fed. Cir. 1984) (holding that the nonmovant "must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial."). To create "a genuine issue of fact, the nonmovant must do more than present some evidence on an issue it asserts is disputed." *Avia Group Int'l v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988).

Plaintiff has set forth sufficient genuine issues of material facts such as to preclude summary dismissal of its claim for costs of raising capital. *California Fed. Bank, FSB v. United States*, 245 F.3d 1342, 1350 (Fed. Cir. 2001) (reversing summary judgment on lost profits, because the existence and amount of economic damages are factual matters, not amenable to summary adjudication if there are genuine issues of material fact). Defendant did not meet its burden of establishing

that recovery of actual costs incurred to raise the capital needed to fund the mitigating efforts is precluded as a matter of law.

**Deposition and Trial Testimony Designations Motion**

Plaintiff's Deposition and Trial Testimony Designations filed December 18, 2006 (Dkt. 256), asserts the identified testimony transcript pages are from government agents and employees, are of statements concerning matters within the scope of their employment or agency, and therefore, are admissions of a party-opponent, admissible under Rule 801(d)(2)(D) of the Federal Rules of Evidence and *Globe Savings Bank, FSB v. United States*, 61 Fed. Cl. 91, 96-97 (2004).

Defendant moved to strike the designations and, alternatively to preclude their admission. Defendant argues admission should have been sought by motion, not notice,[10/] and in any event, the designations do not meet the requisites of Rule 801(d)(2)(D). If not stricken, the court should first rule on any objections defendant has to the admissibility of each particular statement, any admitted statement should be read into the record by plaintiff, and then defendant could read any counter-designations to complete the record.[11/]

Defendant's assertions that admission of deposition testimony requires witness unavailability, and counters the general preference for live testimony, are rejected. To admit statements of a party-opponent, plaintiff need not establish the witness is unavailable. Neither is the general preference for live testimony a consideration in this context. "Under [Rule 801(d)(2)(D)], the proffering party need not prove that the witness is unavailable nor does the party need also to invoke RCFC 32(a)(2) regarding admissibility of deposition testimony." *Rodriguez v. United States*, 69 Fed. Cl. 487, 494 n.8 (2006) (citing *Globe Sav. Bank,* 69 Fed. Cl. at 94-97). Likewise, in *Long Island Savings Bank, F.S.B. v. United States*, 63 Fed. Cl. 157, 164 (2004), the

---

[10/] Under RCFC, Appendix A, paragraph 15(b), "[a]ny party intending to present substantive evidence by way of deposition testimony, other than as provided by Fed. R. Evid. 801(d), shall serve and file a separate motion for leave to file the transcript of such testimony." To the extent required, the court construes plaintiff's Deposition and Trial Testimony Designations as a motion.

[11/] Defendant notes that deposition excerpts were required to be read into the record in the *Tennessee Valley Authority* and *Systems Fuels, Inc.* (No. 03-2623C) trials. (Def.'s Dep. Designation Mot. at 19, n.10.)

court noted a party "need not demonstrate that any of the declarants whose deposition testimony it seeks to admit at trial pursuant to Fed. R. Evid. 801(d)(2)(D) will be unavailable as witnesses at trial," and the "common law's preference for live testimony has no bearing on the use of party admissions as evidence." *Id.* at 163.

To be admissible under Rule 801(d)(2)(D), a statement must: (1) be offered against a party; (2) concern a matter within the scope of the employment with or for the party against whom the statement is offered; and (3) be made "during the existence of [his or her] relationship" with the United States. *Globe Savings*, 61 Fed. Cl. at 97 (citing cases). "It is a 'widely accepted rule that admissions of a party-opponent under Rule 801(d)(2) are accorded generous treatment in determinations of admissibility.'" *Id*. at 96 (citing *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 761 (7th Cir. 2003)).

Defendant does not dispute that plaintiff seeks to offer statements "against" defendant, satisfying the first requirement. As for the second, defendant argues that the witnesses were not authorized to make binding "admissions" on behalf of the government, and plaintiff has not matched the job descriptions for each witness with the statement sought to be admitted. Thirdly, that some of the witnesses were not employed by the government at the time of their depositions, defendant concludes, prevents their use.

