**No. 04-0010C**
**(Chief Judge Damich)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ENERGY NORTHWEST,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# ENERGY NORTHWEST'S REVISED NOTICE OF DESIGNATION OF DEPOSITION AND PRIOR TRIAL TESTIMONY OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO ADMIT PRIOR TESTIMONY INTO EVIDENCE

---

OF COUNSEL:

WILLIAM D. HEINZ
DAVID JIMÉNEZ-EKMAN
CHRISTOPHER TOMPKINS
APRIL A. OTTERBERG
Jenner & Block LLP
330 N. Wabash Ave
Chicago, IL 60611
(312) 222-9350

DAVID A. HANDZO
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6000

NORMAN M. HIRSCH
Jenner & Block LLP
330 N. Wabash Ave
Chicago, IL 60611
(312) 923-2782 (tel.)
(312) 840-7782 (fax)

*Attorneys for Plaintiff*

August 29, 2008

## Table Of Contents

Table Of Contents .......... I

Table Of Contents To Appendix – Volumes I To Vii .......... III

Table Of Authorities .......... VII

Introduction .......... 1

Statement Of Issues .......... 3

Statement Of The Case & Argument .......... 3

I. Energy Northwest's Designated Testimony Is Admissible As Substantive Evidence Under Federal Rule Of Evidence 801(D)(2) .......... 3

A. Deposition And Trial Testimony of Current Government Employees Is Admissible As Non-Hearsay Admissions Of A Party Opponent Under Rule 801(d)(2)(D) .......... 4

Lake H. Barrett .......... 6

Alan Brownstein .......... 8

Christopher Kouts .......... 10

Ronald A. Milner .......... 11

Thomas Pollog .......... 13

Robert M. Rosselli .......... 14

Nancy H. Slater-Thompson .......... 15

Victor W. Trebules .......... 17

Jeffrey Williams .......... 18

David Zabransky .......... 19

B. Designated Portions Of Testimony Of Retired Government Officials Are Admissible Under Rule 801(d)(2)(C) Or RCFC 32(a)(3)(E) .......... 21

Dr. Daniel Dreyfus .......... 23

Michael J. Lawrence .......... 24

Robert L. Morgan .......... 26

Benard Rusche ........ 27

C. Designated Portions Of The Testimony Of A Government Contractor Are Admissible Under Rule 801(d)(2)(D). ........ 28

Billy Cole ........ 28

II. Deposition Testimony Of The Government's Rule 30(B)(6) Witnesses Is Admissible Against The Government As Substantive Evidence Under Rule 32(A)(2) Of The Rules Of The Court Of Federal Claims. ........ 30

Susan Klein ........ 32

Christopher Kouts ........ 32

Thomas Pollog ........ 34

CONCLUSION ........ 36

## Table Of Contents To Appendix – Volumes I to VII

### Volume I

Documents Cited

DOE's Responses to Utility Plaintiffs' First Set of Interrogatories.......................... A 0001

DOE's Responses to Utility Plaintiffs' Joint Supplemental Interrogatories............. A 0013

April 3, 2002 Notice of Rule 30(b)(6) Deposition.................................................. A 0028

April 18, 2002 Notice of Rule 30(b)(6) Deposition................................................. A 0033

November 12, 2004 Notice of Rule 30(b)(6) Deposition ........................................ A 0039

March 2, 2005 Notice of Rule 30(b)(6) Deposition................................................. A 0043

April 19, 2007 Notice of Rule 30(b)(6) Deposition................................................. A 0047

June 9, 2008 Notice of Rule 30(b)(6) Deposition.................................................... A 0050

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C, 2004 WL 2450874
(Fed. Cl. Sept. 17, 2004) (unpublished)............................................................ A 0052

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C, slip. op.
(Fed. Cl. Sept. 21, 2004) (unpublished)............................................................ A 0065

*Wisc. Elec. Power Co. v. United States*, No. 00-697C, slip op.
(Fed. Cl. Aug. 16, 2007) (unpublished)............................................................ A 0075

Defendant's Unopposed Motion to Designate Prior Trial Testimony of
Mr. Robert L. Morgan in System Fuels ............................................................ A 0105

### Volume II

Deposition Transcripts and Trial Testimony Excerpts

Chart of Energy Northwest Deposition and Trial Testimony Designations ............. A 0111

Barrett, Lake ............................................................................................................ A 0123
April 22, 2002 ........................................................................................ A 0124
April 23, 2002 ........................................................................................ A 0149
April 26, 2002 ........................................................................................ A 0173
May 8, 2002 ........................................................................................... A 0204
May 10, 2002 ......................................................................................... A 0228
May 14, 2002 ......................................................................................... A 0252

**Volume II (continued)**


Brownstein, Alan ........ A 0257
April 9, 2002 ........ A 0258


**Volume III**


Brownstein, Alan (continued) ........ A 0282
April 10, 2002 ........ A 0282
April 11, 2002 ........ A 0308
June 14, 2002 ........ A 0319

Cole, Billy M. ........ A 0328
March 12, 2002 ........ A 0329
March 13, 2002 ........ A 0360
June 4, 2002 ........ A 0369

Dreyfus, Daniel ........ A 0373
May 15, 2002 ........ A 0374

Klein, Susan ........ A 0384
April 24, 2002 (Rule 30(b)(6)) ........ A 0385
April 25, 2002 (Rule 30(b)(6)) ........ A 0419

Kouts, Christopher ........ A 0428
January 30, 2004 ........ A 0429
August 2, 2004 (in the *Yankee Atomic* Trial Transcript) ........ A 0440


**Volume IV**


Kouts, Christopher (continued) ........ A 0445
April 11, 2005 (Rule 30(b)(6)) ........ A 0445
July 12, 2005 (in the *TVA* Trial Transcript) ........ A 0459
January 16, 2007 (in the *System Fuels Mississippi* Trial Transcript) ........ A 0463
April 12, 2007 (in the *System Fuels Entergy Arkansas* Trial Transcript) ........ A 0465
May 1, 2007 (Rule 30(b)(6)) ........ A 0472
May 2, 2007 ........ A 0484
June 12, 2008 (Rule 30(b)(6)) ........ A 0502

Lawrence, Michael ........ A 0531
May 20, 2002 ........ A 0532
May 21, 2002 ........ A 0572
November 16, 2007 (in the *Carolina Power* Trial Transcript) ........ A 0587

## Volume V


Milner, Ronald ........ A 0599
May 1, 2002 ........ A 0600
May 2, 2002 ........ A 0629
May 3, 2002 ........ A 0661
May 7, 2002 ........ A 0675
May 8, 2002 ........ A 0690
August 11, 2004 (in the *Yankee Atomic* Trial Transcript) ........ A 0695

Morgan, Robert ........ A 0703
March 21, 2002 ........ A 0704
March 22, 2002 ........ A 0737
June 25, 2002 ........ A 0745
August 3, 2004 (in the *Yankee Atomic* Trial Transcript) ........ A 0751
November 13, 2007 (in the *Carolina Power* Trial Transcript) ........ A 0757


## Volume VI


Pollog, Thomas ........ A 0762
April 11, 2002 (Rule 30(b)(6)) ........ A 0763
April 12, 2002 (Rule 30(b)(6)) ........ A 0799
May 15, 2002 (Rule 30(b)(6)) ........ A 0819
May 16, 2002 (Rule 30(b)(6)) ........ A 0823
August 4, 2004 (in the *Yankee Atomic* Trial Transcript) ........ A 0826
July 12, 2005 (in the *TVA* Trial Transcript) ........ A 0839
November 15, 2006 (in the *Northern States* Trial Transcript) ........ A 0846

Rosselli, Robert ........ A 0855
April 15, 2002 ........ A 0856
April 16, 2002 ........ A 0885

Rusche, Benard ........ A 0887
May 16, 2002 ........ A 0888
May 17, 2002 ........ A 0911

Slater-Thompson, Nancy ........ A 0921
April 21, 1999 ........ A 0922
April 22, 1999 ........ A 0932

## Volume VII

Slater-Thompson, Nancy (continued) .......... A 0941
June 13, 2002 .......... A 0941

Trebules, Victor .......... A 0955
April 17, 2002 .......... A 0956
April 18, 2002 (Deposition in Yankee Cases) .......... A 0982

Williams, Jeffrey .......... A 0985
June 11, 2002 .......... A 0986
January 22, 2004 .......... A 0993

Zabransky, David .......... A 1000
April 17, 2002 .......... A 1001
April 18, 2002 .......... A 1027
April 19, 2002 .......... A 1050
June 5, 2002 .......... A 1057
June 6, 2002 .......... A 1060
January 29, 2004 .......... A 1064
August 5, 2004 (in the *Yankee Atomic* Trial Transcript) .......... A 1067
March 29, 2005 (in the *SMUD* Trial Transcript) .......... A 1080
April 12, 2005 (Rule 30(b)(6)) .......... A 1083
July 12, 2005 (in the *TVA* Trial Transcript) .......... A 1092
October 27, 2005 (in the *Southern Nuclear* Trial Transcript) .......... A 1097

# Table Of Authorities

## Cases

*B-W Acceptance Corp. v. Porter*, 568 F.2d 1179 (5th Cir. 1978) .......... 21

*Glendale Fed. Bank, F.S.B. v. United States*, 39 Fed. Cl. 422 (1997) .......... 21

*Globe Sav. Bank, F.S.B. v. United States*, 61 Fed. Cl. 91 (2004) .......... passim

*In re Hanford Nuclear Reservation Litig.*, 521 F.3d 1028 (9th Cir. 2008) .......... 21

*Kinser v. Gehl Co.*, 184 F.3d 1259 (10th Cir. 1999), *abrogated on other grounds by Weisgram v. Marley, Co.*, 528 U.S. 440 (2000) .......... 21

*Long Island Sav. Bank, F.S.B. v. United States*, 63 Fed. Cl. 157 (2004) .......... 5

*P.R. Contractors, Inc. v. United States*, 69 Fed. Cl. 468 (2006) .......... 5

*Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292 (9th Cir. 1983) .......... 22

*Rodriguez v. United States*, 69 Fed. Cl. 487 (2006) .......... 5

*Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000) .......... 29

*Sacramento Mun. Util. Dist. v. United States*, 70 Fed. Cl. 332 (2006) .......... 26, 27, 28, 30

