# In the United States Court of Federal Claims

No. 04-10 C
(Filed: September 29, 2008)

*******************************************
                                            *
**ENERGY NORTHWEST**,                       *
                                            *
                           Plaintiff, *
                                            *
     v.                                    *
                                            *
**THE UNITED STATES,**                      *
                                            *
                          Defendant. *
                                            *
*******************************************

## ORDER

Pursuant to the Trial Preparation Order of April 21, 2008, Plaintiff, Energy Northwest, and Defendant, the United States ("the Government") filed their motions *in limine* on May 30, 2008. The parties filed their responses on June 30, 2008, and a hearing was held on August 5, 2008. Based on the arguments of the parties in the pleadings and at the hearing, below is the Court's decision on each of the outstanding motions.

**I.   Defendant's Motion *In Limine* to Exclude the Admission at Trial of Documents Prepared by Government Contractors**

The Government, as it has in other spent nuclear fuel ("SNF") cases, seeks to exclude all documents that were prepared by Department of Energy ("DOE") contractors. There are 19 documents[1] at issue which were prepared by contractors for DOE regarding research and planning relating to the disposal of SNF. At this time the primary issue before the Court is the admissibility, not the weight, of the contractor documents. The Government gives a number of reasons to exclude these documents; however, none of these reasons is persuasive to the Court. Therefore, the Government's Motion *In Limine* to Exclude the Admission at Trial of Documents Prepared by Government Contractors is DENIED.

---

[1] During oral arguments on August 5, 2008, the Government informed the Court that Energy Northwest withdrew 2 documents from the original list of 21 documents. Energy Northwest confirmed this for the Court. Tr. 6:20-25; 7:1. (Tr. page #:paragraph # refers to the transcript from the oral argument on the parties' motions *in limine* held on August 5, 2008).

### A.     Admissibility under Fed. R. Evid. 803(8)(A).

The contractors in this matter have a significant amount of responsibility under the Nuclear Waste Policy Act ("NWPA") for activities related to the disposal of SNF.  To determine the admissibility of the documents created by these contractors the Court looks to Fed. R. Evid. 803(8)(A) which provides that "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency" are not excluded by the hearsay rule "unless the sources of information or other circumstances indicate a lack of trustworthiness."  Fed. R. Evid. 803(8)(A).  The Court concludes that these documents constitute "[r]ecords, reports, statements, or data compilations" of DOE as required by Fed. R. Evid. 803(8)(A).  Additionally, despite the Government's argument to the contrary, the Court does not find a lack of trustworthiness with the contractor documents.[2]  Fed. R. Evid. 803(8)(A).  Therefore, the Court holds that the contractor documents are admissible and adopts the reasoning set forth in *Yankee Atomic Elec. Co. v. United States* ("*Yankee*"), No. 98-126C, 2004 U.S. Claims LEXIS 363 (Fed. Cl. Sept. 17, 2004) (Merow), *Pacific Gas & Elec. Co. v. United States* ("*PG&E*"), 73 Fed. Cl. 333, 438 (2006) (Hewitt), and *Dairyland Power Coop. v. United States* ("*Dairyland*")*,* No. 04-106, (Fed. Cl. June 20, 2008).  However, in making the determination that the documents are admissible, the Court has not determined that the contractor's  "[r]ecords, reports, statements, or data compilations" reflect or establish DOE policy.  Fed. R. Evid. 803(8)(A).  This determination shall be made at trial, if the issue arises.

### B.     Admissibility under Fed. R. Evid. 801(d)(2).

According to Fed. R. Evid. 801(d)(2), a statement is not hearsay if "[t]he statement is offered against a party and is . . . a statement by a person authorized by the party to make a statement concerning the subject . . . ."  Fed. R. Evid. 801(d)(2)(C).  Fed. R. Evid. 801(d)(2) "expressly acknowledges that an admission by a party-opponent is not hearsay if the statement is offered against the party and was actually made by him in either his individual or representative capacity."  *Mayor of City of Philadelphia v. Educational Equality League*, 94 S.Ct. 1323, 1345-1346 (1974).  Specifically, "under Fed. R. Evid. 801(d)(2)(C), all that is required for such an 'admission' to be admissible at trial is that it is made by 'a person authorized by the party to make a statement concerning the subject.'" *PG&E*, 73 Fed. Cl. at 440.