An "admission" of a party-opponent, in this context, is broader than an "admission" of liability or other legal conclusion. Illustratively, "yes, we owe the money" may generally be a binding legal admission and conclusion; but, in determining whether a statement is hearsay, "admissions" are statements made in furtherance of the deponent's government job or contract. "Simply put, to qualify as an admission, the statement need only be related to the declarant's duties." 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 801.33[2][c], 801-74.3 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2007). "A statement is not hearsay if – . . . the statement is offered against a party and is . . . a statement by a person authorized by the party to make a statement concerning the subject." Fed. R. Evid. 801(d)(2)(D). In this context, a witness is authorized to make statements within the scope of his or her governmental responsibilities. "[I]n order to constitute an admission under FED. R. EVID. 801(d)(2)(D), the statements of the agent must concern a matter within the scope of the agency, made during the relationship." *First Annapolis Bancorp, Inc. v. United States*, 72 Fed. Cl. 369, 376 (2006) (citing *Nekolny*

Case 1:04-cv-00169-JFM Document 114-3-2 Filed 07/16/2007 Page 22 of 30

*v. Painter*, 653 F.2d 1164, 1171-72 (7th Cir. 1981)). *See also Rodriguez*, 69 Fed. Cl. at 493 n.8; *PR Contractors, Inc. v. United States*, 69 Fed. Cl. 468, 473 (2006).

Defendant concedes that the following twelve of the seventeen[12/] witnesses were employed by DOE or the Nuclear Regulatory Commission ("NRC") at the time of their trial or deposition testimony:

1. Mr. Lake Barrett,
2. Mr. Alan Brownstein,
3. Ms. Tammy Croote,
4. Ms. Susan Klein,
5. Mr. Christopher Kouts,
6. Mr. Ronald Milner,
7. Mr. Thomas Pollog,
8. Mr. Peter Rabideau,
9. Mr. Robert Roselli,
10. Ms. Nancy Slater (Thompson),
11. Mr. Victor Trebules,
12. Mr. David Zabransky.

Nevertheless, defendant argues, their designated testimony must concern matters within the scope of their duties for DOE's OCRWM or NRC, and that foundational requisite is missing. Defendant points out that in *Globe* and *Long Island*, the court required the plaintiffs match the subject matter of the designated deposition testimony with the deponent's job or position description.[13/] In response, plaintiff asserts that depositions of all of these witnesses concerned their work with either DOE's OCRWM or NRC. Presumably, deposition testimony that may not have been designated or other knowledge covers these concerns, and foundational issues can be

[12/] Defendant's Motion states deposition or trial testimony of **nineteen** present or former government or government contractor employees was proffered. Plaintiff's Deposition and Trial Testimony Designations, filed December 18, 2006, Dkt. 256, Attachment A, lists **seventeen.** Tammy Croote and Peter Rabideau are on defendant's list, but not on plaintiff's Designation. (*Cf.* Def.'s Dep. Designation Mot., 2 n.1 with Pl.'s Dep. and Trial Test. Designation, Dkt. 256, filed Dec. 18, 2006.) Counsel should address this matter at the Pretrial Conference.

[13/] In *Long Island*, the court matched job descriptions with proffered testimony. 63 Fed. Cl. at 164 n.15.

resolved through cooperation of counsel before trial. These designations are not stricken.

As for five individuals, Messrs. Kouts, Pollog, Rabideau and Zabransky and Ms. Croote – "whom the government expects to call in its case-in-chief, the designation of deposition testimony may not be necessary. *Sacramento Mun. Util. Dist. v. United States*, No. 98-488C, Order at 2 (Fed. Cl. March 16, 2005) (unpublished) (denying motion to designate prior testimony of witnesses who were scheduled to testify at trial.) Accordingly, in the event defendant calls any of these witnesses, Plaintiff's Deposition and Trial Testimony Designations as to Messrs. Kouts, Pollog, Rabideau and Zabransky and Ms. Croote, which the court construes as a motion, is **denied** and is otherwise **deferred** as set forth herein.

The following are four government officials who testified in deposition or trial in other SNF cases about their roles in the formation of the Standard Contract, the passage of the NWPA and early DOE planning in the 1980s and early 1990s, but were not federally employed at the time of deposition, twenty-some years later.