*Sys. Fuels, Inc. v. United States*, 78 Fed. Cl. 769 (2007) .......... 26, 27, 30

*Weaver-Bailey Contractors, Inc. v. United States*, 19 Cl. Ct. 474 (1990) .......... 31

*Wisc. Elec. Power Co. v. United States*, No. 00-697C, slip op. (Fed. Cl. Aug. 16, 2007) .......... passim

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004) .......... 29, 30

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C, slip. op. (Fed. Cl. Sept. 21, 2004) .......... 6

## Other Authorities

Fed. R. Evid. 801(d)(2)(D) .......... 4

## Rules

Court of Federal Claims Rule 32(a) .......... 3, 21, 30, 31

Court of Federal Claims Rule 32(a)(2) .......... passim

Court of Federal Claims Rule 32(a)(3)(E) .......... 21, 23, 30

FED. R. EVID. 801(d)(2) .................................................. 2, 3

FED. R. EVID. 801(d)(2)(C) .................................................. 3, 21, 23, 24

FED. R. EVID. 801(d)(2)(D) .................................................. passim

Rules of the Court of Federal Claims, App. A, ¶ 15(b) .................................................. 1, 2

**Treatises**

GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE .................................................. 21

## Introduction

Pursuant to the Trial Preparation Order entered by this Court on April 21, 2008 as amended and RCFC Appendix A, ¶ 15(b), Plaintiff Energy Northwest hereby respectfully submits this Revised Notice of Designation of Deposition and Prior Trial Testimony or, In the Alternative, Motion for Leave to Admit Prior Testimony Into Evidence ("the Revised Notice"), along with an Appendix containing certain designated deposition and prior trial testimony of witnesses of Defendant, the United States Government ("the Government"), that Energy Northwest intends to use as substantive evidence at the trial in this action, scheduled to commence on February 2, 2009. A listing identifying the witnesses and the designated transcript pages and lines is included in the appendix filed concurrently with this Revised Notice, at App. 111-22,[1] and the identified transcript pages are included at App. 123-1106.[2]

As this Court is aware, at the August 18, 2008 status conference with the Court, Energy Northwest offered to reduce the amount of testimony it had previously designated, though the Court had already denied the Government's motion to strike Energy Northwest's designations. (Dkt. No. 160, 8/12/08 Order.) Attached to this Revised Notice is a smaller Appendix containing a reduced number of designations of prior testimony and also incorporating the designations attached to Energy Northwest's Supplemental Motion for Leave to Admit Prior Testimony Into Evidence (Dkt. No. 138 ("the Supplemental Motion")).[3] This Revised Notice is substantively

---

[1] Citations to "App.__" refer to identified page of the appendix titled "Energy Northwest's Appendix In Support Of Its Revised Notice Of Designation Of Deposition And Prior Trial Testimony Or, In The Alternative, Motion For Leave To Admit Prior Testimony Into Evidence."

[2] Although encompassed in the listing of prior testimony designations at App. 111-22, we have omitted attorney objections and colloquy from the highlighted portions of the transcript pages at App. 123-1106.

[3] As counsel for Energy Northwest explained at the August 18, 2008 status conference, Energy Northwest offered to stipulate to using the acceptance rate the Federal Circuit determined in the *Pacific Gas & Electric Co. v. United States*, No. 2007-5046 (Fed. Cir. August 7, 2008) opinion should apply in these SNF cases. Because the Government has indicated that it will not agree to

the same as the Corrected Notice that Energy Northwest previously filed with the Court on June 3, 2008 (Dkt. No. 118), except that it (1) updates the appendix page numbers for the testimony cited in support of admission of the designations, (2) incorporates Energy Northwest's argument from its Supplemental Motion, (3) updates the identifications of transcripts containing designations, and (4) in a few instances, revises citation to testimony concerning witness background, to account for deletions of some prior designations have been eliminated.

Appendix A, ¶ 15(b) of the Rules of the United States Court of Federal Claims ("RCFC") provides that "[a]ny party intending to present substantive evidence by way of deposition testimony, *other than as provided by Fed. R. Evid. 801(d)*, shall serve and file a separate motion for leave to file the transcript of such testimony." (emphasis added). Because all of the testimony designated and listed at App. 111-22 is from the Government's agents or employees, it is admissible as substantive evidence pursuant to Federal Rule of Evidence 801(d) as admissions of a party-opponent. *See Globe Sav. Bank, F.S.B. v. United States*, 61 Fed. Cl. 91, 96-97 (2004). Accordingly, no motion to admit this testimony is required. *See* RCFC App. A, ¶ 15(b).

However, to the extent the Government contests that such testimony is admissible under Rule 801(d), and because some testimony is alternatively admissible under RCFC 32(a)(2), Energy Northwest hereby moves this Court for leave to file the designated deposition and trial testimony listed at App. 111-22. As described below, much of the designated testimony has already been admitted as substantive evidence in other Spent Nuclear Fuel ("SNF") trials, and such testimony is offered here because it is directly relevant to the issues before the Court.

---

that stipulation, and stated it will present evidence as to acceptance rate issues, Energy Northwest is submitting acceptance rate evidence as part of these designations. In fact, a substantial majority of Energy Northwest's designations of prior testimony concern acceptance rate issues, and could be omitted if the Government would agree to a stipulation consistent with governing Federal Circuit precedent.

**Statement Of Issues**

1. Whether Energy Northwest's designations of deposition and trial testimony of current and former Government employees or contractors should be admitted as substantive evidence under Federal Rule of Evidence 801(d)(2)(D), Federal Rule of Evidence 801(d)(2)(C), or Rule 32(a) of the Rules of the Court of Federal Claims.

**Statement Of The Case & Argument**

**I. Energy Northwest's Designated Testimony Is Admissible As Substantive Evidence Under Federal Rule Of Evidence 801(d)(2).**

Energy Northwest's designated testimony is admissible under Rule 801(d). This testimony falls into three categories: (1) testimony of current Government employees, which is admissible under Rule 801(d)(2)(D); (2) testimony of retired Government employees, which is admissible under Rule 801(d)(2)(C) and, for witnesses living more than 100 miles from the Court, RCFC 32(a); and (3) testimony of Government contractors, which is admissible under Rule 801(d)(2)(D) or Rule 801(d)(2)(C).

As an initial matter, Energy Northwest has designated portions of deposition and trial testimony taken during coordinated discovery in previous SNF cases or in other individual SNF cases. Though the designated testimony constitutes admissions of the Government available for Energy Northwest's use irrespective of the case in which the testimony was given, *see* FED. R. EVID. 801(d)(2), the parties also have understood, since the beginning of this case, that testimony taken in other SNF cases will be treated as if taken in this case. In its May 12, 2004 order in this case, the Court specifically directed that "Defendant shall deem Plaintiff's use of discovery obtained under the coordinated discovery in the earlier-filed cases as if it were taken in this case." (Dkt. No. 12, 5/12/2004 Order.) Moreover, the Government has repeatedly taken the position that Energy Northwest can use testimony from other SNF cases in this case. Indeed,

Energy Northwest initially limited the deposition discovery it sought in this case based on that assumption. Most recently, as grounds for its motion for a protective order to preclude Energy Northwest's noticed Rule 30(b)(6) deposition, the Government argued that Energy Northwest did not need an additional deposition because it could "use existing deposition testimony as if it had been taken by Energy Northwest," given "the common representation between the plaintiffs in [other SNF] cases and Energy Northwest." (Dkt. No. 84, Def.'s Mot. for a Protective Order to Preclude Pl.'s Noticed 30(b)(6) Deposition or, In the Alternative, to Re-Institute the Coordinated Discovery Proceedings in the Pending Spent Nuclear Fuel Cases, at 5-6.) Consequently, Energy Northwest's designated testimony is admissible irrespective of the SNF case in which it was taken.

### A. Deposition And Trial Testimony of Current Government Employees Is Admissible As Non-Hearsay Admissions Of A Party Opponent Under Rule 801(d)(2)(D).

Energy Northwest's designated deposition and trial testimony of current Government employees is admissible as substantive evidence under Rule 801(d)(2)(D). Under that rule, "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is admissible as a non-hearsay admission by a party-opponent. FED. R. EVID. 801(d)(2)(D). "It is a widely-accepted rule that admissions of a party-opponent under Rule 801(d)(2) are accorded generous treatment in determinations of admissibility." *Globe Sav. Bank*, 61 Fed. Cl. at 96-97 (quotation and citation omitted). Accordingly, Energy Northwest must show only that the designated testimony is: (1) offered against the Government, (2) concerns a matter within the scope of the witness's employment for the Government, and (3) was made during the existence of the witness's

relationship with the Government. *Id.* at 97; *accord Wisc. Elec. Power Co. v. United States*, No. 00-697C, slip op. at 21 (Fed. Cl. Aug. 16, 2007) (App. 95).[4]

There is no requirement that the witness's statement be against the Government's interest, *Globe Sav. Bank*, 61 Fed. Cl. at 97, or that the Government have specifically authorized the witness to speak on a particular issue, *P.R. Contractors, Inc. v. United States*, 69 Fed. Cl. 468, 473 (2006). Rather, "'admissions' are statements made in furtherance of the deponent's government job or contract. . . . [T]he statement need only be related to the declarant's duties." *Wisc. Elec. Power Co.*, No. 00-697C, slip. op. at 21 (App. 95) (quotation and citation omitted). Thus, "an agent may make vicarious admissions for his principal whether or not he is specifically authorized to speak on that subject." *P.R. Contractors, Inc.*, 69 Fed. Cl. at 473 (quotation and citation omitted). In other words, to meet Rule 801(d)(2)(D)'s second prong, "[t]he only requirement is that the subject matter of the admission match the subject matter of the employee's job description." *Globe Sav. Bank*, 61 Fed. Cl. at 97 (quotation and citation omitted).