The Court finds that DOE contractors were authorized to make statements concerning the transportation and disposal of SNF pursuant to the Standard Contract.  The Court, therefore,

---

[2]During oral argument, the Government stated that it could not "speak to whether [the documents are] reliable or not."  Tr 8:7.  However, the Government conceded that the documents where created by contractors working for DOE.  Tr: 8:7-9.  The Court finds that even though the Government "would not concede that [the documents] are necessarily reliable," the documents, found in either DOE or contractor files, containing statements by contract employees working for DOE, do not indicate a lack of trustworthiness.  To the extent there is any issue regarding the reliability or authenticity of a particular document this can be addressed by the Government at trial.

holds that the documents are admissible under Fed. R. Evid. 801(d)(2)(C). In holding that the documents are admissible under Fed. R. Evid. 801(d)(2)(C), this Court adopts the reasoning set forth in *Yankee*, *PG&E*, and *Dairyland*. Whether or not a document reflects or establishes DOE policy can be determined at trial.

## II.   Defendant's Motion *In Limine* to Strike Plaintiff's Claim for Interest

The Government filed its Motion *In Limine* to Strike Plaintiff's Claim for Interest on May 30, 2008. In its response Energy Northwest argues that the Government does not seek to preclude the introduction of specific evidence at trial, but rather to bar Energy Northwest's entire claim for interest. Pl.'s Resp. at 1. Energy Northwest asserts that the Government's motion *in limine* is a procedurally defective motion for partial summary judgment. *Id*. During the hearing on August 5, 2008, the Court discussed with the parties the issue that the Government's motion *in limine* was actually a motion for summary judgement. Tr. 22:1-15; 23:1-25; 24:1-22.

According to this court, "[a] motion *in limine* is a preliminary motion that serves a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly would be inadmissible for any purpose." *PR Contractors, Inc. v. United States*, 69 Fed. Cl. 468, 469 (2006)). Additionally, the Trial Preparation Order of April 21, 2008, contemplates the filing of motions *in limine* for specific objections that require briefing, including witnesses or exhibits, it does not indicate that a motion *in limine* should be used to exclude an entire claim for damages. Because the Government's motion *in limine* seeks to preclude Energy Northwest's claim for interest the Court agrees that the motion *in limine* is more properly a motion for summary judgment and the Court will treat it as such. For the reasons set forth below, the Government's motion for partial summary judgment regarding Energy Northwest's claim for interest is DENIED.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c) of the Rules of the United States Court of Federal Claims ("RCFC"); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court's function is not to weigh the evidence, but rather to determine whether there is a genuine issue as to a material fact–that is, one that would change the outcome of the litigation. *Id*. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). "A material fact is one that might affect the outcome of the litigation." *Agwiak v. United States*, 64 Fed. Cl. 203, 208 (2005) (citing *Anderson*, 477 U.S. at 248)). Such a genuine issue of material fact exists if the evidence is such that a reasonable trier of fact could find for the nonmoving party. *Anderson*, 477 U.S. at 248 ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The primary issue before the Court is the distinction between interest *on* a claim (prejudgment interest) and interest *as* a claim. In this case Energy Northwest argues that it is

seeking interest as a claim.  Energy Northwest seeks to recover interest that accrued as a result of specific borrowings which were required as part of its attempt to mitigate the Government's breach.  Pl.'s Resp. at 8-9.  According to Energy Northwest, the costs incurred to build on-site SNF storage required a large capital investment which would have significantly impacted the cost of electricity to its participants.  *Id*. at 3.  Therefore, Energy Northwest had to borrow, first from Citibank and then through the issuance of Electric Revenue Bonds, to pay for SNF storage.  *Id*.  Energy Northwest argues that its interest as a claim is directly and indisputably traceable to the Government's breach.  *Id*. at 11.  The Government argues that interest is not allowable whether it is interest on a claim or interest as a claim.  Def.'s Mot. at 6-7.  Additionally, the Government attempts to characterize Energy Northwest's claim as an effort to claim compensation for the time value of money.  *Id*. at 6.

In reviewing any claim for interest the Court must first look to 28 U.S.C. § 2516 which states that:

(a) Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof; (b) Interest on a judgment against the United States affirmed by the Supreme Court after review on petition of the United States is paid at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 2516.

Early cases seem to advance the theory that interest, whether it is on a claim or as a claim, is not recoverable.  For example, *Myerle v. United States*, states:

> As to the interest on borrowed money: The delay forced the contractor to borrow money to carry on his contract; for this he was forced to pay interest, an extra expense.  The recovery of this sum in this court is forbidden by statute: whether it be claimed in the guise of a damage caused by delay, or in some other form, it remains in fact a claim for interest, and such a claim we are prohibited from allowing.

*Myerle v. United States,* 33 Ct. Cl. 1 (1897).  However, recent cases demonstrate that there are exceptions to an absolute prohibition on an award of interest.