Michael Lawrence was Acting Director of OCRWM, Deputy Director of the NWPA Project Office at the time the Standard Contracts were signed, and Associate Laboratory Director for Energy Science and Technology at DOE's Pacific Northwest National Laboratory. *Southern Nuclear Operating Co. v. United States*, __ Fed. Cl. __, 2007 WL 2005164, at *15 (July 9, 2007); *Pacific Gas and Electric*, 73 Fed. Cl. at 389; *Yankee Atomic*, 73 Fed. Cl. at 266; *Sacramento Mun. Util. Dist.*, 70 Fed. Cl. at 336 n.1. He was also identified in response to interrogatories in this case, among "DOE Personnel" who were "involved with and may have knowledge of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the notice of proposed rule-making at 48 Fed. Reg. 5458 (Fed. [sic] 4, 1983)." (Pl.'s Resp. to Dep. Designation Mot., Exh. A, unn.3.)

Robert Morgan, was Director of the Nuclear Waste Policy Act Office, the precursor to the Office of Civilian Radioactive Waste Management within DOE from January 1983 to January 1984. He testified in at least four prior SNF trials. *Yankee Atomic*, *Tennessee Valley Authority*, *Pacific Gas and Electric,* and the recent trial in *Northern States Power Co. v. United States*, No. 98-484C (Fed. Cl.) where he testified on November 16, 2006. Def's Unopposed Mot. to Designate Prior Test. of Mr. Robert L. Morgan at 1-2, *Systems Fuels, Inc. v. United States*, No. 03-2623C (Fed. Cl. Jan. 5, 2007). In *Southern Nuclear*, defendant also designated prior trial

Case 1:00-cv-00097-JD Document 114 Filed 07/16/2007 Page 14 of 30

testimony of Mr. Morgan. Def.'s Objection to Pls.' Designations of Dep. and Trial Test. at 9, *Southern Nuclear Operating Co. v. United States*, No. 98-614C (Fed. Cl. Mar. 16, 2006). In two other SNF cases, defendant's unopposed Motions to Designate Prior Trial Testimony of Mr. Morgan, citing Mr. Morgan's retirement from federal service in 1988, the passage of time and his extensive prior testimony, were granted. Order, *System Fuels, Inc. v. United States*, No. 03-2624C (Fed. Cl. January 8, 2007) and Order, *System Fuels, Inc. v. United States*, No. 03-2623C (Fed. Cl. January 8, 2007).

Dr. Daniel Dreyfus also held high-level positions at DOE, including Director of DOE's Office of Civilian Radioactive Waste Management – a position requiring Presidential appointment and Senate confirmation. While he was retired at the time of his deposition, presumably his testimony, including the segments plaintiff wishes to admit, concern his work for DOE. Dr. Dreyfus is also on plaintiff's witness list.

Bernard Rusche was the "former first presidentially appointed and confirmed director of the Office of Civilian Radioactive Waste Management . . . ." (Pl.'s Resp. to Mot. to Strike, Exh. C, *Yankee* Trial Transcript Excerpt at 3697.) Defendant's witness list in *Yankee Atomic* included Benard Rusche:

> Mr. Rusche, former Director of the Office of Civilian Radioactive Waste Management, will provide testimony about the implementation of the NWPA and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, the issuance and content of the ACRs, and the technical, legal, and political obstacles to the implementation of the NWPA, as well as other relevant matters.

(Pl.'s Resp. to Dep. Designation Mot., Exh. B, 7.)

Defendant cites cases for the general rule that the employment or contractual relationship must have been intact at the time of the statement, or here, the deposition. For example in *Young v. James Green Mgt., Inc.,* 327 F.3d 616, 622-23 (7th Cir. 2003), in a letter, an employee resigned because of illegal racially discriminatory acts he was asked to perform, and referred any questions to his attorney. Plaintiffs sought to admit this letter as evidence of racial discrimination. "The district court determined that the letter was not admissible under this provision. We cannot say

that, in light of the totality of the circumstances, this ruling was an abuse of discretion. [The resigning employee's] assertions regarding discrimination were not made during the existence of his employment relationship [with defendant]. [The resigning employee's] letter of resignation is not admissible under Rule 801(d)(2)(D) because the justification for the rule simply is not present in this situation." 327 F.3d at 622.