Moreover, "'[u]nder [Rule 801(d)(2)(D)], the proffering party need not prove that the witness is unavailable nor does the party need also to invoke RCFC 32(a)(2) regarding admissibility of deposition testimony.'" *Wisc. Elec. Power Co.*, No. 00-697D, slip. op. at 20 (App. 94) (quoting *Rodriguez v. United States*, 69 Fed. Cl. 487, 494 n.8 (2006)); *accord, Long Island Sav. Bank, F.S.B. v. United States*, 63 Fed. Cl. 157, 163 (2004). Nor is it relevant that the

---

[4] After Energy Northwest submitted its Corrected Notice, this Court in *Dairyland Power Cooperative* granted a motion similar to this one and agreed that Dairyland's designated testimony – the majority of which comes from the same witnesses whose testimony Energy Northwest has designated – was admissible as non-hearsay under FRE 801(d)(2)(D). *Dairyland Power Coop. v. United States*, No. 04-106C, slip op. (June 20, 2008). This Court also rejected the Government's argument that Energy Northwest must demonstrate a witness is unavailable before deposition testimony can be offered into evidence. *Id.*

witness may be called to testify live. "The common law's preference for live testimony has no bearing on the use of party admissions as evidence." *Long Island Sav. Bank*, 63 Fed. Cl. at 163.

As explained in more detail below, Energy Northwest's designations of testimony of Lake H. Barrett, Alan Brownstein, Christopher Kouts, Ronald A. Milner, Thomas Pollog, Robert M. Rosselli, Nancy H. Slater-Thompson, Victor W. Trebules, Jeffrey Williams, and David Zabransky satisfy the requirements for admissibility under Rule 801(d)(2)(D). *First*, the designated statements are being offered against the Government. *Second*, the designated statements concern matters within the scope of the witnesses' employment with the Government. To this end, Energy Northwest has also designated testimony detailing each witness's background and duties as Government employees. *Third*, the designated statements were made while the witnesses were employed by the Government.[5] Alternatively, because each of these witnesses "was an officer, director, or managing agent" of DOE at the time of their testimony, Energy Northwest's designated testimony is admissible under RCFC 32(a)(2).[6] Accordingly, this Court should enter an order admitting Energy Northwest's designated testimony as substantive evidence.

**Lake H. Barrett**

Energy Northwest seeks to admit portions of testimony from Lake H. Barrett from his depositions on April 22, 23, and 26, and May 8, 10, and 14, 2002, taken during either

---

[5] In *Wisconsin Electric Power Co. v. United States*, the Government admitted that Mr. Barrett, Mr. Brownstein, Ms. Klein, Mr. Kouts, Mr. Milner, Mr. Pollog, Mr. Rosselli, Ms. Slater-Thompson, Mr. Trebules, and Mr. Zabransky all were employed by the Government at the time of the trial or deposition testimony designated in that case. *Wisc. Elec. Power Co.*, No. 00-697C, slip op. at 22 (App. 96). With limited exceptions, Energy Northwest has designated testimony from the same trial or deposition transcripts here.

[6] The *Yankee* Court relied on Rule 32(a)(2) to admit the utility plaintiffs' designated testimony of Mr. Barrett and Mr. Milner. *Yankee Atomic Elec. Co. v. United States*, No. 98-126C, slip. op. at 3-4 (Fed. Cl. Sept. 21, 2004) (App. 67-68).

coordinated discovery in previous SNF cases or in the *Yankee* SNF cases. (App. 123-256.) At the time of these depositions, Mr. Barrett was the Deputy Director of the Office of Civilian Radioactive Waste Management ("OCRWM") at the Department of Energy ("DOE"). (4/22/02 Barrett Dep. Tr. 10:21-11:1 (App. 126).) The OCRWM is charged with developing and managing the federal system for disposing of SNF under the Nuclear Waste Policy Act ("NWPA") and the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste ("Standard Contract").

Mr. Barrett was either Acting Director or Deputy Director of OCRWM from 1993 through his retirement in 2002. (4/22/02 Barrett Dep. Tr. 84:2-85:2 (App. 135-36).) As such, he had responsibility for the overall operation of OCRWM, which included responsibility for OCRWM's Annual Capacity Reports ("ACRs") and Delivery Commitment Schedules ("DCSs"), not to mention direct involvement in DOE's plans and activities for performing under the Standard Contract, including the development of a Monitored Retrievable Storage ("MRS") facility. (4/22/02 Barrett Dep. Tr. 87:17-89:8 (App. 136-37).)

From 1990 to 1993, Mr. Barrett was Director of the Rocky Flats Program Office, Office of Defense Programs, DOE. (4/22/02 Barrett Dep. Tr. 83:7-17 (App. 135).) For about two years before that position, Mr. Barrett was responsible for DOE's Monitored Retrievable Storage ("MRS") and repository programs. (4/22/02 Barrett Dep. Tr. 81:2-22 (App. 135).) Between 1985 and 1989, Mr. Barrett served in other senior management positions at OCRWM, during which time he was he was generally involved in DOE's plans for SNF acceptance and also responsible for systems engineering for DOE's radioactive waste management program, the development of SNF transportation systems, environmental assessments and other system studies, system studies for transportation casks, and logistical studies related to DOE's civilian

radioactive waste management program. (4/22/02 Barrett Dep. Tr. 44:5-20, 59:15-60:9, 61:6-63:17 (App. 128, 132-33).)

Furthermore, during coordinated discovery in earlier-filed SNF cases, the Government identified Mr. Barrett as among the most knowledgeable of DOE employees as to acceptance rate issues and the schedule DOE would have followed had it not breached the Standard Contract. (Def.'s Resps. to Utility Pls.' Joint First Set of Interrogs. Nos. 36 & 50 (App. 8, 11).)

The testimony Energy Northwest seeks to admit concerns the spent fuel program of which Mr. Barrett was Acting Director or Deputy Director for many years, including DOE's efforts, plans, and objectives for accepting spent fuel from utilities and for implementing the NWPA and the Standard Contract; DOE contingency plans such as the Multipurpose Canister ("MPC") Program; DOE's various planned rates for SNF acceptance; plans and objectives regarding a proposed MRS facility; the role and purpose of DCSs; and documents for which Mr. Barrett provided foundational or authenticating testimony. As such, this testimony falls within the scope of Mr. Barrett's employment with the Government and thus is admissible under Rule 801(d)(2)(D).

**Alan Brownstein**

Energy Northwest has designated portions of testimony from Alan Brownstein from his depositions on April 9, 10, and 11, and June 14, 2002, taken during either coordinated discovery in previous SNF cases or in the *Yankee* cases. (App. 257-327.) When he was deposed, Mr. Brownstein was a DOE employee, serving as Senior Policy Advisor to the OCRWM Director. (4/9/02 Brownstein Dep. Tr. 9:21-10:14 (App. 260).) In that position, which he assumed in 2001, he was principally responsible for repository site recommendation activities. (4/9/02 Brownstein Dep. Tr. 25:6-26:5, 27:22-28:8, 29:12-25 (App. 262-63).)

Mr. Brownstein has served in a variety of positions since joining DOE in 1985. (4/9/02 Brownstein Dep. Tr. 13:15-25, 16:7-11 (App. 261).) From 1985 through 1991, he served as a Nuclear Industry Specialist in the Management & Support Division of OCRWM. In that position, his duties included interacting with utilities, coordinating the collection of utility SNF discharge information, and developing ACRs, Annual Priority Rankings ("APRs"), and the DCS process. (4/9/02 Brownstein Dep. Tr. 31:10-32:5, 33:7-34:7, 39:10-25, 40:7-41:23 (App. 263-66).) From 1991 through early 1995, he was involved in similar aspects of DOE's spent fuel program as the Branch Chief of the Logistics and Utility Interface Branch of OCRWM. (4/9/02 Brownstein Dep. Tr. 35:2-36:19 (App. 264); 4/11/02 Brownstein Dep. Tr. 534:20-537:1 (App. 315-16).) From 1985 to 1994, Mr. Brownstein also was the DOE Contracting Officer's Technical Representative, during which time he performed duties related to the administration of the Standard Contract and reviewed and approved DCS submissions. (4/11/02 Brownstein Dep. Tr. 535:13-536:3 (App. 316); 6/14/02 Brownstein Dep. Tr. 263:8-13 (App. 321).) From March 1995 through 2001, Mr. Brownstein was Director of the OCRWM Regulatory Coordination Division. (4/9/02 Brownstein Dep. Tr. 36:20-37:14 (App. 264-65).) During that time, Mr. Brownstein was responsible for DOE's interactions with regulatory agencies such as the Nuclear Regulatory Commission ("NRC") and the Environmental Protection Agency ("EPA"), and also coordinated these regulatory agency interactions with OCRWM staff at Yucca Mountain. (4/9/02 Brownstein Dep. Tr. 39:10-40:6 (App. 265).)

Moreover, during consolidated discovery, the Government identified Mr. Brownstein as among the most knowledgeable of DOE employees regarding acceptance rate issues, the development and implementation of utility priority rankings, the review of DCSs, and the schedule DOE would have followed had it not breached the Standard Contract. (Def.'s Resps. to

Utility Pls.' Joint First Set of Interrogs. Nos. 36, 43, 45, & 50 (App. 8-11).) The Government also identified Mr. Brownstein as knowledgeable about the possibility of exchanges of DCSs among utilities. (Def.'s Resps. to Utility Pls.' Joint Suppl. Interrogs. No. 99 (App. 23).)

The testimony Energy Northwest seeks to admit concerns DOE's efforts, plans, and objectives for accepting spent fuel from utilities and for implementing the NWPA and the Standard Contract; utility comments in relation to the Standard Contract or aspects of the SNF program; the development of ACRs and APRs; the various planned rates of SNF acceptance; details about a proposed MRS facility; the role and purpose of DCSs; the potential for exchanges of allocations among utilities; and documents for which Mr. Brownstein provided foundational or authenticating testimony. All this testimony derives directly from Mr. Brownstein's employment with DOE's spent fuel program. Consequently, it is admissible under Rule 801(d)(2)(D).