In *Wickham Const. Co.*, the Federal Circuit made a distinction between the recovery of interest "on equity capital" and "interest actually paid on funds borrowed because of the government's delay in payments and used on the delayed contract."[3]  *Wickham Const. Co. v.*

---

[3] The Government argues that the Federal Circuit's holding in *Wickham* is limited to the context of equitable adjustments under the 'Changes' clause that is contained in most Federal

*Fischer*, 12 F.3d 1574, 1582-83 (Fed. Cir. 1994). The Court explained that while "28 U.S.C. § 2516 [] generally prohibits the award of interest against the federal government," it "does not bar an interest award as part of an equitable adjustment under a fixed-price contract if the contractor has actually paid interest because of the government's delay in payment." *See Gevyn Constr. Corp. v. United States*, 827 F.2d 752, 754 (Fed. Cir. 1987) (distinguishing claims where "interest on equity capital is not recoverable [from claims where] a contractor . . . actually paid [interest] on funds borrowed because of the government's delay in payments"); *See also*, *Bluebonnet Sav. Bank, FSB v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001) (allowing the recovery of the "increase of financing costs" caused by a breach of contract).

The Court concludes that based on the decision of the Federal Circuit in *Wickham Const. Co.* the Government is not entitled to judgment as a matter of law. *Wickham Const. Co. v. Fischer*, 12 F.3d 1574, 1582-83 (Fed. Cir. 1994) (holding that an interest award is not barred if the contractor paid interest because of the government's delay in payment). There exist issues of material fact, which are properly presented at trial, regarding Energy Northwest's claim for interest incurred on funds borrowed through promissory notes and revenue bonds which were used to construct and load the Independent Spent Fuel Storage Installation. Def. Mot. at 1-2; Pl.'s Resp. at 1. The Government's motion *in limine* to strike Energy Northwest's claim for interest which was deemed a motion for partial summary judgment is DENIED.

### III. Motions *In Limine* to Exclude the Testimony of Expert Witnesses

Based on the pleadings, the arguments of counsel and the reasons set forth below, Energy Northwest's Motion *in Limine* to Exclude Opinion Testimony of Raymond Hartman is DENIED; Energy Northwest's Motion *in Limine* to Exclude Opinion Testimony of R. Larry Johnson shall be WITHDRAWN;[4] the Government's Motion to Exclude the Testimony of Energy Northwest's Expert Witness, Ms. Eileen M. Supko is DENIED; Energy Northwest's Motion in limine to Exclude Opinion Testimony of Charles L. Stuart is DENIED; and the Government's Motion *in Limine* to Exclude the Rebuttal Testimony of Plaintiff Energy Northwest's Expert Witness, Eric Bush is DENIED.

Testimony by experts is governed by Fed. R. Evid.702, as amended in 2000. Fed. R.

---

procurement contracts. Def.'s Mot. at 3-4. According to the Government, "*Wickham* does not support ENW's interest claim because, in the Standard Contract, there is no such 'Changes' clause or similar provision that would somehow authorize the recovery of interest paid because of a Government breach or delay." *Id*. While it may be true that the contract at issue in *Wickham* contained a changes clause, the holding in the case does not seem to be so limited.

[4]According to Energy Northwest, if the motions to exclude Dr. Hartman or Mr. Stuart are denied then Energy Northwest will reserve its challenge to Mr. Johnson's testimony for cross-examination; therefore, the motion *in limine* to exclude the testimony of R. Larry Johnson shall be withdrawn by Energy Northwest. Tr. 55:1-6.

Evid. 702. Testimony by Experts states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the fact of the case.

Fed. R. Evid. 702. Based on Fed. R. Evid. 702, a witness must be qualified as an expert based on their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. There was little question as to the qualifications of the proposed experts[5] and as a threshold matter the Court holds that all of the proposed experts appear to be qualified.

The Court must then make a determination that the evidence is reliable. This requires an "assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. The Court holds that the expert testimony of Dr. Hartman, Ms. Supko, and Mr. Stuart, and the rebuttal testimony of Mr. Bush is reliable. Each witness has sufficient underlying reasoning or methodology which they then applied to the facts in this case.

As with all evidence, any expert's testimony must be relevant and must be sufficiently tied to the facts of the case such that it will aid in resolving the factual dispute. *Daubert*, 509 U.S. at 591 (citing *United States v. Downing*, 753 F.2d 1224, 1242 (3d. Cir. 1985)). This inquiry can be described "as one of fit." *Daubert*, 509 U.S. at 591. The testimony of Dr. Hartman provides the Court with an opinion about the net present value of the cost of two options that Energy Northwest considered when evaluating methods for mitigation. Pl.'s Resp. at 5. This testimony is sufficiently tied to the facts in this case and may be relevant to a determination of the reasonableness of Energy Northwest's mitigation efforts. Ms. Supko will testify "regarding the impact of DOE's rate of acceptance of SNF assemblies from the nuclear industry as a whole."[6] Def.'s Mot. at 1. Ms. Supko's testimony may not be as critical as it was prior to the

---

[5]Energy Northwest asserted that Mr. Stuart may be qualified to testify as an expert under Fed. R. Evid. 702; however, he is not qualified to provide an opinion on issues pertinent to the instant case. Tr. 84:11-25; 85:1-12. Mr. Stuart appears to have a great deal of experience in the nuclear industry; therefore, the Court concludes that any questions regarding Mr. Stuart's qualifications to address particular issues are best addressed by Energy Northwest through cross-examination.