Assuming the prior sworn testimony of these individuals concerned matters within the scope of their government employment or agency (indeed, that is why they were deposed - they were not questioned about their retirement plans), does their retirement or civilian employment at the time of their deposition change the evidentiary nature of their sworn testimony? While plaintiff does not advocate this position, and cites no authority therefore, it seems eminently reasonable in this case as to these former high-level government officials regarding matters that occurred in the 1980s and 1990s when they held those positions. Also, concerns have been raised about duplicative testimony, age and travel restrictions. For example, Mr. Morgan retired from the government in 1988 and does not live in close proximity. Deposition testimony of these witnesses has been admitted in other SNF cases, and efficiency would encourage at least the limited use of depositions. The court has heard live testimony of several of these witnesses in prior SNF trials. Defendant does not suggest any bias.

Presumably recognizing these four individuals were not federally-employed at the time of their depositions, plaintiff cites alternatively, Rule 801(d)(2)(c) which defines as non-hearsay statements of a party-opponent if the statements are (1) offered against a party opponent, and (2) the statement is by a person "authorized by the party to make a statement concerning the subject." Again, neither the unavailability of the witness not the general preference for live testimony, prevents admission.

These four individuals are not authorized to make statements on the government's behalf and plaintiff did not meet its burden in this regard, defendant replies. The court's determinations of agency here are not based upon the mere fact that these individuals were listed as having knowledge. They held high-level positions, and the court assumes the testimony tendered concerns their work done within the course and scope of those positions. For example, the deposition designation of Mr. Lawrence concerns his congressional testimony in 1984 after the contracts in issue were signed. Apparently, he was chosen or had authority to testify

to Congress about the contracts and/or early program developments. That his Congressional testimony was shortly after the contracts were signed does not alter the court's conclusion in this regard. Likewise, Mr. Morgan's deposition testimony concerning his presentation to the nuclear industry after the contracts were signed exemplifies his authority. That his public representation of DOE was after the contracts were signed goes to the weight of his statements, not the admissibility. Moreover, any statements he made on DOE's behalf concerning early program developments may be relevant. Certainly, government officials who testify before Congressional hearings on DOE's behalf, represent DOE at industry conferences, were "authorized" to say what they said. Defendant apparently concedes that at least Mr. Dreyfus, who held a series of senior positions within DOE and was staff director for the Senate Energy Committee "was authorized to make statements on behalf of DOE when he was employed by DOE does not make him an "agent" of DOE for the purposes of his deposition testimony given many years after he left Government service." (Def.'s Reply to Dep. Designation Mot., at 5-6.) Presumably, the subject deposition testimony concerns his time when he was so authorized, and not his activities after he left government service. That these gentlemen were authorized agents, deposed after that agency ended, but about that agency, goes to the weight of those statements, not their non-hearsay character.

Under the circumstances of this SNF litigation, under either Rule 801(d)(2)(C) or (D), and alternatively, under Rule 807 and RCFC 32(a)(3)(f), the court will not preclude the admission of these deposition designations. Accordingly, defendant's Motion to Strike and Motion in Limine on Rule 801(d)(2)(D) grounds is **denied**. *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1344 (Fed. Cir. 1999) (noting "significant additional assurances of reliability" may allow admissibility under Rule 807, the residual exception to the hearsay rule); *Kinser v. Gehl Co.*, 184 F.3d 1259, 1275 (10th Cir. 1999) ("Although Burrough had retired at the time of these depositions, he continued to perform consulting services for Gehl on projects he had overseen during his full-time tenure with the company. Moreover, prior to being deposed in this case, current project engineer Viesselmann met with Burrough to review the former structure of Gehl's engineering department and the evolution of Gehl's closed-throat balers' designs. The preceding facts, both of which were established through Viesselmann's testimony, constitute independent and sufficient corroboration of Burrough's authority to make statements on behalf of Gehl and/or the scope of Burrough's employment. Because the topics discussed in Burrough's deposition excerpts all concerned events and policies occurring during his

employment, the district court did not err in admitting this testimony pursuant to Rule 801(d)(2).").