**Christopher Kouts**

Energy Northwest has designated portions of testimony given by Christopher Kouts at his depositions on January 30, 2004 in the *Indiana Michigan* and *Commonwealth Edison* cases and May 2, 2007 in this case. (App. 429-39, 484-501.) Energy Northwest has also designated portions of Mr. Kouts' trial testimony in other SNF cases: (1) *Yankee Atomic Electric Co.* on August 2, 2004; (2) *Tennessee Valley Authority* on July 12, 2005; (3) *System Fuels, Inc.* on January 16, 2007; and (4) *System Fuels Entergy Arkansas* on April 12, 2007. (App. 440-44, 459-62, 463-71.) At the time of all of this testimony, Mr. Kouts was employed with OCRWM. (4/12/07 *System Fuels* Tr. 3343:11-3344:20 (App. 466).) Currently, he is the Director of OCRWM's Waste Management Office and is responsible for DOE's waste acceptance program, plans for acceptance under the Standard Contract, and coordination with other DOE offices regarding SNF waste. (*Id.*)

Mr. Kouts began working with OCRWM at DOE in 1985. (*Id.*) Throughout his employment with OCRWM, Mr. Kouts has been involved in DOE's plans for waste acceptance from utilities under the Standard Contract. (1/30/04 Kouts Dep. Tr. 19:22-20:6, 21:18-27:1, 36:9-39:2, 40:20-41:15, 42:3-48:9 (App. 432-38).) He also has interacted with the NRC in connection with DOE's disposal plans, been involved with plans for a proposed MRS facility, worked on DOE's plans for a repository at Yucca Mountain, and otherwise been involved with DOE's plans and objectives for performance under the Standard Contract. (*Id.*)

The testimony Energy Northwest seeks to admit concerns the following matters related to Mr. Kouts' duties with the SNF program: DOE's efforts, plans, and objectives for accepting spent fuel from utilities and for implementing the NWPA and the Standard Contract; the 2004 ACR/APR; the various planned rates of SNF acceptance; details about a proposed MRS facility; and documents for which Mr. Kouts provided foundational or authenticating testimony. Consequently, this testimony derives directly from Mr. Kouts' employment at DOE and is admissible under Rule 801(d)(2)(D).

**Ronald A. Milner**

Energy Northwest has designated portions of the testimony of Ronald A. Milner, given at his depositions during coordinated discovery on May 1, 2, 3, 7, and 8, 2002. (App. 599-694.) Energy Northwest has also designated portions of Mr. Milner's testimony at trial in *Yankee Atomic Electric Co.* on August 11, 2004. (App. 695-702.) At the time of this testimony, Mr. Milner was the Chief Operating Officer of OCRWM. (5/1/02 Milner Dep. Tr. 11:23-12:5 (App. 602); 8/11/04 *Yankee Atomic* Tr. 4711:23-4712:3 (App. 696).)

As the Chief Operating Officer, a position Mr. Milner held from 1999 through 2001 and 2002 through at least the time of his testimony in the *Yankee* trial, Mr. Milner was the third-ranking officer of OCRWM. (8/11/04 *Yankee Atomic* Tr. 4712:9-12 (App. 696); 5/1/02 Milner

Dep. Tr. 23:26-24:3 (App. 605).) From 1996 through 1999 and 2001 through 2002, he was OCRWM's Acting Deputy Director. (*Id.*) From 1984 to 1995, Mr. Milner served in other positions at OCRWM, including Branch Chief (1984), Division Director for Budget and Project Management (1984-90), Manager of the MRS team (1990-92), and Director of the Office of Program Management and Integration (1992-94). (5/1/02 Milner Dep. Tr. 16:21-18:12, 18:22-24:3 (App. 603-05).) During his employment at OCRWM, Mr. Milner had responsibility for many aspects of DOE's spent fuel program, including the preparation of OCRWM publications such as its Total System Life Cycle Cost ("TSLCC") and Fee Adequacy Reports and the preparation and approval of ACRs and APRs. (5/1/02 Milner Dep. Tr. 36:17-37:10, 54:18-24, 55:9-58:15 (App. 607-08, 612-13).)

The Government also previously identified Mr. Milner as among the most knowledgeable of DOE employees as to acceptance rate issues, the development and implementation of utility priority rankings, and the schedule DOE would have followed had it not breached the Standard Contract. (Def.'s Resps. to Utility Pls.' Joint First Set of Interrogs. Nos. 36, 43, & 50 (App. 8-9, 11).)

The testimony Energy Northwest has designated relates to issues within the scope of Mr. Milner's employment with DOE, including testimony about such issues as TSLCC and Fee Adequacy Reports; the DOE's planned SNF acceptance rate; issues related to an MRS facility; the processing of DCSs; DOE's efforts, plans, and objectives for accepting spent fuel from utilities and for implementing the NWPA and the Standard Contract; and documents for which Mr. Milner provided foundational or authenticating testimony. Therefore, the designated testimony is admissible under Rule 801(d)(2)(D).

**Thomas Pollog**

Energy Northwest has designated testimony from Thomas Pollog from his May 15 and 16, 2002 depositions in the *Yankee* cases. (App. 819-825.) Energy Northwest has also designated portions of Mr. Pollog's testimony at the trials in: (1) *Yankee Atomic Elec. Co.* on August 4, 2004; (2) *Tennessee Valley Authority* on July 12, 2005; and (4) *Southern Northern States Power Co.* on November 15, 2006. (App. 826-54.) At the time of all of his testimony, Mr. Pollog was an OCRWM employee. (11/15/06 *Northern States* Tr. 3603:15-3604:3 (App. 847).)

Since 2002, Mr. Pollog has been the DOE Contracting Officer's Technical Representative, responsible for assisting in and providing technical expertise in relation to the implementation of the Standard Contract. (11/15/06 *Northern States* Tr. 3604:4-18 (App. 847); 7/12/05 *TVA* Tr. 1602:13-25, 1604:23-1605:9 (App. 841-42).) Mr. Pollog joined OCRWM in 1988 as a Nuclear Engineer in OCRWM's Systems Development Branch, where his responsibilities concerned developing systems to assist utilities in spent fuel management. (11/15/06 *Northern States* Tr. 3605:6-20 (App. 847).) Next, as a nuclear engineer in OCRWM's Systems Integration Branch, Mr. Pollog's duties concerned identifying the requirements for the waste management system and developing system requirements documents. (4/11/02 Pollog Dep. Tr. 10:24-12:6 (App. 767).) From 1990 through 1992, Mr. Pollog worked in OCRWM's Utility Interface and Logistics Branch, where his duties concerned DOE's waste acceptance plans. (11/15/06 *Northern States* Tr. 3606:2-9 (App. 847).)

After a three-year leave of absence, Mr. Pollog returned to OCRWM to its engineering division, where he had responsibilities regarding cask development and DOE's Multipurpose Canister ("MPC") Program. (11/15/06 *Northern States* Tr. 3606:16-24 (App. 847).) After a year and a half, Mr. Pollog went back to working in OCRWM's waste acceptance area. (11/15/06

*Northern States* Tr. 3606:25-3607:5 (App. 847-48).) Thus, in each DOE position he has held since 1990, Mr. Pollog has been involved in DOE's plans for implementing the Standard Contract.

Additionally, the Government previously identified Mr. Pollog as among the most knowledgeable of DOE employees regarding the development and implementation of utility priority rankings, the review of DCSs, and the schedule DOE would have followed had it not breached the Standard Contract. (Def.'s Resps. to Utility Pls.' Joint First Set of Interrogs, Nos. 43, 45, & 50 (App. 9-11).)

The testimony Energy Northwest has designated concerns such issues as DOE's efforts, plans, and objectives for accepting SNF; the proposed MRS facility; DOE's various planned rates of SNF acceptance; the development of system requirements for the SNF program; the MPC Program; and documents for which Mr. Pollog provided foundational or authenticating testimony. As such, this testimony concerns matters within the scope of Mr. Pollog's DOE employment and is admissible under Rule 801(d)(2)(D).

**Robert M. Rosselli**

Energy Northwest has designated portions of testimony given by Robert M. Rosselli at his depositions during coordinated discovery on April 15 and 16, 2002. (App. 885-86.) At that time, Mr. Rosselli was employed at DOE's Richland, Washington facility as Deputy Manager for Business Services, a position he obtained in 1999 after serving since 1994 as assistant manager for science and technology at OCRWM. (4/15/02 Rosselli Dep. Tr. 20:11-22:4 (App. 859-60).)

From around 1982 through 1984, Mr. Rosselli served as Director of the Resource Management Division of OCRWM. (4/15/02 Rosselli Dep. Tr. 17:11-18:6, 31:5-21 (App. 859, 862).) In this position, Mr. Rosselli reported directly to the OCRWM Director, was part of a team that developed the Standard Contract, and was responsible for a variety of activities related

to the establishment of the SNF program, including developing planned SNF acceptance rates and coordinating preparation of OCRWM's first draft Mission Plan, a document called for under the NWPA. (4/15/02 Rosselli Dep. Tr. 31:22-32:18, 33:10-34:13, 43:1-44:10 (App. 862-64).) Further, the Government identified Mr. Rosselli as a DOE official with knowledge of the drafting of the Standard Contract and utility comments received in relation to Standard Contract drafts. (Def.'s Resps. to Utility Pls.' Joint Suppl. Interrogs. Nos. 77-80 (App. 17-20).)

The designated portions of Mr. Rosselli's testimony relate to the development of the Standard Contract; the 1983 draft Mission Plan he was responsible for preparing; DOE's obligations under the Standard Contract and the NWPA; DOE's efforts, plans, and objectives for accepting spent fuel from utilities and for implementing the NWPA and the Standard Contract during the period of Mr. Rosselli's employment; and documents for which Mr. Rosselli provided foundational or authenticating testimony. As such, the designated testimony falls within the scope of Mr. Rosselli's employment with the Government and is admissible under Rule 801(d)(2)(D).

**Nancy H. Slater-Thompson**

Energy Northwest has designated portions of testimony from Nancy H. Slater-Thompson at the depositions she provided in the *Yankee* cases on April 21 and 22, 1999, and June 13, 2002. (App. 921-54.) At the time of her testimony, Ms. Slater-Thompson was employed in DOE's Spent Fuel Program in its Regulatory Coordination Division, as Team Leader in 1999 and then as Acting Director in 2002. (4/21/99 Slater-Thompson Dep. Tr. 5:25-6:13 (App. 923); 6/13/02 Slater-Thompson Dep. Tr. 5:3-7:1 (App. 942).) In both positions, Ms. Slater-Thompson was responsible for regulatory issues related to the SNF program and involving the NRC, the EPA, the National Academy of Science, or the Nuclear Waste Technical Review Board. (4/21/99

Slater-Thompson Dep. Tr. 5:25-6:13 (App. 923); 6/13/02 Slater-Thompson Dep. Tr. 5:3-20 (App. 942).)