[6]Ms. Supko's report was prepared prior to the issuance of decisions from the Federal Circuit in *Yankee Atomic Electric Co. v. United States*, Nos. 2007-5025, *et al.* (Fed. Cir. August 7, 2008); *Pacific Gas & Elec. Co. v. United States*, No. 2007-5046 (Fed. Cir. August 7, 2008);


recent decisions from the Federal Circuit.[7]  In *Pacific Gas & Elec. Co.*, as in two other cases, the Federal Circuit held "that the Standard Contract required DOE to accept SNF/HLW in accordance with the 1987 ACR process." *Pacific Gas & Elec. Co. v. United States*, No. 2007-5046, *18 (Fed. Cir. August 7, 2008).  However, during the status conference on August 18, 2008, the Government indicated that it would not stipulate to the acceptance rate and that it plans to put on evidence to support the theory that the proper rate of acceptance is 900 MTU.  Tr. 18:7-14, 21-22 (Aug. 18, 2008).  In consideration of the Government's position the Court concludes that Ms. Supko's expert testimony remains relevant.  Mr. Stuart will provide the Court with testimony regarding the technical aspects of Energy Northwest's dry cask spent nuclear fuel storage.  Pl.'s Mot. at 1.  The court concludes that Mr. Stuart's testimony is relevant to the Court's understanding of technical matters that will be at issue in the trial in this matter.  The rebuttal testimony of Mr. Bush gives a technical opinion and critique of Mr. Stuart's expert report.  Def.'s Mot. at 13.  This testimony will offer Energy Northwest's technical perspective and is therefore relevant to the Court.

The Supreme Court has also held that the gatekeeper function found in *Daubert* applies to the testimony of experts who do not testify based on scientific principles, but based on "technical, or other specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).  Additionally, the Supreme Court in *Daubert* noted that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.  The Court concludes that Dr. Hartman, Ms. Supko, Mr. Stuart and Mr. Bush shall be able to testify at the trial, as their testimony is based on either scientific principles or specialized knowledge.  The parties are free to engage in a "vigorous cross-examination" at the trial in this matter.

**IV.    Procedures Regarding Sequestration**

As stated at the hearing on August 5, 2008, and based on the Court experience in *Dairyland* following are the sequestration procedures for trial:

1. Witnesses who have testified shall not be permitted to discuss their testimony with witnesses who have not yet testified.

2. An attorney shall not be permitted to relate, in any form, the substance of

---

and *Sacramento Mun. Util. Dist. v. United States*, Nos. 2007-5052, *et al.* (Fed. Cir. August 7, 2008).  Her updated report was submitted on September 5, 2008, and it is not the subject of the instant motion *in limine*.

[7]*Yankee Atomic Electric Co. v. United States*, Nos. 2007-5025, *et al.* (Fed. Cir. August 7, 2008); *Pacific Gas & Elec. Co. v. United States*, No. 2007-5046 (Fed. Cir. August 7, 2008);  and *Sacramento Mun. Util. Dist. v. United States*, Nos. 2007-5052, *et al.* (Fed. Cir. August 7, 2008).

       previous testimony to witnesses who have not yet testified.

3.   Counsel shall be allowed to consult with witnesses during breaks in testimony, however, they may not discuss the testimony of any other witness that has appeared before the Court.

**V.**     **Documents admitted during trial**

As stated at the hearing on August 5, 2008, and based on the experience of the Court during the trial in *Dairyland*, the Court cautions the parties that it does not favor the wholesale admission, at the end of a day of trial, of documents that had not been introduced through a witness. These documents during the *Dairyland* trial came to be known as "untethered" documents. Therefore, in advance of the trial the Court gives the following instruction:

1.   There shall be no wholesale admission of documents at the end of a day of trial. A document that has not been discussed by a witness and admitted during the course of the trial day will not be admitted.

2.   In order for a document to be admitted it must be tied to the witness in some manner, it must be relevant to the testimony at hand, and its admissibility must be able to be determined by the Court. To the extent a document has previously been determined to be admissible and is relevant to the testimony at hand, it shall be admitted.

                                                           s/ Edward J. Damich
                                                          EDWARD J. DAMICH
                                                          Chief Judge