After arguing plaintiff should not be able to admit trial testimony of Mr. Morgan from the trials in *Tennessee Valley Authority, Yankee Atomic, Pacific Gas and Electric*, and most recently, *Northern States Power Co. v. United States*, No. 98-484C (Fed. Cl.)[14/] or excerpts from his deposition, defendant turns around and requests that Mr. Morgan's prior trial testimony be admitted in defendant's case, citing RCFC 32(a). Mr. Morgan was deposed extensively in early coordinated discovery proceedings and has testified in four trials. Plaintiffs in all SNF cases presumably have had, and still have, similar motives to query Mr. Morgan about his recollection of the formation of the Standard Contract some twenty years ago – the same standardized contract shared by all plaintiffs, and the same breach by DOE. "The breach involved all the utilities that had signed the contract – the entire nuclear electric industry." *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1342 (Fed. Cir. 2000). Plaintiff objects, asserting it had no opportunity to cross-examine Mr. Morgan in the three prior SNF cases cited, and Mr. Morgan is needed to authenticate "the substantial number of documents on the Government's exhibit list, which documents were apparently submitted to him when DOE developed the Standard Contract." Plaintiff did, however, take Mr. Morgan's deposition and designated testimony from his deposition taken in this case on March 21, 2002; March 22, 2002; June 25, 2002; August 3, 2004; July 14, 2005 and November 15, 2006. Plaintiff does not suggest any questions that were not asked or any opportunity to fully vent at these depositions, nor does plaintiff suggest that counsel in any of the three prior trials did not adequately examine Mr. Morgan, nor that counsels' interests were other than co-extensive, nor that plaintiff has some additional party-specific area of questioning Mr. Morgan about events that occurred more than twenty years ago. While there may be some factual differences that may have affected the breath or vigor of examination by plaintiffs' counsel in these other matter, plaintiff does not suggest such. As negotiations are continuing between counsel on stipulations as to authentication of certain documents, presumably consensus can be reached in this regard.

---

[14/] In *System Fuels, Inc. v. United States*, No. 03-2623C (Fed. Cl.) and *System Fuels, Inc. v. United States*, No. 03-2624C (Fed. Cl.), the court granted defendant's motion to designate the entirety of Mr. Morgan's testimony from *Northern States* as substantive evidence.

Case 1:04-cv-00169-JFM Document 113 Filed 07/16/2007 Page 28 of 30

As for the statements of the remaining witnesses whose depositions were designated, defendant objects because the deponent or witness was a government contractor. In this regard, the court adopts the reasoning of the court in *Pacific Gas and Electric Co. v. United States*, 73 Fed. Cl. 333, 439 (2006) that contractor documents, in addition to being admissible under Fed. R. Evid. 803(A) (as "[r]ecords, reports, statements, or data compilations, in any from, of public offices or agencies, setting forth (A) the activities of the office or agency," were non-hearsay admissions of parties. That testimony and not documents are the subject of inquiry here does not alter the result. The same Rule is cited in both cases. *See also Beck v. Haik*, 377 F.3d 624, 639-40 (6th Cir. 2004). Accordingly, the deposition excerpts of Messrs. Edward Benz, Billy Cole and Patrick McDuffie are not precluded.

The question is not, as defendant suggests, whether the contractor was authorized to make admissions on behalf or, or bind, the government. Again, an admission is not as to legal liability. In this context, an "admission" may be that the design rate or other input or analysis used by the contractor within the scope of its contract with DOE was "X". Of course, data either directly or indirectly, must have been conveyed to DOE. That two of the deposition witnesses were retired at the time of their deposition, goes to the weight of those statements, not their nonhearsay character.[15/]

Rather, the inquiry is "whether (a) statements made by DOE contractors were beneficial to, and offered by, plaintiff, and (b) such statement were 'authorized by the party to make a statement concerning the subject." *Pacific Gas and Electric Co. v. United States*, 73 Fed. Cl. 333, 440 (2006) (citing *Yankee Atomic*, 2004 WL 2450874, at *8) ("recognizing that the 'authorized' nature of statements made by contractors in performing work for DOE [was] 'not in dispute'"). As the court in *Pacific Gas and Electric Co.* observed, the contractors were "'authorized'" – indeed, in some cases, contracted by DOE to make such statements. *Id.* These contractors were hired by DOE to do DOE's work. To the extent that any statement was made was inconsistent with DOE's position, contrary evidence or argument can be advanced.