Ms. Slater-Thompson joined DOE's Spent Fuel Program in August of 1991. (6/13/02 Slater-Thompson Dep. Tr. 8:16 (App. 942).) From 1991 until 1995, she was involved in DOE activities such as the preparation of ACRs and APRs; the DCS process and instructions, including DOE's review of submissions; discussion or plans for exchanges of acceptance schedules between utilities; and DOE's efforts, plans, and objectives for accepting spent fuel from utilities and for implementing the NWPA and the Standard Contract; and she also responded to internal and external questions regarding the terms and conditions of the Standard Contract. (4/21/99 Slater-Thompson Dep. Tr. 19:21-22:10 (App. 926-27).)

The Government previously identified Ms. Slater-Thompson as among the most knowledgeable of DOE employees regarding acceptance rate issues, the development and implementation of utility priority rankings, the review of DCSs, and the schedule DOE would have followed had it not breached the Standard Contract. (Def.'s Resps. to Utility Pls.' Joint First Set of Interrogs. Nos. 36, 43, 45, & 50 (App. 8-11).) The Government also identified Ms. Slater-Thompson as knowledgeable about the possibility of exchanges of DCSs among utilities. (Def.'s Resps. to Utility Pls.' Joint Suppl. Interrogs. No. 99 (App. 23).)

Energy Northwest has designated testimony related to Ms. Slater-Thompson's employment with DOE, including DOE's efforts, plans, and objectives for accepting SNF from utilities and for implementing the NWPA and the Standard Contract; DOE's various planned rates of acceptance of SNF; the DCS process; exchanges of DCSs or acceptance schedules among utilities; interactions with utilities in relation to the NWPA or Standard Contract; and

documents for which Ms. Slater-Thompson provided foundational or authenticating testimony. Accordingly, this testimony is admissible under Rule 801(d)(2)(D).

**Victor W. Trebules**

Energy Northwest has designated portions of the testimony of Victor W. Trebules, Jr., taken at his depositions on April 17 and 18, 2002, during coordinated discovery or the *Yankee* cases. (App. 955-84.) At that time, Mr. Trebules was Director of the Office of Project Control at DOE's Yucca Mountain Site Characterization Office in Nevada, a position he assumed in approximately 1998 and that involves responsibility over the characterization of Yucca Mountain as an SNF repository site. (4/17/02 Trebules Dep. Tr. 10:18-20 (App. 957).)

Mr. Trebules began work in OCRWM as a program analyst in the 1983-1984 timeframe and progressed to senior technical advisor and technical assistant to the OCRWM Director. (4/17/02 Trebules Dep. Tr. 15:17-16:9, 17:7-18:17 (App. 958-59).) His first OCRWM job responsibility was to coordinate the development of DOE's 1985 Mission Plan. (4/17/02 Trebules Dep. Tr. 15:22-16:7 (App. 958).) After a brief stint with the Secretary of Energy's Office in the late 1980s, Mr. Trebules returned to OCRWM in 1990 or 1991 and remained there until 1998 in various positions, including Acting Director of the M&O Management Division, where he was responsible for bringing on board DOE's contractor for the SNF program; Director of the Storage Division, where he was responsible for work on DOE's proposed MRS facility; and Director of the Program Management Division. (4/17/02 Trebules Dep. Tr. 17:7-18:17 (App. 959).)

The testimony Energy Northwest has designated concerns such issues as DOE's efforts, plans, and objectives for implementing the Standard Contract; the development of an MRS facility; the 1985 OCRWM Mission Plan; and documents for which Mr. Trebules provided

foundational or authenticating testimony.[7] Such testimony derives from Mr. Trebules' employment at DOE and is thus admissible under Rule 801(d)(2)(D).

**Jeffrey Williams**

Energy Northwest seeks to admit portions of the testimony given by Jeffrey Williams at his depositions on June 11, 2002 in the *Yankee* cases and on January 22, 2004 in the *Commonwealth Edison* case. (App. 985-99.) Mr. Williams was a DOE employee at the time of both depositions. (6/11/02 Williams Dep. Tr. 7:14-23 (App. 987); 1/22/04 Williams Dep. Tr. 13:6-10 (App. 994).)

During his tenure with OCRWM, Mr. Williams has served in several management positions, including Chief of the Facilities Branch, Director of the Engineering Division, and Director of the Systems Engineering Division. (1/22/04 Williams Dep. Tr. 13:11-14:22 (App. 994-95).) As Chief of the Facilities Branch (approximately 1991 through 1994), he was responsible for the development of DOE's proposed MRS facility and assisted in some initial work on the MPC Program. (*Id.*) As Director of the Engineering Division (1994-96), Mr. Williams was directly responsible for the MPC Program, the development of casks to transport SNF, and other SNF transportation issues. (1/22/04 Williams Dep. Tr. 13:15-14:22 (App. 994-95); 6/11/02 Williams Dep. Tr. 70:16-72:11 (App. 990).) As Director of the Systems Engineering Division, later renamed the Systems Engineering and International Division (1996 through at least 2002), he was responsible for international DOE activities and for developing the top-level requirements for the SNF program, including by conducting systems analyses, completing TSLCC and Fee Adequacy reports, and developing the system requirements for a repository. (6/11/02 Williams Dep. Tr. 9:18-10:25 (App. 988).) At the time of his 2002

[7] In response to an interrogatory served during coordinated discovery, the Government admitted Mr. Trebules was the person "primarily responsible" for the creation of the 1985 Mission Plan. (Def.'s Resps. to Utility Pls.' Joint First Set of Interrogs. No. 7 (App. 5-7).)

deposition, Mr. Williams was still Director of OCRWM's Systems Engineering and International Division, as well as Acting Director of the Office of Acceptance, Transportation, and Integration. (6/11/02 Williams Dep. Tr. 7:14-8:5 (App. 987).) At his 2004 deposition, Mr. Williams was DOE's Acting Director for the Office of Science and Technology and International Division. (1/22/04 Williams Dep. Tr. 13:6-10 (App. 994).)

The testimony Energy Northwest has designated concerns various aspects of Mr. Williams' work with OCRWM, particularly the nature, goals, and purposes of the MPC Program, the technical aspects of using multipurpose canisters or dual-purpose canisters to store SNF, and various documents for which Mr. Williams provided foundational or authenticating testimony. As such, this testimony derives directly from Mr. Williams' activities as a DOE employee and is admissible under Rule 801(d)(2)(D).

**David Zabransky**

Energy Northwest has designated portions of testimony from David Zabransky given at his depositions on April 17, 18, and 19, 2002 during coordinated discovery, January 29, 2004 in *Indiana Michigan* and *Commonwealth Edison*, and on June 5 and 6, 2002 in the *Yankee* cases. (App. 1000-1066.) Energy Northwest has also designated portions of Mr. Zabranksy's trial testimony in other SNF cases: (1) *Yankee Atomic Elec. Co.* on August 5, 2004; (2) *Sacramento Municipal Utility District* on March 29, 2005; (3) *Tennessee Valley Authority* on July 12, 2005; and (4) *Southern Nuclear Operating Co.* on October 27, 2005. (App. 1067-82, 1091-1106.)

Mr. Zabransky was a DOE employee at all times he offered this testimony. (8/5/04 *Yankee Atomic* Tr. 4110:15-4112:3 (App. 1067-68).) Currently and since 2002, Mr. Zabransky is OCRWM's nuclear utility specialist and DOE's Contracting Officer, charged with implementing the provisions of the Standard Contract and addressing technical waste acceptance issues for noncommercial SNF. (10/27/05 *Southern Nuclear* Tr. 1936:22-1938:7 (App. 1097-

98).) As Contracting Officer, Mr. Zabransky was the DOE official who communicated with utilities regarding the 2004 DCS process. (*See* 8/5/04 *Yankee Atomic* Tr. 4117:3-17 (App. 1069).) Mr. Zabransky has worked for DOE in OCRWM since the fall of 1994, when he was appointed Team Leader for waste acceptance, and he became the Contracting Officer's Technical Representative shortly thereafter. (8/5/04 *Yankee Atomic* Tr. 4111:7-4112:3 (App. 1068); 4/17/02 Zabransky Dep. Tr. 18:1-10, 22:16-23:6 (App. 1004-05).) His responsibilities have included DOE's management of the Standard Contract, interfacing with utilities, and providing technical advice regarding the implementation of the Standard Contract. (8/5/04 *Yankee Atomic* Tr. 4110:15-4112:5 (App. 1067-68); 10/27/05 *Southern Nuclear* Tr. 1936:22-1938:7 (App. 1097-98).)

Moreover, the Government previously identified Mr. Zabransky as among the most knowledgeable of DOE employees regarding acceptance rate issues, the development and implementation of utility priority rankings, the review of DCSs, and the schedule DOE would have followed had it not breached the Standard Contract. (Def.'s Resps. to Utility Pls.' Joint First Set of Interrogs. Nos. 36, 43, 45, & 50 (App. 8-11).)

The designated portions of Mr. Zabransky's testimony concern such issues as DOE's efforts, plans, and objectives for implementing the NWPA or Standard Contract; the various planned rates of SNF acceptance; utility comments in relation to the Standard Contract or the SNF program; the DCS process; and documents for which Mr. Zabransky provided foundational or authenticating testimony. Therefore, the designated testimony relates to matters within the scope of Mr. Zabransky's employment with DOE and is admissible under Rule 801(d)(2)(D).

### B. Designated Portions Of Testimony Of Retired Government Officials Are Admissible Under Rule 801(d)(2)(C) Or RCFC 32(a)(3)(E).