---

[15/] Mr. Cole is on defendant's witness list. Accordingly, the court defers admission of his testimony, pending defendant's decision to call him as a witness. If he is, to the extent that defendant may object that cross-examination goes beyond the scope of direct, the court will allow cross-examination into the areas of the deposition designation, with re-direct, etc. as appropriate.

Before any of plaintiff's designations should be allowed, defendant asks that the court first rule on its objections to each particular designation, and then, to the extent that the court admits any designated testimony, the court should consider first, defendant's counter-designations. Plaintiff objects to the nature of some of defendant's objections. Any objections made at the time the deposition was taken are preserved. To the extent a designation or counter-designation is cited as support for a finding, any objections as to lack of foundation, etc. may then be raised. Plaintiff's objection to defendant's counter-designations will be addressed, to the extent required, at such time as plaintiff's deposition designations are cited in post-trial briefing in support of a factual finding. Any issues concerning exhibits referred to in deposition testimony will have to be resolved in that event.

Defendant asks that any deposition designations be read into the record which would encourage reduction in volume. Defendant asserts that the court's order that designations be read aloud in *Systems Fuels, Inc. v. United States*, No. 03-2623C (Fed. Cl.) significantly reduced volume. Another advantage is that objections can be ruled on upon offering the testimony, and defendant could then offer and read its counter designations, which would streamline the court's consideration of the same. If the court orders designated testimony be read into the record, plaintiff is prepared to stipulate that designations read into the record in *Tennessee Valley* and *Systems Fuels*, would not have to be read into the record again. Defendant objects to wholesale adoption of testimony in prior cases, arguing that "[h]aving opposed repeatedly any effort to consolidate these cases in the past, WEPCO cannot now seek 'consolidation' for the purpose of avoiding the need to read into the record the testimony that it seeks to designate as substantive evidence in this case." (Def.'s Reply at 14.) By limiting deposition designations to those cited in support of a proposed finding, the number may be reduced. Also, as the court has previously encouraged stipulations of facts (and continues to encourage the same), record size may also be lessened. Accordingly, the request that deposition designations be read into the record, is denied. RCFC 32(c) ("Except as otherwise directed by the court, a party offering deposition testimony pursuant to this rule may offer it in stenographic or nonstenographic for. . . ."). *Cf. Long Island Savings Bank, FSB v. United States*, 63 Fed. Cl. at 166.

Upon representation that some of the witnesses whose testimony has been designated may testify at trial, and upon consideration of the foregoing, deposition designations of any witness called to testify at trial will be disregarded. In that event,

Case 1:04-cv-00169-JFM Document 134 Filed 07/16/2007 Page 30 of 30

the court will allow cross-examination, re-direct, etc. to go beyond direct to address designated areas. *Pacific Gas and Electric,* 73 Fed. Cl. at 442 (striking deposition designations not relied upon by parties in post-trial briefing), *Renda Marine, Inc. v. United States*, 66 Fed. Cl. 639, 645 (2005) (citing *United States v. Int'l Bus. Machs. Corp.*, 90 F.R.D. 377, 382 (S.D.N.Y. 1981) (disregarding designated deposition testimony of witnesses who testified at trial); Order at 2, *Sacramento Mun. Util. Dist. v. United States*, No. 98-488C (Fed. Cl. March 16, 2005) (denying motion to designate prior testimony of witnesses who were to testify at trial).

Accordingly, it is **ORDERED**:

(1) Defendant's Contractors Motion is **DENIED** without prejudice to renewal during, or after trial, as set forth above, to the extent a contractor document is proposed for admission, or cited as support for a proposed finding;

(2) Defendant's Supko Motion is **DENIED** without prejudice;

(3) Defendant's Cost of Capital Motion is **DENIED;** and

(4) Defendant's Deposition and Trial Testimony Designations Motion is **GRANTED in part, DENIED in part and DEFERRED** as set forth above.

s/ James F. Merow
James F. Merow
Senior Judge