Energy Northwest seeks to admit designated portions of trial and deposition testimony from four former DOE officials, Dr. Daniel Dreyfus, Michael J. Lawrence, Robert Morgan, and Benard Rusche. The testimony of all four witnesses is admissible under Rule 801(d)(2)(C) as admissions of a party-opponent made "by a person authorized by the party to make a statement concerning the subject." Alternatively, RCFC 32(a) permits the admission of the testimony of Messrs. Lawrence, Morgan, and Rusche, all of whom reside "at a greater distance than 100 miles from the place of hearing." RCFC 32(a)(3)(E).

**Rule 801(d)(2)**

Under Federal Rule of Evidence 801(d)(2), the witness need not have been an agent of the party-opponent at the time of his or her testimony. "FRE 801(d)(2)(C) applies to a person who is not an agent but is 'authorized' to speak." *Glendale Fed. Bank, F.S.B. v. United States*, 39 Fed. Cl. 422, 424 (1997). Moreover, the witness does not have to be unavailable. *E.g.*, *B-W Acceptance Corp. v. Porter*, 568 F.2d 1179, 1183 (5th Cir. 1978). All that is required is authorization to speak. "Authorization to make a statement concerning the subject matter may . . . be established by the acts or conduct of the principal or his statements to the agent or third party." GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6722, at 503-04.

Thus, authorization to speak arises from the circumstances, such as where the principal has offered the testimony in other litigation, *In re Hanford Nuclear Reservation Litig.*, 521 F.3d 1028, 1061 (9th Cir. 2008) (admitting against the plaintiff under Rule 801(d)(2)(C) testimony that had been proffered by the plaintiff at a previous trial), or where there is some suggestion of a lingering bond between the witness and the principal, *Kinser v. Gehl Co.*, 184 F.3d 1259, 1275 (10th Cir. 1999) (admitting retired employee's deposition testimony that concerned events and

policies occurring during employment and circumstances suggested a lingering bond between employee and employer), *abrogated on other grounds by Weisgram v. Marley, Co.*, 528 U.S. 440 (2000). Additionally, a witness can be considered authorized to speak where the principal relies on the witness's statements. *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306-07 (9th Cir. 1983) (admitting report containing statements of an employee of a shareholder of the party-opponent, where the party-opponent subsequently relied on the report by distributing it widely among its officers and managers).

Here, the witnesses whose testimony Energy Northwest seeks to admit each were authorized to speak because the Government has identified the witness as having knowledge on relevant subjects, has called the witness to testify at trial in other SNF cases, and/or has relied on the witness's testimony in the presentation of its case. As explained below, each of the four former DOE officials was represented by Government counsel at the time of their testimony. Moreover, the Government has called three of these witnesses (Lawrence, Morgan, and Rusche) to testify on its own behalf in trials in other SNF cases.[8] The Government identified two of these witnesses (Lawrence and Morgan) in its interrogatory responses as DOE personnel with knowledge of the drafting of the Standard Contract and utility comments received in relation to Standard Contract drafts. (Def.'s Resps. to Utility Pls.' Joint Suppl. Interrogs. Nos. 77-80 (App. 17-20).) Finally, the Government affirmatively relied on Mr. Morgan's deposition to respond to utility plaintiffs' Interrogatory No. 81. (*Id.* at No. 81 (App. 21-22).)

Judge Merow in *Wisconsin Electric Power Co.* relied on similar evidence of authorization to speak when admitting designated testimony of Dr. Dreyfus and Messrs.

---

[8] Mr. Lawrence testified at the trial in *Carolina Power*, and Mr. Rusche testified at the trial in the *Yankee* cases. Mr. Morgan testified at the trials in *Northern States*, *Carolina Power*, *TVA*, *PG&E*, the *Yankee* cases, and *Boston Edison*, and the Government designated his testimony for the trials in *Southern Nuclear* and both *System Fuels* cases.

Lawrence, Morgan, and Rusche. *Wisc. Elec. Power Co.*, No. 00-697D, slip. op. at 23-26 (App. 97-100). In addition, the Court noted that all four witnesses were high-level government officials and suggested that such circumstances further demonstrated the reliability of the witnesses' testimony. *Id.* at 25-26 (App. 99-100). Indeed, the Court reasoned, "[t]hat these gentlemen were authorized agents, deposed after that agency ended, but about that agency, goes to the weight of those statements, not their non-hearsay character." *Id.* at 26 (App. 100). For the reasons described by Judge Merow and those set forth above, these witnesses were authorized to speak on matters concerning their involvement with DOE's SNF program, and their testimony is admissible in this case under Rule 801(d)(2)(C).

**RCFC 32(a)**

Alternatively, RCFC 32(a) permits the admission of the testimony of Messrs. Lawrence, Morgan, and Rusche, all of whom reside "at a greater distance than 100 miles from the place of hearing." RCFC 32(a)(3)(E).[9] Mr. Lawrence currently resides in Richland, Washington; Mr. Morgan resides in Loudon, Tennessee; and Mr. Rusche resides in West Columbia, South Carolina. Because all three witnesses reside more than 100 miles away, and the exceptions to RCFC 32(a)(3)(E) do not apply here, the Court should admit this testimony.

**Dr. Daniel Dreyfus**

Energy Northwest seeks to admit designated portions of the testimony of Daniel Dreyfus from the deposition he gave on May 15, 2002 in the *Yankee* cases. (App. 373-83.) At the time of his deposition, Dr. Dreyfus was retired from employment with the Government, but he was

[9] As the Government argued in its motion to admit Mr. Morgan's testimony in *System Fuels*, "[a]lthough RCFC 32 applies specifically to deposition testimony, the rationale behind that rule applies equally to the trial testimony in other SNF cases in the circumstances here, where all of the plaintiffs in the 66 SNF cases that were originally pending before this Court have had similar motives and where the cases all involve the same issues . . . ." (Def.'s Unopposed Mot. to Designate Prior Trial Testimony of Robert L. Morgan, *Sys. Fuels, Inc. v. United States*, No. 03-2623C (filed Jan. 5, 2007), at 4 (App. 108).)

represented by Government counsel. (5/15/02 Dreyfus Dep. Tr. 6:12-14, 9:4-16 (App. 375-76).) Dr. Dreyfus was a long-time employee of the Government, beginning his career in the military and then working on Capitol Hill, including on the Senate Energy Committee before the NWPA was passed. (5/15/02 Dreyfus Dep. Tr. 7:19-9:3 (App. 375-76).) After a stint in the natural gas industry, he returned to the Government in 1993, where he became special assistant to the Secretary of Energy and then was appointed Director of OCRWM. (5/15/02 Dreyfus Dep. Tr. 9:4-16, 13:14-15:16 (App. 375-77).) While in this position, which he occupied until 1997, Dr. Dreyfus oversaw OCRWM's activities, including its interpretation and implementation of the Standard Contract and the NWPA, its efforts to site a repository or MRS facility, the development of planned rates of SNF acceptance, DOE's understanding of utilities' on-site storage needs, technical aspects of the acceptance of SNF, and the creation of various program documents. (*See generally id.*) He also testified before Congress and interacted with the NRC regarding DOE's SNF acceptance plans. (*See generally id.*)

The designated portions of Dr. Dreyfus's testimony concern Dr. Dreyfus's activities as a senior DOE official; DOE's efforts, plans, and objectives for accepting SNF from utilities and for implementing the Standard Contract; various planned rates of SNF acceptance; utilities' on-site storage needs; and documents for which Dr. Dreyfus provided foundational or authenticating testimony. Consequently, his deposition testimony was admitted in *Wisc. Elec. Power Co.*, No. 00-697C, slip op. at 23-26 (App. 97-100). The Court should admit his testimony here under Rule 801(d)(2)(C).

**Michael J. Lawrence**

Energy Northwest seeks to admit portions of the testimony of Michael J. Lawrence from the deposition he gave on May 20 and May 21, 2002 in the *Yankee* cases and from his trial testimony on November 16, 2007 in *Carolina Power & Light*. (App. 531-98.) At the time of the

deposition and his trial testimony, Mr. Lawrence was employed by Battelle, the contractor that operates DOE's Pacific Northwest National Laboratory.[10] (5/20/02 Lawrence Dep. Tr. 13:15-14:3 (App. 535); 11/16/07 *Carolina Power* Tr. 2066:3-13 (App. 588).) The Government's attorneys represented Mr. Lawrence over the course of the two-day deposition, and Mr. Lawrence testified for the Government in *Carolina Power & Light*. (5/20/02 Lawrence Dep. Tr. 11:21-12:1 (App. 534; 11/16/07 *Carolina Power* Tr. 2066:9-12 (App. 588).)

In 1980 or 1981, Mr. Lawrence was Deputy Director of DOE's program for geologic storage and disposal, a program that existed before the NWPA was passed. (5/20/02 Lawrence Dep. Tr. 26:3-15 (App. 588).) From 1983 through 1984, he was the Deputy Director or Acting Director of the NWPA Project Office, which was the precursor to OCRWM. (5/20/02 Lawrence Dep. Tr. 24:18-26:2 (App. 537-38).) In this high-level position, he testified before Congress in 1984, shortly after the Standard Contracts were signed. (11/16/07 *Carolina Power* Tr. 2156:20-2157:12 (App. 595).) From January through June 1984, he was Director of OCRWM, after which he became DOE's manager of its Richland operations office. (11/16/07 *Carolina Power* Tr. 2067:12-2068:4 (App. 588-89).) Among other things, the Richland operations office was responsible for DOE's contractor-run Pacific Northwest National Laboratory, the laboratory providing support to OCRWM on SNF storage issues such as the MRS facility and interim storage issues. (11/16/07 *Carolina Power* Tr. 2162:20-2163:16 (App. 596).) In Mr. Lawrence's capacity as manager of that office, a position he held until 1990, he was involved in the preparation and issuance of a set of comments on the 1983 Draft Mission Plan as well as activities related to the potential siting of a repository at Hanford. (5/20/02 Lawrence Dep. Tr.

[10] Because Mr. Lawrence was employed by a DOE contractor at the time of his deposition, his testimony is alternatively admissible under Rule 801(d)(2)(D), as described below in Part C.

22:18-23:4 (App. 537); 11/16/07 *Carolina Power* Tr. 2160:13-2161:12, 2162:20-2163:16 (App. 596).)

Energy Northwest seeks to admit Mr. Lawrence's testimony regarding DOE's plans and activities when he had these senior-level responsibilities for the implementation of the NWPA and the Standard Contract and regarding documents for he provided foundational or authenticating testimony. Mr. Lawrence's deposition testimony has been designated and admitted pursuant to Rule 801(d) in several prior SNF cases. *E.g.*, *Sys. Fuels, Inc. v. United States*, 78 Fed. Cl. 769, 773 n.2 (2007); *Wisc. Elec. Power Co.*, No. 00-697C, slip op. at 23-26 (App. 97-100); *Sacramento Mun. Util. Dist. v. United States*, 70 Fed. Cl. 332, 336 n.1 (2006). The Court should admit his testimony here.

**Robert L. Morgan**

Energy Northwest has designated portions of testimony given by Robert L. Morgan at his deposition on March 21 and 22, 2002, taken during coordinated discovery, and his deposition on June 25, 2002 in the *Yankee* cases. (App. 703-50.) Mr. Morgan was represented by the Government's attorneys during these depositions. (*See generally id.*) Energy Northwest has also designated portions of testimony given by Mr. Morgan at the trials in (1) *Yankee Atomic Electric Co.* on August 3, 2004 and (2) *Carolina Power & Light Co.* on November 13, 2007. (App. 751-61.) At all of these trials, Mr. Morgan was represented by the Government's attorneys. (*See generally id.*) At the time of all of his testimony, Mr. Morgan was retired, though he had recently performed some consulting work for the Government. (3/12/02 Morgan Dep. Tr. 12:1-11 (App. 706).)

From January 1983 through January 1984, Mr. Morgan was Director of the NWPA Project Office, the precursor to the OCRWM, during which time he oversaw all DOE activities concerning the implementation of the NWPA. (3/21/02 Morgan Dep. Tr. 24:10-21, 26:25-27:6

(App. 709-10).) He supervised the establishment of DOE's initial program strategy and the development of the Standard Contract. (3/21/02 Morgan Dep. Tr. 24:10-17 (App. 709); 8/3/04 *Yankee* Tr. 3669:15-3670:8 (App. 752).) Mr. Morgan also made statements to the industry and public regarding the NWPA, the Standard Contract, and DOE's strategy and objectives to achieve the goals of the NWPA, and he supervised the preparation of initial program documents, including the 1983 draft Mission Plan. (8/3/04 *Yankee* Tr. 3669:15-3670:8, 3683:20-3684:15 (App. 752, 755).) The testimony Energy Northwest has designated concerns these DOE activities, Mr. Morgan's activities when held his top-ranking senior position, and documents for which Mr. Morgan provided foundational or authenticating testimony. His deposition testimony has been designated and admitted in several prior SNF cases, *e.g.*, *Sys. Fuels, Inc.*, 78 Fed. Cl. at 773 n.2; *Wisc. Elec. Power Co.*, No. 00-697, slip op. at 23-26 (App. 97-100); *Sacramento Mun. Util. Dist.*, 70 Fed. Cl. at 336 n.1. It should be admitted here as well.

**Benard Rusche**

Energy Northwest has designated portions of Benard Rusche's testimony given at depositions on May 16 and 17, 2002 during the *Yankee* cases and at the trial in *Yankee Atomic Elec. Co.* on August 3, 2004. (App. 887-920.) At the time of his deposition, Mr. Rusche was president of Management & Technical Resources, Inc., a consulting company, and represented by Government counsel. (5/16/02 Rusche Dep. Tr. 12:6-10, 12:21-14:1 (App. 890-91).) He testified about his activities as the first Director of OCRWM to be appointed by the President and confirmed by the Senate. (5/16/02 Rusche Dep. Tr. 36:6-16, 40:8-20, 68:10-13 (App. 893-94, 898).) In that position, which he occupied from 1984 through 1987, Mr. Rusche was responsible for all aspects of the implementation of the NWPA and all activities of the OCRWM, including the promulgation of various documents such as the 1985 Mission Plan. (5/16/02 Rusche Dep. Tr. 40:8-41:14, 49:6-50:13 (App. 894, 896-97).) The testimony Energy Northwest has

designated concerns DOE's activities during the time Mr. Rusche occupied this senior-level position, including various planned rates of SNF acceptance, the 1985 Mission Plan, and documents for which Mr. Rusche provided foundational or authenticating testimony. Thus, his deposition testimony has been designated and admitted in several prior SNF cases, *e.g.*, *Wisc. Elec. Power Co.*, No. 00-697, slip op. at 23-26 (App. 97-100); *Sacramento Mun. Util. Dist.*, 70 Fed. Cl. at 336 n.1, and should similarly be admitted here.

### C. Designated Portions Of The Testimony Of A Government Contractor Are Admissible Under Rule 801(d)(2)(D).

**Billy Cole**

Energy Northwest seeks to admit designated testimony of Billy Cole, a Government contractor who was in an agency relationship with the Government at the time of his testimony and at the time to which his statements related. Energy Northwest has designated portions of Mr. Cole's testimony from his March 12, March 13, and June 4, 2002 depositions, taken during coordinated discovery or the *Yankee* cases. (App. 328-72.)

At the time of his testimony, Mr. Cole still held the position of Vice President of JAI Corporation – a contractor for DOE – although he had retired in 1999. (3/12/02 Cole Dep. Tr. 108:8-14, 113:5-20 (App. 345, 347).) From 1985 through 1999, Mr. Cole worked at two DOE contractors, JAI Corporation and Battelle (the DOE contractor that operated DOE's Pacific Northwest National Laboratory), both of which played major roles in implementing the SNF program. (3/12/02 Cole Dep. Tr. 106:14-108:14, 110:1-113:4 (App. 345-47).) In his work as manager of waste acceptance for these companies, Mr. Cole was actively involved in a broad range of DOE SNF program activities, including the DCS process and the compilation of data underlying ACRs. (3/12/02 Cole Dep. Tr. 111:1-113:4, 198:18-200:11 (App. 346-47, 357.) Indeed, Mr. Cole developed the acceptance rates set forth in the 1991 ACR. (3/12/02 Cole Dep.

Tr. 178:2-19 (App. 354).) Mr. Cole's designated testimony relates to SNF acceptance rates, ACRs, DCSs, general aspects of DOE's implementation of the Standard Contract, and documents for which Mr. Cole provided foundational or authenticating testimony, all of which falls within the scope of his work as a DOE contractor.

Mr. Cole's testimony is admissible under Rule 801(d)(2)(D) for the same reasons that the testimony of current Government employees, described above in Part A, is admissible. Specifically, the testimony Energy Northwest has designated from Mr. Cole's depositions is: (1) being offered against the Government, (2) concerns matters within the scope of Mr. Cole's role as an agent for the Government, and (3) was made during the existence of the Mr. Cole's relationship with the Government. *See Globe Sav. Bank*, 61 Fed. Cl. at 97. Rule 801(d)(2)(D) requires only that an "agent or servant" relationship exist between the witness and the Government; it does not require an employee-employer relationship. FED. R. EVID. 801(d)(2)(D). Moreover, the requisite "agency relationship can be created by contract . . . ." *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1256 (Fed. Cir. 2000).

DOE's relationship with its contractors, and more importantly, OCRWM's contractors, is unique in its breadth and depth. As Judge Merow observed in the *Yankee* cases, "[t]o a significant, if not exclusive extent, DOE's activities, duties and responsibilities under the NWPA, have been and are conducted through its national laboratories and management and operation ("M & O") contractors." *Yankee Atomic Elec. Co. v. United States*, No. 98-126C, 2004 WL 2450874, at *3 (Fed. Cl. Sept. 17, 2004) (App. 54). Consequently, Judge Merow reasoned:

> As "servants," direct employees of DOE could make binding admissions as to matters within their employment duties, and there may be no good reason to not afford the same evidentiary treatment to the contractors here. Any distinction between a

> nuclear physicist preparing tonnage estimates for DOE under a direct employment contract versus the M & O contracts here is questionable, and at best a matter of degree. . . . These contractors were retained under unique circumstances to perform DOE's function, provided critical and essential data and input to DOE, and operate and manage the national laboratories for and on behalf of DOE.

*Id.* at *11 (App. 63). Because of the unique relationship between DOE and the contractor (JAI Corporation at the time of his deposition) for which Mr. Cole worked, an agency relationship existed, and his testimony should be admissible under Rule 801(d)(2)(D).[11] Indeed, Mr. Cole's deposition testimony has been admitted in other SNF cases. *E.g.*, *Sys. Fuels, Inc.*, 78 Fed. Cl. at 773 n.2; *Wisc. Elec. Power Co.*, No. 00-697C, slip op. at 28 (App. 102); *Sacramento Mun. Util. Dist.*, 70 Fed. Cl. at 336 n.1. The Government itself designated Mr. Cole's testimony in *Wisconsin Electric Power*.

For these reasons, Mr. Cole's testimony is admissible under Rule 801(d)(2)(D). Alternatively, because Mr. Cole resides in Port Ludlow, Washington, and thus "at a greater distance than 100 miles from the place of trial or hearing," RCFC 32(a)(3)(E), his testimony is admissible under RCFC 32(a).

## II. Deposition Testimony Of The Government's Rule 30(b)(6) Witnesses Is Admissible Against The Government As Substantive Evidence Under Rule 32(a)(2) Of The Rules Of The Court Of Federal Claims.

Pursuant to RCFC 32(a)(2), Energy Northwest seeks to admit into evidence relevant excerpts from (1) the Rule 30(b)(6) deposition of Susan Klein, taken on April 24 and April 25,

---

[11] The fact that Mr. Cole testified about both his previous work with the contractor operating DOE's Pacific Northwest National Laboratory and with another DOE contractor, JAI Corporation, for which he was employed at the time of his deposition, is of no consequence because both DOE contractors had the same agency relationship with DOE. (3/12/02 Cole Dep. Tr. 110:1-111:9 (App. 346)); *see Globe Sav. Bank*, 61 Fed. Cl. at 97 (admitting testimony under Rule 801(d)(2)(D) even though the witness made the admissions while working for a Government agency other than the Government agency he worked for at the time relevant to the admissions).

2002 in coordinated discovery (App. 384-427); (2) three Rule 30(b)(6) depositions of Christopher Kouts, the first taken on April 11, 2005 in *Southern Nuclear Operating Co.* and *South Carolina Electric & Gas*, the second taken on May 1, 2007 in *Dairyland Power Cooperative*, and the third taken on June 12, 2008 in this case (App. 445-58, 472-83, 502-30); (3) the Rule 30(b)(6) depositions of Thomas Pollog, taken on April 11, April 12, May 15, and May 16, 2002 in coordinated discovery and the *Yankee* cases (App. 763-825); and (4) the Rule 30(b)(6) deposition of David Zabransky taken on April 12, 2005 in the *Southern Nuclear* case (App. 1083-91).

Under RCFC 32(a), deposition testimony can be admitted against any party who was present or represented at the taking of the deposition if any of the conditions set forth in RCFC 32(a)(1)-(3) are met, and provided that the testimony would be admissible if the witness were then present and testifying. Thus, deposition testimony falling within the scope of RCFC 32(a) will not be excluded as hearsay unless the content of the testimony itself raises hearsay issues. Under RCFC 32(a)(2), the deposition of "a person designated under RCFC 30(b)(6) . . . to testify on behalf of a . . . governmental agency which is a party may be used by any adverse party for any purpose." RCFC 32(a)(2); *Weaver-Bailey Contractors, Inc. v. United States*, 19 Cl. Ct. 474, 483 (1990). Moreover, the testimony is admissible even if the witness is available. *Weaver-Bailey Contractors*, 19 Ct. Cl. at 483. For the reasons set forth below, the designated portions of the Rule 30(b)(6) depositions of Susan Klein, Christopher Kouts, and Thomas Pollog are admissible under RCFC 32(a)(2).[12]

[12] Alternatively, because these witnesses testified to matters within the scope of their own Government employment, their testimony is admissible under Rule 801(d)(2)(D). All three witnesses were Government employees at the time of their testimony.

**Susan Klein**

Energy Northwest seeks to admit testimony from the April 24 and 25, 2002 Rule 30(b)(6) Deposition of Susan Klein. (App. 384-427.) During coordinated discovery, the Government offered Ms. Klein as a Rule 30(b)(6) witness on issues concerning (1) DOE's responses to DCS forms submitted by utility plaintiffs, including DOE's decision to stop approving such DCS forms; (2) the SNF acceptance rate DOE is planning to use once it begins accepting SNF; and (3) the provision of priority for shutdown reactors in SNF acceptance. (4/18/02 Notice of Rule 30(b)(6) Deposition (App. 33-38).) The Government was present and represented Ms. Klein at this Rule 30(b)(6) deposition. (*See generally* App. 384-427.) At the time of her deposition, Ms. Klein was employed by the Government as Senior Policy Advisor to the OCRWM Director and Deputy Director. (4/24/02 Klein Dep. Tr. 11:10-14 (App. 389).) Accordingly, this testimony satisfies RCFC 32(a)(2) and should be admitted.

**Christopher Kouts**

Energy Northwest also seeks to admit testimony from the April 11, 2005, May 1, 2007, and June 12, 2008 Rule 30(b)(6) Depositions of Christopher Kouts. (App. 445-58, 472-83, 502-30.) For the April 11, 2005 deposition, the Government offered Mr. Kouts as a Rule 30(b)(6) witness on the following topics: (1) the basis for the acceptance rate set forth in DOE's 2004 Annual Priority Ranking and Annual Capacity Report, (2) DOE's decision to begin and then discontinue the DCS submission process in 2004, (3) DOE's 2004 instructions for completing DCSs, and (4) the intended effect of DCSs submitted by utilities pursuant to DOE's 2004 request. (3/2/05 Notice of Rule 30(b)(6) Deposition (App. 43-46).) The Government was present and represented Mr. Kouts at this deposition, and at that time, Mr. Kouts was Director of OCRWM's Office of Systems Analysis and Strategy Development. (4/11/05 Kouts Dep. Tr. 15:8-17 (App. 447).)

For the May 1, 2007 deposition, the Government offered Mr. Kouts as a Rule 30(b)(6) witness on the following relevant topics: (1) the rate(s) of acceptance that DOE planned to use under the Standard Contracts before and after DOE determined that it would not begin accepting SNF in a permanent repository in 1998; (2) a reasonable annual rate of acceptance for SNF under the Standard Contracts, and factors to consider in determining a reasonable rate; (3) the earliest date that DOE currently believes that it will begin accepting SNF under the Standard Contracts; and (4) the acceptance rate that DOE is planning to use once SNF acceptance begins pursuant to the Standard Contracts. (4/19/07 Notice of Rule 30(b)(6) Deposition (App. 47-49).) The Government was present and represented Mr. Kouts at this deposition. (*See generally* App. 472-83.) At the time, Mr. Kouts was Director of OCRWM's Waste Management Office. (5/1/07 Kouts Dep. Tr. 24:19-26:14 (App. 474-75).)

For the June 12, 2008 deposition in this case, the Government offered Mr. Kouts as its Rule 30(b)(6) witness on the following topics: (1) Energy Northwest's acceptance allocation had DOE commenced waste acceptance under the Standard Contract on January 31, 1998; (2) the SNF acceptance rate at which DOE would have performed after the 10-year period reflected in the 1990 Annual Capacity Report assuming that DOE commenced waste acceptance under the Standard Contract on January 31, 1998; (3) the basis for the acceptance rate contained in the Preliminary Estimates of the Total-System Cost for the Restructure Program: An Addendum to the May 1989 Analysis of the Total System Life Cycle Cost of the Civilian Radioactive Waste Management Program; (4) the earliest date on which DOE will commence acceptance of SNF under the Standard Contract, including without limitation, DOE announcements that the earliest possible date for waste acceptance is 2017; (5) the type of casks and any other ancillary equipment DOE would have used to accept spent nuclear fuel from Energy Northwest under the

Standard Contract had it commenced performance on January 31, 1998, including without limitation: the capacity of the cask and the number of spent nuclear fuel assemblies, the weight of the cask prior to loading, the approximate weight of the casks when fully loaded with spent nuclear fuel assemblies, and whether the cask closure would have been bolted or welded; (6) the 1987 Nuclear Waste Policy Act and its effect on the Civilian Radioactive Waste Management Program, including without limitation the effect on DOE's plans to site, license, and construct a geological repository and the effect on DOE's plans to site, license, and construct a Monitored Retrievable Storage Facility; and (7) efforts to site a Monitored Retrievable Storage Facility between 1989 and 1995, including without limitation, the efforts of the Nuclear Waste Negotiator to site a Monitored Retrievable Storage Facility. (Am. Notice of Rule 30(b)(6) Deposition (App. 50-51).) The Government was present and represented Mr. Kouts at this deposition. (*See generally* App. 502-30.) At the time, Mr. Kouts continued to be employed by the DOE.[13]

Therefore, the testimony at each of Mr. Kouts' Rule 30(b)(6) depositions satisfies RCFC 32(a)(2) and should be admitted substantively.

**Thomas Pollog**

During coordinated discovery, the Government offered Thomas Pollog as a Rule 30(b)(6) witness on issues concerning (1) proposed SNF acceptance rates from 1982 through 1987 as set forth in specific documents, (2) the role and purpose of DCSs and Final Delivery Schedules, (3) the purpose of ACRs and APRs, and (4) the rate of SNF acceptance DOE planned to use before it determined it would not meet the January 31, 1998 performance date. (4/3/02 Notice of Rule 30(b)(6) Deposition (App. 28-32).) Mr. Pollog testified on these topics on April 11 and

[13] Alternatively, to the extent Mr. Kouts testified to matters within the scope of his own Government employment, his testimony is admissible as an admission of the Government under FRE 801(d)(2)(D).

April 12, 2002. (4/11/02 Pollog Dep. Tr. 20:15-21:4 (App. 769-70).) The Government was present and represented Mr. Pollog. At the time, Mr. Pollog was an OCRWM employee assigned to the waste acceptance team. (4/11/02 Pollog Dep. Tr. 15:2-6, 16:7-11 (App. 768).) Mr. Pollog also testified as a Rule 30(b)(6) witness on May 15 and 16, 2002, on the following relevant topics: (1) DOE's responses to utility DCS submissions and its decision to stop approving these forms and (2) the date DOE then believed it would begin performance. (4/18/02 Notice of Rule 30(b)(6) Deposition (App. 33-38).) For both these depositions, Mr. Pollog was represented by Government counsel, and he continued to be employed in OCRWM's waste acceptance team. (*See generally* App. 819-25.)

Thus, this testimony meets RCFC 32(a)(2)'s requirements and should be admitted.

**David Zabransky**

The Government offered David Zabransky as a Rule 30(b)(6) in the *Southern Nuclear* case on issues concerning (1) DOE's plans to pick up SNF from that utility and (2) the type of equipment DOE would have used to pick up SNF from that utility had it performed in 1998. (11/12/04 Notice of Rule 30(b)(6) Deposition (App. 39-42).) Mr. Zabransky testified on these topics on April 12, 2005. (4/12/05 Zabransky Dep. Tr. 10:6-13 (App. 1085).) The Government was present and represented Mr. Zabransky. At the time, Mr. Zabransky was employed by DOE as a nuclear industry specialist and the Contracting Officer for the Standard Contracts. (4/12/05 Zabransky Dep. Tr. 7:21-8:11 (App. 1084).) Consequently, this testimony meets RCFC 32(a)(2)'s requirements and should be admitted.

## Conclusion

For all of the reasons set forth above, this Court should grant Energy Northwest's motion for leave to file its designated deposition and trial testimony as substantive evidence.

August 29, 2008

Respectfully submitted,

s/ Norman M. Hirsch
NORMAN M. HIRSCH
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
Telephone: (312) 923-2782
Facsimile: (312) 840-7782

OF COUNSEL:

David A. Handzo
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6000

William D. Heinz
David Jiménez-Ekman
Christopher Tompkins
April A. Otterberg
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611
(312) 222-9350

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of August 2008, a copy of the foregoing *Revised Notice Of Designation Of Deposition And Prior Trial Testimony Or, In The Alternative, Motion For Leave To Admit Prior Testimony Into Evidence*, along with its appendix, was filed electronically with the Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Norman M. Hirsch